MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendants
TWITTER, INC. and X CORP.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT TWITTER, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:     September 21, 2023<br>Time:    10:00 a.m.<br>Judge:   Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S REQUEST FOR
JUDICIAL NOTICE
Case No. 3:23-CV-03007-VC

# REQUEST FOR JUDICIAL NOTICE

In accordance with Federal Rule of Evidence 201, Defendant X Corp. as successor in interest to Defendant Twitter, Inc. (collectively, "Twitter") respectfully requests that this Court take judicial notice of the Twitter 2022 Global Discretionary Performance Bonus Plan attached as **Exhibit A** to this Request for Judicial Notice in connection with Twitter's Motion to Dismiss Plaintiff Mark Schobinger's ("Plaintiff" or "Schobinger") Complaint (the "Motion").

Rule 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, *documents incorporated into the complaint by reference*, and matters of which a court may take judicial notice.") (emphasis added); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (finding that the *incorporation by reference doctrine* permits courts to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" when ruling on a motion to dismiss). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Here, **Exhibit A** may be considered by the Court when ruling on Twitter's Motion because it has been incorporated by reference into Plaintiff's Complaint. *See, e.g.*, Compl. ¶¶ 2, 7, 14, 15, 19, 20, 23, Count I, Count II. Specifically, Plaintiff's two causes of action explicitly cite to, repeatedly reference and clearly rely on the ""employee cash performance bonus plan ("PBP" or "Bonus Plan")" applicable to the year 2022. Because the PBP at the core of Plaintiff's claims and repeatedly referenced and relied upon throughout the Complaint, the Court may take judicial notice of the PBP and consider it in ruling on Twitter's Motion. *See, e.g., Peak v. TigerGraph, Inc.*, No. 21-CV-02603-PJH, 2021 WL 4061703, at *4 (N.D. Cal. Sept. 7, 2021) (applying the incorporation by reference doctrine to employment and compensation plan

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S REQUEST FOR
JUDICIAL NOTICE
Case No. 3:23-CV-03007-VC

documents referenced in complaint and considering the documents when ruling on the motion to dismiss); *Klees v. Liberty Life Assur. Co. of Bos.*, 110 F. Supp. 3d 978, 982 (C.D. Cal. 2015) (applying the incorporation by reference doctrine to an insurance policy and letters regarding benefits, finding it "appropriate to consider these documents along with the complaint in the motion to dismiss" where the documents were referenced in and essential to the claims in the complaint); *Colodney v. Cnty. of Riverside*, No. EDCV1300427VAPSPX, 2013 WL 12200649, at *2 (C.D. Cal. Aug. 16, 2013), *aff'd*, 651 F. App'x 609 (9th Cir. 2016) (applying the incorporation by reference doctrine and taking judicial notice of employment documents where "the terms of that employment, form[ed] the basis of the Complaint" and considering the documents when ruling on the motion to dismiss).

Twitter has furnished this Court with sufficient information to enable it to take judicial notice of the attached document and its contents. Accordingly, Twitter hereby requests that this Court take judicial notice of the following document:

**Exhibit A** is a true and correct copy of the 2022 Global Discretionary Performance Bonus Plan referenced in Plaintiff's Complaint.

Dated: August 4, 2023                                                    MORGAN, LEWIS & BOCKIUS LLP

By   /s/ Eric Meckley
Eric Meckley
Brian D. Berry
Ashlee N. Cherry
Kassia Stephenson

Attorneys for Defendant
TWITTER, INC.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S REQUEST FOR
JUDICIAL NOTICE
Case No. 3:23-CV-03007-VC

# EXHIBIT A

**2022 Global Discretionary Performance Bonus**
**Plan** Effective Date: January 1, 2022

To motivate, recognize, and reward our Tweeps for their hard work and contributions to the achievement of company and individual performance objectives, Twitter is implementing this Global Discretionary Performance Bonus Plan ("Plan"), which will commence on January 1, 2022 ("Effective Date").

As outlined in this Plan, any discretionary Performance Bonus paid to any eligible employee under the Plan as defined below ("Eligible Employee") will depend on: (1) the achievement of performance goals by Twitter, Inc. and/or its affiliates or subsidiaries ("Twitter Group"); and (2) each Eligible Employee's individual performance and contributions during the Plan Year (as defined below).

**Plan Year.** The Plan Year under the Plan will run from January 1, 2022 to December 31, 2022, unless otherwise earlier changed, replaced or terminated by Twitter ("Plan Year"). As of the Effective Date, the Plan replaces any other Twitter Group incentive plans applicable to any Eligible Employees.

**Employee Eligibility.** To be eligible to receive a discretionary performance bonus payment under the Plan ("Performance Bonus"), subject to applicable law, each Eligible Employee must satisfy each of the following criteria:

> (1) be a regular employee of a Twitter Group company; and (2) be actively employed in good standing on the Performance Bonus Payout Date (as defined below), have successfully completed any probationary period (if based outside the U.S.); and (3) be in a Twitter Group role designated as eligible (excluding members of Staff); and (4) if placed on a performance improvement plan or written performance counseling during the Plan Year, have successfully completed the requirements of the applicable plan/counseling within the Plan Year; and (5) not be subject to disciplinary action or termination for significant misconduct (including but not limited to violation(s) of Twitter Group policy including the Code of Conduct and/or any applicable Company or Twitter Group employee playbook) during the Plan Year or at any point before the Performance Bonus Payout Date; and (6) not be in a role that is eligible to earn any type of incentive compensation under the Twitter Incentive Compensation Plan; and and (7) not be a fixed-term contract employee.

For Eligible Employees who lose eligibility for Plan participation during the Plan Year, any Performance Bonus will be prorated by the number of eligible days worked by the Eligible Employee during the Plan Year. Performance Bonuses are not earned during any unpaid personal leave of absence.

In the event that an Eligible Employee is subject to disciplinary action (including but not limited to a written warning) during the Plan Year or at any time prior to the Performance Bonus Payout Date, Twitter reserves the right in its sole discretion to reduce or eliminate any Performance Bonus Payout earned by the Eligible Employee, subject to local law.

Subject to applicable law, Eligible Employees whose employment ends at any time before the Performance Bonus Payout Date will not be eligible for any Performance Bonus under the Plan. Eligible Employees who are serving their notice period on the Performance Bonus Payout Date will not be eligible for any Performance Bonus under the Plan.

**Plan Acceptance** Each Eligible Employee working in a location outside of the United States must timely sign and return an individual Plan Acknowledgement Form (PAF) signifying acceptance of the terms and conditions of the Plan within the prescribed time frame. Failure to complete this step within the prescribed time frame will impact eligibility to participate in the Plan.

**Funding of the Performance Bonus Plan**
+
> **Calculation of Target Performance Bonus Amounts.** An Eligible Employee's target Performance Bonus is a target percentage of the employee's eligible earnings as designated by the Eligible Employee's Twitter Group employing entity, in its discretion. For purposes of the Plan, the term 'eligible earnings' means the regular salary or wages paid to an Eligible Employee during the Plan Year during any period of time that the employee is eligible as defined under the Plan; 'eligible earnings' specifically exclude overtime, double time, reimbursements, commissions, other incentives, one-time payments including but not limited to sign-on bonuses, awards, allowances, performance bonus plan payments, payments for deferred compensation and compensation attributable to the exercise of equity awards or other forms of long-term incentive compensation.

Target percentages are determined on an individual basis taking into consideration the Eligible Employee's level, role and responsibilities, and will be communicated to Eligible Employees in writing.

If the Twitter Group achieves its specified business performance metrics during the Plan Year, a Performance Bonus payment pool will be funded ("Performance Bonus Pool"). The applicable business performance metrics will be identified by the Compensation Committee of the Board of Directors in the first quarter of the Plan Year. The Performance Bonus Pool can be adjusted up or down, depending upon the achievement of the designated target metrics, with a floor of 50% and a ceiling of 200%. Notwithstanding the foregoing and subject to applicable law, solely in the event of unforeseen and extraordinary circumstances as determined by the Compensation Committee, the Compensation Committee reserves the right in its discretion to determine a Performance Bonus Pool amount based on an alternative formula and/or elect not to fund any Performance Bonus Pool for the Plan Year.

If a Performance Bonus Pool is established, Twitter will allocate a portion of the Performance Bonus Pool to each member of Staff to distribute to their managers, who will exercise discretion following the end of the Plan Year to determine individual Performance Bonuses to Eligible Employees, based on the Eligible Employee's target percentage and the manager's assessment of the Eligible Employee's individual performance and overall contribution to the team and the Twitter Group's goals. The individual maximum payout is 200% of the Employee's target percentage.

**Performance Bonus Payout Date** If the Performance Bonus Pool is funded and Performance Bonuses are allocated under the Plan, the Performance Bonus Payout Date will be in Q1 of the calendar year following the Plan Year. However, in any event, payment of any Performance Bonus under the Plan will be made no later than March of the year following the Plan Year.

**Termination of Participation** Subject to applicable law, Twitter reserves the right to terminate any Eligible Employee's participation in the Plan at any time.

**Equal Employment Opportunity** This Plan is administered and Performance Bonuses are determined and paid without unlawful regard to any personal characteristic of any Eligible Employee, including: race, religion, sex, age,

national origin, sexual orientation (including gender expression/identity), disability or marital status or any other characteristic that is protected by applicable law.

**Entire Agreement** This Plan, along with each PAF, constitutes the entire agreement and understanding between the relevant Twitter Group employing entity and each Eligible Employee relating to the subjects covered by this Plan and supersedes and replaces any and all other plans, agreements, plan summaries, representations, discussions and/or understandings (written or oral). In the event of a conflict between this Plan and the PAF, this Plan will take precedence and the conflicting terms in the PAF will be void.

**Assignment** Any Twitter Group entity may assign its rights under the Plan to any other Twitter Group entity (as applicable) at any time at its absolute discretion.

**Severability** In the event that one or more provisions of this Plan are determined to be invalid or unenforceable for any reason, the remainder of the Plan shall remain in full force and effect.

**Miscellaneous** Subject to applicable law, Twitter, Inc. retains full discretion to interpret, amend, modify, terminate or revoke the Plan and any individual PAF at its sole discretion, including the modification of any individual Performance Bonus, and its determinations are final and binding. Subject to applicable law, the establishment of this Plan, any provisions of this Plan, and/or any action of the Compensation Committee, any Twitter Group officer with respect to this Plan, or participation does not create any contractual or other right to receive any other benefits, nor does participation constitute a condition or right of continued or future employment within the Twitter Group. Participation in this Plan in itself does not confer any guaranteed period of employment for any individual.

Any Performance Bonus will be paid less all taxes, withholdings and any other amounts required or authorized to be withheld or deducted by the Twitter Group in accordance with applicable law.

Any Performance Bonus, when paid, represents an extraordinary item of remuneration, which does not form part of any Eligible Employee's regular remuneration and, therefore, subject to applicable law, will not be, nor be deemed to be, earned, accrued or gained monthly, quarterly, semi-annually, annually or other than on a one-time only basis. Except to the extent required by law, the Performance Bonus will not be taken into account when calculating any other payment, benefit or entitlement in respect of an Eligible Employee's employment which is calculated by reference to the remuneration paid to the employee.

In addition, to the extent permitted by applicable law, any Performance Bonus will be in satisfaction of (or in lieu of, as the case may be), and not in addition to, any statutory bonus payable under applicable law.

Likewise, given its extraordinary nature, neither the Performance Bonus Payment, nor any other similar benefit, is guaranteed to be offered to an Eligible Employee in the future, and in signing and returning the PAF and participating in the Plan each Eligible Employee agrees that they have no expectation to receive, or entitlement to claim, any other such benefit in the future.

The resolution of any questions with respect to payments and entitlements pursuant to the provisions of this Plan shall be determined by the Performance Bonus Plan Administrator, in his/her sole discretion, and all such determinations shall be final and conclusive. The Performance Bonus Plan Administrator is the VP of Total Rewards or his/her designee.