UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, District Judge

SCHOBINGER, )
Plaintiff, )
vs. ) No. C 23-03007-VC
TWITTER, INC., et al., )
Defendants. )

San Francisco, California
Thursday, December 14, 2023

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 2:03 - 2:25 = 22 MINUTES

APPEARANCES:

For Plaintiff:
Lichten & Liss-Riordan, P.C.
729 Boylston Street
Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
BY: SHANNON LISS-RIORDAN, ESQ.

For Defendants:
Morgan, Lewis & Bockius, LLP
One Market Spear Street Tower
San Francisco, California 94105
BY: ERIC MECKLEY, ESQ.

Transcribed by:
Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

                                                                Thursday, December 14, 2023 2:03 p.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Now calling civil case 20-3007, Schobinger versus Twitter, Inc., et al.

Will counsel please state your appearances for the record, starting with the Plaintiff.

MS. LISS-RIORDAN (via Zoom): Good afternoon, your Honor. For Plaintiff, I'm Shannon Liss-Riordan.

THE COURT: Good afternoon.

MR. MECKLEY (via Zoom): Good afternoon, your Honor. Appearing on behalf of Defendant, Eric Meckley.

THE COURT: Good afternoon.

Okay. Mr. Meckley, let me -- let me start with you. It -- this struck me as a pretty straightforward lawsuit, maybe a little more straightforward than you make it in your -- in your papers. It seems like there was a discretionary bonus plan that existed at Twitter for a number of years. Seems like that probably was not a binding -- binding contract, and I don't think the Plaintiffs are arguing that it was or alleging that it was. But, then, in connection with the acquisition, Twitter executives allegedly made promises to employees that they would, in fact, receive a bonus at 50 percent of what that plan called for if they stuck around. And that -- as they've alleged it in the

complaint, it seems that was a binding promise and that Twitter had an obligation to -- a contractual obligation to pay that bonus to -- to those people who stuck around and didn't get the bonus.

So, obviously, we don't know what the facts truly are. These are just allegations in the complaint. But, based on the allegations in the complaint it seems like a very straightforward breach of contract claim that can -- that can move forward.

So, I just wanted to give you a chance to tell me what you think I'm missing.

MR. MECKLEY: Sure, your Honor. Thank you.

I think, obviously, the first question and condition for the Court is the incorporation by reference of the performance bonus plan --

THE COURT: Let's say --

MR. MECKLEY: -- because that --

THE COURT: Let's say it's incorporated. Let's assume that -- let's assume that it's incorporated. I mean, I think they oppose incorporating it by reference but I'm not sure given the allegations in their complaint that it hurts them to incorporate it by reference because I think it probably confirms that that plan was not -- you know, was not a binding contract. But that's not what they're arguing. They're arguing that -- that, subsequently,

promises were made by Twitter executives to pay people 50 percent of the bonus if they stick around and that that -- as they've alleged it, that seems like a binding oral contract.

MR. MECKLEY: So, assuming that the Performance Bonus Plan is incorporated, incorporated by reference and before the Court, the -- the problem with that allegation, your Honor, is I think in the wording of the complaint because it's not a promise that exists independently. There's no allegation, for instance, that the executives told employees, If you stay, everyone is going to get a bonus that is going to be half of your salary. That would be a different scenario, and that isn't what is alleged. What's alleged multiple times in the --

THE COURT: It says 50 percent of target. Does that mean half of your salary?

MR. MECKLEY: I -- I'm trying to use an example here of what isn't alleged, your Honor. They did not -- the allegation isn't that the executives promised people, We're going to give everyone a bonus for staying. What is alleged is that people would be paid under the bonus plan pursuant to the bonus plan, if you say the bonus plan will be effectuated so that you get a bonus under the plan. So, it's inherently tied to the plan. The -- the promises in the complaint -- and we outlined this in our reply in

Section (a) on pages one and two, just going through the complaint and finding every single sentence that talks about you're getting paid pursuant to the plan, under the plan and, in fact, the class that's defined here is people who were employed and -- and this is a quote -- "were covered by the bonus plan."

So, it is all about what is going to happen under the plan. The promise isn't --

THE COURT: So, I -- I do think that I understand what you're saying, but I -- I guess I'm not quite understanding why it matters. I mean, there's this plan. Let's all agree for purposes of this discussion that it's discretionary and it's not -- you know, it -- the plan itself does not create any binding obligations. Then you have, you know, the acquisition happening, and you have people starting to freak out about whether -- whether they should stay or go, am I going to get a bonus if I stay, and the -- what the complaint alleges -- I think it's fair to interpret the complaint this way -- is, you know, Guys, don't worry. If you stay, you are going to get -- we are -- we are promising you a bonus at 50 percent target. I'm not exactly sure what 50 percent target means. I sort of assumed that it meant, you know, 50 percent of the maximum bonus you could get. But, whatever it means, you know, if you stick around, you're going to -- you know, and if you're

covered by this plan, you will get a bonus. And, so, it's sort of an oral modification that is binding on -- on Twitter.

MR. MECKLEY: Well, the allegation is that you will get a bonus under the claim, which has to go followed through the plan, and the plan, because of that inherent discretionary nature, says that controls. It's an integrated document. It is the complaint and full understanding of the parties with respect to --

THE COURT: I understand -- I understand what you're saying, and I think that, you know, you could -- I can understand why you would interpret the language of the complaint that way, but I'm just not sure that is the most natural interpretation of -- of the complaint. I mean, to me, the -- the more natural interpretation of the complaint is, Hey, for those of you who are covered by this plan, we promise you that you're going to get your bonus at 50 percent target. That -- that is, I think, the more natural interpretation of the complaint.

MR. MECKLEY: And I think -- I took great pains to not try to have any interpretation of the complaint, and that's why we quoted the actual language from the complaint which probably 10, 12 times used the phrase "under the plan," you're going to get this under the terms of the plan. And you can't --

THE COURT: Could I ask you -- could I ask you something about that? I mean, that would just -- if you were right about that, then I would just dismiss with leave to amend, and they'd amend their complaint to more precisely allege in the complaint what they are arguing in their opposition brief, and then -- and then -- then -- and then you would have to file an answer because it would clearly state a claim for breach of contract, right?

MR. MECKLEY: I don't think they could do that. This is sort of, you know, futility of amendment. You can't accept as true any allegations which contradict the documents that are referenced in the complaint here which is --

THE COURT: Was the --

MR. MECKLEY: -- the discretionary nature of the plan.

THE COURT: But the -- but the communications they're describing occurred after the creation of those documents. So, I think all of your like parol evidence argument and stuff really just doesn't apply. It's the -- their point is that Twitter executives made these promises to employees after the document was created, and --

MR. MECKLEY: But they -- I guess -- and to summarize or succinctly say, that isn't an enforceable contract --

THE COURT: Why --

MR. MECKLEY: -- because --

THE COURT: -- not?

MR. MECKLEY: Because their promises are what is going to happen under the plan, and I go back to my example I'm using.

THE COURT: Okay. But I was asking you if they -- they sort of describe it slightly differently in their opposition brief than they do in the complaint. I mean, I think --

MR. MECKLEY: Right.

THE COURT: -- the way they describe it in their opposition brief is probably a reasonable way to interpret the allegations in the complaint. But, if it's not, then my question was aren't they just going to go back and amend their complaint and tweak the language a tiny bit and then we're going to move forward in the case?

MR. MECKLEY: I don't think that's possible because, you know, this was a complaint that was filed in Federal Court, that was subject to Rule 11. These allegations, they way they were written, obviously there was an intent and purpose behind it. It wasn't a one-handed reference. It was a 10 to 12 time reference that this was going to happen under the plan, and just trying to strike that out of the complaint -- and I'm sure I'd be happy to

                                                                    cite the Court cases on this which we can find -- that you can't amend a complaint and delete language that you've already owned that binds you or commits you to a premise just to try to get around the bases for --

THE COURT: Well, I mean, what you --

MR. MECKLEY: -- dismissal.

THE COURT: -- what you can't do is you can't, you know, contradict yourself. I mean, the big case in the Ninth Circuit is Latrell Sprewell v. The Golden State Warriors that everybody cites. But I don't think that's what this would be. I mean, I don't -- it's a hypothetical discussion right now because I sort of think that -- you know, that the way I've described the -- their -- their breach of contract claim is -- is a reasonable way to interpret the complaint. I under -- that is imprecise language that they're using in the complaint. I understand that.

MR. MECKLEY: And maybe can I try another analogy?

THE COURT: Sure.

MR. MECKLEY: So, another analogy drawn from employment law as well is a person gets hired. They have their offer. It says I'm an at-will employee, right. So, then the manager at some point says -- and that's an integrated contract, just like this here. And at some point the manager says, You know what? You're never going to be

fired. We're going to employ you forever. So, please stick around. And the companies -- there's going to be a merger, but you're going to be retained forever.

So, then the employee gets fired, and they turn around and they say, Well, you fired me. The manager promised that I was going to be employed forever. And you'd say, but you --

THE COURT: Well, I'm not sure that would be a breach of contract because I'm not -- I don't know if there was any consideration in your -- in your example. But if the -- but, if you said, Hey, don't leave. We really need you, and we promise to keep you on for five years and, you know, we'll only -- we promise that for the next five years, if we terminate you, it would only be for good cause. It would not be at will. And then a year later or six months later, they terminate the employee without good cause, why wouldn't that be breach of contract?

MR. MECKLEY: Because the law is clear that isn't the breach of contract. You can't have an oral comment that's modifying the terms of an integrated agreement that gives you the right to do something ab --

THE COURT: Subsequent oral promise?

MR. MECKLEY: That's irrelevant. It doesn't matter. Subsequent oral --

THE COURT: Okay. Give me a case -- give me --

give me a case that says that you can't have a subsequent oral promise that modifies an agreement because I don't think you cited one of those in your brief, and I don't think that's a correct statement of the law.

MR. MECKLEY: Well, first off, this is an integrated contract. So, you can't have a subsequent --

THE COURT: Just get -- can you answer my question? If you have a case that says when you have a written agreement, there can never be an oral modification of that agreement -- when you have an agreement with an integration clause, there can never be a subsequent oral modification or oral change to the terms between the parties, if you have that case, let -- let me know because I -- I would definitely want to read that case.

MR. MECKLEY: Well, it depends on whether we're looking at California or Texas law.

THE COURT: Either one.

MR. MECKLEY: Sure.

THE COURT: Either one.

MR. MECKLEY: So, if it's here, the promise is something that can't happen within a year. So, it's the --

THE COURT: Yeah, I just --

MR. MECKLEY: -- (Zoom glitch).

THE COURT: Could -- could I just have the case that you want me to read?

MR. MECKLEY: Sure. It is under California, Fanucchi and Limi Farms v. United Agri Products. It's a Ninth Circuit case that is interpreting Civil Code of California 1698(b) which says a contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. And that case goes on to explain that executed means it has to have been fully performed.

And the Ninth Circuit held that --

THE COURT: Yeah, but isn't that -- isn't that what they're alleging here?

MR. MECKLEY: But this case is saying you -- no. No, because to be fully performed, it had to have been performed and paid or signed, and there's nothing. There's no writing that alleged that there was -- it's purely oral, and there was nothing performed. So, that's the whole point of Fanucchi.

THE COURT: Okay. I'll look at that case. What else? Was there a Texas case you wanted me to read also?

MR. MECKLEY: Sure. The Texas case is Blackstone Medical, Inc. v. Phoenix Surgicals, and that's 470 Southwest 3rd, 636, Texas App, 2015.

THE COURT: Okay.

MR. MECKLEY: But -- but I think it's important too because the -- the scenario your Honor just described in

that sort of hypothetical, we're drifting -- or maybe we're blending the concepts of breach of contract and promissory estoppel, and I think that's an important distinction that we want to maintain because it informs the analysis of each of those claims, and breach of contract clearly is, you know, going to be defined by what the -- the contract says. If it's entirely discretionary and integrated, you have to live by that, and anything anyone says afterwards isn't going to change that.

Separately, what you -- I think we're getting to was the concept of promissory estoppel, and that analysis I think -- and there's two claims in the case. One is breach of contract. One is promissory estoppel. The promissory estoppel claim fails because here there's no plausible basis, given the allegations in the complaint and incorporation by reference, that -- there's no plausible basis to plead foreseeable reasonable justifiable reliance on any such promise that you're guaranteed a bonus, because that's essentially what it is. It's -- the promise is you're guaranteed a bonus under the Performance Bonus Plan. That's essentially it. And, yet, the Performance Bonus Plan says it's discretionary and you're not getting a bonus. And the case law -- and we've cited it -- basically says you can't have reliance on statements that contradict the terms of the contract.

THE COURT: Okay.

MR. MECKLEY: So --

THE COURT: So, what you're -- I mean, I -- I understand your -- I think I understand your position. You've got a written contract which says that the -- whether to give you a bonus is entirely in our discretion. We're not bound to give you a bonus. It's entirely in our discretion. And then if the executives subsequently say, Hey, you -- you know how -- you know that plan that you're a part of, that -- you know, the Discretionary Bonus Plan, we know there's an acquisition going on now. So, if -- we want to make clear that if you stay, if you stick around through the acquisition, you are guaranteed that bonus that -- that is -- that is contemplated by the plan. You're saying that that is not a binding contract, the executives are not allowed to do that?

MR. MECKLEY: Well, I'm saying under promissory estoppel -- well, one, under breach of contract, yes, they can't do it. And under promissory --

THE COURT: Then can't do it and -- and under promissory estoppel, it would not be reasonable to rely on that promise by the executives. Okay. I understand your argument.

Ms. -- Ms. Liss-Riordan, do you want to respond briefly?

MS. LISS-RIORDAN: Yeah, just a couple of things. So, first off, if you look at what we've alleged in the complaint, we didn't allege, as Defendants are trying to read it, there is this bonus plan. Under the plan, Twitter owes this money. That would be a claim for breach of contract of the bonus plan.

Instead, what we repeatedly said was a promise was made that we're going to pay you this amount, and the amount is set forth in the bonus plan. We're not -- it's not -- I think we made pretty clear if you look at count one of the complaint during the months leading up to and following Elon Musk's acquisition of Twitter, Twitter repeatedly promised employees that they would receive their annual bonus under the company's bonus plan. So, that's the promise that we were talking about was the promise --

THE COURT: In other words, under -- the words "under the", what you meant by that is contemplated by the company's bonus plan?

MS. LISS-RIORDAN: Referred to in the bonus plan.

THE COURT: Okay.

MS. LISS-RIORDAN: There was sort of like in a labor contract dispute where we're not saying we're enforcing the contract. You know, the Court might just refer to the contract to figure out what the payment amount is. So, that's -- so, that's one point. And then on this

discussion that defense counsel was just having with you about modifying written agreements, so, we've cited in our opposition brief on page eight cases both under California and Texas law -- well, pages eight through nine. So, I just wanted to point out the -- let's see -- California decision, Riveris Land Cold Storage v. Fresno-Madera, a discretionary plan can be modified, novated or superseded by subsequent oral promises. The Fanucchi case that Defendants cite in their favor actually helps us. That was a case where the Ninth circuit reversed the dismissal of such a claim. And the Ninth Circuit said that in that case, a written contract could be novated by oral promises. And, thus, the -- the case met the pleading standard as to a breach of contract claim and a promissory estoppel claim.

And then under Texas law, we cited the case of -- right after that, Pointe West Center v. It's Alive. Same thing, a written contract is not required by law to be in writing. It may be modified by a subsequent oral agreement even though it provides it can be modified only by a written agreement. So, that Texas law and California law say that the case that Mr. Meckley just pointed out, the Blackstone case from Texas, what that case says is that you can't orally modify a written contract that is subject to the statute of frauds. However, here, we don't have the statute of frauds at play because the promise that we're talking

about, that something falls -- a contract falls under the statute of frauds if it cannot be performed in under a year. We're saying here that the contract that we're suing under was made over the course of 2022, and it could be performed on January 1st, 2023, because the payment was to be made in the first quarter of 2023. So, the statute of frauds doesn't apply.

And I even have a case from California to cite to you that said that even if it could be performed on exactly one year, that doesn't -- that doesn't implicate the statute of frauds. That's J.C. Millett Park and Tilford Distillers Corporation, 123 F.Supp. 484. It's a 1954 Northern District case.

THE COURT: Okay. Thanks. Go ahead.

MR. MECKLEY: Can I respond to one point, your Honor?

THE COURT: Yeah, just very briefly.

MR. MECKLEY: Sure. And this is counsel's, I guess, characterization of the complaint. I'm quoting from paragraph -- count 2 actually, where it says:

> "Twitter repeatedly promised employees that they would receive their annual bonus under the company's bonus plan."

Receiving a bonus under the plan, clearly that's the

plan. This isn't an independent promise. They're saying the plan is guaranteeing you this. This is going to happen pursuant to the plan, not some made up other, you know, independent thing, first.

Second, I go back to the definition of the class. The class is defined as people who were covered by Twitter's bonus plan. So, if counsel's interpretation here is to be believed, that's irrelevant. That's immaterial. You wouldn't need to be covered by the plan. Why? Because --

THE COURT: Well, except those were the people --

(Simultaneous speaking.)

THE COURT: I think the -- the idea presumably is that those were the people -- those were the people who were asking, right, Am I going to get a bonus this year? Otherwise, I'm going to leave. I need to know if I'm going to get a bonus this year. The company's being acquired.

MR. MECKLEY: I just don't think there's -- and, again, interpreting as literally as possible in Plaintiff's favor is the standard we have to apply, that you can look at the -- the way this is phrased, that bonuses will be paid under the plan and come up with any different interpretation that it is somehow separate and apart from --

THE COURT: Okay. I understand your argument. I'll give it some further thought, and the -- the Fanucchi and Blackstone cases I hadn't read. So, I'll make sure to

read those and -- and issue a ruling.

Thank you.

ALL: Thank you, your Honor.

(Proceedings adjourned at 2:25 p.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Wednesday, January 3, 2024