April 8, 2024

VIA ECF FILING

Chief Magistrate Judge Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

      Re:    *Schobinger v. Twitter, Inc., et al.*, Case No. 23-cv-03007-VC (DMR)

Dear Judge Ryu:

      Plaintiff Mark Schobinger, Defendant X Corp. (as a successor in interest to Twitter, Inc.) (hereinafter "Twitter"), and third-party witness Ned Segal submit this discovery letter under the Civil Local Rules and the Court's standing order on discovery. The parties have now reached an impasse on two related issues regarding the parties' deposition subpoenas to Mr. Segal. Counsel conferred via telephone on March 29, 2024 and exchanged follow up emails on April 1-3, 2024. The Court has set the following deadlines: Motion for Class Certification due May 24, 2024; Opposition due June 21, 2024; and Reply due July 12, 2024. No other deadlines have been set by the Court. A case management conference is set for September 6, 2024.

**I.    BACKGROUND INFORMATION**

      In April 2022, Elon Musk announced that he would be purchasing Twitter. Plaintiff alleges that "many employees raised concerns regarding the company's policies following this anticipated acquisition, including concerns about their compensation and annual bonus." (Compl. at ¶ 17.) Plaintiff further alleges that "In the months leading up to Elon Musk's acquisition of Twitter in October 2022, the company's executives, *including former Chief Financial Officer Ned Segal*, repeatedly promised Plaintiff and the company's other employees that 2022 bonuses would be paid out at fifty percent (50%) of target." *Id*. at ¶ 3 (emphasis added). Plaintiff further alleges that "during an all-hands meeting in the months leading up to Musk's acquisition being completed in October 2022, *Twitter's former Chief Financial Officer, Ned Segal*, informed the company's employees, including Plaintiff, that 2022 bonuses under the Bonus Plan would be paid out at fifty percent (50%) of target." *Id*. at ¶ 21 (emphasis added). Plaintiff alleges that, relying on these promises, Plaintiff and many other employees continued working at Twitter. However, they did not receive the allegedly promised benefits following Mr. Musk's acquisition of Twitter. Defendant denies all of Plaintiff's allegations.

      Plaintiff filed this action on June 20, 2023 (the "*Schobinger* action"), and represents current and former Twitter employees who allege they have not been paid their promised bonus and/or severance benefits in more than ten lawsuits (almost all of which, including this action, contain putative class claims) and nearly 2,000 individual arbitrations. Counsel for Plaintiff and Defendants have agreed that discovery produced in any of these matters can be used in any other matter in which Plaintiff's counsel represent the plaintiff or claimant. The parties believe that Mr. Segal, who is Twitter's former Chief Financial Officer, has first-hand knowledge of relevant facts that underlie the claims at issue in these matters. For this reason, both Plaintiff and

Defendants have subpoenaed Mr. Segal for deposition.

The parties and Mr. Segal agreed that Mr. Segal would be deposed on April 4, 2024, subject to resolution of objections he raised through his counsel. (Ex. A – Pl.'s Subpoena.) On March 22, 2024, Defendants issued a separate subpoena requesting that Mr. Segal produce documents as well as appear for deposition. (Ex. B – Defs.' Subpoena.) However, as Mr. Segal's previously raised objections were not yet resolved, the deposition did not go forward on April 4. The parties and Mr. Segal have agreed to reschedule Mr. Segal's deposition to April 23, 2024, in order to allow time for the Court to issue a ruling.

## II.   ARGUMENT

### 1. Mr. Segal contends that Twitter should provide him with documents that have been produced to Plaintiff's counsel that refer to him before his deposition.

**a.   Plaintiff's Position:**  Plaintiff has no objection to Twitter and/or Plaintiff providing Mr. Segal with all relevant documents prior to his deposition so that he can properly prepare to answer the parties' questions about any such documents.  Plaintiff urges that this issue be decided promptly so that the deposition can go forward on April 23, 2024.  The first case for which Mr. Segal's deposition may be used is an arbitration for an individual represented by Plaintiff's counsel that is scheduled to begin on May 13, 2024**.**

**b.   Defendants' Position:** Mr. Segal has demanded, as a condition to simply appearing for deposition, that Twitter "produce to Mr. Segal all documents produced in any of the former-employee actions from his custodial files or that he sent/received/was cc'd on or would otherwise have had access to when employed by Twitter, no less than two weeks in advance of any deposition."

Mr. Segal's refusal to comply with a lawful subpoena and appear for deposition based upon his unilaterally imposed condition is completely unjustified and inappropriate, both legally and factually. Nothing in Rule 45 authorizes a third-party witness to refuse to comply with a subpoena based on a unilateral demand that the subpoenaing party share documents prior to the deposition.[1] Twitter requested that Mr. Segal provide any case law that would support his position – he provided none. Not surprisingly, none of the cases Mr. Segal cites below even discuss the topic of providing documents to a third-party deponent in advance of a deposition, much less impose any obligation on a subpoenaing party to do so.[2]  A party deposing a third-party witness is entitled to question the witness about any relevant matters, including probing the witness's memory of events.  Just as the witness has no right to know in advance the questions that a party will ask in the deposition, the witness has no right to obtain documents in advance of the deposition that will provide a "preview" of such questioning.  Requiring such a result would

---

[1] Rather, under Rule 45(d)(3) a witness can seek to quash or modify a subpoena based on only a limited set of circumstances, none of which applies here.

[2] *Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670(N.D. Cal. Oct. 31, 2018) is doubly inapposite.  First, Mr. Segal is not a "competitor" of Twitter from whom "competitively sensitive information" has been sought.  *Id*.  Second, that case did not involve producing documents to a third-party witness in advance of their deposition.

be patently unfair to Twitter and prejudice its ability to test the veracity of Mr. Segal's testimony.

Twitter is not in any way attempting to obtain any "advantage" against Mr. Segal with respect to the claims in his own separately pending action; indeed, Twitter intends only to ask Mr. Segal questions relevant to these actions. And if Mr. Segal intends to provide truthful testimony, he has nothing to fear. Twitter simply wants to conduct Mr. Segal's deposition as any party would with respect to any third-party witness – which does not include giving that witness preferential treatment over other third-party witnesses by previewing documents to them in advance.[3] Counsel for Plaintiff and/or Twitter may choose to mark exhibits during the deposition, which Mr. Segal will have ample time to review before answering questions – just like any other witness in a deposition. In the many pending cases between Plaintiff's counsel and Twitter, numerous third-party witnesses likely will be deposed and thus this issue has ramifications beyond Mr. Segal's deposition. If this Court were to grant Mr. Segal's unjustified request, it would create a basis for third-party witnesses simply to refuse to comply with lawful subpoenas – in violation of Rule 45 – unless the subpoenaing party acceded to the witness's unilateral demand to produce documents. Mr. Segal has no right to receive any documents prior to his deposition (let alone the egregiously overbroad scope of documents he requested, *e.g.,* every document he "had access to when employed by Twitter" or was cc'ed on).[4]

**c.     Mr. Segal's Position:** Twitter has created the unprecedented, unfair situation of seeking to depose and obtain discovery from Mr. Segal, who is not just a third-party witness, but also a plaintiff in a separate action seeking to hold Twitter to its obligation to pay his severance benefits following his termination from Twitter. *See Agrawal, et al. v. Musk, et al.*, 3:24-cv-01304-MMC (N.D. Cal.) (the "Segal Action"). Twitter is denying Mr. Segal the requested documents to gain an unfair tactical advantage in the Segal Action,[5] claiming only to want to "test his veracity" like other third-party witnesses. But, Mr. Segal is not similarly situated with other third-party witnesses and a veracity test is just an unfair memory test by another name.

Mr. Segal is not refusing to sit for a deposition or to restrain the parties from asking questions relevant to *Schobinger*. But, Twitter's effort to leverage this non-party deposition into party testimony, while simultaneously withholding documents that Twitter has already produced to Plaintiffs and that Mr. Segal may receive in the Segal Action (and asking him to produce discovery that may or may not be permitted in the Segal Action) is intended to unduly burden, oppress, or embarrass him. The law empowers the Court to issue orders restraining such conduct. *See* Fed. R. Civ. P. 26(b)(2); Advisory Comm. Note (1993) (Rule 26(b)(2) is "intended to provide the court with broad[] discretion to impose additional restrictions on the scope and extent of discovery."); *Realtime Data, LLC v. MetroPCS Texas, LLC*, 2012 WL 3727304, at *2 (N.D.

---

[3] Mr. Segal asserts (without support) that it is "commonplace" for third-party witnesses to be given prior to their depositions all documents in which they are mentioned. Twitter's counsel has never done that and, respectfully, has never seen it done in three decades of practice.

[4] Mr. Segal's attempt to obtain these documents suggests that he wants to prematurely obtain discovery in his own pending lawsuit. Yet discovery has not begun in that case.

[5] Twitter's conduct is part of ongoing retaliation against Mr. Segal and others for forcing Elon Musk to honor his commitment to acquire Twitter. Mr. Musk fired Mr. Segal the day he gained control over Twitter, wrongfully denying severance, and Musk's Twitter tried to evade its indemnification and legal fee advancement obligations until Mr. Segal brought legal action.

Cal. Aug. 28, 2012). Third-parties are entitled to a heightened level of protection from this conduct. *See* Fed. R. Civ. P. 45(d)(1) (the subpoenaing party "must take reasonable steps to avoid imposing undue burden or expense" and the court "must enforce this duty"); *Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670, at *3 (N.D. Cal. Oct. 31, 2018) ("non-parties should not be burdened in discovery to the same extent as the litigants themselves." (citations omitted)). Analogously, when a third-party is subpoenaed by a competitor for competitively sensitive information, greater protection may be justified. *See, e.g., Updateme Inc. v. Axel Springer SE, No*., 2018 WL 4945323, at *1 (N.D. Cal. Oct. 11, 2018). Mr. Segal and Twitter are litigation adversaries and, like a subpoena by a competitor, there is risk Twitter will use discovery here for alternative detrimental purposes.[6]

Mr. Segal's request for documents is a reasonable compromise to protect against Twitter's gamesmanship. *First*, Mr. Segal only seeks documents that he has already seen or authored or reflecting presentations he gave to Twitter employees, *and that have been produced in Schobinger*. Indeed, obtaining Mr. Segal's best recollection of the purportedly relevant events should be in the interest of both parties here. Notably, *Plaintiff* is willing to provide the documents and does not (wrongfully) contend that Mr. Segal's testimony will be less truthful simply because he is able to refresh his recollection in advance. *Second*, no argument has been put forth that such documents are voluminous or difficult to identify. *Third*, the request does not jeopardize Twitter's deposition strategy. Mr. Segal has not asked Twitter to identify those documents about which it intends to question him and the mere provision of documents already known to Mr. Segal (and produced to Plaintiffs) gives away no secrets. *Finally*, Twitter's speculation that other non-parties will request documents is irrelevant. Mr. Segal is differently situated because of the Segal Action and Twitter's potential use of this deposition in that action.

Mr. Segal therefore asks the court to order Twitter to provide the documents without delay and, in any event, by no later than April 15, which is just eight days before his deposition.

   2. **Mr. Segal contends questions in the deposition should be limited to the issues raised in the cases brought by Plaintiff's counsel, Twitter should not be permitted to seek testimony concerning the issues raised in Mr. Segal's case, *Agrawal et al. v. Musk et al*., 3:24-cv-01304-MMC (N.D. Cal.), and Twitter should not be permitted to use Mr. Segal's deposition transcript in that action.**

**a.     Plaintiff's Position:** Plaintiff's counsel only seeks to question Mr. Segal about the issues raised in the arbitrations and cases involving their clients. They have no intention of seeking testimony from him regarding the claims Mr. Segal asserts in *Agrawal et al. v. Musk et al.*

**b.     Defendants' Position:** As Twitter explained to Mr. Segal's counsel during their meet and confer (and contrary to Mr. Segal's speculative accusations above), Twitter does not intend to question Mr. Segal about his alleged claims in the *Agrawal* action. Twitter has not subpoenaed Mr. Segal to "oppress, harass, or retaliate" against him; on the contrary, Twitter needs to depose Mr. Segal as an important fact witness to the *Schobinger* action (as evidenced by the excerpts from the Complaint quoted above). Twitter is entitled to question Mr. Segal on any

---

[6] Contrary to Twitter's assertion (FN. 1, *infra*), Mr. Segal gains no "unfair advantage" in the Segal Action by having access to materials Twitter possesses and which are from his own files.

topics that may be relevant to any of the actions brought by Plaintiff's counsel, even if the facts pertinent to those topics could conceivably overlap with factual issues relevant in the *Agrawal* action. For example, questioning regarding Mr. Segal's authority and conduct relating to his role as CFO is clearly relevant to his alleged promises regarding the 2022 bonus payments at issue in this case. Twitter is also entitled to question Mr. Segal regarding any biases he may have against Twitter that could affect the substance of his testimony in *Schobinger* or any of Plaintiff counsel's other pending matters. Twitter should not be prevented from questioning Mr. Segal as to these topics simply because it could elicit facts that may be relevant in the *Agrawal* action. Mr. Segal's request that Plaintiff and Twitter "define the topics" in advance of his deposition has absolutely no support in the FRCP or any case law (and Mr. Segal's attorneys have cited none) and would bestow preferential treatment upon him that no other fact witnesses receive and unfairly prejudice Twitter (and Plaintiff) in questioning of him.

This Court may not enter an order in the *Schobinger* action prohibiting Twitter from potentially using Mr. Segal's deposition testimony in the *Agrawal* action. It is well-settled that a witness's testimony under penalty of perjury is admissible where relevant, regardless of whether that testimony was obtained in a separate proceeding. *See Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) ("Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. […] Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence."); *Virtusio v. Fin. Indus. Regul. Auth., Inc.*, No. 12-CV-00602 NC, 2013 WL 1899830, at *1 (N.D. Cal. May 7, 2013), *aff'd*, 615 F. App'x 400 (9th Cir. 2015) ("Witness statements given under oath to a shorthand reporter are treated as 'affidavits' by the witness . . . even if taken in a separate proceeding.") Twitter may rely upon Mr. Segal's sworn testimony in any other proceedings. If he has concerns regarding the admissibility of his testimony, then he is free to raise such concerns with the Judge presiding over the *Agrawal* case.

   c. **Mr. Segal's Position:** As explained above, Mr. Segal merely seeks to ensure that in giving testimony as a third-party witness to *Schobinger* action, he is not unfairly prejudiced in his own action. The Court is empowered to issue a protective order for that purpose. *See* Issue 1, *infra*. Mr. Segal requests a reasonable undisputed limitation on deposition scope: that the parties cannot ask questions wholly unrelated to *Schobinger* action or that solely go to issues in the Segal Action. Twitter insists, however, that there are topics purportedly relevant to both actions. The problem is that although Twitter is the best positioned to do so, it does not actually describe what those topics of overlap are. Twitter should define the topics of overlap in advance of the deposition so the parties and Mr. Segal can reach agreed-to guardrails on the scope of questioning. Twitter's refusal to do so is another example of its gamesmanship that the Court can and should restrain.

   Twitter also offers no reason why it will not agree to forego use of this deposition in the Segal Action. The issue is not admissibility of Mr. Segal's testimony. The issue is whether Twitter can force an unfair process in this action for the purpose of getting unprepared or incomplete testimony to use against Mr. Segal in a separate action. Either the process should be fair (and documents shared with Mr. Segal) or Twitter should not be free to use the deposition.

| **Lichten & Liss-Riordan, P.C.** | **Morgan, Lewis & Bockius LLP** | **Sidley Austin LLP** |
|---|---|---|
| */s/ Shannon Liss-Riordan* | */s/ Eric Meckley* | */s/ Jaime Barlett* |
| Shannon Liss-Riordan | Eric Meckley | Jaime Bartlett 251825<br>Sheila Armbrust 265998 |
| *Counsel for Plaintiff* | *Counsel for Defendants* | *Counsel for Mr. Segal* |

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants and Mr. Segal via the CM/ECF system on April 8, 2024.

/s/ Shannon Liss-Riordan

Shannon Liss-Riordan