```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3      Before The Honorable Donna M. Ryu, Magistrate Judge
 4
 5  MARK SCHOBINGER,              )
                                  )
 6           Plaintiff,           )
                                  )
 7  vs.                           )  C 23-03007-VC
                                  )
 8  TWITTER, INC., et al.,        )
                                  )
 9           Defendants.          )
    _____ )
10
11                                   San Francisco, California
                                     Thursday, May 23, 2024
12
13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 1:05 - 1:25 = 20 MINUTES
14
    APPEARANCES:
15
    For Plaintiff:
16                              Lichten & Liss-Riordan, P.C.
                                729 Boylston Street
17                              Suite 2000
                                Boston, Massachusetts 02116
18                         BY:  SHANNON LISS-RIORDAN, ESQ.

19  For Defendants:
                                Morgan, Lewis & Bockius, LLP
20                              One Market Spear Street Tower
                                San Francisco, California
21                                94105
                           BY:  ERIC MECKLEY, ESQ.
22
23
               (APPEARANCES CONTINUED ON NEXT PAGE)
24
25
```

```
                                                                    2
 1  For Third Party Ned Segal:
                                  Sidley Austin, LLP
 2                                555 California Street
                                  20th Floor
 3                                San Francisco, California
                                    94104
 4                           BY:  SHEILA A.G. ARMBRUST, ESQ.
                                  JAIME A. BARTLETT, ESQ.
 5                                CHADDY GEORGES, ESQ.

 6  Transcribed by:               Echo Reporting, Inc.
                                  Contracted Court Reporter/
 7                                Transcriber
                                  echoreporting@yahoo.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    3
 1  Thursday, May 23, 2024                                   1:05 p.m.
 2                      P-R-O-C-E-E-D-I-N-G-S
 3                            --oOo--
 4          THE CLERK:  Calling Civil Case C-23-3007-VC, Mark
 5  Schobinger versus Twitter, Incorporated, et al.
 6      Counsel, please state your appearances, starting with
 7  the Plaintiff's attorneys first.
 8          MS. LISS-RIORDAN (via Zoom):  Good afternoon, your
 9  Honor.  Shannon Liss-Riordan for Plaintiff.
10          THE COURT:  Ms. Liss-Riordan.
11          MR. MECKLEY (via Zoom):  Good afternoon, your
12  Honor.  Erik Meckley appearing on behalf of Defendant
13  Twitter.
14          THE COURT:  Mr. Meckley.
15          MS. ARMBRUST (via Zoom):  And good afternoon, your
16  Honor.  Sheila Armbrust appearing on behalf of Ned Segal,
17  third party.  And I'm joined off camera by Jaime Bartlett
18  and Chaddy Georges.
19          THE COURT:  Okay.  Good afternoon to Ms. Armbrust
20  and -- and the others you just mentioned.
21      Okay.  So, I have gone over your joint discovery letter
22  thoroughly.  I -- I have a few questions.  I just want to
23  make sure I have a full picture.  So, let me ask these
24  questions first before we get into it.
25      This is a question first for -- for Mr. Meckley and
```

1 also Ms. Liss-Riordan.  This has to do with a document.  So,
2 Mr. Segal's request is that he get certain documents that
3 Twitter provided to the Plaintiff class to -- you know,
4 through Ms. Liss-Riordan that have to do with Mr. Segal that
5 were authored by him, copied to him, or reflected
6 presentations that he made.
7        Ms. Armbrust, do I have that right?  That's what
8 he wants in advance, right?
9        MS. ARMBRUST:  That's correct, your Honor.
10        THE COURT:  Okay.  So -- so, and -- and these are
11 documents provided in the Schobinger matter from Twitter to
12 the Schobinger Plaintiffs.
13     So, Mr. Meckley, if I define it the way that I just
14 did, about how many documents do you think we're talking
15 about?
16        MR. MECKLEY:  Your Honor, I would clarify that
17 that's not my understanding because I have the quote, and I
18 quoted it in our portion of the discovery letter of what
19 they actually are seeking, and it's documents from his
20 custodial files or that he was sent or received or CC'd or
21 that he otherwise had access to when employed at Twitter.
22 So, those are three categories, and that's a quote from Mr.
23 Segal's counsel, quite a broad array of things.  It's not
24 just things that he sent or received apparently.
25        To answer your question about the --

```
 1            THE COURT:  Yes.
 2            MR. MECKLEY:  -- number -- number of documents --
 3  and Ms. Riordan -- Ms. Liss-Riordan can attest to this --
 4  the parties have an agreement given the number of cases that
 5  documents produced across all the matters between Twitter
 6  and Ms. Liss-Riordan's firm are used in all the cases or may
 7  be used in all the cases.
 8       So, we've -- we've kind of gone about this by, you
 9  know, having this broad production of documents that's --
10  call it a pool that then can be used in any of these cases.
11  That pool of documents is more than 15,000 documents.
12       Now, within that, I haven't itemized of those 15,000
13  how many might fall within the scope of -- of Mr. Segal's
14  attorney's request because of those three categories.  You
15  know, that's -- those are different things, and there's a
16  wide variety of things that I don't even know how to
17  quantify given the description "anything he otherwise might
18  have had access to in his role at Twitter."  To me that's
19  quite impossible to quantify in this pool of 15,000
20  documents we have.  But, suffice it to say, I think the
21  conclusion is there's going to be a lot of things in there.
22            THE COURT:  Okay.  So, I'm quoting from the joint
23  discovery letter at page four.  This is Mr. Segal's portion
24  -- position, and it says:
25                 "Mr. Segal only seeks documents
```

1              he's already seen or authored or
2              reflecting presentations he gave to
3              Twitter employees and that have been
4              produced."
5       So, I -- I don't know seen or authored, but what I
6  would say and the way I'm construing it is things that he
7  authored, things that he was copied on, things that reflect
8  presentations he gave to others.
9       Now, when I presented that to Ms. Armbrust as a scope,
10 she said yes, that is what they're looking for.
11      Ms. Armbrust, could you just confirm that?
12           MS. ARMBRUST:  It is, your Honor.  And -- and I
13 just want to be clear.  We haven't discussed scope in --
14 with Mr. Meckley in the past.  So -- but what I -- what you
15 asked is what we would ask for.
16           THE COURT:  Okay.  Ms. Liss-Riordan, do you have
17 any idea how many of the -- out of the 15,000 documents
18 we're talking about that have to do -- sort of the core
19 Segal documents?
20           MS. LISS-RIORDAN:  I didn't really look at it with
21 an eye toward the breadth that's being talked about here.  I
22 believe we pulled the documents that have been produced that
23 just reference Mr. Segal by name, and it was not an enormous
24 number.  I don't remember off the top of my head, but I want
25 to say it was in the hundreds, not in the thousands.

1          THE COURT: Okay. So -- all right. So, that's --
2 that's important to know. You know, if you're getting going
3 in a deposition, the prospect of having 15,000 documents
4 coming at you seems like a really not very efficient
5 deposition. So, that's one -- one thing I'm concerned
6 about.
7     Now, the other question I had is about the use of the
8 transcript. So, I know from the joint discovery letter
9 that, Ms. Liss-Riordan, you have the Schobinger case. You
10 have about 10 other court cases, many of them framed as
11 putative class actions, and you've got 2,000 arbitrations,
12 and basically all of them are going to involve Mr. Segal as
13 important witness.
14     Is that -- do I have a correct understanding?
15          MS. LISS-RIORDAN: Well, maybe, maybe not. I
16 mean, he is a potential witness. We have completed the
17 first arbitration last week, and Mr. Segal was not called as
18 a witness by either side. So, with respect to the other
19 cases, it's not clear yet whether he will actually now be
20 needed as a witness, but for the Schobinger case itself,
21 which we're appearing on, I do -- I do think he's an
22 important witness --
23          THE COURT: Okay.
24          MS. LISS-RIORDAN: -- for -- for this case.
25          THE COURT: He's named in your allegations. So --

1        MS. LISS-RIORDAN:  Oh, yes.  Yes, yes, yes.
2        THE COURT:  Okay.
3        MS. LISS-RIORDAN:  Yes.
4        THE COURT:  So, my understanding is that
5 Plaintiffs and Twitter would like to be able to use Segal's
6 deposition that's taken in Schobinger in -- potentially in
7 all the other cases, Ms. Liss-Riordan you have that might --
8 where he might be a witness.  Correct?
9        MS. LISS-RIORDAN:  He -- right.  It could be --
10 pursuant to our agreement, it could be used in other cases,
11 correct.
12       THE COURT:  Okay.  And, Ms. Armbrust, my
13 understanding is that Mr. Segal doesn't have a problem with
14 any of that.  His problem is he doesn't want it used in his
15 own case in Agerwal (phonetic).
16       MS. ARMBRUST:  That's exactly right, your Honor.
17 And there are these other matters -- other employment
18 matters where Ms. Liss-Riordan does not represent
19 Plaintiffs.  So, there are these other matters where other
20 Plaintiffs' counsel may seek to take Mr. Segal's deposition,
21 but we're not talking about those here, but that is a
22 concern in terms of the burden for Mr. Segal.
23       THE COURT:  Okay.  But there's some benefit to Mr.
24 Segal in having an agreement that his deposition taken in
25 Schobinger can be used in other places, at least with Ms.

1  Liss-Riordan's cases and arbitrations, because then he
2  doesn't have to get deposed again and again, right?
3            MS. ARMBRUST:  I agree.
4            THE COURT:  Okay.  So, the concern then is can it
5  be used in Agerwal -- and I don't know if I'm saying the
6  name of that correctly but the case that Mr. Segal has with
7  a few others in front of Judge Chesney that just got filed
8  recently and has not yet even had an initial case management
9  conference.  So, the --
10           MS. ARMBRUST:  Correct.
11           THE COURT:  -- current situation is that in his
12 own case against Twitter, he doesn't want his deposition in
13 Schobinger used there, correct?
14           MS. ARMBRUST:  Correct.
15           THE COURT:  Okay.  So, all right.  I just wanted,
16 again, to understand the positions.  I don't need a lot of
17 argument on this, folks.  What I want to do is rule from the
18 bench so you know how to go forward.  And, so, that's what
19 I'm going to do.  I -- this is a -- in this case, Mr. Segal
20 is a third party deponent.  He's being asked to testify
21 pursuant to Rule 45, and under Rule 45, we know it's more
22 protective of nonparties than party deponents.  So, for
23 example, Rule 45(d) recognizes that an issuing party -- and
24 in this case both Plaintiff and Defendant in Schobinger --
25 want -- subpoenaed Mr. Segal.  Issuing party has to take

reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena.  So, we have that.

We also know from the case law it's very well established that nonparties should not be burdened in discovery to the same extent that the litigants themselves might be burdened.  So, requests to nonparties should be narrowly drawn to meet specific needs for information.  And there, you know, I would point to Judge Beeler's opinion in <u>UpdateMe</u>.  I think that's a case that was cited by I think Mr. Segal perhaps in the -- in the joint discovery letter.  And Judge Beeler summarizes some of the case law on that point that's very well established.

So, in this case, you know, there aren't other cases that are directly on point, but the potential burden really has to do with the fact that Mr. Segal is a third party deponent here, but he's got his own case against the same Defendant, Twitter, that's, you know, coming right up and is about to launch in litigation.

So, I understand there's some concern by Mr. Segal that -- that this deposition may be used for -- for purposes that are really aimed at his -- his -- you know, defending against his own case.

Now, I know Mr. Meckley and Twitter have said, We don't intend to do that.  That's not how we view this deposition.  I -- I take him at his word.  Nevertheless, I think it does

1  make some sense to try to coordinate this a little bit.
2       So, I -- with respect to the subject matters, so, what
3  can he be asked about, I don't think Mr. Meckley is required
4  to give a -- you know, all -- Here's all the subjects I'm
5  going to ask him about.  But I am going to order counsel to
6  meet and confer about what's really out of bounds, okay,
7  just so people have a clear idea of that.  I mean, there
8  should be some areas that everyone agrees let's not get into
9  this.  And part of that is I don't want to have another
10 discovery dispute about what happens in his deposition,
11 right?  So, I am -- for example, I'm pretty sure he
12 shouldn't get asked about his own severance plan, right?  I
13 don't believe that should come up in Schobinger.  It's
14 possible he gets some -- asks some questions that have to do
15 with bias that would include he's got a case going, you
16 know, against Twitter.  He might be asked, What is that case
17 about, and how much are you asking for, right?  But I don't
18 think it should go into the merits of that.  I wouldn't
19 imagine that that's really relevant to Schobinger or -- or
20 deeply relevant to bias.  I mean, it's enough to get those
21 basic facts out to question about bias.
22      I also am not sure how much he should get asked about
23 his -- about his job performance.  You know, that -- that
24 seems -- now, I -- I don't -- I don't know because I don't
25 know Schobinger's -- the allegations well enough, but it

1  seems to me just looking at what's in the complaint, that
2  may not really be part of what's relevant to Schobinger.
3  Now, I -- I'm not making a ruling on that because, of
4  course, I don't know the cases completely, obviously.  But I
5  -- it, you know, jumped to mind that maybe that's an area
6  that would get ruled out of bounds.  But I can understand
7  that he's going to get asked about basic job, you know,
8  duties and authority and who he speaks for and that -- that
9  kind of thing.  That's relevant to both cases.
10      So, a meet and confer on what is clearly out of bounds,
11 but I'm not going to require Mr. Meckley or -- or Ms. Liss-
12 Riordan to reveal in advance exactly what they are going to
13 ask that is, you know, within bounds.  Okay.
14      For the documents, I am going to limit it, meaning what
15 gets produced in advance.  I think we should make this go
16 efficiently.  And, so, I think giving a little bit -- a
17 little bit of heads up on certain documents is appropriate
18 when I'm balancing the interests of both sides for the
19 potential of burden under Rule 45.  What I would do is,
20 first of all, documents that should be given in advance are
21 just documents that he -- he authored, that were CC'd to him
22 or that reflect presentations he gave to Twitter employees.
23 Okay.
24      And I know, Ms. Liss-Riordan, you didn't do an exact
25 count, but what you represented is if we're talking about

1  core Segal documents, it might be a couple hundred.  So, I'm
2  using that as a -- a rough estimate.  Okay.
3       Now, I don't know.  It may be even fewer than those
4  that fall into the category that I just said.  Now, it
5  doesn't mean that he cannot get asked about other documents.
6  Okay.  But, so, I'm not prohibiting other documents.  What
7  I'm doing is defining things that should be provided to him
8  48 hours in advance, okay.  So, it's -- that way that
9  enhances -- these are things he's already seen, you know.
10 It enhances the efficiency of the process without turning
11 into, you know -- I think, you know, there -- I'm balancing
12 that efficiency and the potential burden on Mr. Segal with
13 -- with the questioning party's rights to conduct the
14 deposition in the way that they want and to testy memory and
15 that kind of thing.  So, that's the ruling there.
16      Then, finally, with respect to use of the deposition
17 transcript, I think that's up to Judge Chesney.  So, you
18 know, the -- the way it works is there are sometimes
19 discovery disputes about discovery produced in other
20 matters, and it's not an automatic thing.  It's really going
21 to depend on whether it's relevant to the particular case.
22      So, there -- we're conflating a couple of things.  One
23 is whether discovery in another case is relevant to another
24 case.  And the other one is whether sworn testimony can be
25 used -- from -- you know, from another -- from another forum

can be used to -- at trial, for example.  And those are two different questions, but they're things that should be raised in Segal's own case.  So, if Segal has concerns about it, he can raise it.  We've already -- we've already talked about how the Twitter and Schobinger Plaintiffs and Mr. Segal have an agreement that the Segal deposition can be used, right, without a problem in all of Ms. Liss-Riordan's cases.

So, I'm not ruling that it can -- can be used in the case in front of Judge Chesney or cannot be used.  That's something that really should be taken up in the context of his own case.  Okay.  And whoever the discovery judge is there or Judge Chesney -- and, believe me, I'm not volunteering to be that judge, but whoever is going to be presiding over that question, you know, is the person who can make that ruling.  Okay.  But I don't think it's appropriate to decide it here because it's not at issue, and I'm not sure what the -- what the dispute -- if there'll be a dispute at all or what the parameters of that dispute are.  So, I'm -- that's the ruling there.

So, I hope everybody has clear instructions.  Are there any questions about my ruling?

MS. ARMBRUST:  Your Honor, only one question for Mr. Segal, no dispute with your order.  Only to ask could the ruling on the timing, instead of 48 hours, be two

1  business days?  The parties --
2           THE COURT:  No.
3           MS. ARMBRUST:  -- are trying to figure out --
4           THE COURT:  No.  Forty-eight hours -- I mean, I
5  thought about this, and I think 48 hours -- you know, let's
6  say it's on a Monday.  I mean, Mr. Segal has -- has a big
7  law firm helping him here.  And I -- so, you know, if it
8  happens that his -- his deposition's on a Monday and he gets
9  the documents on, you know, Saturday morning, you all -- he
10 will have to work it out with his lawyers to take a look at
11 those documents over the weekend.  I think, unfortunately,
12 that's how things go.  But, you know, perhaps the deposition
13 will be on a Wednesday and this won't be a problem.
14      I think the clearer way, so that there's no kind of
15 maneuvering around the dates is just a 48-hour rule, and
16 that gives adequate time and not ample time but just, you
17 know, enough time to get a -- a head start on some of the
18 documents that he already should be familiar with, although
19 he may not have seen it for a while, okay, but does not
20 limit what else he can be asked about with respect to
21 documents.
22          MS. ARMBRUST:  Thank you, your Honor.
23          THE COURT:  Okay.  Any other questions?
24          MR. MECKLEY:  Just to clarify on the -- the scope,
25 your Honor.  So, authored, received, CC'd on or reflect

1 presentations he gave?
2         THE COURT:  Correct.
3         MR. MECKLEY:  Okay.
4         THE COURT:  Okay.  All right.  We are concluded.
5 Thank you all.
6         MR. MECKLEY:  Sorry.  One other question, your
7 Honor.
8         THE COURT:  Yes.
9         MR. MECKLEY:  Are you going to be issuing a
10 written order?
11         THE COURT:  It's just going to be in my minute
12 order.
13         MR. MECKLEY:  Okay.
14         THE COURT:  So, you can order a copy of the
15 transcript.  We're recording it.  So, if for some reason you
16 need that or -- that -- that's there.  But my minute order
17 from today will lay out what I just stated, you know, the
18 particulars.  Okay?
19         MR. MECKLEY:  Okay.  Thank you.
20         THE COURT:  All right.  Great.  Thank you all.
21 We're concluded.
22         ALL:  Thank you, your Honor.
23      (Proceedings adjourned at 1:25 p.m.)
24
25

17

1              CERTIFICATE OF TRANSCRIBER

2

3     I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14                    *[signature]*

15

16           Echo Reporting, Inc., Transcriber

17               Friday, June 21, 2024

18

19

20

21

22

23

24

25