Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiff Mark Schobinger,
on behalf of himself and all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**MOTION FOR CLASS CERTIFICATION**<br><br>Date: October 3, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

I.   Introduction ........................................................................................................ 1

II.  Background ......................................................................................................... 2

III. Legal Standard ................................................................................................... 4

IV.  Argument ............................................................................................................ 5

    A.   The proposed classes satisfy Rule 23(a)'s prerequisites. ......................... 5

        1.   Numerosity ..................................................................................... 5

        2.   Commonality ................................................................................... 6

        3.   Typicality ........................................................................................ 7

        4.   Adequacy ......................................................................................... 9

    B.   The proposed class is maintainable under Rule 23(b)(3). ....................... 10

        1.   Common questions predominate over questions affecting individual class members. ..................................................................................... 11

        2.   A class action is the superior mechanism for addressing the employees' claims. ............................................................................................ 12

    C.   The presence of arbitration agreements among putative class members does not preclude certification. ......................................................................... 13

V.   Conclusion ........................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Anchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................... 11, 12

*Asmus v. Pacific Bell*,
  999 P.2d 71 (Cal. 2000) ........................................................................................ 4

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010), *modified*, 273 F.R.D. 562 (N.D. Cal. 2011). .............. 14

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020)................................................................ 6, 14

*Chun-Hoon v. McKee Foods Corp.*,
  2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) ........................................................ 11

*Cornet v. Twitter*,
  1:23-cv-00441 (D. Del.)........................................................................................ 4

*Cotter v. Lyft, Inc.*,
  2017 WL 1033527 (N.D. Cal. Mar. 16, 2017)........................................................ 9

*Foley v. Interactive Data Corp.*,
  765 P.2d 373 (Cal. 1988) ....................................................................................... 4

*Gonzales v. Hilton*,
  Case No. 4:14-cv-01523-JSW, Order re Plaintiffs' Motion for Class Certification (N.D.
  Cal. Jan. 3, 2022) ................................................................................................ 10

*Gutierrez v. Wells Fargo Bank, NA*,
  889 F.3d 1230 (11th Cir. 2018) .......................................................................... 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................ 8

*Harris v. Palm Springs Alpine Ests., Inc.*,
  329 F.2d 909 (9th Cir. 1964) ................................................................................ 5

*In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*,
  2016 WL 5508843 (D.N.J. Sept. 28, 2016) ......................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 1753784 (N.D. Cal. May 9, 2011)..................................................... 6, 15

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*,
    --- F.Supp.3d ---, 2023 WL 6453814 (C.D. Cal. Sept. 29, 2023) ..................................... 11

*Jackson v. Aliera Companies*,
    2020 WL 4787990 (W.D. Wash. Aug. 18, 2020) ............................................................. 15

*James v. Uber Techs.*,
    Case No. 3:19-cv-06462, Order re Plaintiffs' Motion for Class Certification (N.D. Cal.
    Jan. 26, 2021) ..................................................................................................................... 9

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) ............................................................................... 14

*John Ordono, v. Marriott International Inc.*,
    CGC-16-550454, Order Re Plaintiffs' Motion for Class Certification (Cal. Sup. Ct.
    Sept. 17, 2021) ................................................................................................................... 10

*Johnson v. City of Grants Pass*,
    72 F.4th 868 (9th Cir. 2023) ......................................................................................... 5, 6

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) ........................................................................................... 12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ......................................................................................... 12

*Ma v. Twitter*,
    Case No. 4:23-cv-3301 (N.D. Cal.) ...................................................................... 6, 13, 14

*Martin v. Tango's Restaurant, Inc.*,
    969 F.2d 1319 (1st Cir. 1992) .......................................................................................... 13

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................................. 5

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
    2015 WL 5138097 (N.D. Cal. Sept. 1, 2015), *rev'd and remanded on other grounds*,
    904 F.3d 1087 (9th Cir. 2018) ........................................................................................... 9

*Overka v. American Airlines, Inc.*,
    265 F.R.D. 14 (D. Mass. 2010) ........................................................................................ 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................................................. 8

*Perez v. Safety-Kleen Systems,Inc.*,
    253 F.R.D. 508 (N.D. Cal. 2008)......................................................... 13

*Roman v. Jan-Pro Fran. Int'l., Inc.*,
    342 F.R.D. 274 (N.D. Cal. 2022)......................................................... 10

*Rushing v. Williams-Sonoma, Inc.*,
    2020 WL 6787135 (N.D. Cal. Oct. 8, 2020)................................... 6, 14

*Saleh v. Titan Corp.*,
    353 F. Supp. 2d 1087 (S.D. Cal. 2004)................................................ 15

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D.Cal.1985) ............................................................ 8

*Scott v. Pacific Gas & Electric Co.*,
    904 P.2d 834 (Cal. 1995) ...................................................................... 4

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
    323 F.3d 32 (1st Cir. 2003) ................................................................. 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................ 7, 9

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................ 4

*Villalpando v. Exel Direct Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014) ....................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................... 6, 8

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ................................................................ 6

**Other Authorities**

Diana Kapp,"Uber's Worst Nightmare," SAN FRANCISCO MAGAZINE (May 18, 2016)............... 10

Katie Johnson,"Lawyer Fights for Low Wage Workers' Rights," BOSTON GLOBE (Dec. 23, 2012) ......................................................................................................... 10

Liane Jackson,"America's Top 200 Lawyers," FORBES (March 26, 2024).................................. 10

Michael Rafalowich,"Benchmark US 2020 awards" BENCHMARK LITIGATION (Feb. 27, 2020). 10

1

**<u>Rules</u>**

2

Fed. R. Civ. P. 23 ................................................................................................................. passim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I. INTRODUCTION

Plaintiff Mark Schobinger filed this class action against Defendants Twitter, Inc. and X Corp. (collectively "Twitter"), challenging Twitter's refusal to pay employees their 2022 annual bonus.  (Am. Compl. ¶ 1, ECF No. 43).  Specifically, in the months leading up to Elon Musk's acquisition of Twitter in October 2022, the Company's executives, including then-Chief Executive Officer Parag Agrawal repeatedly promised Plaintiff and the company's other employees that employee benefits, including bonus opportunities, would remain the same for at least one year after the close of the acquisition. This promise was also memorialized in the Acquisition Frequently Asked Questions (FAQs) that were circulated to all employees. Further, in August 2022, Ned Segal, then-Chief Financial Officer, told employees that their 2022 annual bonus would be paid at fifty percent (50%) of their target, which was the floor for the plan. Other documentation that Plaintiff has obtained in discovery supports his contention that the company planned – and communicated to employees - that it would pay out the bonus at 50% of target.  Nonetheless, despite these promises, after Musk's acquisition of the company, Twitter refused to pay any bonus to employees who remained employed by the Company in the first quarter of 2023.

Plaintiff seeks damages for breach of contract and promissory estoppel, on behalf of himself and other similarly situated employees (i.e. those still employed by the company at the time bonuses should have been paid, in the first quarter of 2023).  These claims raise common questions of whether Twitter did make the promise that Plaintiff alleges regarding the payment of the bonus, whether such a promise (if made, as Plaintiff contends) constitutes an enforceable contract, and whether (for the promissory estoppel claim) it would have been reasonable for employees to have relied on such a promise (regardless of whether it was an enforceable contract).  Twitter (now X) will no doubt claim that Mr. Musk was free to make the decision as

- 1 -

to whether or not to pay out the bonus.  But that question would also be a common one for the whole class.  The answers to each of these questions will predominate over any potential individual issues. As such, class certification should be granted under Fed. R. Civ. P. 23(b)(3).

## II.   BACKGROUND

Mark Schobinger is the former Senior Director of Compensation for Twitter. (Dkt. 47, Ans. ¶ 6.) He was employed by Twitter from February 11, 2019, until he resigned on May 26, 2023. (*Id*.; Am. Compl. ¶ 6, Dkt. 43.)  As part of his annual compensation, Mr. Schobinger, like virtually all non-sales employees, was eligible to receive an annual bonus under the Company Performance Bonus Plan. (Ex. 1 - Schobinger Offer Letter.)

In late April 2022, it was announced that Elon Musk was purchasing Twitter. (Ex. 2 Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 465-66.) In the months leading up to the acquisition deal closing, Twitter repeatedly promised its employees, including Plaintiff, that for one year following the closing date, the Company would provide employees who continued to be employed by the Company with "short- and long-term incentive compensation opportunities that are no less favorable in the aggregate than those existing than existing compensation opportunities."  (Ex. 3 - Acquisition FAQs at TWITTER_ARB_0000002074.) This promise was made to employees by the highest-level executives of the Company during company-wide meetings. For example, on April 25, 2022, Parag Agrawal, Twitter's then-current Chief Executive Officer, advised employees that bonus opportunities would remain the same for at least one year after the deal closed. (Ex. 2 - Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 467 (transcription of video of All Hands Meeting dated 4/25/2022.)) Moreover, the promise was also made to all employees, including Plaintiff, in writing, through a document entitled

Acquisition Frequently Asked Questions ("FAQ") that was widely distributed via the Company's email and Slack, as well as orally by multiple levels of Twitter's management. (Ex. 3 - Acquisition FAQs at TWITTER_ARB_0000002074; Ex. 2 - Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 617, 628 (Conti Testimony); Ex. 2 Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 197-98 (Hayes Testimony).) The Acquisition FAQ was considered by Twitter's management to be a "source of truth," and was circulated to the employees with the purpose of providing the Company's answers to employee questions in the midst of all the rumors that were flying around and chaos leading up to Musk's closing on his purchase of the company. (Ex. 2 - Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 197-98 (Hayes Testimony); Ex. 2. Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 617, 628 (Conti Testimony).)  Twitter made these promises, including the promise of wages and benefits staying the same for a year, in order to ensure that employees did not leave the Company before the deal closed, since the prior management was obligated to keep the business operating as usual (Ex. 4 - Merger Agreement at ¶ 6.1, TWITTER_ARB_000002128; Ex. 5 - Musk Dep. at 241-42; Ex. 2 -  Conti Testimony at 623).

Twitter's Board of Directors approved the 2022 Performance Bonus Plan in January 2022. (Ex. 6 - Edgett Email dated 7/14/2022.) In July 2022, the Compensation Committee determined that the bonus pool for the year would accrue at fifty percent (50%), which was the plan's floor. *Id.* A few weeks later, on August 19, 2022, Twitter's Chief Financial Officer, Ned

Segal, informed all employees that bonuses would be paid out at fifty percent (50%) of target for the year. (Ex. 7 - Segal Email dated 8/19/2022.)[1]

On October 27, 2022, the deal for Mr. Musk to acquire Twitter closed. (Ex. 8 - Schobinger Dep. at 88.) Yet, despite the promises made by Twitter's management prior to the deal closing that employees who continued to be employed by the Company would receive their same bonus for at least one year, Twitter refused to pay employees including Mr. Schobinger, their bonus for 2022. (Ex. 3 - Acquisition FAQs at TWITTER_ARB_000002072; Ex. 9 - Email Exchange Between Cheung and Birchall re PBP, X-SCHOBINGER_000000093.)

Mr. Schobinger and the putative class members held up their end of the deal by not leaving their employment with Twitter in 2022.  However, Twitter did not hold up its end of the deal when it refused to pay them their 2022 bonuses.[2]

### III. LEGAL STANDARD

Rule 23 provides two steps for certifying a class action. Fed. R. Civ. P. 23. First, the plaintiff must establish the four prerequisites of Rule 23(a). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Courts refer to these prerequisites as "numerosity,

---

[1]    This promise applied to employees whose employment continued with Twitter.  Many employees were laid off in the wake of Musk's acquisition of the company and have brought claims for severance pay that they were promised. *See, e.g., Cornet v. Twitter* 1:23-cv-00441 (D. Del.) (as well as thousands of individual arbitrations that Plaintiffs' counsel are pursuing for laid off employees).  Twitter's severance policy provided that laid off employees would receive 100% of their pro-rated target bonus for the year.  (Ex. 10 - Severance Matrix.)

[2]    The California Supreme Court recognizes that promises by an employer to an employee (such as the one for bonus benefits made by Twitter to its employees) constitute an enforceable contract, even if no additional consideration is provided by the employer other than their continued employment. *See Asmus v. Pacific Bell*, 999 P.2d 71, 75 (Cal. 2000); *Scott v. Pacific Gas & Electric Co.*, 904 P.2d 834, 838-39 (Cal. 1995); *Foley v. Interactive Data Corp.*, 765 P.2d 373, 385-87 (Cal. 1988). Thus, by failing to pay the employees their 2022 bonuses, Twitter breached the parties' contract.

commonality, typicality and adequacy of representation." *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Next, the plaintiff must show that the proposed class is proper under Rule 23(b). *Johnson v. City of Grants Pass*, 72 F.4th 868, 885 (9th Cir. 2023). Rule 23(b)(3) allows class treatment when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## IV. ARGUMENT

Plaintiff seeks to represent "all individuals who were employed by Twitter in the first quarter of 2023 but were not paid their annual bonus for 2022." (Dkt. 43, Am. Compl. ¶ 7). Plaintiff's proposed class satisfies Rule 23(a)'s prerequisites and is proper under Rule 23(b)(3).

### A.  The proposed classes satisfy Rule 23(a)'s prerequisites.

#### 1.  *Numerosity*

To satisfy the numerosity requirement, a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "There is no specific number of class members required." *Johnson*, 72 F.4th at 885. "However, proposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large." *Id.*

Here, Twitter actively employed thousands of employees through the first quarter of 2023. Specifically, as of March 3, 2023, Twitter's active headcount was 2,193 employees (Ex. 11 - Workday Dashboard Report dated 3/3/2023.)  On May 14, 2023, Twitter's headcount was approximately 1,500 employees.  (Ex. 12 - Email from Batura to E. Musk dated 5/14/2023.)

1  Each of these employees were told prior to the merger closing that they would receive a bonus

2  at fifty percent (50%) of their target if they remained employed by the Company through the

3  first quarter of 2023. (Ex. 7 - Segal Email dated 8/19/2022; Ex. 3 - Acquisition FAQs at

4  TWITTER_ARB_000002074.) Yet none of these employees were paid their 2022 bonuses

5  from Twitter. (Dkt. 47, Ans. ¶ 4. *See* Ex. 5 - E. Musk Dep. at 207-10.) Thus, Plaintiff's

6  proposed class is numerous enough under Rule 23(a).[3]

7

8      ### 2.  *Commonality*

9      "A class satisfies Rule 23's commonality requirement if there is at least one question of

10  fact or law common to the class." *Johnson*, 72 F.4th at 887 (citing *Wang v. Chinese Daily*

11  *News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)). In assessing commonality, courts ask whether

12  the putative class claims "depend upon a common contention—for example, the assertion of

13  discriminatory bias on the part of the same supervisor." *Wal-Mart Stores, Inc. v. Dukes*, 564

14  U.S. 338, 350 (2011). "That common contention, moreover, must be of such a nature . . . that

15  determination of its truth or falsity will resolve an issue that is central to the validity of each

16  one of the claims in one stroke." *Id.*

17      Here, Twitter promised Plaintiff and each putative class member that, for at least one

18  year following Mr. Musk's acquisition of the Company, if they continued to be employed by

19

20

21

22  _____

23  [3]      Twitter may argue that some portion of these employees signed arbitration agreements.
   However, as discussed below, courts consider issues such as the enforceability of releases and
24  arbitration agreements *after* a class is certified, at which time those employees would be before
   the Court.  *E.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y.
25  2020) (collecting cases); *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135, at *2–3 (N.D.
   Cal. Oct. 8, 2020); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D.
26  Cal. May 9, 2011)   Indeed, given that Twitter is refusing to proceed with hundreds of
   arbitrations that have been filed against it in the wake of Musk's acquisition of the company,
27  *see Ma v. Twitter*, Case No. 4:23-cv-3301 (N.D. Cal.), it is possible that Twitter has waived its
   ability to compel arbitration.  That is an issue the Court could address, should Twitter move to
28  compel arbitration for certain class members, after a class is certified.

the Company, their benefits including short-term target incentive compensation (i.e., annual bonuses) would remain the same. (Ex. 3 - Acquisition FAQs at TWITTER_ARB_000002074; Ex 2 - Transcript of Arbitration Proceedings, *Niemack v. Twitter*, JAMS Ref. No. 1601002285 at 467 (transcription of video of All Hands Meeting dated 4/25/2022)) Employees were also advised in August 2022 that bonuses would be paid at fifty percent (50%) target. (Ex. 7 - Segal Email dated 8/19/2022. *See* Ex. 8 Schobinger Dep. at 88-90, 93-94.)  The common contention is that Twitter was contractually obligated to pay a performance bonus to employees based upon these promises, and the employees' continued employment through Q1 2023.  This shared contention turns on a question of law common to the class: Are the oral and written statements from Twitter's management an enforceable contract? Alternatively, were these oral and written statements definitive for purposes of establishing promissory estoppel. How the Court answers these questions will determine the rights of all putative class members.

Additionally, Twitter argues that it had the absolute discretion under the terms of the Company's 2022 Performance Bonus Plan to not pay employees an annual bonus. (Dkt. 47, Ans. ¶ 4.) While Plaintiff disagrees with Twitter's position (given that he is not relying on the terms of the Bonus Plan itself), this issue too presents common legal question applicable to all putative class members. Namely, do the terms of the 2022 Performance Bonus Plan allow Twitter the discretion to not pay an annual bonus (despite having made promises to employees that it would be pay out the bonus)? Thus, Rule 23(a)'s commonality requirement is satisfied.

### 3. *Typicality*

Typicality asks whether "the claims or defenses of the representative parties are typical" of the class as a whole. Fed. R. Civ. P. 23 (a)(3). Typicality is a "permissive standard[ ]." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted). Courts consider

whether class members have the "same or [a] similar injury" caused by "the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "Thus, typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (cleaned up).

As the Supreme Court recognized in *Wal-Mart*, Rule 23(a)'s commonality and typicality requirements "tend to merge." 564 U.S. at 350 n.5. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Plaintiff and the putative class members suffered the same injury—unpaid bonuses—resulting from the same course of conduct—Twitter's refusal to pay 2022 annual bonuses to employees who remained employed by the Company through Q1 2023. Thus, the proposed class meets Rule 23(a)'s typicality standard. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'").[4]

---

[4]     Twitter may claim that Plaintiff is not typical of the class because he was a high-level employee – indeed, the Director of Compensation – and that he himself expressed that the bonus may not be paid out.  This point is not relevant to Plaintiff's typicality, since he, like all employees who were remaining at the company in Q1 of 2023, did not receive his promised bonus.  It was not his decision whether or not the bonus would be paid; that final decision was made by Elon Musk.  Whether or not the bonus was *required* to be paid under the terms of the Bonus Plan, again, is a different question from the one raised here – whether the company was legally obligated to pay the bonus, given the promises it made to employees that the bonus would be paid.

### 4.  *Adequacy*

Adequacy of representation is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 954.

First, there is no potential conflict between the named Plaintiff and the other class members since he is challenging an occurrence applied uniformly to all class members, including himself (namely, the non-payment of the 2022 bonus). As set forth above in the typicality section, the named Plaintiff's interests are in alignment with those of each class member, in that he seeks to benefit the proposed class by pursuing their rights to payment of their 2022 annual bonus.

Plaintiff has also retained counsel with extensive expertise and experience in prosecuting both class actions and mass arbitrations on behalf of employees. In fact, this Court — like other courts across the nation — has previously appointed Plaintiff's counsel, Shannon Liss-Riordan, as class counsel while extolling her qualifications to serve in such a position. *See, e.g.*, *Cotter v. Lyft, Inc.*, 2017 WL 1033527, at *3 (N.D. Cal. Mar. 16, 2017) (Chhabria, J.); *O'Connor v. Uber Techs., Inc.*, 2015 WL 5138097, at *36 (N.D. Cal. Sept. 1, 2015), *rev'd and remanded on other grounds,* 904 F.3d 1087 (9th Cir. 2018) ("Uber does not even argue that Ms. Liss-Riordan is unqualified to represent these Plaintiffs, and any such argument would be without merit. The Court knows Ms. Liss-Riordan to be a capable advocate, and further notes that she is a leading practitioner in the field of employment [law] both in this District and nationwide….."); *James v. Uber Techs.*, Case No. 3:19-cv-06462, Order re Plaintiffs' Motion for Class Certification (N.D. Cal. Jan. 26, 2021); *Roman v. Jan-Pro Fran. Int'l., Inc.*, 342

- 9 -

F.R.D. 274, 290 (N.D. Cal. 2022) (similarly appointing Liss-Riordan and her firm as Class

Counsel) (summary judgment granted in favor of certified class, in case that plaintiffs prevailed

on in Ninth Circuit and California Supreme Court); *Gonzales v. Hilton*, Case No. 4:14-cv-

01523-JSW, Order re Plaintiffs' Motion for Class Certification (N.D. Cal. Jan. 3, 2022)

(certifying class and appointing Plaintiff's counsel as Class Counsel in a case whose dismissal

was successfully reversed at the Ninth Circuit); *John Ordono, v. Marriott International Inc.*,

CGC-16-550454, Order Re Plaintiffs' Motion for Class Certification (Cal. Sup. Ct. Sept. 17,

2021) (similarly appointing Liss-Riordan and her firm as Class Counsel) (resulting in verdict

for certified class following 2023 trial). Moreover, her firm, Lichten & Liss-Riordan, P.C. has

been widely recognized as one of the leading plaintiffs' firms representing workers, and

Attorney Liss-Riordan has been recognized as one of the top plaintiffs' lawyers nationally for

her work on behalf of workers in class actions.[5] Thus, Plaintiff and his counsel have satisfied

the requirements of Rule 23(a)(4).

    **B.**    **The proposed class is maintainable under Rule 23(b)(3).**

    Two conditions must be met to maintain a class under Rule 23(b)(3). First, "questions

of law or fact common to class members [must] predominate over any questions affecting only

individual members." Fed. R. Civ. P. 23 (b)(3). Second, "a class action [must be] superior to

other available methods for fairly and efficiently adjudicating the controversy. *Id.*

---

[5]    *See, e.g.*, Liane Jackson, "America's Top 200 Lawyers," FORBES (March 26, 2024)
(listing Shannon Liss-Riordan as one of the top 200 attorneys in the United States) (attached as
Ex. 13); Michael Rafalowich, "Benchmark US 2020 awards" BENCHMARK LITIGATION (Feb.
27, 2020) (naming Shannon Liss-Riordan "Labor & Employment Employee-Side Attorney of
the Year") (attached as Ex. 14); Diana Kapp, "Uber's Worst Nightmare," SAN FRANCISCO
MAGAZINE (May 18, 2016) (attached as Ex. 15); Katie Johnson, "Lawyer Fights for Low Wage
Workers' Rights," BOSTON GLOBE (Dec. 23, 2012) (attached as Ex 16).

MOTION FOR CLASS CERTIFICATION
Case No. 3:23-cv-03007-VC

1

2

### 1.    *Common questions predominate over questions affecting individual class members.*

3

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

4

warrant adjudication by representation." *Anchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623

5

(1997). The requirement is "merely that common issues predominate, not that all issues be

6

common to the class." *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st

7

Cir. 2003).  "Because no precise test can determine whether common issues predominate, the

8

court must pragmatically assess the entire action and the issues involved." *Chun-Hoon v.*

9

*McKee Foods Corp.*, 2006 WL 3093764, *2 (N.D. Cal. Oct. 31, 2006).  "A court evaluating

10

predominance must determine whether the elements necessary to establish liability are

11

susceptible to common proof or, if not, whether there are ways to manage effectively proof of

12

any element that may require individualized evidence." *Villalpando v. Exel Direct Inc.*, 303

13

F.R.D. 588, 608 (N.D. Cal. 2014).  "When common questions present a significant aspect of

14

the case and they can be resolved for all members of the class in a single adjudication, there is

15

clear justification for handling the dispute on a representative rather than on an individual

16

basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted); *see*

17

*also In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*, --- F.Supp.3d ---,

18

2023 WL 6453814 (C.D. Cal. Sept. 29, 2023) (certifying class of implied contract claims

19

because students had received same promise of in-person education, albeit from different

20

sources).

21

Here, common questions of law and fact will predominate. Specifically, the case will

22

focus on: (1) whether the oral and written statements by Twitter's management constitute a

23

binding contract (or alternatively a definitive promise for promissory estoppel) is a common

24

question central to every class member's claim; and (2) whether Twitter's decision not to pay

25

26

27

28

2022 annual bonuses may be justified based on the discretion under the 2022 Performance Bonus Plan. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (finding plaintiffs met predominance in part because all class members share a common interest in whether wage payments were timely made). As such, common issues predominate on Plaintiff's claims, and class treatment is appropriate.

### 2.     *A class action is the superior mechanism for addressing the employees' claims.*

The superiority requirement is designed to ensure the "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" *Anchem Prods.*, 512 U.S. at 617.  A district court has "broad discretion" in determining whether class treatment is superior.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).  The following factors are pertinent to this analysis:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23 (b)(3).  Here, a class action is clearly a superior method. It would be grossly inefficient to require each employee to bring a case challenging their failure to receive their 2022 bonus individually, resulting in increased expense, duplication of discovery, and potential for inconsistent results.  Even if damage issues require individualized assessments, the efficiencies gained by use of a class action for common questions will ultimately benefit all of the class members, and Defendants, by dramatically reducing litigation expenses.  Moreover, the fact that individual employees might not vindicate their statutory rights would undermine the effectiveness of those rights, which protect workers and ensure fair competition. *See Martin*

*v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1324 (1st Cir. 1992) (recognizing that employment laws are "intended to protect complying competitors of the defendants, in addition to making the employee whole").

Moreover, "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis." *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010).  Indeed, numerous courts have held that class actions are superior in employment cases because of the prospect of retaliation. *See e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).  Here, given Mr. Musk's penchant for attacking employees on social media (*see e.g.,* Ex. 5 - E. Musk Dep. at 323-325), retaliation is a real concern. Permitting Plaintiff to prosecute his claims on behalf of the proposed class meets these challenges and provides a superior method of resolving the claims of the putative class members.

### C.   The presence of arbitration agreements among putative class members does not preclude certification.

Twitter may argue that putative class members' agreement to arbitrate their claims precludes certification. To this end, Twitter may cite the Arbitration Agreements that many (but not all) employees sign as part of their onboarding.[6]

To that end, this Court has recognized that the existence of arbitration agreements among putative class members does not defeat typicality if the class representative is not

---

[6]     A sample Arbitration Agreement is available at ECF No. 1-1 in *Ma v. Twitter, Inc., et al.*, Case No. 3:23-cv-03301 (N.D. Cal.).  Notably, Plaintiff's counsel filed a petition to compel arbitration in the *Ma* case, since Twitter has failed to participate in most of the 2,000 arbitrations that Plaintiff's counsel have filed against it on behalf of former employees.  Given Twitter's failure to participate in arbitration for so many employees, there is a real question as to whether it has waived its right to compel arbitration – an issue that could be addressed following class certification, should Twitter move to compel arbitration for class members (after they have become part of the case, through class certification).

subject to arbitration. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016) (citing other precedent). "More generally, defenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative do not render a class representative atypical under Rule 23." *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010), *modified*, 273 F.R.D. 562 (N.D. Cal. 2011).

Moreover, under the caselaw, courts are to consider class certification prior to considering whether to compel arbitration of class members who may be bound by arbitration agreements.[7] Those class members are not even formally before the Court at this time, and so considering the arbitration agreements at this time would be premature. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y. 2020) (collecting cases); *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135, at *2–3 (N.D. Cal. Oct. 8, 2020) ("[The defendant] could not move to arbitrate claims against [the plaintiff] or against unnamed class members before class certification. Accordingly, it did not have an existing right to compel arbitration and could not have acted inconsistently with that right."); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This [c]ourt will not compel absent putative class members who are not before this [c]ourt to binding arbitration or issue a ruling regarding the enforceability of the provision. Any such ruling is procedurally improper and analogous to an advisory opinion."); *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th

---

[7] Indeed, in the *Ma* case, where *Plaintiffs* moved to compel arbitration, given Twitter's refusal to participate in arbitration with many employees, despite having itself moved to compel arbitration in multiple cases where Twitter employees brought claims against it in court, the District Court refused to address Plaintiffs' petition to compel arbitration until *after* it had addressed class certification. *Ma v. Twitter, Inc.*, Case No. 4:23-cv-03301-JST, slip op. at 4-7 (N.D. Cal. Apr. 22, 2024).

Cir. 2018) ("[I]t cannot be said that [the defendant's] failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the [d]istrict [c]ourt to rule on those motions before the class was certified."); *Jackson v. Aliera Companies*, 2020 WL 4787990, at *4 (W.D. Wash. Aug. 18, 2020) ("[D]istrict courts within this [c]ircuit have determined that a party cannot move to compel putative class members to arbitration prior to class certification because putative class members are not parties to the action." (collecting cases)); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, 2016 WL 5508843, at *2 (D.N.J. Sept. 28, 2016) ("The issue should be addressed when all parties to the lawsuit are known and the specific arbitration agreements that [the] [d]efendant wishes to enforce can be identified. It is not appropriate for the [c]ourt to exclude potential class members from this class action and deprive those individuals of their day in court prior to their being made a party in this case."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("It does not appear to the [c]ourt that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification.' " (quoting *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004)).

## V. CONCLUSION

For the foregoing reasons, the Court should certify a class under Fed. R. Civ. 23(b)(3) that includes all individuals who were employed by Twitter in the first quarter of 2023 but were not paid their annual bonus for 2022.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

MARK SCHOBINGER, on behalf of himself and all others similarly situated,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
sliss@llrlaw.com
Bradley Manewith (*pro hac vice*)
bmanewith@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

Dated:  August 23, 2024

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on August 23, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan