# Exhibit 26

**The Boston Globe**

# Business

# Lawyer fights for low-wage workers' rights

## Shannon Liss-Riordan has built her reputation representing those who say they were wronged

By **Katie Johnston** | GLOBE STAFF   DECEMBER 23, 2012



SUZANNE KREITER/GLOBE STAFF

**Harvard educated Shannon Liss-Riordan had wanted to be a civil rights attorney.**

Strippers denied wages and tips. Pizza makers swindled out of overtime pay. Cleaning ladies, taxi drivers, and truckers forced to pay franchise fees while being treated like hourly employees.

From a 20th-floor office with sweeping views of Beacon Hill, Shannon Liss-Riordan and

her team of lawyers have represented them all. In the three and a half years since Lichten & Liss-Riordan opened its doors, the law firm has won tens of millions of dollars for low-wage workers, often immigrants, who claim to have been wronged by their employers.

In the process, Liss-Riordan has won admiration as a champion of blue-collar workers and a reputation as a tough litigator putting entire industries on notice for breaking wage and hour laws. She is also seen by critics as a media-hungry attorney who uses obscure laws to scare companies away from Massachusetts — and reaps millions of dollars while her low-wage clients collect a few thousand apiece.

Liss-Riordan says she and her firm are doing important work, giving employees the ability to fight back against huge companies that are mistreating their workers in order to save money.

"There are just so many ways that employers take advantage of low-wage workers," she said. "Especially among immigrant workers, they think they're not going to step up and challenge abuses. They think they can take advantage of them because they don't speak English. And it has a depressing effect on the whole labor force."

Liss-Riordan, 43, had planned to be a civil rights attorney until she found her calling in employment litigation. The Harvard-educated lawyer and her partner, Harold Lichten, focus on class-action lawsuits involving independent contractor and tips violations. The firm's nine lawyers have represented thousands of clients, who include waiters, FedEx drivers, cable installers, call center employees, skycaps, and janitors.

Among their biggest victories: a $14 million judgment against Starbucks Corp. for violating a Massachusetts law that prevents supervisors from sharing in baristas' tips.

## The docket

A sample of employment lawsuits filed by Lichten & Liss-Riordan.

### 2006

**AMERICAN AIRLINES**

**Complaint** Airline's $2 charge per bag for curbside check-in, which passengers mistook for skycap tips.
**Outcome** A $325,000 award to nine skycaps was reversed by federal appeals court; a national class action is pending.

### 2007

**COVERALL NORTH AMERICA INC.**

**Complaint** Misclassifying janitorial

Liss-Riordan is the legal force behind more than 100 Upper Crust workers, mostly Brazilian immigrants, who allege the now-bankrupt Boston pizza chain cheated them out of overtime pay.

She is also the lawyer who persuaded a federal judge in Boston to rule that Coverall North America Inc. owed $3 million for illegally collecting franchise fees from 100 cleaning workers. Suits are pending against a half-dozen major cleaning companies nationally.

Workers believe having Liss-Riordan on their side gives them the power to fight back.

"We can go up against a corporation and get our voice heard," said Gerardo Vazquez, one of the lead plaintiffs in a federal class-action lawsuit against the cleaning company Jan-Pro Franchising International Inc.

Vazquez alleges that Jan-Pro charged him $10,000 to buy a franchise, but controlled his accounts and didn't give him enough work to make a living.

Jeffrey Rosin, a Boston lawyer representing Jan-Pro, said Vazquez has no case because he bought his franchise from a California firm that holds regional rights to use the Jan-Pro name but is independent from Jan-Pro Franchising International.

workers as independent contractors, requiring them to pay franchise fees and insurance, and unfair and deceptive business practices.
**Outcome** Damages of $3 million awarded to 100 workers; Coverall appealing. About 100 additional individual arbitration cases pending.

### KING ARTHUR'S LOUNGE
**Complaint** Misclassifying exotic dancers as independent contractors, requiring them to pay shift fees out of tips and tip out other employees.
**Outcome** Court ruled in favor of plaintiffs, confidential settlement reached for about 80 workers.

### 2008

### STARBUCKS CORP.
**Complaint** Inclusion of shift supervisors in tip pool with baristas.
**Outcome** Federal court awarded $14 million to 11,000 baristas, final judgement could grow to $20 million. Identical case pending in New York.

### 2008-2012

### FOUR SEASONS and other hotels in Hawaii; DUNKIN' DONUTS FRANCHISEES; HARVARD UNIVERSITY
**Complaint** Not allowing waitstaff to keep all tips, or not distributing service charges to the waitstaff.
**Outcome** Cases pending. Won and settled dozens of similar cases, including $4 million settlement with Harvard Club.

"The facts are being twisted and convoluted to sway public and legislative opinion," Rosin said. "It's not an appropriate case to say that [Liss-Riordan is] vindicating the rights of workers because, from Massachusetts to California, Jan-Pro franchisees are testifying they are running independent, profitable businesses."

The International Franchise Association said these lawsuits are hurting the state's economy. Each new franchise that opens creates an average of 40 jobs, said Dean Heyl, director of state government relations for the association, but businesses have become reluctant to bring those opportunities here.

"This litigation has definitely had a chilling effect on franchises entering Massachusetts," Heyl said.

Class-action lawsuits make up the majority of Lichten & Liss-Riordan's caseload. Class actions are key to making companies obey wage and hour laws, Liss-Riordan said, because the cost of legal awards in cases brought by individual workers rarely affects the bottom line. Multiply that by 1,000, though, and executives start paying attention, she said.

The ability to file class actions has come under fire following a recent US Supreme Court decision that makes it easier for employers to insist on worker arbitration agreements.

**2010**

**UPPER CRUST**
**Complaint** Extorting back-wage payments from workers ordered by the Department of Labor.
**Outcome** Class action certified, scheduled for trial in August. Also pursuing claims in bankruptcy proceeding and against owners.

**SYSTEM4 COMMERCIAL CLEANING and ROBERT HALF**
**Complaint** Attempts to use arbitration agreements to prevent class actions.
**Outcome** Lower courts have ruled for workers; appeals by companies pending.

**2012**

**SEVERAL LARGE BOSTON CAB COMPANIES, THEIR OWNERS, and CITY OF BOSTON**
**Complaint** Misclassifying taxi drivers as independent contractors, requiring them to pay shift fees and expenses.
**Outcome** Case in progress, no trial date set.

> 'There are just so many ways that employers take advantage of low-wage workers.'

Arbitration takes place out of the public scrutiny of courts, with confidential results, so a favorable outcome for one worker can't be used to help another. Cases may have to be filed individually and the worker could be required to share in the legal costs.

Liss-Riordan recently argued against this "privatization of justice" before the state Supreme Judicial Court. She told the justices her client should be allowed to bring a class-action suit against System4 Commercial Cleaning, regardless of the company's arbitration-only agreement.

If the SJC rules in her favor, it could set a precedent for other states to find limitations in the Supreme Court decision. But a loss would reinforce the federal ruling, a major setback for practices like hers.

Already, a 2004 Coverall arbitration agreement has kept a group of workers from being a part of her class-action case. In response, her firm filed 100 individual arbitration claims, and forced the company to foot the bill.

Preserving the ability to file class-action lawsuits is vital, said Michael Harper, a Boston University law school professor, because workers need high-powered lawyers to take on big companies, and lawyers need a big group of plaintiffs to make it worth their while.

"The little people don't often have claims that without a class action would be worth pursuing," Harper said.

Indeed, Liss-Riordan's firm gets a third of the money its clients are awarded.

Nicholas Carter, a Boston attorney who has argued several tips cases against Liss-Riordan, said her firm is taking advantage of a restrictive state law that doesn't allow even a low-paid fast food shift manager to share money left in the tip jar.

"The plaintiff's bar is chasing the money and is not protecting the rights of the employees," Carter said.

The lawyers at Lichten & Liss-Riordan get paid only when they win. A $325,000 ruling — and five years of work — on behalf of American Airlines skycaps who claimed they were cheated out of tips was wiped out on appeal. The firm has yet to see a dime of the $3 million judgment against Coverall because it's tied up in appeals.

Liss-Riordan likes to get creative to help the workers she represents.

Last week at an auction selling off 10 Upper Crust locations, she and a co-investor bought the restaurant lease and equipment in Harvard Square. She plans to give employees ownership shares in the restaurant, and is considering naming it The Just Crust.

She also dreams of starting a worker-owned cleaning firm.

"It excites me to try to put the pieces of the puzzle together to create new ways to support workers and give them a leg up in the tug of war between workers and corporations," she said.

Liss-Riordan is not shy about seeking out media coverage, which alerts other workers about their rights — and attracts new clients. But press coverage can complicate a case, some lawyers say, prompting companies to fight harder and lobby politicians to change the law in their favor.

The way Liss-Riordan sees it, the more awareness the better. Her firm has cases pending in 10 states — a number of which cover workers nationally — and she frequently hears from lawyers around the country. A California attorney who contacted her for advice on tips cases, for instance, went on to win a $100 million judgment against Starbucks in 2008.

As these cases spread, Liss-Riordan hopes unscrupulous companies will change their ways, and that workers who fought back will pave the way for others to be treated fairly.

"For years, many employers have operated their businesses thinking they held the entire deck of cards," said Philip Gordon, president of the Massachusetts Employment Lawyers Association.

"Thanks to lawyers like Shannon, many of those employers are straightening out their act, and many employees who have suffered years of pay theft are finally getting their due.

"Talk about a legacy," he said.

*Katie Johnston can be reached at [kjohnston@globe.com](kjohnston@globe.com).*