# EXHIBIT 16

**CONFIDENTIAL**

**Subject:** FY22 PBP

**DACIN**
- **(D)river:** Mark Schobinger
- **(A)pprover:** Lindsay Chapman, Elon Musk
- **(C)onsulted:** Mason Eves, Brian Kirrene, Braden Amundsen, Taylor Horton, Lauren Wegman, Yabre Kompaore, Nikki Sommer
- **(I)nformed:** TBD

## Overview

Twitter has a discretionary incentive performance bonus plan ("PBP") that rewards employees with achieving short-term (1-year) operational goals. The plan is a two-step process - funding followed by allocation.

The PBP funding model has a floor of 50% and a ceiling of 200%[1]. Consistent with prior years, FY22's goals consisted of top- and bottom-line financial measures, Revenue and EBITDA, respectively, the goal of which was to drive profitable growth. Notwithstanding the foregoing, solely in the event of unforeseen and extraordinary circumstances, discretion can be exercised to determine a PBP pool amount based on an alternative formula and/or elect not to fund any PBP pool for the plan year.

Once a PBP pool is funded, the pool is then allocated by managers who use discretion to determine individual bonuses based on the eligible employee's target percentage and the manager's assessment of the eligible employee's individual performance and overall contribution to the team and the company's goals.

Consistent with the inception of the PBP plan, the allocation phase is based on a 50/50 model where 50% of an individual's bonus is based on the results of the corporate measures (the same measures used to fund the pool) and 50% of the bonus is based on the employee's individual performance. Regardless, an individual's PBP payout amount is capped at 200% of their individual target bonus[2].

---

[1] Refer to "Funding the PBP" located in the appendix
[2] Refer to "Allocating the PBP" located in the appendix



1

### Issue

We expect actuals to be substantially less than the low end of the payout curve. Per plan design, the bonus pool would fund at 50%, i.e., the floor of the funding curve[3], absent exercising discretion.

There are two decisions to make concerning the FY22 PBP:

1. *Should the plan be funded?*
2. *If funded, how should the PBP be allocated to employees?*

### FY22 PBP Funding

As the sole director of the company, Elon is required to approve funding the PBP. When funding the plan, *the choices are:*

| Recommendation | Pros | Cons |
|---|---|---|
| 1. Exercise discretion to NOT fund the pool; or | • Sends a strong pay-for-performance message<br>• Reinforces consequences of not meeting goals<br>• Favored by investors (removes guarantee in the case of poor financial performance) | • Could create noise internally/externally<br>• Could be demotivating to employee population still here<br>• Could lead to increased attrition of exceptional talent |
| 2. Approve funding the pool at the floor (50%) | • Is built into existing financials (we've accrued for this throughout FY22)<br>• Aligns with messaging from prior management assuming we remained a public company | • Does not send a strong pay-for-performance message<br>• Disfavored by investors (provides a guarantee for suboptimal results) |

If the decision is to NOT fund the pool, no additional decision from Elon is required as we would suspend the need to move to the allocation phase of the PBP.

### Allocating the FY22 PBP to Employees

As previously stated, once the PBP is funded, bonuses are then allocated to employees. When allocating bonuses to employees, the sum of the allocation can be no greater than the aggregate size of the funded bonus pool.

FY22 was an extraordinary year for many reasons, and the allocation recommendations are a philosophical reflection of should we treat everyone the same as financial outcomes were not something most employees had direct control over versus recognizing some employees still contributed amazing results at an individual level. *The choices are:*

---

[3] Refer to the "FY22 Funding Curve" located in the appendix

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

X-SCHOBINGER_000000126

| Recommendation | Pros | Cons |
|---|---|---|
| 1. Treat all employees the same at an individual performance level ("we are all in it together")[4]; or | • We've done this previously when under performing<br>• Does not require inputs from managers<br>• Emphasizes company performance is shared by all employees<br>• Reduces pressure on lack of year-end ratings | • Does not recognize individual performance<br>• Some employees may feel the bonus is too small |
| 2. Allow differentiated bonuses by leveraging the latest available QCI ratings | • Supports ability to deliver differentiated bonuses based on latest available QCI ratings | • Could create some noise with some employees who believe the extraordinary events of FY22 were out their control<br>• Not all current managers are necessarily the same managers who assigned the latest QCI rating (due to workforce actions we've been taking)<br>• May require some input from managers or a judgment call on individual performance if a QCI rating is not available |

Note, while a decision is not needed for this, we want to clarify if the decision is to support differentiated bonuses, we will need to create a simple tool to assign a predetermined individual performance factor based on the QCI rating to calculate the bonus amount, and ensure the aggregate of these calculations remains no greater than the funded amount of the PBP pool. For this reason, we are not showing a scale for the ratings in this paper as we will have to fine tune based on the actual QCI ratings. But it would be expected to see a differentiated individual performance factor applied based on the QCI rating scale seen here:

| Rating | Rating Definition |
|---|---|
| Not on Track | Performance is currently below expectations, inconsistent, and improvement is needed. Over the last quarter, the Tweep has not fully met expectations of the 'what' and/or the 'how' for their role and level. |
| On Track | Performance is currently and consistently meeting expectations and meeting Twitter's high bar for performance. Over the last quarter, the Tweep has consistently met expectations of the 'what' and the 'how' for their role and level. |
| Tracking Ahead | Performance is currently exceeding expectations, and significant impact is broadly recognized. Over the last quarter, the Tweep has exceeded |

---

[4] Refer to the illustrative allocation example "In It Together" for how this would work located in the appendix

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

3

X-SCHOBINGER_000000127

| | expectations of the 'what' and the 'how' for their role and level. |

4

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

X-SCHOBINGER_000000128

## Appendix

### Funding the PBP

The PBP pool is funded based on achievement of established company measures. For FY22, we used a combination of top- and bottom-line financial measures as shown below, each equally weighted at 50%. Further, the PBP has a "safe harbor" feature ensuring the pool will fund at a minimum of 50% of the target regardless of how severe we under perform on these measures. Conversely, the PBP pool is capped at 200% even in the case of out performing against these measures.



### Allocating the PBP

The PBP pool is allocated to employees by managers exercising discretion. Since the inception of the plan, we have used a 50/50 allocation model whereby the employee's bonus target is adjusted up/down based on the company performance factor and the employee's individual performance factor, each weighted 50%. The company performance factor has historically been the same as the funding measures. The actual individual payout range opportunity is 25-200% of the employee's bonus target based on the allocation model as seen here:



### FY22 Funding Curves

| Performance Metrics | Weighting | 50% Min. Funding | 100% Target Funding | 200% Max. Funding |
|---|---|---|---|---|
| GAAP Revenue YoY%[3] Percent of Target | 50% | | | |
| Adjusted EBITDA ex PBP[1,2] Adjusted EBITDA Margin (before PBP) Percent of Target | 50% | | | |

1. Excludes stock-based compensation, amortization, depreciation, acquisitions (except for small deals such as acqui-hire), restructuring and extraordinary charges
2. Cash expenses adjusted for changes in cost of revenue to calculate

5

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

X-SCHOBINGER_000000129

3.  YoY revenue growth excludes MoPub and MoPub Acquire

GAAP Revenue (Company PBP)



Revenue

Adjusted EBITDA Excl. PBP (Company PBP)



Adjusted EBITDA

## In It Together

The following illustrates paying the bonus assuming individual performance is at-target. Note, in this example the employee contributes $2,500 to the funded pool ($5,000 bonus target x 50% company performance factor). In order to maintain a cost neutral funded plan and treat all employees the same from an individual performance perspective, we are able to preserve cost neutrality - i.e., the employee receives exactly what they contributed to the funded pool.

6

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

X-SCHOBINGER_000000130

| Salary: | $100,000 | Company Performance: | 50% |
|---|---|---|---|
| Bonus Target %: | 5% | Individual Performance: | 100% |
| Bonus Target $: | $5,000 | | |

| Allocation Step 1 - Company Portion (50% Weighted) | | | | | |
|---|---|---|---|---|---|
| A | B | C = A x B | D | E | F = C x D x E |
| Salary | Bonus Target % | Bonus Target $ | Company Performance | Company Wtg | Prorated Target Amount |
| $100,000 | 5% | $5,000 | 0% | 50% | $0 |

Step 1 plus Step 2

| Total Payout (sum of F amts) |
|---|
| $2,500 |

| Allocation Step 2 - Individual Portion (50% Weighted) | | | | | |
|---|---|---|---|---|---|
| A | B | C = A x B | D | E | F = C x D x E |
| Annual Salary | Bonus Target % | Bonus Target $ | Individual Modifier | Individual Wtd | Prorated Target Amount |
| 100,000 | 5% | $5,000 | 100% | 50% | $2,500 |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

X-SCHOBINGER_000000131