Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (admitted *pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiff Mark Schobinger,*
*on behalf of himself and all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: October 3, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

      A.     The Court Should Reject Defendants' Argument That Divergent State Laws Preclude Certification ............................................................. 1

            1.     Contract Interpretation in this Case Is Governed by California Law ......... 2

            2.     Contract Enforcement in this Case is Also Governed by California Law Pursuant to the Governmental Interests Test ................................................ 3

      B.     The Court Should Certify the Class Because Defendants' Rule 23 Arguments Fail ...................................................................................................... 6

            1.     The class satisfies the commonality requirement ...................................... 6

            2.     The class satisfies the numerosity requirement ......................................... 8

             3.     The class satisfies the typicality and adequacy requirements .................... 9

            4.     The class satisfies the predominance and superiority requirements ......... 12

III.    CONCLUSION .................................................................................................. 15

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 3:23-cv-03007-VC

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Aguilera v. Prospect Mortgage, LLC*,
    2013 WL 4779179 (C.D. Cal. Sept. 5, 2013) ................................................................... 12

*American Airlines v. Wolens*,
    513 U.S. 219 (1995) ............................................................................................................... 2

*Andrade v. P.F. Chang's China Bistro, Inc.*,
    2013 WL 5472589 (S.D. Cal. Aug. 9, 2013) ................................................................... 12

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
    270 F.R.D. 488 (N.D. Cal. 2010), *modified*, 273 F.R.D. 562 (N.D. Cal. 2011) ............... 11

*Bzdawka v. Milkwaukee Cty.*,
    238 F.R.D. 468 (D. Wis. 2006) ......................................................................................... 12

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................................................ 9

*Coleman v. Jenny Craig, Inc.*,
    2013 WL 6500457 (S.D. Cal. Nov. 27, 2013), *aff'd*, 2016 WL 1583627 (9th Cir. Apr.
    20, 2016) ............................................................................................................................. 11

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
    472 F. Supp. 2d 1183 (S.D. Cal. 2007) .............................................................................. 5

*E.E.O.C. v. Waffle House*,
    534 U.S. 279 (2002) ........................................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ......................................................................................................... 4, 7

*Frontier Oil Corp. v. RLI Ins. Co.*,
    153 Cal. App. 4th 1436 (Cal. 2007), *as modified* (Sept. 5, 2007) ............................. 2, 3, 4

*Gomez v. Rossi Concrete, Inc.*,
    270 F.R.D. 579 (S.D. Cal. 2010) ....................................................................................... 7

*Grainger v. Prec. of New Hampton, Inc.*,
    2023 WL 8411290 (N.D. Iowa Apr. 24, 2023) ................................................................ 14

*Gutride Safier LLP v. Reese*,
    2013 WL 4104462 (N.D. Cal. Aug. 9, 2013) ..................................................................... 3

*Guzman v. Bridgepoint Educ., Inc.*,
    305 F.R.D. 594 (S.D. Cal. 2015) ...................................................................................... 11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................... 10

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation*,
   691 F.2d 1335 (9th Cir.1982) ............................................................................. 7

*In re DirecTV Early Cancellation Litig.*,
   738 F. Supp. 2d 1062 (C.D. Cal. 2010) ........................................................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ......................................................................... 1, 5

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013) ................................................................. 11

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) .............................................................................. 2

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
   313 U.S. 487 (1941) ........................................................................................... 1

*Lawson v. Grubhub, Inc.*,
   13 F.4th 908 (9th Cir. 2021) ........................................................................... 12

*Ma v. Twitter, Inc.*,
   No. 23-CV-03301-JST, 2024 WL 3086694 (N.D. Cal. Apr. 22, 2024) ............ 9

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012), *overruled by Olean Wholesale Grocery Coop., Inc. v.
   Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ............................... 13, 14

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016) ...................................................................... 9

*Overka v. American Airlines*,
   265 F.R.D. 14 (D. Mass. 2015) .......................................................................... 2

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ......................................................................................... 12

*Pryor v. Aeroteck Scientific, LLC*,
   278 F.R.D. 516 (C.D. Cal. 2011) ..................................................................... 10

*Quamina v. JustAnswer LLC*,
   2024 WL 950157 (N.D. Cal Mar. 5, 2024) ....................................................... 4

*Ramirez v. Freescore, LLC*,
   2011 WL 3812608 (C.D. Cal. Aug. 30, 2011) ................................................. 12

- iii -

*Rosenthal v. Fonda,*
    862 F.2d 1398 (9th Cir. 1988) ........................................................................................ 4

*Senne v. Kansas City Royals Baseball Corp.,*
    934 F.3d 918 (9th Cir. 2019) .................................................................................... 1, 4

*Strassberg v. New England Mut. Life Ins. Co.,*
    575 F.2d 1262 (9th Cir. 1978) ...................................................................................... 5

*Sullivan v. Oracle Corp.,*
    51 Cal. 4th 1191 (2011) ................................................................................................ 6

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University,*
    489 U.S. at 478 (1989) ................................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...................................................................................................... 8

*Washington Mut. Bank, FA v. Superior Ct.,*
    24 Cal. 4th 906 (2001) ...................................................................................... 3, 4, 5, 6

*Zeman v. Twitter, Inc.,*
    2024 WL 4032051 (N.D. Cal. Sept. 3, 2024) .............................................................. 8

**Statutes**

Cal. Civ. Code § 1646 ............................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 12

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 3:23-cv-03007-VC

## I.      INTRODUCTION

Each of Defendants' arguments in their opposition to class certification should be rejected. First, Defendants' arguments that choice-of-law issues prevent certification of a nationwide class are factually and legally deficient. Second, Defendants argue that the Rule 23 prerequisites commonality, numerosity, typicality, and adequacy, as well as predominance and superiority, are lacking. However, in doing so, they try again and again to attack the merits of Plaintiff's claims rather than offering the Court anything to undermine class certification.

## II.     ARGUMENT

### A.      THE COURT SHOULD REJECT DEFENDANTS' ARGUMENT THAT DIVERGENT STATE LAWS PRECLUDE CERTIFICATION

First, Defendants incorrectly argue that Plaintiff's claims raise divergent state law contract interpretation and enforcement issues, thus precluding class certification. Indeed, much of their response is premised on the mistaken contention that Plaintiff's and putative class members' claims will require interpreting state law from numerous jurisdictions.  However, these claims are squarely governed by California state law. "A district court considering state law claims brought in federal court must utilize the choice-of-law rules of the forum state— here, California." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). "By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Id.* (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc)). As set forth below, California law applies to the claims of all putative class members. Yet, even if multiple states' laws would apply, the law of contracts is essentially the same regardless of the state, thus allowing multi-state classes to be certified.  *See American Airlines v. Wolens*,

513 U.S. 219, 233 n.8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and confusing"); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (certifying a nationwide class action for breach of contract because "state contract law defines breach consistently such that the question will usually be the same in all jurisdictions."); *Overka v. American Airlines*, 265 F.R.D. 14, 19-20 (D. Mass. 2015) (granting nationwide class action because any differences in state law were not material, and "[t]he question before the Court here is not whether the laws of multiple states are identical, but whether the Court can manage the differences.").[1]

### 1. Contract Interpretation in this Case Is Governed by California Law

California Civil Code § 1646 determines the law governing the interpretation of a contract. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (Cal. 2007), *as modified* (Sept. 5, 2007). This provision states: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. The Frequently Asked Questions, email from Twitter's former Chief Financial Officer (CFO), Ned Segal, and oral promises upon which Plaintiff relies, do not indicate a place of performance. Thus, under § 1646, the law of the place where the contract was made would apply, and that is at Twitter's headquarters in California.

Defendants attempt to obscure this fact by conflating the promise to pay these bonuses with the employees' employment contracts generally. However, Plaintiff's breach of contract claim, as well as Plaintiff's promissory estoppel claim, do not rely on the employees'

---

[1]    If the Court deemed it necessary, it could certify subclasses based on where employees worked (and grant Plaintiff leave to amend to add plaintiffs from different subclasses), but Plaintiff does not believe such subclasses are necessary.

employment contracts.  Instead, Twitter's promise that it would pay 2022 bonuses at 50% of

target, in exchange for employees staying at the company, amid the upheaval of Elon Musk's

acquisition of Twitter (Dkt. 43), was made in California.  Further, payment of the bonus was set

to come from Twitter's headquarters in California, so at least with respect to Twitter, the

contract was to be performed in California, where Twitter is based.

### 2. Contract Enforcement in this Case Is Also Governed by California Law Pursuant to the Governmental Interests Test

California law should also apply pursuant to the governmental interests test. *See*

*Gutride Safier LLP v. Reese*, 2013 WL 4104462, at *4–7 (N.D. Cal. Aug. 9, 2013). California's

governmental interest analysis follows three steps. First, the proponent of the foreign law "must

identify the applicable rule of law in each potentially concerned state and must show it

materially differs from the law of California." *Washington Mut. Bank, FA v. Superior Ct.*, 24

Cal. 4th 906, 919-20 (2001) (adding that "[t]he fact that two or more states are involved does

not in itself indicate there is a conflict of laws problem."); *Frontier Oil*, 153 Cal. App. 4th at

1454. Second, if the Court finds the laws identified by the Defendants to be materially

different, the Court must determine what interest, if any, each state has in having its law

applied. *Washington Mut. Bank*, 24 Cal. 4th at 920 ("[T]he trial court may properly find

California law applicable without proceeding to the third step in the analysis if the foreign law

proponent fails to identify any actual conflict or to establish the other state's interest in having

its own law applied."). Third, if the Court determines both that the laws are materially different

and each state has such an interest, the Court must "select the law of the state whose interests

would be 'more impaired' if its law were not applied." *Id.*

Here, Defendants muddle these fairly straightforward steps in an attempt to confuse the

issue at every turn.  For the first step of the governmental interests analysis, though Defendants

purport to list a handful of issues on which rules of law purportedly differ between states, they use much of their discussion to argue the merits of the case, which are not properly considered at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Defendants do not satisfy their burden to "identify the applicable rule of law *in each potentially concerned state* and must show it materially differs from the law of California." *Washington Mut. Bank*, 24 Cal. 4th at 919-20 (emphasis added). Defendants predominantly cite to Texas cases to support their contentions of widespread, materially divergent state contract law but fail to offer a single citation for the vast majority of the 36 states they claim will create "the near impossibility of manageably trying multiple claims governed by different state laws, even with subclasses." Dkt. 84.  Yet, even considering the differences in state law that Defendants do highlight, none are material to adjudicating the claims of putative class members. *See, e.g., Quamina v. JustAnswer LLC*, 2024 WL 950157, at *4 (N.D. Cal Mar. 5, 2024) (recognizing that state law governing contract formation does not differ across relevant states).

At the second step, Defendants argue that there is *no* true conflict, despite the burden being on them to demonstrate such a conflict exists under the governmental interests test.[2] *Senne*, 934 F.3d at 928. Put differently, Defendants argue that California has no interest in applying its own law in this case, even as the forum state, which goes against clearly established case law in the Ninth Circuit. *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir. 1988) ("California, as the forum state, has an interest in having its law applied to this case.");

---

[2]     To be clear, this "true conflict" language that Defendants use to frame their position appears in some of the case law to describe the second step of the governmental interests analysis, but its meaning is the same: if the different states each have an interest in applying their law, the analysis continues on to the third step. *Frontier Oil*, 153 Cal. App. 4th at 1454 ("If each jurisdiction has an interest in applying its own law to the issue, there is a "true conflict" and the court must proceed to the third step.").

*Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978) ("Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision."); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1201 (S.D. Cal. 2007) ("As the forum state, California has an interest in applying its law to this case.").[3]  In reality, the only scenario in which a conflict cannot arise is one where the foreign jurisdiction has no interest in having its law applied in a California court. By wrongly asserting that California has no interest in applying its law to the case, Defendants seek to obfuscate the purpose of the second step, so as to avoid having to actually explain the interests that foreign states would have in applying their law to a California company's promise to its employees.

Finally, after proclaiming that that their approach to step two "ends the inquiry," Defendants suggest step three of the governmental interests analysis is nevertheless satisfied by rehashing the same points of confusion identified above. They conflate the contract at issue in this breach of contract claim with employment contracts generally, citing Ninth Circuit and California case law on wage and hour law that has no bearing on the breach of contract and promissory estoppel claims raised here.

Despite Defendants' attempts to confuse the issues, the governmental interests analysis is actually quite straightforward. First, Defendants have not identified the "applicable rule of law in each potentially concerned state" and shown how it differs from California law.

---

[3]     Additionally, "a forum state may constitutionally apply its own law to the claims of nonresident class members if the state has a '"significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum's] law is not arbitrary or unfair.'" *Washington Mut. Bank*, 24 Cal. 4th at 921. *See also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class.").

*Washington Mut. Bank*, 24 Cal. 4th at 919-20. Second, assuming the Court finds Defendants have satisfied step one, which it should not do, then the Court should also conclude that foreign jurisdictions do not have an interest in having their law applied in this case. Other states do not have an interest in preventing their own residents from obtaining justice against California employers for their breach of contract and promissory estoppel claims concerning a contract that was made in California, was supposed to be performed in California (by the employer) but for the breach, all taking place in a California court. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1204 (2011) (noting that other states whose overtime laws the defendant argued should apply through the governmental interests analysis "have expressed no interest in disabling their residents from receiving the full protection of California overtime law."). Third and finally, if the Court finds other states do have such an interest (which it should not do), that interest certainly does not outweigh California's interests in applying its own law to contracts and promises made and intended to be performed in its own territory by a large company resident.

**B.     THE COURT SHOULD CERTIFY THE CLASS BECAUSE DEFENDANTS' RULE 23 ARGUMENTS FAIL**

Twitter's arguments against Plaintiff's motion for class certification are saturated with thinly veiled attempts at recasting the prerequisites of Rule 23 as requiring the class to demonstrate it will ultimately prevail on the merits of their case — on an incomplete record, before discovery has closed. While ostensibly attacking the proposed class on the bases of commonality, predominance, typicality, and adequacy, each of Twitter's contentions regarding these prongs revolve around the same central argument: that the need to individually adjudicate whether each putative class member will succeed on breach of contract and promissory estoppel claims forecloses class certification. These arguments fail because merits-based arguments are improper at the class certification stage.

**1.   The Class Satisfies the Commonality Requirement**

First, Defendants conflate merits arguments with whether there are common *questions* of the existence of enforceable contracts and promises at issue in this case.  The Supreme Court has explained that: "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "On a motion for class certification, a court must generally take the substantive allegations of the complaint as true. Rather than deciding whether the claims have any merit, the inquiry instead focuses on the 'nature and range of proof necessary to establish those allegations.'" *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 585 (S.D. Cal. 2010) (internal citation omitted) (citing and quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation,* 691 F.2d 1335, 1342 (9th Cir.1982)).

Here, Defendants conflate arguments on the merits with alleged "individualized issues." Contrary to Defendants' assertion, there are multiple common issues, all of which may be answered with common evidence. For example, as Plaintiff explained in his motion, he contends that, in the months leading up to Elon Musk's acquisition of Twitter in October 2022, the Company's executives repeatedly promised Plaintiff and the company's other employees that employee benefits, including bonus opportunities, would remain the same for at least one year after the close of the acquisition. Specifically, employees were promised that if they continued to be employed by the Company, they would be paid 50% of their target bonus. Dkt. 75, Ex. 7; Ex. 1 – Segal Dep. at 232, 261-62, 265-71; Ex. 2 – Managers, Assemble PowerPoint Presentation. Therefore, there is a common question about whether Twitter's refusal to pay continuing employees 50% of their 2022 annual bonus constituted a breach of contract. Likewise, whether the oral and written statements at issue constituted an enforceable contract,

whether they were definitive for purposes of promissory estoppel, and whether the terms of the Bonus Plan allow Twitter discretion to *not* pay annual bonuses in spite of its promises are questions that are common to all putative class members "of such a nature . . . that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[4] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### 2. The Class Satisfies the Numerosity Requirement

Defendants do not seriously contend that the number of employees employed by Twitter through Q1 2023 does not satisfy the numerosity requirement. (Dkt. 84 at 30.) Rather, they largely contest numerosity because many employees signed arbitration agreements.  However, the fact that some employees may have signed arbitration agreements is not a reason to deny class certification.[5]

Courts in the Ninth Circuit have routinely held that the existence or lack thereof of enforceable arbitration agreements should be considered **after** a class has been certified, because until certification, putative class members (and any of their purported arbitration agreements) are not properly before the court. *Zeman v. Twitter, Inc.*, 2024 WL 4032051, at *5 (N.D. Cal. Sept. 3, 2024) (conditionally certifying discrimination case against Twitter,

---

[4]     Despite the Court's prior ruling that the contract at issue in this case was ***not*** based on Twitter's Performance Bonus Plan (Dkt. 37), Defendants continue to argue that no promise was made to employees separate from the Plan terms. Dkt. 84 at 27. While the Court has already rejected this argument, it is also improper for class certification because it attacks the merits of Plaintiff's claims.  In any event, Defendants' argument underscores commonality, since the question of whether Twitter's discretion under the Plan undermines the employees' claim is common to all putative class members.

[5]     Twitter does not state specifically how many employees who may be class members in this case signed and did not sign arbitration agreements.  Thus, it has not provided sufficient evidence to defeat certification based on this ground in any event.  Clearly, if the class members without arbitration agreements numbered less than the traditional 40 recognized as sufficient for a class, Twitter would have said so in its response.

including employees who signed arbitration agreements); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016) (citing other precedent); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y. 2020) (collecting cases); *see also Ma v. Twitter, Inc.*, No. 23-CV-03301-JST, 2024 WL 3086694, at *2 (N.D. Cal. Apr. 22, 2024) (declining to consider *Plaintiffs'* motion to compel arbitration until after class certification was addressed).

### 3.   The Class Satisfies the Typicality and Adequacy Requirements

Defendants also argue that class certification should be denied because Plaintiff is not an adequate class representative and his claims are not typical to the putative class.  Defendants' argument should be rejected.

First, Defendants attack Plaintiff for allegedly informing Mr. Musk that he did not need to pay employees a bonus under the PBP. However, as the Court previously recognized, Plaintiff is not seeking recovery under the PBP. Dkt. 37 at 2. Thus, Plaintiff's opinions about the PBP itself are not relevant. Moreover, while Plaintiff may have informed the company his opinion that the bonuses did not need to be paid, he explained during his deposition that he was providing the perspective of the financial community that it would not look good to be paying out the bonuses, given the state of the company's finances. Ex. 3 - Schobinger Dep. at 291-93. However, notwithstanding these statements, Plaintiff also testified at his deposition that, regardless of what he said, the company had promised to pay the bonus, and as an employee he expected it to be paid. Ex. 3 - Schobinger Dep. at 292-93. This is the same claim that Plaintiff is pressing on behalf of putative class members.

Nonetheless, Defendants argue that Plaintiff is atypical because he is subject to unique defenses, specifically estoppel and unclean hands. Yet, "to be typical, a class member need not prove that she is immune from any possible defense, or that her claim will fail only if every

other class member's claim also fails. Instead, she must establish that she is not subject to

a defense that is not "'typical of the defenses which may be raised against other members of the

proposed class.'" *Pryor v. Aeroteck Scientific, LLC*, 278 F.R.D. 516, 528 (C.D. Cal. 2011)

(quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  As noted, Plaintiff is

in a particularly good position to represent the class in this case, as he opted out of arbitration.

Also, as a higher level employee with insight into decisionmaking being made by the company,

he is also well situated to represent the class and its interest in recovering the bonus.

Moreover, Defendants' assertion of the affirmative defenses of estoppel and unclean

hands affirmative applies to Plaintiff and all putative class members. (Dkt. 47 at 7.)  Thus,

contrary to Defendants' assertion, these defenses are not unique to Plaintiff.[6]

Finally, Defendants contend that the existence of arbitration agreements undermine

Plaintiff's typicality.  As discussed above in the numerosity section, courts generally defer

consideration of arbitration agreements until after class certification.  "More generally,

defenses that may bar recovery for some members of the putative class, but that are not

applicable to the class representative do not render a class representative atypical under Rule

23." *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494

---

[6]     Defendants rely heavily on *Hanon*, 976 F.2d at 508, to support their argument.
However, *Hanon* is distinguishable. In *Hanon*, the plaintiff was seeking class certification for a
securities fraud action and his "unique situation" was that he was considered a sophisticated
investor who himself had made some unusual investment decision such that certain theories of
recovery available to the putative class may not apply the same to him. *Id.* ("Hanon's reliance
on the integrity of the market would be subject to serious dispute as a result of his extensive
experience in prior securities litigation, his relationship with his lawyers, his practice of buying
a minimal number shares of stock in various companies, and his uneconomical purchase of
only ten shares of stock in Dataproducts.") This is not that case here. Defendants' promise to
pay bonuses applied equally to all employees who remained employed by Twitter through Q1
2023. Despite Defendants' attempts to cast Plaintiff's position in Human Resources in the light
of a sophisticated investor, he was nevertheless an employee of Defendant relying on the
company's promise to pay his bonus just like any other putative class member.

(N.D. Cal. 2010), *modified*, 273 F.R.D. 562 (N.D. Cal. 2011).  Moreover, Defendants'

argument that Plaintiff is not typical and adequate because he opted out from arbitration is

easily defeated – indeed, the fact that Plaintiff opted out of arbitration, and thus is clearly able

to bring this case in court, makes him a particularly adequate plaintiff, ready to pursue the

claim on behalf of his co-workers.

Furthermore, even if the Court were to look now at the arbitration agreements (which it

should not) Twitter's arbitration agreement does not prevent unnamed class members from

passively participating in a class action that someone else (not bound by arbitration) has

brought in court, even if it would preclude an employee from bringing his or her own case in

court, because the language of the agreement does not include such a prohibition. *See E.E.O.C.

v. Waffle House*, 534 U.S. 279, 289 (2002).  In relevant part, Twitter's arbitration agreement

states: "You and the Company agree to bring any dispute in arbitration on an individual basis

only, and not on a class, collective, or private attorney general representative action basis."

(Twitter Arbitration Agreement ¶ 5, Dkt. 14-1 at p. 13.) The arbitration agreement continues:

"There will be no right or authority for any dispute to be brought, heard or arbitrated as a class

action ('Class Action Waiver')." (Twitter Arbitration Agreement ¶ 5, Dkt. 14-1 at p. 13.). This

arbitration agreement language is notably different in that respect from that promulgated by

other companies, which expressly forbid workers from, not only *bringing* their own claims in

court, but also from *being passive class members* in a class claim brought by someone else.[7]

---

[7]     *See, e.g., Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457, *4 (S.D. Cal. Nov. 27,
2013), *aff'd*, 2016 WL 1583627 (9th Cir. Apr. 20, 2016) (noting that arbitration provision that
precluded unnamed class members from "participat[ing] in a class action" could prevent such
individuals from being part of a certified class); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D.
594, 611 (S.D. Cal. 2015) (class waiver precluded employees from proceeding in court "as a
plaintiff or class member"); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 862
(D. Md. 2013) (finding that unnamed class members who had agreed to not "file *or join* any
class action or class arbitration" were precluded being part of the certified class) (emphasis
added); *Andrade v. P.F. Chang's China Bistro, Inc.*, 2013 WL 5472589, *12 (S.D. Cal. Aug. 9,

It should not be relevant whether the unnamed class members would have been permitted to bring their own claims in court (had they tried to do so) because, unlike Plaintiff, unnamed class members are "not part of the lawsuit." *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1072 (C.D. Cal. 2010); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("an absent class-action plaintiff is not required to do anything."); *Bzdawka v. Milkwaukee Cty.*, 238 F.R.D. 468, 473 (D. Wis. 2006) ("In a class action, the unnamed class members are 'passive' in contrast to the named plaintiff, who actively prosecutes the litigation on their behalf"), citing Conte & Newberg, supra, at § 2.7. Instead, under Rule 23, unnamed class members are *represented* by a class representative who asserts claims on *behalf of* unnamed class members. *See* Fed. R. Civ. P. 23; *Aguilera v. Prospect Mortgage, LLC*, 2013 WL 4779179, *4 (C.D. Cal. Sept. 5, 2013) ("In a Rule 23 class action, the class representatives are understood to represent all absent class members from the moment of certification."). The Court cannot rewrite Twitter's arbitration agreement to preclude passive participation in a class action.

### 4. The Class Satisfies the Predominance and Superiority Requirements

Defendants reiterate many of the same merits-based arguments they assert in the context

---

2013) (class waiver precluded class members from "*participat[ing] in* a class, representative or collective action") (emphasis added); *Ramirez v. Freescore, LLC*, 2011 WL 3812608, *3 (C.D. Cal. Aug. 30, 2011) (enforcing class waiver that waived the right of class members to "bring or participate in a class action or similar proceeding"). While Twitter cites to *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021), the arbitration agreement in *Lawson* is distinguishable. There, the arbitration agreement waived the employees' rights "to have any dispute or claim brought between **or among them**, [or] heard or arbitrated as a class action." *Id.* (emphasis added) Here, the arbitration agreement only requires that any claims be *brought* on an individual basis and does not include the broad language to cover claims "among" the parties.

    Twitter, as a sophisticated business, could have used broader language if it had intended its employees not to be permitted to participate as passive class members in a class claim brought by someone not bound by the arbitration clause. But it did not. Twitter, the drafter of the arbitration provision, should not be permitted to argue that unnamed class members have agreed to something that they did not. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. at 478 (1989).

of commonality to support their position that predominancy and superiority cannot be met. Defendants' argument fares no better in the context of predominance.

First, Defendants argue that individual questions, such as precisely how much and how many of the repeatedly announced promises each putative class member directly "read, heard, or paid attention to," predominate over the common questions. However, this point is a red herring. There is no dispute that the emails and communications promising employees that they would be paid bonuses at 50% of target were widely circulated to all employees. Dkt. 75, Ex. 7; Segal Dep. at 269. Defendants are really arguing that such communications cannot create an enforceable contract and/or form the basis of a promissory estoppel claim. However, this merits-based argument is not appropriate at the class certification stage.

Moreover, Defendants' reliance on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585–86 (9th Cir. 2012), *overruled by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), which concerns a question of whether putative class members were exposed to certain marketing material is misplaced. Namely, in *Mazza*, the plaintiff was seeking to certify a class of consumers to bring claims based on Honda's alleged misrepresentation in advertisements of certain vehicles' braking systems. This case is clearly distinguishable, as the promise in question here was made through a company-wide email, and the putative class members are already defined as "all individuals who were employed by Twitter in the first quarter of 2023 but were not paid their annual bonus for 2022." Dkt. 75.[8]

Defendants also argue that individual questions predominate by baldly arguing the merits and citing to case law that clearly does not control. Defendants speculate that "*if* any class claims

---

[8]    Defendants argue that more than 100 putative class members were hired after one or more of the statements at issue were made.  However, the class is defined as employees who were employed *before* the merger closed and remained employed through Q1 2023.

were tried," then Defendants would be entitled to present context for each individual employee. To support this assertion, Defendants cite an unpublished order from the Northern District of Iowa, *Grainger v. Prec. of New Hampton, Inc.*, 2023 WL 8411290 (N.D. Iowa Apr. 24, 2023). But in that case, the judge denied class certification on the breach of contract claim because, there, the defendant actually demonstrated the offer "looks different for different employees." *Id.* at *4. That is not the case here, as the contract and promises alleged by Plaintiff were circulated in a company-wide email and other consistent methods.

Finally, Defendants suggest that individualized inquiries into reliance predominate over common questions and cannot be resolved with common proof, citing to *Mazza.* But again *Mazza* is distinguishable as a consumer fraud case where putative class members were alleged to have relied on specific advertisements out in the world related to certain vehicles. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585–86 (9th Cir. 2012). Here,  putative class members relied on an email sent to the entire company, as well as common statements made across the company. Whether and how putative class members came to rely on Twitter's promises is nowhere near the same open question as the circumstances that concerned the Court in *Mazza*. Indeed, *Mazza* goes on to note that the California Supreme Court did not require demonstrations of individualized reliance "where there was little doubt that almost every class member had been exposed to defendants' misleading statements," and the *Mazza* court specifically limited its holding as applying only in the absence of such circumstances. *Id.* at 595-96.

Defendant's arguments against superiority are likewise unavailing. Defendants primarily focus on Plaintiff's counsel experience representing other former Twitter employees in arbitration as proof that a class action is not superior. While it is true that Plaintiff's counsel currently represents thousands of employees in individual arbitrations against Defendants, that

does not mean a class action is not superior. In fact, the parties' experience of being forced to repeatedly litigate the same exact issues over and over through individual arbitrations, with the risk of multiple conflicting decisions, proves that a class action is superior.

Additionally, Defendants' contention that Plaintiff's and putative class members' concerns of potential retaliation are "specious" is entirely disingenuous. Elon Musk, the richest person on the planet, has a well-documented and publicized history of directing vitriol at employees on social media.  Nevertheless, and despite Defendants' insinuation that such a concern is unsupported, Plaintiff did provide evidence of this fact. *See* Dkt. 75, Ex. 5 - E. Musk Dep. at 323-325.  The Court should reject Defendants' arguments against superiority.

## III.    CONCLUSION

For the foregoing reasons, the Court should certify this case as a class action.

Respectfully submitted,

MARK SCHOBINGER, on behalf of himself and
all others similarly situated,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

Dated: September 23, 2024

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document

was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on

September 23, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan