# EXHIBIT A

1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   One Market, Spear Street Tower
4  San Francisco, CA 94105-1596
   Tel:  +1.415.442.1000
5  Fax:  +1.415.442.1001

6  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
7  ashlee.cherry@morganlewis.com
   1400 Page Mill Road
8  Palo Alto, CA 94304
   Tel:  +1.650.843.4000
9  Fax:  +1.650.843.4001

10 MORGAN, LEWIS & BOCKIUS LLP
   Jonathan D. Lotsoff (admitted *pro hac vice*)
11 jonathan.lotsoff@morganlewis.com
   110 N. Wacker Dr., Ste. 2800
12 Chicago, IL 60606
   Tel:  +1.312.324.1000
13 Fax:  +1.312.324.1001

14 MORGAN, LEWIS & BOCKIUS LLP
   Kassia Stephenson, Bar No. 336175
15 kassia.stephenson@morganlewis.com
   600 Anton Blvd., Ste. 1800
16 Costa Mesa, CA 92626-7653
   Tel:  +1.714.830.0435
17 Fax:  +1.714.830.0700

18 Attorneys for Defendant
   X CORP. f/k/a TWITTER, INC.
19

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**<br><br>Date:  October 3, 2024<br>Time:  10:00 a.m.<br>Judge:  Hon. Vince Chhabria |

Defendant X Corp. ("X" or the "Company") respectfully submits this Sur-Reply Memorandum to address three distinct points raised for the first time in Plaintiff Mark Schobinger's Reply ("Reply," ECF 87) in Support of his Motion for Class Certification ("Motion," ECF 75): **(1)** he attempts to amend the class definition without giving X a fair opportunity to respond or showing how his revised putative class meets Rule 23's requirements, which it does not; **(2)** he falsely states that "Twitter does not state specifically how many employees who may be class members in this case signed and did not sign arbitration agreements … [and] has not provided sufficient evidence to defeat certification based on this ground in any event" (Reply at 8 n.5) – which it did; and **(3)** he makes a new legal argument that the class waiver in the Dispute Resolution Agreements ("DRAs") signed by over 95% of the putative class purportedly only bars *bringing* a class claim but not "passively" participating as a class member – a legally wrong claim that he lacks standing to make as a DRA opt-out. These points are improper on reply, and cannot cure the serious predominance, adequacy, typicality, numerosity, and other Rule 23 problems that are fatal to Plaintiff's Motion.

## I. PLAINTIFF'S CLASS DEFINITION CHANGE IS IMPROPER AND INSUFFICIENT

In a footnote, Plaintiff surreptitiously revises the class definition in his Complaint (ECF 43) and Motion, which encompassed employees employed at *any* time during 2022 who continued working through the bonus payment date in the first quarter of 2023, but were not paid 2022 bonuses.[1] This is consistent with the 2022 Performance Bonus Plan itself, which does not require employment prior to or after a particular date in 2022 to be eligible for a 2022 bonus. *See* Berry Decl. Ex. 6 (ECF 84-8). Based on this class definition, X pointed out that "more than 100 putative class members were hired after one or more of the statements at issue were made, requiring individualized proof of whether and how they heard or read them later." Opp. at 21; Decl. of Aoife Fenelon filed therewith (ECF 86) ¶ 5. In apparent belated recognition of this issue, Plaintiff's Reply seeks to amend his class definition *sub silentio*: "Defendants argue that more than 100 putative

---

[1] *See* Am. Compl. ¶ 7 (asserting "class action on behalf of all individuals who were employed by Twitter in the first quarter of 2023 and were covered by Twitter's Bonus Plan but did not receive their annual bonus for 2022."); Motion at 5 ("Plaintiff seeks to represent 'all individuals who were employed by Twitter in the first quarter of 2023 but were not paid their annual bonus for 2022.'" (citing Am. Compl. ¶ 7)). As discussed in X's Opposition to Plaintiff's Motion for Class Certification ("Opposition," ECF 84), Plaintiff clarified at his deposition that he understood the class to include individuals who remained employed at "the end of March of 2023." *Id.* at 2.

class members were hired after one or more of the statements at issue were made. However, the class is defined as employees who were employed **before the merger closed *[on October 27, 2022]*** and remained employed through Q1 2023." Reply at 13 n.8 (bold added).

The class definition is *not, however,* limited to those "employed *before* the merger closed," and Plaintiff's unilateral revision comes too late. *See Kumandan v. Google LLC*, 2023 WL 3468312 at *1 (N.D. Cal. Jan. 6, 2023) (noting prior ruling "declin[ing] to amend the [class] definition … because Plaintiffs first raised this proposal in their reply brief, thereby denying [defendant] the opportunity to address the proposed amendment"); *Phan v. Transam. Premier Life Ins. Co.*, 2023 WL 3468313 at *2 (N.D. Cal. Apr. 17, 2023) (change to class definition depriving defendant of "opportunity to respond to Plaintiff's changed position" was a "fundamental flaw": "It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers." (citation omitted)).

Plaintiff also fails to prove how his revised class would satisfy Rule 23, which it would not. *Kumandan*, 2023 WL 3468312 at *1 (N.D. Cal. Jan. 6, 2023) ("Plaintiffs had not presented the Court with sufficient information to assess whether the [class definition] amendment would result in classes that comply with … [Rule] 23."). X presented unrebutted proof that the putative class includes about 1,221 employees across 36 states, about 111 of whom were hired *after* one or more of the alleged "promises". Fenelon Decl. ¶¶ 3-5. His revision would exclude, at most, a handful of employees hired *in the two months between October 28 and December 31 of 2022*. It would not, however, exclude employees hired before October 28, 2022 but *after* the alleged promises were made. He thus fails to show, as is his burden, how this revision would resolve the individualized issues raised by the large number of employees hired after the alleged promises,[2] nor does it address the many other Rule 23 issues identified in X's Opposition, including the many varying state laws that differently impact the putative class members based on their individual employment locations.

---

[2] For example, X showed that of the approximately 1,221 active U.S. employees as of March 3, 2023 in the putative class, about 111 were hired after April 25, 2022; 98 were hired after May 19, 2022; 46 were hired after August 19, 2022; and 32 were hired after September 2022. Fenelon Decl. ¶ 5. Even if all 32 employees hired after September 2022 were excluded (*i.e.*, a more conservative class definition than Plaintiff's revised definition), that still would leave nearly 80 putative class members who did not witness one or more of the "promises". Opp. at 21.

## II. PLAINTIFF FALSELY CLAIMS X DID NOT SUPPLY DRA DATA, WHICH IT DID

In arguing numerosity, Plaintiff's Reply claims that "Twitter does not state specifically how many employees who may be class members in this case signed and did not sign arbitration agreements … [and] has not provided sufficient evidence to defeat certification based on this ground in any event." Reply at 8 n.5. This is patently false. X's Opposition states: "Nor can [Plaintiff] certify a California-only class[3] because all but thirty (30) putative class members in California signed DRAs with class waivers, or signed general releases of all claims, and cannot participate in this case. Fenelon Decl. ¶¶ 8-9. This low number precludes a finding of sufficient numerosity." Opp. at 25. The Fenelon Declaration filed in support provides further detailed data:

> 6. [O]f the approximately 1,221 active U.S. employees as of March 3, 2023, approximately *1,162 (i.e., over 95%) of them have signed a DRA requiring that they arbitrate all employment-related disputes* on an individual basis and not a class action basis, and *these employees have not opted out of the DRA*. […]
>
> 8. According to X's records, of the approximately 1,221 active U.S. employees as of March 3, 2023, *there are approximately 59 employees (i.e., less than 5%) who are not subject to the DRA. Of these 59 employees, only 32 worked in California*.
>
> 9. According to X's records, (a) about 215 of the approximately 1,221 active U.S. employees as of March 3, 2023 signed a valid and binding severance agreement with a general release of all claims that bars them from pursuing any claims against X; … and (c) *2 of the 32 employees in California who are not subject to a DRA signed such a severance agreement*.

*Id.* ¶¶ 6, 8, 9 (emphasis added). And any California subclass could have *fewer* than 30 members under Plaintiff's revised class definition, which he admits falls short of numerosity. Reply at 8 n.5 (recognizing "*the traditional 40 recognized as sufficient for a class*") (emphasis added). Nor would his revised definition materially change the 95-plus percentage of the putative nationwide class bound by DRAs, reconfirming his inadequacy and atypicality as one of the few opt-outs.

## III. PLAINTIFF MISCONSTRUES AND LACKS STANDING TO ARGUE THE DRA

Plaintiff newly argues that DRAs binding over 95% of the putative class are irrelevant because class members are "not part of the lawsuit," and the class waiver bars only *bringing* a class action but not "passive participation" in one. Reply at 11-12. These arguments fail for multiple independent reasons. *First*, Plaintiff has waived these arguments by raising them on Reply,

---

[3] X's Opposition did not challenge numerosity as to a purported nationwide "class".

particularly after addressing other DRA issues in his Motion. *See Wilson v. Pactiv LLC*, 2021 WL 5818492, at *7 (C.D. Cal. Dec. 3, 2021) (no predominance: "the Court will not consider [plaintiff's] new argument" raised "[f]or the first time in his reply"); Opp. at 17 n.24 (cites).

***Second***, as a DRA opt-out, Plaintiff lacks standing to make these arguments. His counsel here made precisely the same failed arguments in *Tan v. Grubhub, Inc.*, which held the plaintiff

> has no standing to challenge the applicability or enforceability of the arbitration and class action waiver provisions . . . himself because, in light of his decision to opt out, they do not apply to him. Nor can he challenge the provisions on behalf of unnamed putative class members who have agreed to those provisions. And in any event, [the named plaintiff] is not a typical or adequate representative to make applicability or enforceability arguments on behalf of the unnamed class members.

2016 WL 4721439 at *6 (N.D. Cal. July 19, 2016) (emphasis added; citations omitted).

***Third***, Plaintiff's argument fails on the merits. Basic contract principles alone bar his assertion that individuals who signed DRAs containing arbitration clauses and class action waivers can nonetheless serve as absent class members, as this would gut the class action waiver and allow even a single opt-out to bring class claims on behalf of all other DRA signers. *See English & Sons, Inc. v. Straw Hat Rests., Inc.*, 176 F. Supp. 3d 904, 914 (N.D. Cal. 2016) ("Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions." (citation omitted)).

Equally important, *Tan*, 2016 WL 4721439 at *6, is directly on point here as well: "[w]ere the Court to certify a class as Plaintiffs seek … any judgment in this case would bind the unnamed class members (unless they opted out of the class) – in other words, the unnamed class members would become parties and their claims would be heard and adjudicated." Adjudicating claims of DRA signers as class action parties rather than in arbitration is precisely what the DRA prohibits. Other judges in the Northern District already found the DRA and its class waiver enforceable, requiring individual arbitration of any claims. Opp. at 20 n.26; Req. for Jud. Not. Exs. 1-2 (ECF 85, 85-1, 85-2). Neither ruling carved out "passive participation" in a class action, and Plaintiff's counsel has not sought to include arbitration claimants as class members in other class actions.

Furthermore, the plain language of the DRA cited in the Motion bars such participation:

> You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges

> and agrees that ***Employee*** and the Company are each ***waiving the right to participate as a*** plaintiff ***or class member in any purported class action***, collective action or representative action proceeding ("Class Action Waiver").

Mot. at 13 n.6 (emphasis added); *id.* ("A sample Arbitration Agreement is available at ECF No. 1-1 in *Ma v. Twitter, Inc., et al.*, Case No. 3:23-cv-03301 (N.D. Cal.)."). Courts, including those cited in Plaintiff's Reply, have enforced similar waivers. Reply at 11 n.7; *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1079 (N.D. Cal. 2015) (enforcing class waiver barring plaintiff "from proceeding as 'a plaintiff or class member in any purported class and/or collective proceeding'"); *Jasso v. Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038, 1041 (N.D. Cal. 2012) (enforcing agreement to individually arbitrate "[a]ll disputes, including any [sic] all Claims asserted by me … as a representative and/or member of a class of persons…"). None of Plaintiff's cited cases reach a contrary conclusion or, in enforcing waivers with a bar on "participation" as a "class member," hold that a signer *could* be a class member *absent* those words. Reply at 11 n.7.

Recognizing these problems, Plaintiff tries another sleight of hand in his Reply and cites to language from a *different* DRA filed in a *different* case than the DRA cited in his Motion:

> In relevant part, Twitter's arbitration agreement states: "You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." (Twitter Arbitration Agreement ¶ 5, Dkt. 14-1[4] at p. 13.) The arbitration agreement continues: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ('Class Action Waiver')." [citing *id.*]

Reply at 11. Notably, the existence of different DRA versions in this case is itself another reason why no class can be certified. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 542 (C.D. Cal. 2013) (existence of multiple form contracts "counsels against certification"). In any event, however, the waiver at issue in the Motion broadly waives any "right to participate as a … class member in any purported class action," and Plaintiff's other belatedly cited DRA provides that no "dispute" involving an employee may "***be brought, heard*** or arbitrated as a class action" – language that facially bars a DRA signer from free-riding in a class action "brought" by another person. *Supra Borodaenko*, Dkt. 14-1 (DRA) at p.12 ¶ 5.

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety.

---

[4] He appears to cite *Borodaenko, et al. v. Twitter, Inc.*, Case No. 3:22-cv-07226-AMO, Dkt. 14-1.

| | | |
|---|---|---|
| 1 | Dated: September 30, 2024 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | By: */s/ Brian D. Berry* |
| 3 | |     Eric Meckley<br>    Brian D. Berry |
| 4 | |     Ashlee Cherry<br>    Jonathan D. Lotsoff |
| 5 | |     Kassia Stephenson<br>    Attorneys for Defendant<br>    X CORP. f/k/a TWITTER, INC. |