# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
 2                     SAN FRANCISCO DIVISION
 3    MARK SCHOBINGER, on behalf  )
      of himself and all others   )
 4    similarly situated,         )
                                  )
 5            Plaintiff,          )
                                  ) Case No. 3:23-cv-03007-VC
 6    v.                          )
                                  )
 7    TWITTER, INC. And X CORP.,  )
                                  )
 8            Defendants.         )
 9
10
11            ORAL AND VIDEOTAPED DEPOSITION OF
12               MARK SCHOBINGER - VOLUME 2
13                 Friday, August 2, 2024
14
15
              ORAL AND VIDEOTAPED DEPOSITION OF MARK
16    SCHOBINGER - VOLUME 2, produced as a witness at the
      instance of the Defendants, Twitter, Inc. and X Corp.,
17    and duly sworn, was taken in the above-styled and
      numbered cause on the 2nd of August, 2024, from
18    9:17 a.m. to 4:30 p.m., before Sharon Ross, Certified
      Shorthand Reporter in and for the State of Texas,
19    reported by computerized stenotype machine, at Quinn
      Emanuel Urguhart & Sullivan, LLP, 300 West 6th Street,
20    Suite 2010, Austin, Texas 78701, pursuant to the Federal
      Rules of Civil Procedure and/or any provisions stated on
21    the record or attached hereto.
22
23
      Reported by:
24    SHARON ROSS, Texas CSR #1961,
      Hawaii CSR #432, RMR, CRR, CRC
25    Realtime Systems Administrator

                                                       Page 67
```

```
 1                      APPEARANCES                          08:29
 2
     For Plaintiffs Mark Schobinger, on behalf of himself and
 3   all others similarly situated:
 4        Shannon Liss-Riordan
          LIGHTEN & LISS-RIORDAN
 5        729 Boylston Street, Suite 2000
          Boston, Massachusetts  02116
 6        617.994.5800
          Sliss@llrlaw.com
 7
 8   For Defendants Twitter, Inc. and X Corp.:
 9        Eric Meckley
          MORGAN, LEWIS & BOCKIUS LLP
10        One Market, Spear Street Tower
          28th Floor
11        San Francisco, California  94105-1596
          415.442.1013
12        Eric.meckley@morganlewis.com
13             - and -
14        Julia Choe (via Zoom)
          Laurenne Babayan (via Zoom)
15        QUINN EMANUEL URQUHART & SULLIVAN, LLP
          865 South Figueroa, 10th Floor
16        Los Angeles, California  90017
          213.443.3813
17        213.443.3347
          Juliachoe@quinnemanuel.com
18        Laurennebabayan@quinnemanuel.com
19             - and -
20        Jennifer J. Barrett (via Zoom)
          Bhargav Setlur (via Zoom)
21        QUINN EMANUEL URQUHART & SULLIVAN, LLP
          51 Madison Avenue, 22nd Floor
22        New York, New York  10010
          212.849.7155
23        212.849.7391
          Jenniferbarrett@quinnemanuel.com
24        Bhargavsetlur@quinnemanuel.com
25
```

```
 1                  APPEARANCES (Continued)
 2   For Defendant X Corp.:
 3        Adam Mehes
          X CORP.
 4        245 East 17th Street
          New York, New York  10003
 5        347.417.4940
          Amehes@x.com
 6
 7   Videographer:
 8        Peter Zierlein, Veritext Legal Solutions
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 69

| | | |
|---|---|---|
| 1 | quote/unquote, "safe harbor" built into it which means | 12:24 |
| 2 | it would always fund. | 12:24 |
| 3 | So we had those discussions and just -- she | 12:24 |
| 4 | had also asked for an opinion if there was a scenario | 12:24 |
| 5 | where I -- you know, like: Does that seem reasonable? | 12:24 |
| 6 | So I gave her my personal opinion. My | 12:24 |
| 7 | personal opinion was irrelevant. | 12:24 |
| 8 | Q.  Uh-huh.  Why didn't you give her the opinion | 12:24 |
| 9 | that a bonus should be paid -- | 12:24 |
| 10 | A.  Oh, I did. | 12:24 |
| 11 | Q.  -- exercise discretion to pay a bonus? | 12:24 |
| 12 | A.  I did.  We had umpteen conversations with that, | 12:24 |
| 13 | and I pressed her for weeks on getting a formal | 12:25 |
| 14 | acknowledgment from Elon and approval email to which she | 12:25 |
| 15 | kept telling us -- updating to her leadership team that | 12:25 |
| 16 | remained -- that she was working that with Elon. | 12:25 |
| 17 | Q.  So that wasn't my question, Mr. Schobinger. | 12:25 |
| 18 | A.  That's the question you asked me. | 12:25 |
| 19 | Q.  No, it isn't.  It's -- in this email why didn't | 12:25 |
| 20 | you tell Ms. Chapman that, in your opinion, you believed | 12:25 |
| 21 | discretion should be exercised in order to pay a bonus? | 12:25 |
| 22 | Why didn't you tell her that? | 12:25 |
| 23 | A.  I did tell her. | 12:25 |
| 24 | Q.  Okay. | 12:25 |
| 25 | A.  Not in this email, but we had the conversation. | 12:25 |

Page 170

| | | |
|---|---|---|
| 1 | So you got to put it all in context and together and | 12:25 |
| 2 | just -- you know, so you picked one document. | 12:25 |
| 3 | What you didn't pick is all the other | 12:25 |
| 4 | documents where we did have those conversations. | 12:25 |
| 5 | Q.  So is it your understanding that you provided | 12:25 |
| 6 | some written communication to Ms. Chapman either in an | 12:25 |
| 7 | email or a message or some other way where you expressed | 12:26 |
| 8 | your opinion is to actually pay employees bonuses?  Is | 12:26 |
| 9 | that your testimony? | 12:26 |
| 10 | A.  We had those -- we had verbal conversations. | 12:26 |
| 11 | Q.  Okay.  That's not my question. | 12:26 |
| 12 | My question is:  Did you ever communicate | 12:26 |
| 13 | to Ms. Chapman in a written form, whether it be email, | 12:26 |
| 14 | Slack message, direct message, et cetera, that you | 12:26 |
| 15 | recommended employees should be paid a bonus? | 12:26 |
| 16 | A.  Not that I recall in a written format. | 12:26 |
| 17 | Q.  Okay.  But in the only written formats that we | 12:26 |
| 18 | have, you communicated to her your opinion that | 12:26 |
| 19 | discretion should be exercised and a bonus not be paid, | 12:26 |
| 20 | correct? | 12:26 |
| 21 | A.  If you want to -- if you're referring to | 12:26 |
| 22 | this -- did I say that?  Yes, I did. | 12:26 |
| 23 | Q.  Okay.  Can you tell me why it would be that you | 12:26 |
| 24 | would communicate to her in writing a recommendation not | 12:26 |
| 25 | to pay the bonus and, yet, verbally you would tell her: | 12:27 |

Page 171

| | | |
|---|---|---|
| 1 | I recommend that you do pay a bonus? | 12:27 |
| 2 | A.  She asked for a contrarian opinion, and I gave | 12:27 |
| 3 | her one. | 12:27 |
| 4 | Q.  So did you think it would be helpful to provide | 12:27 |
| 5 | Ms. Chapman contradictory opinions from you that a bonus | 12:27 |
| 6 | should be paid, bonus should not be paid? | 12:27 |
| 7 | A.  I'm not sure I understand your question. | 12:27 |
| 8 | Q.  Yeah.  Did you think it was helpful to give her | 12:27 |
| 9 | emails saying you believe a bonus should be paid and | 12:27 |
| 10 | then tell her in person, yeah, I think we should pay it? | 12:27 |
| 11 | A.  I think you would have to ask her that question | 12:27 |
| 12 | if it -- if she found it helpful. | 12:27 |
| 13 | Q.  I'm asking:  Did you think it would be helpful | 12:27 |
| 14 | to do that? | 12:27 |
| 15 | A.  From her perspective? | 12:27 |
| 16 | Q.  From your perspective. | 12:27 |
| 17 | A.  So she asked -- we -- I gave her a well-rounded | 12:27 |
| 18 | set of guidance.  You can choose not to do something | 12:27 |
| 19 | even though it had already been decided to do it or you | 12:27 |
| 20 | can continue to roll with the decision that was already | 12:28 |
| 21 | made. | 12:28 |
| 22 | Q.  So why in this email of Exhibit 22 did you tell | 12:28 |
| 23 | her:  I believe exercising discretion and not paying a | 12:28 |
| 24 | bonus would be prudent?  Why did you tell her that in | 12:28 |
| 25 | this email? | 12:28 |

Page 172

| | | |
|---|---|---|
| 1 | A.   No, that -- I think like the simple answer I | 16:15 |
| 2 | gave is what I believe my obligations are. | 16:15 |
| 3 | Q.   To testify today and try to represent them as | 16:15 |
| 4 | best you can? | 16:15 |
| 5 | A.   Yes. | 16:15 |
| 6 | Q.   Okay.  Anything else you think you're obligated | 16:15 |
| 7 | to do as a potential class representative? | 16:15 |
| 8 | A.   Not that I'm aware of, no. | 16:15 |
| 9 | Q.   Okay.  And why do you believe, Mr. Schobinger, | 16:15 |
| 10 | that you could represent this class of employees given | 16:15 |
| 11 | the one document we looked at that said your | 16:15 |
| 12 | recommendation was that they not be paid a bonus? | 16:16 |
| 13 | A.   No, that was an opinion that I gave.  What | 16:16 |
| 14 | matters the most is what the Comp Committee approved in | 16:16 |
| 15 | August and what was communicated to all employees by the | 16:16 |
| 16 | senior level leadership and what Elon himself recognized | 16:16 |
| 17 | in early January.  That's what matters the most. | 16:16 |
| 18 | Q.   All right. | 16:16 |
| 19 | A.   Those are the decision-makers.  I'm not the | 16:16 |
| 20 | decision-maker. | 16:16 |
| 21 | Q.   So just to clarify, though, even though your | 16:16 |
| 22 | opinion was that employees should not be paid a 2022 | 16:16 |
| 23 | performance bonus, you think you can still advocate for | 16:16 |
| 24 | employees to be paid a 2022 bonus? | 16:16 |
| 25 | A.   That's the commitment that was made. | 16:16 |

Page 285

| | | |
|---|---|---|
| 1 | Q.  Right.  So despite your opinion to the | 16:16 |
| 2 | contrary, you think you're -- | 16:16 |
| 3 | A.  My opinion is actually irrelevant on -- on, you | 16:16 |
| 4 | know, if the -- if the decision was left to me, maybe | 16:16 |
| 5 | things would be different; but I was not the | 16:17 |
| 6 | decision-maker. | 16:17 |
| 7 | That's all the other parties that we've | 16:17 |
| 8 | been talking about, and they very clearly made their | 16:17 |
| 9 | decision and a commitment that a bunch of people relied | 16:17 |
| 10 | upon. | 16:17 |
| 11 | Q.  Right.  And given your opinion that the bonus | 16:17 |
| 12 | shouldn't have been paid, if you were vested with that | 16:17 |
| 13 | decision, you would have decided not to pay the bonus | 16:17 |
| 14 | for the reason you explained; is that right? | 16:17 |
| 15 | A.  I was not the decision-maker.  So it's actually | 16:17 |
| 16 | irrelevant. | 16:17 |
| 17 | Q.  Yeah, I'm just asking:  Based on your opinion, | 16:17 |
| 18 | though, if you were, that would have been your decision, | 16:17 |
| 19 | to not pay the bonus, correct? | 16:17 |
| 20 | A.  No.  My -- the -- it's really clear in the plan | 16:17 |
| 21 | that even though the company underperformed, everybody | 16:17 |
| 22 | involved in that knew that up front. | 16:17 |
| 23 | You can look at the document and see that | 16:17 |
| 24 | if revenue severely underperformed or the company was | 16:17 |
| 25 | less profitable, it was still going to fund a bonus; and | 16:17 |

Page 286

| | | |
|---|---|---|
| 1 | it would pay out under the constructs of the plan.  And | 16:17 |
| 2 | that is exactly what they communicated. | 16:18 |
| 3 | Q.  Right.  So we've already looked -- I mean, we | 16:18 |
| 4 | can look at it again.  There's a document that says, you | 16:18 |
| 5 | know, I recommend not paying the bonus. | 16:18 |
| 6 | You've testified that's your opinion, | 16:18 |
| 7 | right? | 16:18 |
| 8 | A.  It's -- it's an opinion. | 16:18 |
| 9 | Q.  Right.  Well, it's your opinion, correct? | 16:18 |
| 10 | A.  Correct. | 16:18 |
| 11 | Q.  Right. | 16:18 |
| 12 | A.  But my -- like I say, my -- I'm not -- my | 16:18 |
| 13 | opinion doesn't matter because I'm not the one making | 16:18 |
| 14 | the decision. | 16:18 |
| 15 | Q.  Right.  If Dalana Brand had vested you with | 16:18 |
| 16 | making the decision, that discretionary authority, your | 16:18 |
| 17 | opinion would have been not to pay, correct? | 16:18 |
| 18 | A.  No, I'm not going to say that. | 16:18 |
| 19 | Q.  And why not? | 16:18 |
| 20 | A.  Because that's not what my role was.  You're | 16:18 |
| 21 | asking me a hypothetical, and it's irrelevant.  I was | 16:18 |
| 22 | not the decision-maker. | 16:18 |
| 23 | Q.  Well, I'll ask it -- today I did move on.  I | 16:18 |
| 24 | get to ask it again in a different context.  I think you | 16:18 |
| 25 | might need to answer it then, but we'll find that out. | 16:18 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | A. Yes. He was part of that reduction on | 16:27 |
| 2 | November 4. | 16:27 |
| 3 | Q. And did you select him as someone who should be | 16:27 |
| 4 | involved -- | 16:27 |
| 5 | A. I was not involved in the selection process of | 16:27 |
| 6 | any employee. | 16:27 |
| 7 | Q. Okay. Who decided that Steve Henson would be | 16:27 |
| 8 | laid off? | 16:27 |
| 9 | A. I don't know. | 16:27 |
| 10 | Q. Okay. All right. I don't think I have any | 16:27 |
| 11 | further questions for you today. | 16:28 |
| 12 | MS. LISS-RIORDAN: Okay. I just have a | 16:28 |
| 13 | couple questions. | 16:28 |
| 14 | EXAMINATION | 16:28 |
| 15 | BY MS. LISS-RIORDAN: | 16:28 |
| 16 | Q. Mr. Schobinger, you were asked by counsel for | 16:28 |
| 17 | defendant about a statement that you made earlier that | 16:28 |
| 18 | the optics of paying out the bonus for 2022 by Twitter | 16:28 |
| 19 | wouldn't have been good. | 16:28 |
| 20 | Can you tell me what you mean by that, that | 16:28 |
| 21 | the optics may not have been good of paying the bonus? | 16:28 |
| 22 | A. Yeah. What -- so what I meant by that is | 16:28 |
| 23 | within the context of -- if you are a believer of a | 16:28 |
| 24 | tightly aligned pay-for-performance model because | 16:28 |
| 25 | that's, you know, what a lot -- and just in general | 16:28 |

| | | |
|---|---|---|
| 1 | practice, that's what companies align their compensation | 16:28 |
| 2 | philosophy to. | 16:28 |
| 3 | The -- that's all I was simply referring to | 16:28 |
| 4 | is under a pay-for-performance sort of litmus test, to | 16:28 |
| 5 | underperform in the way that Twitter did, it -- that's | 16:29 |
| 6 | bad optics, right? | 16:29 |
| 7 | It's like they came in below on the | 16:29 |
| 8 | revenue, and they weren't as pro -- profitable as they | 16:29 |
| 9 | aspire to. | 16:29 |
| 10 | So it creates another problem that | 16:29 |
| 11 | leadership has to address when they're engaging with the | 16:29 |
| 12 | investment community. | 16:29 |
| 13 | So that's all I was really referencing | 16:29 |
| 14 | is -- when I say it's bad optics.  It's like you made | 16:29 |
| 15 | the decision; and, by the way, it's bad optics because | 16:29 |
| 16 | now you've got to explain that pay-for-performance | 16:29 |
| 17 | disconnect. | 16:29 |
| 18 | Q.  So it's bad optics to whom, investors? | 16:29 |
| 19 | A.  Investors. | 16:29 |
| 20 | Q.  Okay.  As an employee, do you wish that Twitter | 16:29 |
| 21 | had paid out the bonus to employees? | 16:29 |
| 22 | MR. MECKLEY:  Let me object, leading. | 16:29 |
| 23 | Go ahead. | 16:29 |
| 24 | A.  Sorry.  Can you repeat? | 16:29 |
| 25 | Q.  (BY MS. LISS-RIORDAN)  Yeah, sure.  It would -- | 16:29 |

Page 292

| | | |
|---|---|---|
| 1 | so would it be bad -- you saw it as bad optics to | 16:29 |
| 2 | investors if the company underperformed and still paid | 16:29 |
| 3 | out a bonus; but as an employee, did you want Twitter to | 16:29 |
| 4 | pay out the bonus to employees? | 16:30 |
| 5 |         MR. MECKLEY:  Objection, leading. | 16:30 |
| 6 |   A.   100 percent because that was the promise and | 16:30 |
| 7 | the commitment that was made. | 16:30 |
| 8 |         MS. LISS-RIORDAN:  Okay.  Thank you. | 16:30 |
| 9 |         MR. MECKLEY:  All right. | 16:30 |
| 10 |         THE VIDEOGRAPHER:  This concludes the | 16:30 |
| 11 | deposition of Mark Schobinger.  Going off the record. | 16:30 |
| 12 | The time is 4:30. | 16:30 |
| 13 |         (The deposition was concluded at 4:30 p.m.) | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |