December 8, 2024

***VIA E-FILING***
Chief Magistrate Judge Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

   Re: *Schobinger v. Twitter, Inc., et al.*, Case No. 23-cv-03007-VC (DMR)

Dear Magistrate Judge Ryu:

Plaintiff Mark Schobinger and Defendant X Corp. (as a successor in interest to Twitter, Inc.) (hereinafter "Twitter") submit this joint discovery letter under the Civil Local Rules and the Court's standing order on discovery. After conferring via telephone on November 26, 2024, the Parties have reached an impasse on two of Plaintiff's Requests for Production (Ex. A), as well as one of Plaintiff's deposition notices (Ex. B).[1] The Court has denied class certification (*see* ECF 101) and set a discovery deadline for Plaintiff's individual claim for December 19, 2024. The hearing date for Defendant's motion for summary judgment is April 17, 2025.

## Plaintiff's Position

In this case, Plaintiff Mark Schobinger alleges that, in the lead-up to Elon Musk's acquisition of Twitter in 2022, the company promised employees (among other promises) that they would receive their annual 2022 bonus (at 50% of target).[2] However, after Mr. Musk acquired the company, he reneged on this promise and did not pay the employees the promised bonus. The Court has already denied Twitter's motion to dismiss, in which it argued that there could be no claim here because the company's Performance Bonus Plan ("PBP") itself made clear that the bonus was discretionary; the Court agreed with Plaintiff that breach of contract or promissory estoppel claims may proceed on the separate and independent promises made by Twitter to pay the bonus. Schobinger v. Twitter, Inc., 2023 WL 8866580, at *1 (N.D. Cal. Dec. 22, 2023).

The Court has denied Plaintiff's motion for class certification, on the ground that Plaintiff himself (who was Twitter's Director of Compensation) was involved in the decision not to pay the bonus (and thus, the Court concluded, is not an adequate class representative for this claim). Plaintiff has testified, however, that the bonus was promised to employees and that he repeatedly

---

[1] The Parties are continuing to confer on several other issues that Plaintiff has raised and will submit another discovery letter if they are not able to resolve their differences on those issues.

[2] Multiple cases, and approximately 2,000 arbitrations, have been filed by terminated employees related to Twitter's promise to employees that Twitter's pre-acquisition severance package would be provided to employees who lost their jobs after Elon Musk's acquisition of the company. This case, however, relates to employees who were *not* terminated after Mr. Musk's acquisition of the company but did not receive their 2022 bonus as promised.

Chief Magistrate Judge Donna M. Ryu
December 8, 2024
Page 2

told Elon Musk's new Human Resources Director (Lindsay Chapman) that the bonus had been promised and that employees were expecting it to be paid. He also testified that Ms. Chapman instructed him to write up a memo for Mr. Musk, justifying not paying the bonus. (It was based primarily on this memo that the Court determined that Plaintiff could not represent a class here.)

Twitter has refused to produce the following categories of highly relevant discovery.

### 1. Communications related to paying employees their 2022 bonus

First, in his Request for Production No. 2, Plaintiff requested "copies of all emails, Slack messages, and other communications by and among Twitter management personnel (including, but not limited to, Ned Segal [Twitter's former CFO] and Elon Musk) regarding paying employees an annual bonus for 2022." Ex. A. In response, Twitter only agreed to produce "non-privileged communications sent to or from Plaintiff's email address and Slack address relating to paying employees an annual bonus for 2022". Id.

Plaintiff's request was not limited to communications sent to or from Plaintiff. Twitter has simply refused to produce communications by and among Twitter management personnel that did not include Plaintiff, or were not shared with other employees,[3] regarding the bonus. This discovery is clearly relevant to the claim here. Plaintiff seeks such discovery to show that Twitter management was well aware that this promise had been made – and to learn what they said amongst themselves in deciding not to pay it. The Court should order Twitter to produce these communications. If Twitter contends that any such communications are privileged, it should produce a privilege log.[4]

### 2. Documents related to accrual of funds for employees' 2022 bonus

In his Request for Production No. 6, Plaintiff requested "copies of all financial records and other documents regarding the accrual of funds by Twitter towards the payment of employees' bonuses during the period of January 2022 through June 2023." Ex. A. Twitter did not provide any documents in response to this request. Id.

---

[3] In its response to the document request, Twitter indicated that it was only producing communications that included Plaintiff. In this discovery letter, Twitter now claims that it produced additional communications that were shared more generally with employees. However, Twitter apparently concedes that it is withholding communications among other management personnel regarding the decision of whether or not to pay the bonus.

[4] In other litigation and arbitrations that Plaintiff's counsel are involved in with Twitter, Twitter has routinely overused the assertion of attorney-client privilege to avoid producing materials in which attorneys were not actually being consulted for or giving legal advice. It is important that a detailed privilege log be provided in order to allow Plaintiff to assess if the privilege is similarly here being incorrectly asserted.

Chief Magistrate Judge Donna M. Ryu
December 8, 2024
Page 3

In explaining why it did not produce any responsive documents, Twitter stated that it does not dispute that funds were accrued for paying the employee bonuses in 2022. It offered to enter such a stipulation with Plaintiff. While Plaintiff appreciates the offer of a stipulation, he wants the actual documents showing that the accrual was made, showing who those documents were shown to, what discussion there was about it, etc. Such discovery is relevant and should be produced. In presenting this case to a jury, such documents may be particularly helpful to show the concreteness of the prior plan to pay the bonus and also to shed light on the discussions and thinking surrounding the company's ultimate decision not to pay the bonus.

### 3. Deposition of Mason Eaves

Plaintiff noticed a deposition for Mason Eaves. See Ex. B. According to Twitter's Responses to Interrogatories, Mr. Eaves is the "Director of Technical Accounting at X" and "has knowledge related to, among other things, the terms of the 2022 Global Discretionary Performance Bonus Plan, and the accounting accrual related to the 2022 Global Discretionary Performance Bonus Plan." (Ex. C at 5). Twitter further noted that "Eaves may be contacted through X's [Twitter's] below-signed counsel." Id.

Twitter has refused to make Mr. Eaves available for deposition, even though Twitter identified him in response to Plaintiff's Interrogatory No. 1, which asked Twitter to: "Identify all persons who have or whom you believe have knowledge of facts relating to the allegations contained in the Amended Complaint." Id. at 4. Twitter should be required to produce Mr. Eaves for deposition. Twitter's argument that another witness (Ned Segal) already testified on the topic of the bonus accrual is not a reason to prevent Plaintiff from deposing Mr. Eaves. Mr. Segal had been terminated by the time the bonus was due to be paid, while Mr. Eaves continued to work for Twitter. Plaintiff expects that Mr. Eaves will have different, and more specific, information regarding the accrual, including who knew about it following Mr. Musk's purchase of the company, as well as discussions about the bonus accrual after Mr. Segal's termination.

### Defendant's Position

Defendant submits that an understanding of the history and factual context of this case is critical for the Court's adjudication of the present discovery disputes. As it is challenging to capture that context within the limited space of this joint letter, Defendant respectfully requests the Court review Defendant's Opposition to Plaintiff's Motion for Class Certification (ECF 84), the transcript of hearing on such motion (ECF 98), and the Order denying certification (ECF 101). Three points are particularly salient: First, Plaintiff seeks to recover a 2022 Performance Bonus Plan ("PBP") bonus that he *repeatedly recommended, both verbally and in writing, not be paid*. As Judge Chhabria stated, Plaintiff's "conduct makes him the worst possible candidate to serve as a litigation representative for the other Twitter employees who didn't get a bonus" and seriously calls into question the viability of his individual claims. ECF 101 at p. 2. Judge Chhabria opined that Plaintiff "has no breach of contract claim" because Plaintiff "was the one that recommended that the company not pay the bonus" at issue in the lawsuit. ECF 98, 4:14-22. Second, it is undisputed that the PBP gave the Company discretion not to fund the plan and pay the bonus. Schobinger Dep., 80:23-81:12, 82:21-83:5, 152:10-17, 179:6-16. Third, Plaintiff bases his breach

of contract and promissory estoppel claims on the theory that the Company made promises to employees that the PBP would be paid at 50% of target.[5] ECF 42-1, FAC ¶¶ 3, 20-21; ECF 98, 15:1-15; ECF 101, p. 1.

**Request No. 2**: This RFP seeks to "boil the ocean" with ESI discovery by seeking the production of "all emails, Slack messages, and other communications by and among Twitter management personnel (including, but not limited to, Ned Segal and Elon Musk) regarding paying employees an annual bonus for 2022." However, any such "internal," non-employee facing communications are simply not relevant to Plaintiff's contract and promissory estoppel claims, which are based exclusively upon alleged statements the Company made *to employees*. Communications between "management personnel" (an ambiguous, impermissibly overbroad phrase) that were *not* shared with or made to employees are not relevant to his claims. Here, Defendant already has produced to Plaintiff *all* of the communications that were made to employees regarding the PBP bonus (not only the communications that Plaintiff himself sent, contrary to Plaintiff's assertion).[6]

The scope of discovery is not unlimited and extends only to documents that are "relevant to any party's claim or defense *and* proportional to the needs of the case[.]" *See* Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also Valentine v. Crocs, Inc.*, 2024 WL 1636716, at *1 (N.D. Cal. 2024) ("Information, even if relevant, must be 'proportional to the needs of the case' to fall within the scope of permissible discovery."). "In evaluating the proportionality of a discovery request, a court should consider the importance of the issues at stake in the action" and "the importance of the discovery in resolving the issues," among other considerations. *Id*. (citing Fed. R. Civ. P. 26(b)(1)). *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse."). Here, even if RFP No. 2 sought relevant documents (which it does not), conducting an expensive, unduly burdensome, overbroad and redundant search of all emails and Slack messages of "management personnel" is simply not proportional to the needs of the case – particularly given its present posture, in which the Court has opined that Plaintiff "has no breach of contract claim."

**Request No. 6**: This RFP seeks "all financial records and other documents regarding the accrual of funds by Twitter towards the payment of employees' bonuses during the period of January 2022 through June 2023." Once again, this RFP is overbroad and seeks documents that are neither

---

[5] Defendant notes that Plaintiff's theory is incorrect because employees were expressly told that all PBP plan rules applied, which included the plan rule giving the Company discretion not to fund the plan and pay any bonus.

[6] Although Defendant's original RFP response limited the documents produced to "non-privileged communications sent to or from Plaintiff's email address and Slack address relating to paying employees an annual bonus for 2022[,]" Defendant in fact has produced all relevant and responsive communications made to employees about the PBP (including, *e.g.*, "All Hands" presentations, slide decks, email communications, and "Frequently Asked Questions") even though such documents were not sent to or from Plaintiff's email or Slack addresses.

Chief Magistrate Judge Donna M. Ryu
December 8, 2024
Page 5

relevant nor proportional to the needs of this case, and Plaintiff in any event mischaracterizes what he has already received in discovery from Defendant.

Defendant already has produced all documents provided to employees regarding the accrual percentage for the PBP, including the August 19, 2022 email to employees Company-wide stating "[b]ased on our Q2 performance, the 2022 total bonus pool is now tracking to 50%." *See* ECF 84-9, X-SCHOBINGER_74-77. Defendant also has produced all Compensation Committee minutes and communications regarding the PBP accrual rate. *See* ECF 109-1, X-SCHOBINGER_53-63, 67-69. In addition, as this Court is aware (*see* ECF 59), the Parties deposed Ned Segal, Defendant's former Chief Financial Officer. Segal testified as to the accrual, including that it is merely "an accounting accrual," or a "liability on the balance sheet that reflected the amount that you expected to pay at the end of the year," not a legal obligation. Segal Dep., 65:16-25; 115:19-116:1.

Given the evidence Plaintiff already has, and the undisputed fact that Plaintiff's breach of contract and promissory estoppel claims are based solely on alleged promises made to employees, not internal accounting accruals, any other internal financial accounting documents –which employees never saw or had access to – are simply duplicative and irrelevant. Plaintiff's argument is that Defendant's accountants took an accrual on the books for payment of PBP bonuses at 50%. But (1) that has nothing to do with whether the PBP bonuses were legally required to be paid, and (2) the fact of that accrual is not in dispute, Defendant has told Plaintiff it is even willing to stipulate to it, and Plaintiff is already in possession of documents reflecting the accrual. Plaintiff argues that he needs additional documents showing the "concreteness" of the accounting accrual and who was involved, but Plaintiff already has documents sufficient to show that, and searches for additional documents would be cumulative and unnecessarily burdensome. Requiring the collection and production of voluminous, and irrelevant, financial information, which would be entirely duplicative of documents and testimony in the evidentiary record, and which would contain other highly confidential financial information having nothing to do with this case, is not proportional to the needs of the case.

**Deposition of Mason Eaves**: Defendant's interrogatory responses did identify Mason Eaves as an individual with knowledge relating to "the terms of the 2022 Global Discretionary Performance Bonus Plan" and "the accounting accrual related to the 2022 Global Discretionary Performance Bonus Plan." But Plaintiff conveniently omits the fact that Defendant *also* designated Ned Segal – Eaves' former boss – on similar topics, *and that Segal already testified on these exact topics* in his deposition on September 5, 2024. No legitimate basis exists for Plaintiff to depose Eaves as to the same issues to which Segal already testified. In addition, as described above, the fact that an accounting accrual was taken at 50% is not in dispute and Defendant is willing to stipulate to that fact. Eaves has no other knowledge relevant to Plaintiff's allegations. Plaintiff's insistence on seeking such cumulative and redundant testimony from Eaves is unduly burdensome, costly and harassing. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules … if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."). The Court should deny this request.

Chief Magistrate Judge Donna M. Ryu
December 8, 2024
Page 6

Respectfully submitted,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
*Counsel for Plaintiff Mark Schobinger*

*/s/ Eric Meckley*
Eric Meckley
*Counsel for Defendant X Corp., on its own behalf and as successor in interest to Defendant Twitter, Inc.*