MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626-7653
Tel:    +1.714.830.0435
Fax:    +1.714.830.0700

Attorneys for Defendant
X CORP. as Successor in Interest to
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT**<br><br>Date:    March 27, 2025<br>Time:    10 a.m.<br>Judge:    Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 27, 2025, at 10:00 a.m. or as soon thereafter as may be heard in Courtroom 4 on the 17th Floor of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant X Corp. as successor in interest to Defendant Twitter, Inc. (hereinafter, "Defendant" or "X"), will, and hereby does, move this Court for an order imposing sanctions pursuant to Fed. R. Civ. P. 11, and 28 U.S.C. Section 1927, and the Court's inherent power, as follows:

1.      Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), for their filing of and continuing to litigate Plaintiff's frivolous Rule 23 motion for class certification and reply brief filings, despite receiving documents that Defendant produced during discovery on July 12, 2024 revealing that Plaintiff's claims lack any merit.  Defendant requests an award all attorneys' fees and costs that it has incurred in connection with such filings.

2.      Defendant requests that the Court order sanctions against Plaintiff's counsel pursuant to 28 U.S.C. Section 1927 ("Section 1927") for Plaintiff's counsel's reckless and bad faith conduct, and unreasonable and vexatious multiplying of this proceeding since receiving documents that Defendant produced during discovery on July 12, 2024, revealing that Plaintiff's claims lack any merit.  Defendant requests an award of all attorneys' fees and costs that it has incurred since July 12, 2024, and that it continues to incur in this case going forward.

3.      Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to the Court's inherent power, based on Plaintiff and his counsel's reckless and bad faith conduct that has undermined the integrity of this judicial proceeding.  Defendant requests an award of all attorneys' fees and costs that it has incurred since July 12, 2024, and that it continues to incur in this case going forward.

4.      Defendant respectfully requests that this action be dismissed with prejudice pursuant to Rule 11 and/or the Court's inherent power, based on Plaintiff's and his counsel's bad faith conduct that has undermined the integrity of this judicial proceeding.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    Defendant's Motion for Sanctions is based on this Notice of Motion, the Memorandum of

2    Points and Authorities, the Declaration of Eric Meckley, the pleadings and briefing on file with

3    the Court and such arguments and admissible evidence as may be presented at the time of

4    hearing.

5    Dated: February 14, 2025                    MORGAN, LEWIS & BOCKIUS LLP

6

7                                               By   */s/ Eric Meckley*
                                                    Eric Meckley
8                                                   Brian D. Berry
                                                    Ashlee N. Cherry
9                                                   Kassia Stephenson

10                                                  Attorneys for Defendant
                                                    X CORP. as Successor in Interest to
11                                                  TWITTER, INC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ........................................................... 3

        A.      Plaintiff Sued Defendant for Defendant's Failure to Pay a Bonus that
                Plaintiff Repeatedly Advised Defendant Not Pay and Said It Did Not Have
                to Pay .......................................................................................................... 3

        B.      Discovery Revealed the Baseless Nature of Plaintiff's Claims. ........................ 4

        C.      Despite the Evidence Gutting His Case, Plaintiff and His Counsel Filed a
                Class Certification Motion, Which the Court Denied and Admonished
                Them For. .................................................................................................... 6

        D.      Plaintiff Insisted on Further Harassing Discovery and Litigating His
                Meritless Individual Claims After the Class Certification Ruling. ...................... 10

        E.      After Defendant Gave Plaintiff Formal Notice of Its Sanctions Motion, He
                Belatedly Moved to Dismiss the Case with Prejudice Pursuant to Rule
                41(a)(2) ....................................................................................................... 11

III.    ARGUMENT ...................................................................................................... 11

        A.      The Court Should Grant Defendant's Sanctions Motion Pursuant to Rule
                11.................................................................................................................. 11

        B.      The Court Should Award Sanctions Pursuant to 28 U.S.C. § 1927. ................... 16

        C.      The Court Should Grant Sanctions Pursuant to the Court's Inherent Power. ........ 18

        D.      The Court Should Order Dismissal of the Action With Prejudice. ...................... 19

        E.      Plaintiff Cannot Avoid Monetary Sanctions By Seeking A Voluntary
                Dismissal. .................................................................................................... 22

IV.     CONCLUSION ................................................................................................... 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990)................................................................................ 22

*Anheuser-Busch, Inc. v. Nat. Bev. Distrib.*,
69 F.3d 337 (9th Cir. 1995)............................................................................ 20, 22

*Anzaldua v. TitanLiner, Inc.*,
2020 WL 1236466 (N.D. Tex. Mar. 13, 2020) ........................................................ 9

*Estate of Blas v. Winkler*,
792 F.2d 858 (9th Cir. 1986).................................................................................. 16

*Business Guides v. Chromatic Enters., Inc.*,
498 U.S. 533 (1991)................................................................................................ 12

*Castranova v. Teknekron Info., Inc.*,
2003 WL 22143793 (N.D. Tex. Aug. 18, 2003) ...................................................... 9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)............................................................................................ 18, 19

*Chavez v. Wal-Mart Stores Inc.*,
2014 WL 12591672 (C.D. Cal. Nov. 14, 2014)..................................................... 24

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991).................................................................................. 20

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)........................................................................................ *passim*

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003)..................................................... 12

*Diaz v. Messer*,
742 F. App'x 250 (9th Cir. 2018) .......................................................................... 16

*Edwards v. Gen. Motors Corp.*,
153 F.3d 242 (5th Cir. 1998).................................................................................. 17

*El-Dada v. Oil Mart Corp.*,
1995 WL 562125 (N.D. Ill. Sept. 20, 1995) .......................................................... 12

*EscapeX IP LLC v. Google LLC*,
No. 22-CV-08711-VC, 2024 WL 557729 (N.D. Cal. Feb. 12, 2024) .................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................................................................... 3, 18

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) .......................................................................... 16, 18, 19

*Gallego v. Hunts & Henriques, CLP*,
    No. 19-CV-07596-VC, 2020 WL 5576134 (N.D. Cal. Sept. 17, 2020) ................................. 15

*Hendrix v. Wayne Napthal & First Family Homes*,
    971 F.2d 398 (9th Cir. 1992) ........................................................................... *passim*

*Insta Ent., Inc. v. Bizzy Ent., Inc.*,
    No. CV 10-632 SVW (EX), 2010 WL 11597511 (C.D. Cal. July 20, 2010) .................. 13, 15

*Ke v. J R Sushi 2 Inc.*,
    2022 WL 1496576 (S.D.N.Y. Feb. 7, 2022), *report and recommendation
    adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) .......................................... 24

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) .......................................................................... 16

*Kendrick v. Zanides*,
    609 F. Supp. 1162 (N.D. Cal. 1985) ............................................................. *passim*

*In re Kunstler*,
    914 F.2d 505 (4th Cir. 1990) ....................................................................... 24

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ..................................................................... 16

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ....................................................................... *passim*

*Lotito v. Knife River Corp.-S.*,
    391 S.W.3d 226 (Tex. App. 2012) ................................................................. 9

*Malone v. U.S. Postal Serv.*,
    833 F.2d 128 (9th Cir. 1987) ....................................................................... 21

*MHC Inv. Co. v. Racom Corp.*,
    323 F.3d 620 (8th Cir. 2003) ....................................................................... 13

*Mireskandari v. Assoc. News., Ltd.*,
    665 F. App'x 570 (9th Cir. 2016) ................................................................. 23

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559 (N.D. Cal. 2008) ................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

*Orian v. Fed'n Int'l des Droits de L'Homme*,
2011 WL 13220921 (C.D. Cal. Dec. 13, 2011) ................................................................ 22

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
339 F. Supp. 2d 1081 (E.D. Cal. 2004), *aff'd*, 457 F.3d 963 (9th Cir. 2006) ...................... 12

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ....................................................................................................... 18

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,
96 F.3d 1372 (Fed. Cir. 1996) ........................................................................................ 12

*Shanklin v. Colum. Mgmt. Adv., L.L.C.*,
2008 WL 4899631 (S.D. Tex. Nov. 12, 2008) ................................................................... 9

*Smith v. Lenches*,
263 F.3d 972 (9th Cir. 2001) .......................................................................................... 24

*Sneller v. City of Bainbridge Island*,
606 F.3d 636 (9th Cir. 2010) .................................................................................... 11, 16

*Song v. Drenberg*,
2021 WL 4846779 (N.D. Cal. Oct. 18, 2021) .................................................................. 23

*Strike 3 Holdings, LLC v. Doe*,
2019 WL 935389 (E.D. Cal. Feb. 26, 2019) ............................................................... 23, 25

*Thomas v. Early Cty.*,
GA, 360 F. App'x 71 (11th Cir. 2010) .............................................................................. 23

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) ........................................................................................ 12

*Truesdell v. So. Cal. Permanente Medical Group*,
293 F.3d 1146 (9th Cir. 2002) ........................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................................... 8

*Zaldivar v. City of Los Angeles*,
780 F.2d 823 (9th Cir. 1986) .......................................................................................... 12

*Zenor v. El Paso Health. Sys., Ltd.*,
176 F.3d 847 (5th Cir. 1999) ............................................................................................ 9

**Statutes**

28 U.S.C. § 1927 ...................................................................................................... *passim*

Federal Rule of Evidence 408 ......................................................................................... 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

Federal Rule of Civil Procedure 11 ......................................................................... *passim*

Federal Rule of Civil Procedure 41 ......................................................................... *passim*

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

iv

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

## I.    INTRODUCTION

During the October 3, 2024, hearing on Plaintiff's motion for class certification, the Court asked Plaintiff's counsel to reflect on a very simple, yet troubling fact – that her client had filed a lawsuit accusing Defendant of breaching a contract by not paying Twitter employees 2022 bonuses despite Plaintiff himself having repeatedly recommended that Twitter **not pay** those very bonuses. *See* Declaration of Eric Meckley ("Meckley Decl."), Ex. 2 (October 3, 2024, Motion for Class Certification Hearing Transcript) (hereinafter "Hr'g Tr."), ECF No. 98, at 6:8-11 (Court:  … "let's take a step back here and just reflect on the fact that your client has filed a lawsuit claiming that it was a breach of contract not to pay him a bonus that he recommended that the company not pay"). Specifically, on July 12, 2024, Defendant produced documents in discovery clearly showing that Plaintiff *repeatedly* recommended that Twitter not pay the challenged bonuses and told Twitter it was not obligated to pay them.  And of course, these documents should have come as no surprise to Plaintiff, because he authored them.

Yet Plaintiff disclosed none of this to the Court in his Complaint or his motion to certify a class.  During the hearing on class certification, the Court observed that "there is a question of whether [Plaintiff] committed perjury in his deposition," and expressed concern that Plaintiff's counsel may "have put him in legal jeopardy."  Hr'g Tr. at 11:19-21, 12:21-25.  The Court also highlighted that "the actual evidence" produced in discovery was "very different from what [Plaintiff] alleged in the complaint," and that these facts "strongly indicate[d] that [Plaintiff] has no breach of contract claim; *that he is going to lose*."[1]  Hr'g Tr. at 4:14-16, 9:13-14 (emphasis added). The Court asked Plaintiff's counsel directly when exactly she had first discovered these documents, and whether she knew of them *before* filing the lawsuit.  *Id.* at 13:1-3.  Plaintiff's counsel responded evasively that she could not recall "exactly when [she] saw what[.]"  *Id.* at 13:4-5.  Ultimately, the Court observed that "99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff" and "the fact that that wasn't done here speaks volumes."  *Id.* at 18:13-23 (emphasis added).

Unlike "99 percent of plaintiff's lawyers," however, Plaintiff's counsel here did neither.

---

[1] Plaintiff's promissory estoppel claim is a dead letter as well.  *See infra* at 8-9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                    DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

Instead, counsel "doubled down" on pursuing meritless claims on behalf of her client *and* a putative class, needlessly driving up Defendant's attorneys' fees and costs by filing a baseless Federal Rule of Civil Procedure ("Rule") 23 motion for class certification. In its October 16, 2024 Order denying class certification, the Court found Plaintiff's explanations and supposed justifications for his contract claim to be "convoluted" and likely "untrue" given the admissions and contemporaneous evidence produced during discovery. ECF No. 101. Thereafter, in full transparency, Defendant previewed at the October 25, 2024 case management conference that it planned to seek sanctions against Plaintiff and his counsel due to their frivolous lawsuit and bad faith conduct. *See* October 25, 2024 Case Management Conference Transcript (hereinafter "CMC Tr."), ECF No. 107, at 2-5.

Yet, rather than taking the Court's statements to heart and dismissing Plaintiff's claims following this Order, Plaintiff and his counsel *still* insisted on prosecuting their meritless campaign for *more than three months* after the Court's Order, and *more than six months* after receiving the documents eviscerating his claims. This included serving additional burdensome discovery and deposition notices (including under Rule 30(b)(6)) and filing a motion to compel discovery – all unjustified actions that multiplied the needless cost and burdens upon Defendant. It was not until January 28, 2025 – five days after Defendant served Plaintiff and his counsel with formal notice of its intention to file its sanctions motion[2] – that they filed their Motion to Dismiss with Prejudice pursuant to Rule 41(a)(2) (the "Dismissal Request") (ECF 115).

This transparent last-ditch attempt to evade sanctions is "too little, too late," and cannot shield them from culpability for the harm they have already caused, as discussed below and in Defendant's contemporaneously filed Response to their Dismissal Request ("Response to Dismissal Request"). Sanctions also provide critical deterrence to curb future abuses by Plaintiff and his counsel. Plaintiff's counsel already has asserted claims to recover 2022 discretionary bonuses on behalf of many other employees in arbitration, and Plaintiff – a key architect of the

---

[2] Per Rule 11, Defendant served an advance copy of this Motion on Plaintiff's counsel on January 23, 2025, more than 21 days before filing this Motion (the "safe harbor" period). Meckley Decl. ¶ 10, Ex. 1. While not required by Rule 11, it included a copy of the supporting Declaration tallying Defendant's attorneys' fees and costs incurred between July 12, 2024 and January 15, 2025. *Id.*

bonus decision he purports to challenge – likely would be a witness or otherwise seek to assist Plaintiff's counsel in such matters.  Defendant thus seeks the following sanctions:

<u>First</u>, Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to Rule 11, for filing and continuing to litigate Plaintiff's frivolous Rule 23 motion for class certification and reply brief filings, including awarding Defendant all attorneys' fees and costs that it has incurred in connection with such filings.

<u>Second</u>, Defendant requests that the Court order sanctions against Plaintiff's counsel pursuant to 28 U.S.C. Section 1927 ("Section 1927") for counsel's unreasonable and vexatious multiplying of this proceeding since receiving the documents that Defendant produced on July 12, 2024 revealing that Plaintiff's claims lack merit, including awarding Defendant all attorneys' fees and costs that it has incurred since that date and that it continues to incur in this case going forward.

<u>Third</u>, Defendant requests that the Court order sanctions against Plaintiff and his counsel and award Defendant all attorneys' fees and costs it has incurred since July 12, 2024 (again including all such amounts that it incurs going forward) pursuant to the Court's inherent power.

<u>Fourth</u>, Defendant asks this Court to dismiss this case with prejudice *in addition* to awarding monetary sanctions.  As discussed below and in Defendant's Response to Dismissal Request, this Court has independent authority to order such a dismissal as a sanction, irrespective of Plaintiff's Dismissal Request.  In either case, Plaintiff and his counsel cannot escape monetary sanctions.

In further support, Defendant contemporaneously submits the Declaration of Eric Meckley setting forth the estimated attorneys' fees and costs Defendant has incurred in defending this action between July 12, 2024 and February 14, 2025 "because of the misconduct at issue."  *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 935 (N.D. Cal. 2023).[3]

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiff Sued Defendant for Defendant's Failure to Pay a Bonus that Plaintiff Repeatedly Advised Defendant Not Pay and Said It Did Not Have to Pay.

Plaintiff filed his Class Action Complaint and Jury Demand against Defendant X Corp.,

---

[3] As this Court noted, "[t]he essential goal in shifting fees is to do rough justice, not to achieve auditing perfection," and courts need not "become green-eyeshade accountants" in doing so.  *Id.* Further supporting documentation can be provided *in camera* at the Court's request.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    successor in interest to Twitter, Inc. ("Defendant" or "X"), on June 20, 2023, which he amended

2    on January 12, 2024 to plead his promissory estoppel claim in the alternative to his breach of

3    contract claim.  ECF Nos. 1, 37, 43.  Plaintiff claims that Defendant promised and then failed to

4    pay discretionary 2022 annual performance bonuses to Twitter employees, including Plaintiff.  ECF

5    No. 43.  According to Plaintiff, he remained employed at Twitter through the first quarter of 2023

6    because he had relied on Defendant's purported promise to pay this bonus.  *See id.*

7         Prior to filing this Action, Plaintiff served as Twitter's Senior Director of Compensation, a

8    high-level position that provided him with material input and insight into the decision-making

9    processes behind the payment of this bonus he alleges he was owed.  *See, e.g.*, ECF No. 87 at 10

10   (Plaintiff described himself as "a higher level employee with insight into decisionmaking being

11   made by the company").  What the Complaint fails to disclose, however, is that in his capacity as

12   Senior Director of Compensation, Plaintiff expressly advised that Twitter *not* pay the 2022 bonus

13   and told decisionmakers that Twitter was *not* obligated to pay it.  *See, e.g.*, ECF Nos. 84-11, 84-17,

14   84-18 (Pl. Dep. Exs. 13, 22, 23).[4]  In fact, Plaintiff *repeatedly* urged that the 2022 bonus need not

15   and should not be paid according to the terms of the bonus plan, which he helped draft.  *See id.*  Yet

16   Plaintiff then chose to sue Defendant for following his own advice and not paying the bonus.

17        **B.**    **Discovery Revealed the Baseless Nature of Plaintiff's Claims.**

18        On July 12, 2024, prior to taking Plaintiff's deposition, Defendant produced documents that

19   contained his own admissions and painted a dramatically different picture than what was alleged in

20   his Complaint.  For example, Defendant produced October 19, 2022 correspondence in which

21   Plaintiff stated to another executive that "[t]he [bonus] plan does not specifically contemplate a

22   change of control" and as a result, it was "really unclear to [Plaintiff] if the bonus plan would permit

23   paying out."  *See* ECF No. 84-10 (Pl. Dep. Ex. 12) (X-SCHOBINGER_00000082).  Defendant also

24   produced correspondence dated November 30, 2022 in which Plaintiff told Twitter's then Head of

25   People Experience, Katie Marcotte, that whether to pay the bonus was a matter of Elon Musk's

26   discretion, and that Plaintiff recommended that the Company *not* pay the bonus.  *See* ECF No. 84-

---

[4] These documents were marked as exhibits during Plaintiff's deposition and were submitted as
exhibits to the Declaration of Brian D. Berry (ECF No. 84-2) in support of Defendant's
Opposition to Plaintiff's Motion for Class Certification.  *See* ECF No. 84.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                      DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) ("The logical outcome suggests we would not pay out FY22 bonuses due to the current environment and the severe underperformance to plan. So you know, that is what I recommended previously (when we were still public) – the plan permitted the cmte to exercise that discretion […] Elon is the sole director at this point and it really comes down to him and only him to make the final decision […].").

Defendant also produced an email between Plaintiff and another Twitter executive dated February 13, 2023, in which Plaintiff asserted that "*exercising discretion and not paying a bonus would be prudent*" and that the "*optics of paying are not good*" given the Company's precarious financial position. ECF No. 84-17 (Pl. Dep. Ex. 22) (X-SCHOBINGER_00000133) (emphasis added). As an attachment to that email, Plaintiff circulated a "white paper" that he had prepared to Twitter executives explaining that the bonus plan allowed Twitter the absolute discretion not to pay the bonus. *See* ECF No. 84-18 (Pl. Dep. Ex. 23) (X-SCHOBINGER_00000125-131). Former Twitter Human Resources manager Katie Marcotte's August 23, 2024, deposition testimony corroborated Plaintiff's admissions. She testified that Plaintiff himself had told Elon Musk in a January 2023 meeting that Twitter should not pay the bonus. *See* ECF No. 84-6 (Marcotte Dep. at 90:20-91:12) ("I recall Mark Schobinger saying out loud to the group that we should not pay out – that Elon had no obligation to pay out performance bonus plans.").

Despite this evidence, Plaintiff and his counsel pushed forward with this litigation. The Company deposed Plaintiff on July 15, 2024 and August 2, 2024, and, on September 5, 2024, deposed Twitter's former Chief Financial Officer, Ned Segal, who Plaintiff alleged in the Complaint had made the promises about paying out the annual performance bonus. Neither Plaintiff's nor Segal's deposition testimony contradicted the foregoing documentary evidence and admissions. Rather, Plaintiff and Segal admitted that no one, including Segal, promised that bonuses would be paid separate and apart from, or independent of, the full terms and conditions of the discretionary bonus plan, thus completely undercutting the merits of Plaintiff's claims. *See* ECF No. 84-7 (Pl. Dep. at 99:25-100:23, 103:12-22); ECF No. 84-3 (Segal Dep. at 128:3-18).

/ / /

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

**C.**    **Despite the Evidence Gutting His Case, Plaintiff and His Counsel Filed a Class Certification Motion, Which the Court Denied and Admonished Them For.**

Turning a blind eye to this evidence, on August 23, 2024, Plaintiff filed his motion to certify a nationwide class, brazenly challenging "Twitter's refusal to pay employees their 2022 bonus" and neglecting to mention his own endorsement of and material role in Twitter's decision not to pay this bonus.  ECF No. 75.  Defendant filed its Opposition to Plaintiff's motion on September 19, 2024, highlighting his admissions and repeated recommendations that Twitter not pay the bonus, among its many other deficiencies.  ECF 84.  Plaintiff filed his reply brief on September 23, 2024, arguing that Plaintiff's own recommendations (*i.e.*, as the then-Senior Director of Compensation) about the bonus plan were somehow "not relevant" and that, "regardless of what he said, the company had promised to pay the bonus, and as an employee he expected it to be paid."  ECF 87.

On October 3, 2024, the Court heard Plaintiff's class certification motion.  ECF 98.  At this hearing, the Court questioned Plaintiff's counsel about Plaintiff's Complaint allegations and his contradictory admissions in discovery.  *See* Hr'g Tr.  Plaintiff confirmed that Twitter's alleged promises to pay a 2022 bonus occurred around May and August 2022 and that, *thereafter*, he sent numerous communications recommending that the bonus *not* be paid.  Hr'g Tr. 2:23-3:4, 3:10-19. The Court specifically observed that Plaintiff's admissions conflicted with his Complaint allegations, underscoring that "the *actual* evidence is very different from what [Plaintiff] alleged in the complaint[.]" Hr'g Tr. 9:13-14 (emphasis added); Hr'g Tr. 3:10-22.  The Court also opined that these facts directly undermined Plaintiff's typicality and adequacy to represent the purported class. It emphasized that Plaintiff "was the one that recommended that the company not pay the bonus," and that the factual record "strongly indicate[d] that *[Plaintiff] has no breach of contract claim; that he is going to lose*."  Hr'g Tr. 4:3-16, 21-22 (emphasis added); *see also, e.g., id.* at 9:10-10:7.

The Court then asked Plaintiff's counsel to "take a step back here and just reflect on the fact that [her] client has filed a lawsuit claiming that it was a breach of contract not to pay him a bonus *that he recommended that the company not pay*."  Hr'g Tr. 6:8-10 (emphasis added).  The Court highlighted the audacity of this lawsuit: "[Plaintiff] recommended that the company not pay the bonus.  The company did not pay the bonus, and now your client is suing for breach of contract on

the ground that he didn't get his bonus." Hr'g Tr. 6:11-14; *id*. 6:23-7:2 ("Your client claims that he was promised a bonus in May-August of '22. Your client recommended *several times after that* that the company should not pay the bonus, and now your client is suing claiming that the company breached the May-August contract not to give him the bonus.") (emphasis added).

Plaintiff's counsel claimed that there was additional context that the Court was missing. She asserted, for example, that Plaintiff made these repeated incriminating statements simply because "[h]e was asked, [to] put together different scenarios so that Mr. Musk can make the decision of what to do; and he responded to the directive he was given to do that." Hr'g Tr. 10:17-20. But the Court expressed its profound skepticism (at best), stating that, "there is a question of whether [Plaintiff] committed perjury in his deposition, frankly," and that "I think your client might need to read his deposition transcript carefully and *wonder if he is in legal jeopardy for what he said in that deposition*. You know, *I seriously wonder if, perhaps, you have put him in legal jeopardy*." Hr'g Tr. 11:19-21, 12:21-25 (emphasis added). This skepticism was entirely justified. It is undisputed that Plaintiff independently and purposely recommended *not* paying 2022 bonuses even before the acquisition, and well before any purported "directive" (if any) to "put together different scenarios" for Musk. *See* ECF No. 84-11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) (Plaintiff's statement in Nov. 30, 2022 communication to then Head of People Experience Marcotte stating: "The logical outcome suggests *we would not pay out FY22 bonuses* due to the current environment and the severe underperformance to plan. So you know, *that is what I recommended previously (when we were still public)*…") (emphasis added).

The Court also asked Plaintiff's counsel when exactly she had discovered these documents and, specifically, if she knew about them before she filed the lawsuit.[5] In response, Plaintiff's counsel evasively said she could not recall "exactly when [she] saw what[.]" Hr'g Tr. 13:1-5. The Court expressed its view that "*99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff*" and that "*the fact that that wasn't done here speaks volumes*." Hr'g Tr. 18:13-23 (emphasis added).

---

[5] Of course, since Plaintiff wrote these emails, Slack messages, and "white paper" himself, he was (or should have been) well-aware of these documents and his own repeated prior representations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

On October 16, 2024, the Court issued its Order Denying Motion for Class Certification, which was entirely consistent with its statements at the oral argument.  ECF 101.  The Order noted that "interesting facts ha[d] been revealed in discovery," highlighting several of Plaintiff's communications.[6]  The Court concluded in relevant part that these facts conclusively showed why Plaintiff could not prove adequacy or typicality.  *Id.* at 2.  Moreover, while not formally ruling on the merits, the Court pointedly noted its dim view of the viability of Plaintiff's claims, including his baseless assertion that he was just doing what he was told and did not mean anything he said:

> To describe these facts is to show why Schobinger is not an adequate class representative, and why his claims are not typical of the claims of the members of the proposed class.  ***It would be impossible for him to get on the witness stand and adequately represent the interests of Twitter employees who claim that the company wrongfully withheld the bonus.  He might fit nicely into this case as a defendant, but he cannot possibly fit as a named plaintiff***.

> At his deposition, Schobinger offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it.  ***It seems likely that Schobinger's explanation is untrue.***  But even if he is telling the truth, that's beside the point for purposes of this motion.  Because ***even if he is telling the truth, his conduct makes him the worst possible candidate to serve as a litigation representative for the other Twitter employees who didn't get a bonus***.

*Id.* at 2 (emphasis added).

The Court's assessment of the merits, while not binding, nevertheless is highly probative given that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' …. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citations omitted).

Other aspects of the Court's Order also confirm the baselessness of Plaintiff's claims and

---

[6] The Court specifically called out the following documents in particular:

In November 2022—several months after Twitter allegedly made the promises that Schobinger allegedly relied on— Schobinger sent a message to Twitter's "Head of People Experience."  In the message, Schobinger asserted that whether to pay the bonus was a matter of Elon Musk's discretion.  Schobinger mentioned in this message that he had recommended that the company not pay the bonus. And in February 2023, Schobinger sent other Twitter executives a "white paper" discussing the issue of whether to pay the bonus.  In this document, Schobinger said: "…I believe exercising discretion and not paying a bonus would be prudent …"  There is also evidence that Schobinger told Musk directly, in a January 2023 meeting, that Twitter shouldn't pay the bonus. ECF 101, at 1-2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    certification motion.  It concluded that Texas law "obviously applies" to his claims.  *See id.*  As X

2    explained in its Opposition to Plaintiff's class certification motion (ECF 84 at 3), his claims clearly

3    fail under Texas law, where continued service by an "at will" employee is not valid consideration

4    to support a breach of contract claim as a matter of law.  *See, e.g.*, *Shanklin v. Colum. Mgmt. Adv.,*

5    *L.L.C.*, 2008 WL 4899631 at *12 (S.D. Tex. Nov. 12, 2008) ("[W]hen an employment contract

6    does not guarantee a bonus in a fixed, nondiscretionary amount, and the bonus offered is an

7    incentive to encourage the employee to perform in accordance with the previously existing contract

8    of employment, the promise to pay a bonus is unenforceable for want of sufficient consideration,

9    since the employee is only giving the same service it has already contracted with the employer to

10    render."); *Castranova v. Teknekron Info., Inc.*, 2003 WL 22143793 at *2 (N.D. Tex. Aug. 18, 2003)

11    ("[A] promise to pay a bonus is unenforceable for want of sufficient consideration since the

12    employee is only giving the same service he has already contracted with the employer to render.").

13        As also explained in X's Opposition, Plaintiff's promissory estoppel claim is not cognizable

14    under Texas law either, and even if it were, the Court's comments and Order make clear that there

15    is *no* plausible way he could prove his own foreseeable and actual substantial detrimental reliance

16    on any of the purported bonus "promises" allegedly made.  ECF 84 at 14 & 14 n. 20; *Lotito v. Knife*

17    *River Corp.-S.,* 391 S.W.3d 226, 227 (Tex. App. 2012) ("promissory estoppel is not an independent

18    cause of action in Texas in an employment context.") (citing cases); *id.* at 228 (concurrence noting

19    that general promissory estoppel elements include "foreseeability of reliance on the promise by the

20    promisor" and "substantial detrimental reliance by the promisee"); *Anzaldua v. TitanLiner, Inc.,*

21    2020 WL 1236466 at *5 (N.D. Tex. Mar. 13, 2020) (noting "significant disagreement among Texas

22    courts as to whether promissory estoppel is available to plaintiffs in the employment context.")

23    (citing *Zenor v. El Paso Health. Sys., Ltd.,* 176 F.3d 847, 864 (5th Cir. 1999)); ECF 101 at 1-3.

24        The Court's Order also denied Plaintiff's counsel's request to substitute a different class

25    representative for "a variety of reasons," principally because: "Most importantly, the fact that

26    Schobinger's lawyer thought it was a good idea to file a motion for class certification in the face of

27    this evidence (as opposed to dropping the case or seeking to substitute another plaintiff immediately

28    upon discovering it) shows that she is totally unqualified to serve as class counsel."  ECF 101, at 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                    DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

**D.      Plaintiff Insisted on Further Harassing Discovery and Litigating His Meritless Individual Claims After the Class Certification Ruling.**

During the parties' October 25, 2024 case management conference, Defendant previewed that it planned to file this Motion for sanctions against Plaintiff and his counsel because of their frivolous claims and bad faith conduct.  *See* October 25, 2024 Case Management Conference Transcript (hereinafter "CMC Tr."), ECF No. 107, at 2-5.  In response, the Court confirmed its assumption that Defendant would be seeking *both* monetary sanctions against Plaintiff's counsel and Plaintiff himself, *and* dismissal of the action as a sanction.  *See id.* at 4:17-25 (The Court: "[S]o, the sanction would be asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself.  Would you also be seeking dismissal of the action as a sanction?" Mr. Meckley:  "It would be dismissal with prejudice as the – the action, yeah."  The Court:  "Yeah.  Okay.  Yeah.  That's – that sounds fine.").[7]  Yet Plaintiff and his counsel *still* insisted on prosecuting this case and served harassing eleventh-hour discovery, including 30(b)(6) and fact witness deposition notices, and ESI discovery.

On December 9, 2024, the parties filed a joint discovery letter upon Plaintiff's request to address these last-minute discovery requests.  On January 9, 2025, Chief Magistrate Judge Donna M. Ryu noted that the Court had not yet ruled on the merits, but that its assessment of the class certification motion "bears on the proportionality of the disputed discovery."  ECF 114.  Notably, Judge Ryu denied Plaintiff's request for further ESI searches of "emails, Slack messages, and other communications by and among Twitter management personnel," finding such discovery "not proportional" and that "Schobinger's individual claims are weak while the scope of [the Request] is broad."  *Id.*  Judge Ryu further concluded that the request "ha[d] the feel of a last-ditch fishing expedition, the burden of which outweighs the likely benefit."  *Id.*  Importantly, this sanctions motion and Plaintiff's frivolous continued prosecution of this case were not before Judge Ryu.[8]

---

[7] The Court further stated that Plaintiff would have the opportunity to submit evidence "in support of the argument that the lawsuit was not objectively baseless from the start and that it wasn't […] frivolous to continue the lawsuit upon the discovery of these documents."  *Id.* at 4:1-13.

[8] Up until Plaintiff's Dismissal Request, the parties had been meeting and conferring regarding a stipulation and deposition dates for the fact witness and Rule 30(b)(6) depositions.  *See id.* Defendant's good faith cooperation in discovery was subject to its position that Plaintiff's claims are entirely frivolous, and ultimately should not be subject to discovery or proceed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

E.    **After Defendant Gave Plaintiff Formal Notice of Its Sanctions Motion, He Belatedly Moved to Dismiss the Case with Prejudice Pursuant to Rule 41(a)(2).**

As noted, on January 23, 2025, Defendant sent Plaintiff, via his counsel, formal notice pursuant to Rule 11(c)(2) of its intention to file this sanctions Motion, including copies of this Motion[9] and (while not required) the supporting Meckley declaration providing an itemization of the estimated attorneys' fees and costs incurred up to that point.  Meckley Decl. ¶ 10, Ex. 1.  A mere five days later, Plaintiff and his counsel filed their Dismissal Request in a blatant attempt to dodge sanctions.  Yet they failed to explain why they continued to pursue this litigation for more than three months *after* this Court's warnings, reprimands, and certification denial in October 2024.  They also downplayed the advanced stage of these proceedings and the significant burdens and costs imposed on Defendant, stating that only "some discovery has occurred" and that "the litigation has not reached such an advanced stage as to make voluntary dismissal unreasonable."[10]

## III.    ARGUMENT

A.    **The Court Should Grant Defendant's Sanctions Motion Pursuant to Rule 11.**

Rule 11 provides that when an attorney presents "a pleading, written motion, or other paper" to a court, the attorney "certifies that to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances […] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law" and "the factual contentions have evidentiary support."  Rule 11(b)(2), (b)(3).  "Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or

---

[9] Plaintiff had not then asked the Court to voluntarily dismiss this action, and thus this Motion differs slightly from the version sent at that time but is the same in all material respects.

[10] Adding insult to injury, and as detailed further in Defendant's Response to Dismissal Request, Plaintiff's counsel tries to mislead the Court *again* to escape sanctions by selectively revealing in the Dismissal Request certain *confidential settlement communications* that she herself expressly agreed with Defendant's counsel were privileged pursuant to Federal Rule of Evidence 408.  *See* Dismissal Req. at 1:16-20; Declaration of Eric Meckley in Support of Resp. to Dismissal Req. ("Meckley Resp. Decl.").  She suggests that *Defendant* somehow acted unreasonably here, while omitting key facts – as she did in the Complaint and class certification motion – showing that she and Plaintiff essentially stonewalled Defendant, and still have not offered to pay *any* of the substantial attorneys' fees that it incurred due to their misconduct.  Plaintiff's counsel's dissembling and blatant violation of the parties' confidentiality agreement are further examples of the pattern of vexatious bad faith conduct that counsel and her client have demonstrated throughout this litigation.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

party that brings a claim for an improper purpose or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638–39 (9th Cir. 2010); Rule 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). Representations that are "legally frivolous" or "factually misleading" are sanctionable. *See Truesdell v. So. Cal. Permanente Medical Group*, 293 F.3d 1146, 1153 (9th Cir. 2002). In the Ninth Circuit, a frivolous filing is one "that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

"Rule 11 requires attorneys to conduct a reasonable inquiry into the law and facts before signing pleadings." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 339 F. Supp. 2d 1081, 1089 (E.D. Cal. 2004), *aff'd*, 457 F.3d 963 (9th Cir. 2006) (citing *Business Guides v. Chromatic Enters., Inc.*, 498 U.S. 533, 542 (1991)); *see* Rule 11(b). "Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990). An attorney's insufficient diligence and blind reliance on a client's statements does not constitute a reasonable inquiry and can support sanctions. *See Townsend*, 929 F.2d at 1362 ("reasonable and competent inquiry" required); *Hendrix v. Wayne Napthal & First Family Homes*, 971 F.2d 398, 399-400 (9th Cir. 1992) (finding that "blind reliance on a lay client's ability to decide the legal question of domicile does not constitute a reasonable inquiry under Rule 11," and that the party's admissions at his deposition indicated that a "basic interview [by his counsel] … should have elicited the facts" contradicting his material assertions); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (finding that, if the plaintiff's attorneys conducted no investigation of the factual and legal merits of plaintiff's claims other than to rely on plaintiff's lay opinion, "it would be difficult to avoid the conclusion that sanctions are appropriate"); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2003 WL 22227956 at *12 (S.D.N.Y. Sept. 26, 2003) (collecting cases); *El-Dada v. Oil Mart Corp.*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1995 WL 562125, at *1 (N.D. Ill. Sept. 20, 1995) ("***Counsel cannot blindly accept statements that are implausible without attempting some corroboration***.") (emphasis added).

Likewise, insistence on asserting claims that are not "justifiable in law or in fact" supports the imposition of Rule 11 sanctions. *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 627 (8th Cir. 2003) ("[E]ven those attorneys with the highest credentials can violate Rule 11 by pursuing claims and defenses that do not have merit, and counsel should not put forth frivolous claims before the court."); *Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985) ("Rule 11 requires that [lawyers] have in hand sufficient credible information (as opposed to opinions or conclusions) [...] to enable *them* to form a reasonable belief that the allegations to which they put their signature are well-grounded in fact."). Importantly, a filing that might have been appropriate if made earlier in a case can be frivolous and sanctionable if made *after* subsequent information has been learned: "[O]nce an attorney is on notice that the allegations may not have evidentiary support, it must make some effort at a further investigation and cannot persist in asserting allegations that do not have factual support in later pleadings." *Insta Ent., Inc. v. Bizzy Ent., Inc.*, No. CV 10-632 SVW (EX), 2010 WL 11597511, at *3 (C.D. Cal. July 20, 2010) (citing Comm. Notes to Amend's. to Fed. R. Civ. P. (1993), 146 F.R.D. 401, 585-86) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.")); *see also Kendrick*, 609 F. Supp. at 1172 (alleging facts in a complaint based on the recollection of someone, "without more, do[es] not satisfy the duty of inquiry, particularly where at the time counsel has in hand documents refuting those allegations").

Here, sanctions are appropriate against both Plaintiff and his counsel for filing a frivolous Rule 23 motion for class certification and his reply briefing. They both knew before those filings (and indeed, by July 12, 2024) that there was *no* good faith way Plaintiff could seek to represent the putative class, irrespective of whether he believed that he had been "promised" a bonus – assertions that the Court found potentially perjurious. *See supra* at 4-5. They also knew or should have known that Plaintiff's claims were baseless given his many communications documenting his

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

vehement opposition to paying bonuses.  *See Hendrix*, 971 F.2d at 399–400 ("in light of the fact that the client freely admitted facts inconsistent with a Florida domicile in his deposition, the court reasoned that '[a] basic interview with [the client] ... should have elicited the facts' that his principal residence had been in California and that he was in the process of selling his Florida residence.").  And, as his counsel also knew or should have known, those claims are directly contrary to applicable Texas law (as explained*, inter alia*, in Defendant's Opposition and earlier motion to dismiss, ECF Nos. 16, 84).  There is no plausible good faith way Plaintiff or his counsel could have believed that enforceable promises were made to him, much less that he foreseeably, actually, and substantially relied on them to his detriment.  *See supra* at 4-5.

By filing class certification motion and reply, Plaintiff's counsel certified that those filings had "evidentiary support" and were warranted by existing law or a good faith non-frivolous extension thereof.  Yet both filings hid the ball from the Court and advanced misleading claims that are blatantly contradicted by the evidence and applicable law, including the key documents produced on July 12, 2024 demonstrating that Plaintiff himself advised that Twitter *should not* and *need not* pay the very bonuses he claims were promised.  *See, e.g.*, ECF 75.  After Defendant pointed out Plaintiff's admissions in its opposition, he attempted to downplay these statements, arguing that his own "opinions" about the payment of the bonus – even as Twitter's then-Senior Director of Compensation – somehow were "not relevant" *even to his own personal claims* and that, "*regardless of what he said*, the company had promised to pay the bonus, and as an employee he expected it to be paid."  ECF 87 (emphasis added).  These arguments are completely frivolous. It is difficult to escape the conclusion that Plaintiff and his counsel consciously chose not to be forthcoming to the Court, and simply inconceivable that Plaintiff genuinely could have expected to receive payment for this bonus when he not only had direct "*insight* into decisionmaking" of the Company (ECF 87), but also direct *influence* on Twitter's ultimate decision not to pay the bonus.

Plaintiff's counsel's conduct is a textbook example of an attorney barreling ahead with groundless litigation even after learning facts that gut their claims and render them frivolous, as this Court's statements reflect.  *See* Hr'g Tr. 18:13-23 ("99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

find a different Plaintiff" and that "the fact that that wasn't done here speaks volumes.").  Ninth Circuit case law makes clear that such conduct fails to satisfy the "reasonable inquiry" standard that counsel is required to meet when preparing and certifying the filing of motions.  *See supra* at 12-13; *Insta Ent.*, 2010 WL 11597511, at *3 ("[O]nce an attorney is on notice that the allegations may not have evidentiary support, it must make some effort at a further investigation and cannot persist in asserting allegations that do not have factual support in later pleadings.").

Defendant respectfully submits that the Court's comments during the hearing on class certification and in its Order denying class certification further confirm these conclusions, particularly its recognition that:  "the fact that [Plaintiff's] lawyer thought it was a good idea to file a motion for class certification in the face of this evidence (as opposed to dropping the case or seeking to substitute another plaintiff immediately upon discovering it) shows that she is totally unqualified to serve as class counsel."  ECF 101, at 2; *see also, e.g.*, Hr'g Tr. at 2:23-3:4, 3:10-22, 4:3-11, 6:8-14, 6:23-7:2, 21-22, 9:13-14, 11:19-21, 12:21-25.  In denying class certification, the Court likewise found that Plaintiff had "offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it," which the Court deemed was very likely "untrue," potentially constituting "perjury in his deposition," and placing him in "legal jeopardy." ECF 101, at 2; Hr'g Tr. at 11:19-21, 12:21-25.

Finally, Plaintiff's motion for class certification and reply advanced legal contentions that are clearly unwarranted by existing law or any good faith extension thereof.  Because Plaintiff was, at all relevant times, a Texas resident and employee, the Court's Order denying class certification found that Plaintiff had "invoke[d] California law even though Texas law *obviously* applies to his claims."  ECF No. 101, at 3 (emphasis added).  And as the Court's Order and comments at oral argument make plain, Plaintiff could not assert good faith non-frivolous breach of contract or promissory estoppel claims, irrespective of the applicable law, given his high-level position and integral role in causing the bonuses at issue *not* to be paid.

Defendant therefore requests that the Court impose Rule 11 sanctions and award Defendant its attorneys' fees and costs that resulted from Defendant having to defend against Plaintiff's frivolous motion to certify a class.  *See*, *e.g.*, *Gallego v. Hunts & Henriques, CLP*, No. 19-CV-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

07596-VC, 2020 WL 5576134, at *1–2 (N.D. Cal. Sept. 17, 2020) (granting Rule 11 motion for sanctions against counsel where counsel "made no effort [to] support his allegations as the lawsuit progressed" and ordering Rule 11 sanctions in the form of payment to opposing counsel of their attorneys' fees and costs); *Kendrick*, 609 F. Supp. at 1173 (ordering plaintiff and his attorneys "to pay all of the reasonable expenses, including reasonable attorneys' fees, incurred by defendants" as a result of the sanctionable conduct, and finding that "[s]uch an order is not only within the scope of the Court's discretion under Rule 11, but is also supported by other authority").

Monetary sanctions also are important to deter future bad faith vexatious conduct by Plaintiff and his counsel, including because Plaintiff's counsel has filed arbitration demands against Defendant on behalf of several former employees asserting claims for the 2022 discretionary bonus – actions in which Plaintiff likely would serve as a witness or otherwise assist Plaintiff's counsel. Fed. R. Civ. P. 11(c)(4) ("The sanction may include … if imposed on motion and warranted *for effective deterrence*, an order directing payment to the movant of part or all of the *reasonable attorney's fees and other expenses directly resulting from the violation*.") (emphasis added).

## B.      The Court Should Award Sanctions Pursuant to 28 U.S.C. § 1927.

When an attorney unreasonably or vexatiously multiplies the proceedings, courts may require the attorney to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *EscapeX IP LLC v. Google LLC*, No. 22-CV-08711-VC, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) (citing 28 U.S.C. § 1927); *see also Sneller*, 606 F.3d at 640 (noting that § 1927 authorizes sanctions upon counsel). A court may impose sanctions under § 1927 where it finds that the attorney's conduct was reckless *or* in bad faith. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (finding that recklessness suffices for § 1927 sanctions); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (same). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument[.]" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citing *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)).

Sanctions pursuant to § 1927 are warranted given Plaintiff's reckless *and* bad faith conduct in this litigation, *either* of which suffices to warrant sanctions. *See Diaz v. Messer*, 742 F. App'x

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                                                 DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

250, 251 (9th Cir. 2018) (affirming the district court's imposition of sanctions pursuant to § 1927 against counsel that advanced arguments in a "slipshod and misleading manner" finding that the "quality of these arguments was 'a gross deviation from the standard of' legal arguments one would expect under these circumstances").  Here, both Plaintiff's personal claims and his unsuccessful efforts to represent a purported class – should have ended *at the latest* shortly after July 12, 2024, when his counsel received documents from X demonstrating that there was no case to be prosecuted.  The documents produced should not have been news to Plaintiff, who would have been aware of his own repeated prior representations that Twitter had complete discretion not to fund the bonus plan and that Twitter should not pay the bonus.  Moreover, Plaintiff would have communicated those critical facts to his counsel had counsel performed any bare minimum reasonable investigation.  *See Hendrix*, 971 F.2d at 399–400.  Instead, as detailed above, Plaintiff's counsel forged ahead, ignoring a veritable mountain of "inconvenient" facts and law that nullified Plaintiff's class certification arguments, as well as his substantive personal claims.  In doing so, Plaintiff's counsel caused the Court to "seriously wonder if, perhaps, you have put him in legal jeopardy" regarding his deposition testimony regarding the substance of his claims, and to deem counsel "totally unqualified to serve as class counsel."  Hr'g Tr. 12:24-25; ECF 101, at 2.

Plaintiff's counsel then compounded these wrongs, and continued to act recklessly and in bad faith, by insisting on additional burdensome last-minute discovery, despite the Court's warning that that Plaintiff likely had no breach of contract claim and likely would lose on the merits.  *See* Hr'g Tr. 4:14-16; ECF 101.  Even Judge Ryu opined that Plaintiff's recent discovery demands "ha[d] the feel of a last-ditch fishing expedition," and denied Plaintiff's request for additional ESI searches because they were not proportional given that "Schobinger's individual claims are weak while the scope of [the Request] is broad."  ECF 114.

Courts have awarded sanctions under § 1927 in similar circumstances where a party "deliberately kept her meritless case alive for no purpose other than to force [defendant] to settle or to defend it."  *See*, *e.g.*, *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also Kendrick*, 609 F. Supp. at 1173 (finding that "the maintenance of this action *in the face of the facts known or available to [plaintiff] both before and after the filing of defendants' motions*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927") (emphasis added). Plaintiff's counsel thus should be sanctioned for vexatiously and unreasonably multiplying these proceedings long after they should have ended. Defendant should at a minimum be awarded all of its attorneys' fees and costs incurred since July 12, 2024, including all attorneys' fees and costs incurred in connection with the following: (1) taking Plaintiff's and former CFO Ned Segal's depositions; (2) responding to and arguing Plaintiff's Rule 23 motion; (3) negotiating, addressing and responding to Plaintiff's counsel's bad faith fishing expedition discovery requests; (4) preparing and litigating this Motion; and (5) any and all other time spent to bring this case to final conclusion, even if after a successful resolution of this Motion. *See Kendrick*, 609 F. Supp. at 1173 ("[T]he maintenance of this action in the face of the facts known or available to Kendrick both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927.").

### C.    The Court Should Grant Sanctions Pursuant to the Court's Inherent Power.

Courts also have inherent power to impose monetary and other sanctions against a party and/or its counsel to control the conduct of the proceedings, protect the "orderly administration of justice," and maintain "the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980) (citations omitted). A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "While a court should ordinarily rely on 28 U.S.C. § 1927 and the Federal Rules of Civil Procedure to impose sanctions, if neither is 'up to the task, the court may safely rely on its inherent power.'" *In re Facebook,* 655 F. Supp. 3d at 926 (citing *Chambers*, 501 U.S. at 50); *see also Fink*, 239 F.3d at 994 (holding that it well settled that "the district court may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927."). Indeed, where misconduct could potentially be sanctioned under Rule 11 but is "intertwined within conduct that only the inherent power [can] address," sanctions under the court's inherent powers are appropriate. *In re Facebook*, 655 F. Supp. 3d at 926 (citing *Chambers*, 501 U.S. at 51).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18                    DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

Monetary sanctions under the court's inherent powers are available "if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink*, 239 F.3d at 994. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* For example, an "attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.*

Here, as detailed above, Plaintiff's and his counsel's filings and continued prosecution of this action after July 12, 2024, and in particular after the October 3, 2024 oral argument and October 16, 2024 Order on Plaintiff's class certification motion, check all of these sanctions boxes – reckless misstatements of law and fact, frivolousness, harassment, and an improper purpose. *See supra* at 4-10. Both Plaintiff and his counsel have prevented "the orderly and expeditious disposition" of this case through their reckless and bad faith conduct, including by disregarding dispositive facts and law to prolong this meritless action. As a result, the Court should award Defendant its attorneys' fees and costs that have resulted from its need to defend against Plaintiff's frivolous claims from and after July 12, 2024. *See Kendrick*, 609 F. Supp. at 1173 (ordering plaintiff and his attorneys "to pay *all of the reasonable expenses, including reasonable attorneys' fees, incurred by defendants in the defense of this action*" and finding that "[t]he Court has inherent power to award attorneys' fees to the prevailing party in an action, such as the one before the Court, brought in bad faith, vexatiously, wantonly and for oppressive reasons") (emphasis added); *Chambers*, 501 U.S. at 50–51 ("Much of the bad-faith conduct by Chambers, however, was beyond the reach of the Rules [*e.g.*, Rule 11]; his entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address.").

### D. The Court Should Order Dismissal of the Action With Prejudice.

Irrespective of Plaintiff's Dismissal Request,[11] this Court has independent authority to

---

[11] Defendant addresses the Court's authority to order dismissal as a sanction despite Plaintiff's Dismissal Request seeking voluntary dismissal with prejudice under Rule 41(a)(2) in a last-ditch effort to avoid sanctions. As discussed below and more fully in Defendant's Response to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    dismiss this case with prejudice as a sanction under either Rule 11 or the Court's inherent powers.

2    *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488-89 (9th Cir. 1991) (discussing a party's

3    "falsifying a deposition," and stating that "Fed.R.Civ.P. 11, as well as the court's inherent powers,

4    can be called upon to redress such mendacity" through a dismissal sanction).  "It is well settled that

5    dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that

6    undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action

7    when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the

8    orderly administration of justice.'"  *Anheuser-Busch, Inc. v. Nat. Bev. Distrib.*, 69 F.3d 337, 348

9    (9th Cir. 1995) (citation omitted); *see Combs*, 927 F.2d at 488–89.  Courts consider the following

10   five factors when determining whether dismissal of an action is an appropriate sanction: "(1) the

11   public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets;

12   (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of

13   cases on their merits; and (5) the availability of less drastic sanctions."  *Leon v. IDX Sys. Corp.*,

14   464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser-Busch, Inc.*, 69 F.3d at 348).

15        Here, the above factual record abundantly establishes that both Plaintiff and his counsel

16   have acted in bad faith and engaged in deceptive practices that have undermined the integrity of

17   this judicial proceeding.  As but one example, the Court raised very serious accusations of potential

18   "perjury" against Plaintiff based on his deposition testimony, and "seriously wonder[ed] if"

19   Plaintiff's counsel put his own client in such "legal jeopardy."  Hr'g Tr. at 11:19-21, 12:21-25.  In

20   *Combs*, the Ninth Circuit held that "[d]ismissal is an appropriate sanction for falsifying a

21   deposition" under either Rule 11 or the court's inherent powers, and affirmed the district court's

22   use of the dismissal sanction after finding that the plaintiff, "whether or not in collusion with

23   counsel," had "attempted to deceive the district court on material matters before it."  927 F.2d at

24   488 ("[f]alsifying evidence is grounds for the imposition of the sanction of dismissal").

25        The *Anheuser-Busch* factors also warrant dismissal pursuant to the Court's inherent power:

26        <u>First</u>, the public's interest in expeditious resolution of litigation is satisfied through a

27   _____

28   Dismissal Request, Plaintiff and her counsel cannot shed their responsibility for Defendant's
     attorneys' fees and costs via a dismissal with prejudice, regardless of whether that dismissal is
     ordered as a sanction, or as a Rule 41(a)(2) dismissal with monetary conditions attached.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                          DEFENDANT'S MOTION FOR SANCTIONS
                            CASE NO. 3:23-cv-03007-VC

dismissal with prejudice, which is more efficient than allowing the case to proceed to the dispositive motion stage – particularly given the Court's finding that Plaintiff is most likely "going to lose" and that Texas law applies to his claims.  *See* Hr'g Tr. 4:14-16; ECF No. 101 at 3.  Plaintiff and her counsel implicitly admit as much in their Dismissal Request.  ECF 115 at 1:13-15 ("the Court made clear its belief that Plaintiff should not pursue [his] claim" on October 3 and 25, 2024).

<u>Second</u>, the Court's need to manage its docket is likewise satisfied.  A dismissal now is much more efficient than prolonging this case and allowing it to remain on the Court's docket indefinitely, when the most likely result is dismissal with prejudice.  Further, dismissal with prejudice appropriately admonishes Plaintiff and his counsel and incentivizes them going forward.

<u>Third</u>, because Plaintiff and his counsel have acted in bad faith, a showing of prejudice is unnecessary.  *See*, *e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564–65 (N.D. Cal. 2008) (explaining that "a district court need not consider prejudice to the party moving for sanctions" when acting pursuant to its inherent power).  In any event, dismissal with prejudice is necessary to spare Defendant from expending more time, money, and resources on this baseless case, including on "fishing expedition" discovery and a dispositive motion.

<u>Fourth</u>, although public policy favors the disposition of cases on their merits, the Court concluded that Plaintiff's breach of contract claim is very likely baseless, and his promissory estoppel claim is frivolous for substantially similar reasons.  *See supra* at 6, 8-9.  Even if this factor did weigh against dismissal (which it does not here), this factor standing alone "is not sufficient to outweigh the other four factors."  *Leon*, 464 F.3d at 960–61; *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987) ("Although this factor weighs against dismissal, it is not sufficient to outweigh the other four factors, which in this case support dismissal.").

<u>Fifth</u> and finally, there are no less drastic non-monetary sanctions that will adequately address Plaintiff's and his counsel's bad faith conduct other than the dismissal of this action with prejudice.  When considering the availability of less drastic sanctions, courts analyze: (1) the feasibility of less drastic sanctions and why such alternate sanctions would be inappropriate; (2) whether the court implemented alternative sanctions before ordering dismissal; and (3) whether the court warned the party of the possibility of dismissal before ordering dismissal.  *Leon*, 464 F.3d at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

960. Here, while an award of Defendant's attorneys' fees and costs is warranted and necessary for reasons stated, dismissal with prejudice also is necessary to avoid future prejudice and send an appropriate message to Plaintiff and his counsel – particularly given Plaintiff's counsel's other pending 2022 bonus claims involving Plaintiff's likely testimony. Only dismissal with prejudice will remedy Plaintiff's and his counsel's gamesmanship in this case. The *Anheuser-Busch* factors thus support a dismissal with prejudice sanction, independent of Plaintiff's Dismissal Request.

### E.   Plaintiff Cannot Avoid Monetary Sanctions By Seeking A Voluntary Dismissal.

As detailed in Defendant's Response to Dismissal Request, *both* a monetary award of Defendant's requested attorneys' fees and costs, *and* dismissal with prejudice, are warranted here.[12] *See Leon*, 464 F.3d at 963 (affirming district court's imposition of both a sanction dismissing action with prejudice and monetary sanctions); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1417 (9th Cir. 1990) (finding that both district court's entry of default and ordering of monetary sanctions were proper). Plaintiff's Dismissal Request under Rule 41(a)(2) is "too little, too late" and cannot evade monetary sanctions. A district court retains jurisdiction to adjudicate a motion for, and to award, sanctions even after a plaintiff voluntarily dismisses their case. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 398 (1990) (concluding that "petitioner's voluntary dismissal did not divest the District Court of jurisdiction to consider respondents' Rule 11 motion," emphasizing that "a voluntary dismissal does not expunge the Rule 11 violation" because the "violation of Rule 11 is complete when the paper is filed"). As the Supreme Court explained in *Cooter*:

> Both Rule 41(a)(1) and Rule 11 are aimed at curbing abuses of the judicial system, and thus their policies, like their language, *are completely compatible*. Rule 41(a)(1) limits a litigant's power to dismiss actions, but allows one dismissal without prejudice. Rule 41(a)(1) does not codify any policy that the plaintiff's right to one free dismissal also secures the right to file baseless papers. *The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction.*

496 U.S. at 397-98 (emphasis added); *id.* at 395-96 ("a federal court may consider collateral issues

---

[12] Because this Motion seeks sanctions – both monetary and dismissal with prejudice – this section focuses on Plaintiff's and his counsel's inability to evade such sanctions through their Dismissal Request. Given page limits, this issue is discussed further in Defendant's Response to Dismissal Request. That Response also explains why Defendant alternatively should be awarded, and Plaintiff and his counsel cannot avoid, payment of Defendant's requested attorneys' fees and costs even if dismissal with prejudice is ordered under Rule 41(a)(2) rather than as a sanction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    after an action is no longer pending," and "the imposition of a Rule 11 sanction … requires the

2    determination of a collateral issue:  whether the attorney has abused the judicial process, and, if so,

3    what sanction would be appropriate."); *Orian v. Fed'n Int'l des Droits de L'Homme*, 2011 WL

4    13220921, at *3 (C.D. Cal. Dec. 13, 2011) ("[A] court may retain jurisdiction to consider collateral

5    issues such as statutory sanctions and attorney fees.").  This is under Rule 11, and also under Section

6    1927 and the Court's Inherent Power.  *See, e.g.*, *Leon*, 464 F.3d at 958-61 (affirming dismissal with

7    prejudice and monetary sanctions pursuant to the court's "inherent authority").[13]

8            Consistent with these principles, the Supreme Court further made clear that a party may still

9    be subject to sanctions after a voluntary dismissal based on their prior misconduct during the action:

10           As noted above, a voluntary dismissal does not eliminate the Rule 11 violation. Baseless
             filing puts the machinery of justice in motion, burdening courts and individuals alike with
11           needless expense and delay. Even if the careless litigant quickly dismisses the action, the
             harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates
12           Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions
             on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation
13           of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and
             investigate more carefully before serving and filing papers." Amendments to Federal Rules
14           of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield,
             Chairman, Advisory Committee on Civil Rules) (Mar. 9, 1982).
15
     *Id.* at 398; *id.* at 395 ("As the violation of Rule 11 is complete when the paper is filed, a voluntary
16
     dismissal does not expunge the Rule 11 violation.") (internal quote marks and citation omitted).
17
             While *Cooter* happened to involve a voluntary dismissal *without* prejudice pursuant to Rule
18

19   ───────────────
     [13] *See also Mireskandari v. Assoc. News., Ltd.*, 665 F. App'x 570, 572 (9th Cir. 2016) ("We see
20   no justification for holding that a voluntary dismissal precludes issuance of a sanctions order. […]
     The district court had authority to sanction [plaintiff] for his actions prior to the voluntary
21   dismissal."); *Thomas v. Early Cty.*, GA, 360 F. App'x 71, 75 (11th Cir. 2010) ("For the same
     reasons [as in *Cooter*], motions seeking attorney's fees and costs pursuant to statute or the court's
22   inherent powers may be considered by the district court after dismissal"); *Song v. Drenberg*, 2021
     WL 4846779, at *2 (N.D. Cal. Oct. 18, 2021) ("[Plaintiff] suggests that this Court lacks
23   jurisdiction to decide a motion for sanctions because plaintiffs voluntarily dismissed the
     underlying claims before the motion was filed. […] He is not correct. […] 'In our view, nothing
24   in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district
     court's authority to impose sanctions after such a dismissal.'") (citing and quoting *Cooter*); *Strike
25   3 Holdings, LLC v. Doe*, 2019 WL 935389, at *3 (E.D. Cal. Feb. 26, 2019) ("'[A] voluntary
     dismissal does not expunge the ... [underlying] violation' or bad faith conduct. […] Nor does a
26   voluntary dismissal remove the court's inherent authority to impose sanctions."); *see also Cooter*,
     496 U.S. at 412 (Stevens, J., concurring and dissenting in part) (because "the dismissal of an
27   action pursuant to Rule 41(a)(1) does not deprive the district court of jurisdiction to resolve
     collateral issues," a court "may impose sanctions for contempt on a party who has voluntarily
28   dismissed his complaint or impose sanctions under 28 U.S.C. § 1927 against lawyers who have
     multiplied court proceedings vexatiously").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                                              DEFENDANT'S MOTION FOR SANCTIONS
                                                CASE NO. 3:23-cv-03007-VC

41(a)(1), nothing in *Cooter* warrants a different result where a party seeks to evade sanctions via a voluntary dismissal *with* prejudice. The Supreme Court broadly stated that "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal." *Cooter*, 496 U.S. at 395. In each case, "a voluntary dismissal does not eliminate the Rule 11 violation". *Id.* at 398. And if a litigant cannot escape sanctions for harm already inflicted "[e]ven if the careless litigant quickly dismisses the action," it certainly cannot do so where it drags a case out and continues its sanctionable conduct to the point where the only remaining voluntary dismissal option is under Rule 41(a)(2). *See id.*

This Court implicitly acknowledged these principles at the October 25, 2024 status conference. CMC Tr., ECF No. 107, at 4:17-25 (The Court: "[S]o, the sanction would be asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself. Would you also be seeking dismissal of the action as a sanction?" Mr. Meckley: "It would be dismissal with prejudice as the – the action, yeah." The Court: "Yeah. Okay. Yeah. That's – that sounds fine."). Other courts also recognize that a voluntary dismissal *with* prejudice does not impact a court's ability to award sanctions, including under Rule 11. For example, in *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001), the Ninth Circuit affirmed the district court's Rule 41(a)(2) dismissal with prejudice. While it also affirmed the denial of defendant's sanctions motion based on the facts of the case, it *never* questioned the district court's authority to consider or award sanctions despite the plaintiff's Rule 41(a)(2) voluntary dismissal with prejudice. Rather, the Ninth Circuit emphasized that "the district court has 'broad fact-finding powers' to grant or decline sanctions and that its findings warrant 'great deference[.]'" *Id.* at 975, 978; *see also, e.g.*, *In re Kunstler*, 914 F.2d 505, 512 (4th Cir. 1990) ("No court has adopted a rule prohibiting a motion for Rule 11 sanctions after a dismissal with prejudice under Rule 41(a)(2)."); *Ke v. J R Sushi 2 Inc.*, 2022 WL 1496576, at *14 (S.D.N.Y. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) ("[A]fter a voluntary dismissal pursuant to Rule 41(a)(1)(A) – with or without prejudice – the Court retains discretion whether to impose sanctions under its inherent power or § 1927."); *cf. Chavez v. Wal-Mart Stores Inc.*, 2014 WL 12591672 at *3 (C.D. Cal. Nov. 14, 2014) (stating, "We think dismissal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1   with prejudice is at least a factor to be considered in deciding whether to condition dismissal on the

2   payment of fees and costs," but *not* ruling that fees and costs are *per se* unavailable upon such a

3   dismissal); *Leon*, 464 F.3d at 958-61 (affirming sanctions pursuant to the court's "inherent

4   authority" of both dismissal with prejudice and monetary award).

5        Here, as in *Cooter*, Plaintiff's Dismissal Request "does not eliminate the Rule 11 violation"

6   (*Cooter*, 496 U.S. at 398), nor does it remedy the conduct that violated Section 1927 or that is

7   sanctionable under the Court's inherent powers.  *See Strike 3 Holdings, LLC*, 2019 WL 935389, at

8   *3.  Monetary sanctions are necessary and appropriate to compensate Defendant for the needless

9   and costly attorneys' fees and costs that have resulted from Plaintiff's and his counsel's reckless

10  and bad faith conduct in this action, and to deter further similar conduct including given Plaintiff's

11  counsel's prosecution of other 2022 bonus claims that Plaintiff himself caused.

12  **IV.    CONCLUSION**

13       The Court should grant Defendant's Motion for Sanctions in its entirety, including:  (1)

14  pursuant to Rule 11, award Defendant all attorneys' fees and costs it has incurred due to Plaintiff's

15  frivolous Rule 23 motion for class certification, currently estimated at approximately $241,731; (2)

16  pursuant to Section 1927, award Defendant all attorneys' fees and costs it has incurred since July

17  12, 2024, currently estimated at approximately $710,527.50 through the filing of this Motion

18  (which includes $286,159.50 in legally required payments to Sidley Austin LLP due to that firm's

19  representation of former Twitter CFO Ned Segal in connection with this case); (3) award Defendant

20  the same attorneys' fees and costs as requested in the foregoing Item 2 pursuant to this Court's

21  Inherent Power;[14] (4) award Defendant all further attorneys' fees and costs it incurs after the date

22  of this Motion through the final termination of this case; and (5) dismiss this action in its entirety

23  with prejudice.

24  Dated:  February 14, 2025          MORGAN, LEWIS & BOCKIUS LLP

25                    By    */s/ Eric Meckley*
                                       _____

26                        Eric Meckley
                                       Kassia Stephenson
                                       Attorneys for Defendant X CORP.

27  _____

28  [14] Defendant does not seek duplicative amounts (*e.g.*, recovery of the same fees twice under both Section 1927 and the Court's Inherent Power), but separately states the sanctions sought under each distinct ground for purposes of completeness.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC