EXHIBIT 1

# Morgan Lewis

**Eric Meckley**
Partner
+1.415.442.1013
emeckley@morganlewis.com

January 23, 2025

**VIA EMAIL PDF ATTACHMENT**

Shannon Liss-Riordan
Bradley Manewith
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
sliss@llrlaw.com
bmanewith@llrlaw.com

Re:   *Mark Schobinger v. Twitter, Inc. and X Corp.*
      *U.S.D.C. N.D. Cal. Case No. 3:23-cv-03007-VC*

Dear Counsel:

Defendant X Corp. ("Defendant" or "X") hereby provides formal notice of its intention to file a Motion for Sanctions pursuant to Federal Rule of Civil Procedure ("FRCP") 11, as well as pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Power (the "Motion") in the above-referenced action.

Pursuant to FRCP 11(c)(2) and the 21-day "safe harbor" period required under that provision, attached as **Exhibit 1** to this letter is a copy of the Motion.  Although not required under the Rule, also attached as **Exhibit 2** to this letter is a copy of my declaration in support of the Motion, which provides an itemization of the estimated attorneys' fees and costs that Defendant will seek as monetary sanctions (specific amounts stated are calculated through today's date).  Defendant intends to file Exhibits 1 and 2 with the Court after the expiration of the 21-day "safe-harbor" period, and to update the requested sanctions amounts to the then-current date.

Please note that while FRCP(c)(2)'s "safe-harbor" period provision applies to the extent sanctions are being sought pursuant to FRCP 11, such provision does not apply to Defendant's separate and independent requests for sanctions pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Power.

Please let us know if you have any questions.

**Morgan, Lewis & Bockius** LLP

One Market
Spear Street Tower
San Francisco, CA  94105-1596
United States

**T** +1.415.442.1000
**F** +1.415.442.1001

DB2/ 49963394.1

Shannon Liss-Riordan
Bradley Manewith
Lichten & Liss-Riordan, P.C.
January 23, 2025
Page 2


Sincerely,


Eric Meckley
EM

# EXHIBIT 1

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626-7653
Tel:    +1.714.830.0435
Fax:    +1.714.830.0700

Attorneys for Defendant
X CORP. as Successor in Interest to
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT**<br><br>Date:    _____, 2025<br>Time:    10 a.m.<br>Judge:    Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____ 2025, at 10:00 a.m. or as soon thereafter as may be heard in Courtroom 4 on the 17th Floor of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant X Corp. as successor in interest to Defendant Twitter, Inc. (hereinafter, "Defendant" or "X"), will, and hereby does, move this Court for an order imposing sanctions pursuant to Fed. R. Civ. P. 11, and 28 U.S.C. Section 1927, and the Court's inherent power, as follows:

1.    Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), for their filing of and continuing to litigate Plaintiff's frivolous Rule 23 motion for class certification and reply brief filings, despite receiving documents that Defendant produced during discovery on July 12, 2024 revealing that Plaintiff's claims lack any merit.  Defendant requests an award all attorneys' fees and costs that it has incurred in connection with such filings.

2.    Defendant requests that the Court order sanctions against Plaintiff's counsel pursuant to 28 U.S.C. Section 1927 ("Section 1927") for Plaintiff's counsel's reckless and bad faith conduct, and unreasonable and vexatious multiplying of this proceeding since receiving documents that Defendant produced during discovery on July 12, 2024, revealing that Plaintiff's claims lack any merit.  Defendant requests an award of all attorneys' fees and costs that it has incurred since July 12, 2024, and that it continues to incur in this case going forward.

3.    Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to the Court's inherent power, based on Plaintiff and his counsel's reckless and bad faith conduct that has undermined the integrity of this judicial proceeding.  Defendant requests an award of all attorneys' fees and costs that it has incurred since July 12, 2024, and that it continues to incur in this case going forward.

4.    Defendant respectfully requests that this action be dismissed with prejudice pursuant to Rule 11 and/or the Court's inherent power, based on Plaintiff's and his counsel's bad faith conduct that has undermined the integrity of this judicial proceeding.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    Defendant's Motion for Sanctions is based on this Notice of Motion, the Memorandum of

2 Points and Authorities, the Declaration of Eric Meckley, the pleadings and briefing on file with

3 the Court and such arguments and admissible evidence as may be presented at the time of

4 hearing.

5 Dated: _____, 2025                    MORGAN, LEWIS & BOCKIUS LLP

6

7                                                        By _____

8                                                            Eric Meckley
                                                            Brian D. Berry
9                                                            Ashlee N. Cherry
                                                            Kassia Stephenson

10                                                           Attorneys for Defendant
                                                            X CORP. as Successor in Interest to
11                                                          TWITTER, INC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1

**TABLE OF AUTHORITIES**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

## I.    INTRODUCTION

During the October 3, 2024, hearing on Plaintiff's motion for class certification, the Court asked Plaintiff's counsel to reflect on a very simple, yet troubling fact – *i.e.,* that her client had filed a lawsuit accusing Defendant of breaching a contract by not paying Twitter employees 2022 bonuses despite Plaintiff himself having repeatedly recommended that Twitter **not pay** those very bonuses.  *See* October 3, 2024, Motion for Class Certification Hearing Transcript (hereinafter "Hr'g Tr."), ECF No. 98, at 6:8-11 (Court:  … "let's take a step back here and just reflect on the fact that your client has filed a lawsuit claiming that it was a breach of contract not to pay him a bonus that he recommended that the company not pay").  During the hearing on class certification, the Court observed that "there is a question of whether [Plaintiff] committed perjury in his deposition," and expressed concern that Plaintiff's counsel may "have put him in legal jeopardy."  Hr'g Tr. at 11:19-21, 12:21-25.  Significantly, during this hearing the Court also highlighted the fact that "the actual evidence" produced in discovery was "very different from what [Plaintiff] alleged in the complaint," and concluded that these facts "strongly indicate[d] that [Plaintiff] has no breach of contract claim; that he is going to lose."[1]  Hr'g Tr. at 4:14-16, 9:13-14.  The Court asked Plaintiff's counsel, point-blank, when exactly she had first discovered these documents, and specifically, whether she had known about them *before* filing the lawsuit.  *Id.* at 13:1-3.  In response, Plaintiff's counsel responded evasively that she could not recall "exactly when [she] saw what[.]"  *Id.* at 13:4-5.  Ultimately, the Court observed that "99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff[.]"  *Id.* at 18:13-20.  Plaintiff's counsel, however, opted to do neither.

Instead, even after receiving the relevant documents in mid-July 2024, Plaintiff's counsel "doubled down" on pursuing entirely meritless claims on behalf of her client *and* on behalf of a putative class, needlessly driving up Defendant's attorneys' fees and costs by filing a meritless Rule 23 motion for class certification, which the Court denied on October 16, 2024.  In its order denying class certification, the Court found Plaintiff's explanations and supposed justifications for his

---

[1] The Court's Order denying Plaintiff's class certification motion, statements at the oral argument on that motion, and applicable case law also make clear that Plaintiff's promissory estoppel claim is a dead letter as well.  *See infra* at 8-14.

breach of contract claim to be "convoluted" and likely "untrue" given the admissions and contemporaneous evidence produced during discovery. ECF No. 101. Rather than taking the Court's statements to heart and dismissing Plaintiff's claims following this Order, Plaintiff's counsel served additional burdensome discovery, deposition notices, and filed a discovery motion to compel – all completely unjustified actions that further multiplied the needless cost and burdens upon Defendant.

It has now been more than six months since Defendant produced documents in discovery clearly showing that Plaintiff *repeatedly* recommended that Twitter not pay the bonus that he claims Twitter has wrongfully withheld from him in breach of contract, and that he told Twitter it was not obligated to pay any such bonuses. And of course, these documents should have come as no surprise to Plaintiff, because he authored these documents and was clearly aware of his own repeated, prior statements that the bonus should not have been paid. Despite (1) the uncontested evidence refuting his claims, (2) the Court's statements during the motion for class certification hearing, and (3) the Court's Order denying class certification, both Plaintiff and his counsel have continued to pursue their entirely meritless campaign against Defendant, including conducting additional discovery at the eleventh hour.

To put a stop to Plaintiff's unreasonable and vexatious litigation tactics, and to compensate Defendant for the unnecessary attorneys' fees and costs that it has been forced to incur in defending against Plaintiff's and his counsel's frivolous motion for class certification and their continued prosecution of Plaintiff's meritless case, Defendant brings this Motion for Sanctions on the following bases:

First, Defendant requests that the Court order sanctions against Plaintiff and his counsel pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), for filing and continuing to litigate Plaintiff's frivolous Rule 23 motion for class certification and reply brief filings, including awarding Defendant all attorneys' fees and costs that it has incurred in connection with such filings.

Second, Defendant requests that the Court order sanctions against Plaintiff's counsel pursuant to 28 U.S.C. Section 1927 ("Section 1927") for Plaintiff's counsel's unreasonable and vexatious multiplying of this proceeding since receiving the documents that Defendant produced

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

on July 12, 2024 revealing that Plaintiff's claims lack merit, including awarding Defendant all attorneys' fees and costs that it has incurred since that date and that it continues to incur in this case going forward.

**Third**, Defendant requests that the Court order sanctions against Plaintiff and his counsel and award Defendant all attorneys' fees and costs it has incurred since July 12, 2024 (again including all attorneys' fees and costs that it incurs in this case going forward) pursuant to the Court's inherent power.

**Fourth**, Defendant respectfully requests that this action be dismissed with prejudice. Notably, as detailed in Section III. E. below, Plaintiff and his counsel cannot escape the monetary sanctions sought by Defendant even if they were to attempt to unilaterally dismiss this action at this late date. In support of this Motion, Defendant is submitting contemporaneously herewith the Declaration of Eric Meckley setting forth the attorneys' fees and costs[2] that Defendant has incurred in defending this action since July 12, 2024.[3]

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiff Sued Defendant for Defendant's Failure to Pay a Bonus that Plaintiff Repeatedly Advised Defendant Not Pay and Said It Did Not Have to Pay.

On June 20, 2023, Schobinger filed a Class Action Complaint and Jury Demand against Defendant X Corp., successor in interest to Twitter, Inc. ("Defendant" or "X"). ECF No. 1. Plaintiff filed an Amended Class Action Complaint and Jury Demand on January 12, 2024, which is the operative complaint and was amended only to clarify that Plaintiff's promissory estoppel claim

---

[2] Defendant has submitted an estimate of the attorneys' fees and costs incurred between July 12, 2024 to present that are "because of the misconduct at issue." *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 935 (N.D. Cal. 2023). As this Court has recognized, "[t]he essential goal in shifting fees is to do rough justice, not to achieve auditing perfection" and as a result, lower courts need not "become green-eyeshade accountants" when assessing sanctions. *Id.* Further documentation supporting Defendant's reasonable fees and costs incurred as a result of Plaintiff's and his counsel's sanctionable conduct can be provided *in camera* at the Court's request if further substantiation is desired.

[3] In accordance with Rule 11, Defendant served an advance copy of this Motion on Plaintiff's counsel on January 23, 2025, which is at least 21 days in advance of filing this Motion (i.e., the "safe harbor" period). And, while not clearly required by Rule 11, Defendant also included with that advance motion a copy of the supporting Declaration setting forth Defendant's attorneys' fees and costs incurred between July 12, 2024, and that date.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

(Count II) is being pled in the alternative to, and not in addition to, the breach of contract claim (Count I). *See* ECF Nos. 37, 43. At bottom, Plaintiff's complaint claims that Defendant made promises to pay, and then failed to pay, discretionary 2022 annual performance bonuses to Twitter employees, including Plaintiff. *See* ECF No. 43. According to Plaintiff, he remained employed at Twitter through the first quarter of 2023 because he had relied on Defendant's purported promise to pay this bonus. *See id.*

Prior to filing this Action, Plaintiff served as Twitter's Senior Director of Compensation – a high-level position that provided him with material input and insight into the decision-making processes behind the payment of this bonus he alleges he was owed. *See*, *e.g.*, ECF No. 87 at 10 (Plaintiff described himself as "a higher level employee with insight into decisionmaking being made by the company"). What the Complaint fails to disclose, however, is that in his capacity as Senior Director of Compensation Plaintiff expressly advised that Twitter *not* pay the 2022 bonus and told decisionmakers that Twitter was *not* obligated to pay it. *See*, *e.g.*, ECF Nos. 84-11, 84-17, 84-18 (Pl. Dep. Exs. 13, 22, 23).[4] In fact, Plaintiff *repeatedly* urged that the 2022 bonus need not and should not be paid according to the terms of the bonus plan, which he had helped draft. *See id.* Notwithstanding his own recommendation that Twitter not pay this bonus, Plaintiff chose to sue Defendant for following his advice and not paying the bonus. ECF Nos. 1, 43.

### B.    Discovery Revealed the Baseless Nature of Plaintiff's Claims.

Prior to taking Plaintiff's deposition, on July 12, 2024, Defendant produced documents that contained Plaintiff's own admissions and painted a dramatically different picture than what was alleged in his Complaint. For example, Defendant produced October 19, 2022 correspondence between Plaintiff and another Twitter executive, in which Plaintiff stated that "[t]he [bonus] plan does not specifically contemplate a change of control" and as a result, it was "really unclear to [Plaintiff] if the bonus plan would permit paying out." *See* ECF No. 84-10 (Pl. Dep. Ex. 12) (X-SCHOBINGER_00000082). In addition, Defendant produced correspondence dated November 30, 2022, between Plaintiff and Twitter's then Head of People Experience, Katie Marcotte, in which

---

[4] These documents were marked as exhibits during Plaintiff's deposition and were submitted as exhibits to the Declaration of Brian D. Berry (ECF No. 84-2) in support of Defendant's Opposition to Plaintiff's Motion for Class Certification. *See* ECF No. 84.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1   Plaintiff told Marcotte that whether to pay the bonus was a matter of Elon Musk's discretion, and

2   that Plaintiff recommended that the Company *not* pay the bonus.  *See* ECF No. 84-11 (Pl. Dep. Ex.

3   13) (X-SCHOBINGER_00000083) (Schobinger stated: "The logical outcome suggests we would

4   not pay out FY22 bonuses due to the current environment and the severe underperformance to plan.

5   So you know, that is what I recommended previously (when we were still public) – the plan

6   permitted the cmte to exercise that discretion […] Elon is the sole director at this point and it really

7   comes down to him and only him to make the final decision […].").

8          Defendant also produced email correspondence between Plaintiff and another Twitter

9   executive dated February 13, 2023, in which Plaintiff stated his belief that "*exercising discretion*

10  *and not paying a bonus would be prudent*" and that the "*optics of paying are not good*" given the

11  Company's precarious financial position.  ECF No. 84-17 (Pl. Dep. Ex. 22) (X-

12  SCHOBINGER_00000133) (emphasis added).  As an attachment to that email, Plaintiff circulated

13  a "white paper" that he had prepared to Twitter executives explaining that the bonus plan allowed

14  Twitter the absolute discretion not to pay the bonus.  *See* ECF No. 84-18 (Pl. Dep. Ex. 23) (X-

15  SCHOBINGER_00000125-131).  Former Twitter Human Resources manager Katie Marcotte's

16  August 23, 2024, deposition testimony corroborated Plaintiff's admissions in the above-referenced

17  documents.  She testified that Plaintiff himself had told Elon Musk directly in a January 2023

18  meeting that Twitter should not pay the bonus.  *See* ECF No. 84-6 (Marcotte Dep. at 90:20-91:12)

19  (Marcotte: "I recall Mark Schobinger saying out loud to the group that we should not pay out – that

20  Elon had no obligation to pay out performance bonus plans.").

21          Notwithstanding this evidence, Plaintiff and his counsel pushed forward with the litigation

22  of this case.  The Company deposed Plaintiff on July 15, 2024, and August 2, 2024, and, on

23  September 5, 2024, deposed Twitter's former Chief Financial Officer, Ned Segal, who Plaintiff

24  alleged in the Complaint had made the promises about paying out the annual performance bonus.

25  Neither Plaintiff's nor Segal's deposition testimony contradicted the clear documentary evidence

26  and admissions referenced above.  Rather, both Plaintiff and Segal admitted that no one, including

27  Segal, promised that bonuses would be paid separate and apart from, or independent of, the full

28  terms and conditions of the applicable discretionary bonus plan, thus completely undercutting the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                    DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1  merits of Plaintiff's claims.  *See* ECF No. 84-7 (Pl. Dep. at 99:25-100:23, 103:12-22); ECF No. 84-

2  3 (Segal Dep. at 128:3-18).

3     **C.     Despite the Evidence Invalidating His Case, Plaintiff Filed a Motion for Class**

4          **Certification, Which the Court Denied and Reprimanded Plaintiff and His**

5          **Counsel for Filing.**

6          Turning a blind eye to this evidence, on August 23, 2024, Plaintiff filed his motion to certify

7  a nationwide class, brazenly challenging "Twitter's refusal to pay employees their 2022 bonus" and

8  neglecting to mention Plaintiff's own endorsement of and material role in Twitter's decision not to

9  pay this bonus.  ECF No. 75.  Defendant filed its Opposition to Plaintiff's Motion for Class

10  Certification on September 19, 2024, highlighting Plaintiff's admissions and repeated

11  recommendations that Twitter should not pay the bonus, among the many other glaring deficiencies

12  with Plaintiff's Rule 23 motion.  ECF No. 84.  Plaintiff filed his reply brief on September 23, 2024,

13  arguing that Plaintiff's own representations and recommendations (*i.e.*, as the then-Senior Director

14  of Compensation) about the bonus plan were somehow "not relevant" and that, "regardless of what

15  he said, the company had promised to pay the bonus, and as an employee he expected it to be paid."

16  ECF No. 87.

17          On October 3, 2024, the Court heard Plaintiff's Motion for Class Certification.  ECF No.

18  98.  During this hearing, the Court questioned Plaintiff's counsel regarding the timeline of

19  Plaintiff's complaint allegations as well as Plaintiff's contradictory admissions revealed during

20  discovery.  *See*, *e.g.*, Hr'g Tr.  Under questioning by the Court, Plaintiff confirmed his position that

21  Twitter's alleged promises to pay Plaintiff and other employees a 2022 bonus occurred around May

22  and August 2022.  Hr'g Tr. 2:23-3:4. He further confirmed to the Court that, *after* Twitter had

23  purportedly made these promises, Plaintiff sent numerous messages and communications

24  recommending that the bonus *not* be paid.  Hr'g Tr. 3:10-19.  The Court specifically observed that

25  Plaintiff's own admissions conflicted with his Complaint allegations, underscoring that "the *actual*

26  evidence is very different from what [Plaintiff] alleged in the complaint[.]" Hr'g Tr. 9:13-14

27  (emphasis added); Hr'g Tr. 3:10-22.

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6     DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

At the hearing, the Court also found that these facts directly undermined Plaintiff's typicality and adequacy to represent the class he sought to certify, emphasizing that Plaintiff "was the one that recommended that the company not pay the bonus." Hr'g Tr. 4:3-11, 21-22; *see also, e.g., id.* at 9:10-10:7. The Court also stated that the factual record "strongly indicate[d] that *[Plaintiff] has no breach of contract claim; that he is going to lose*." Hr'g Tr. 4:14-16 (emphasis added).

After discussion with Plaintiff's counsel about the meaning and context behind these statements Plaintiff made, the Court asked Plaintiff's counsel to "take a step back here and just reflect on the fact that [her] client has filed a lawsuit claiming that it was a breach of contract not to pay him a bonus *that he recommended that the company not pay*." Hr'g Tr. 6:8-10 (emphasis added). Per the Court: "[Plaintiff] recommended that the company not pay the bonus. The company did not pay the bonus, and now your client is suing for breach of contract on the ground that he didn't get his bonus." Hr'g Tr. 6:11-14. The Court continued to highlight the audacity of this lawsuit, stating: "Your client claims that he was promised a bonus in May-August of '22. Your client recommended *several times after that* that the company should not pay the bonus, and now your client is suing claiming that the company breached the May-August contract not to give him the bonus." Hr'g Tr. 6:23-7:2 (emphasis added).

In response, Plaintiff's counsel contended that there was additional context behind the documentary evidence that the Court was missing here, which Plaintiff's counsel claimed Plaintiff had explained during his deposition. She asserted, for example, that Plaintiff supposedly made these repeated incriminating statements simply because "[h]e was asked, [to] put together different scenarios so that Mr. Musk can make the decision of what to do; and he responded to the directive he was given to do that." Hr'g Tr. 10:17-20. However, the Court expressed its profound skepticism (at best), stating that, "there is a question of whether [Plaintiff] committed perjury in his deposition, frankly…." Hr'g Tr. 11:19-21. The Court further advised Plaintiff's counsel that "I think your client might need to read his deposition transcript carefully and *wonder if he is in legal jeopardy for what he said in that deposition.* You know, *I seriously wonder if, perhaps, you have put him in legal jeopardy*." Hr'g Tr. 12:21-25 (emphasis added). This skepticism was entirely justified. As

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

the foregoing evidence demonstrates, Plaintiff's own communications made clear that he independently and purposely recommended *not* paying 2022 bonuses even before the acquisition and well before any purported "directive" (if any) to "put together different scenarios" for Musk. *See* ECF No. 84-11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) (Plaintiff's statement in Nov. 30, 2022 communication to then Head of People Experience Marcotte stating: "The logical outcome suggests *we would not pay out FY22 bonuses* due to the current environment and the severe underperformance to plan.  So you know, *that is what I recommended previously (when we were still public)*…") (emphasis added).

The Court also asked Plaintiff's counsel point-blank when exactly she had discovered these documents, and specifically, if she knew about them before she filed the lawsuit.[5]  In response, Plaintiff's counsel evasively said she could not recall "exactly when [she] saw what[.]"  Hr'g Tr. 13:1-5.  The Court expressed its view that "*99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff*" and that "*the fact that that wasn't done here speaks volumes*."  Hr'g Tr. 18:13-23 (emphasis added).

On October 16, 2024, the Court issued an Order Denying Motion for Class Certification, which was entirely consistent with the Court's expressed statements at the oral argument.  ECF No. 101.  The Court's Order noted that "interesting facts ha[d] been revealed in discovery," highlighting several of the communications by Schobinger discussed above.[6]  In denying certification, the Court

---

[5] And of course, since Plaintiff wrote these emails and Slack messages and "white paper" himself, he clearly was (or, at a minimum, should have been) well-aware of these documents and his own repeated prior representations that Twitter had the discretion not to pay the bonus and that the bonus should not be paid out.

[6] The Court specifically called out the following documents in particular:

In November 2022—several months after Twitter allegedly made the promises that Schobinger allegedly relied on— Schobinger sent a message to Twitter's "Head of People Experience."  In the message, Schobinger asserted that whether to pay the bonus was a matter of Elon Musk's discretion.  Schobinger mentioned in this message that he had recommended that the company not pay the bonus.  And in February 2023, Schobinger sent other Twitter executives a "white paper" discussing the issue of whether to pay the bonus.  In this document, Schobinger said: "…I believe exercising discretion and not paying a bonus would be prudent …"  There is also evidence that Schobinger told Musk directly, in a January 2023 meeting, that Twitter shouldn't pay the bonus.

ECF 101, at 1-2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

concluded in relevant part that these facts conclusively showed why Plaintiff could not prove adequacy or typicality.  *Id.* at 2.  Moreover, while not formally ruling on the merits, the Court pointedly noted its dim view of the viability of Plaintiff's claims, including his baseless assertion that he was just doing what he was told and did not mean anything he said:

> To describe these facts is to show why Schobinger is not an adequate class representative, and why his claims are not typical of the claims of the members of the proposed class.  ***It would be impossible for him to get on the witness stand and adequately represent the interests of Twitter employees who claim that the company wrongfully withheld the bonus.  He might fit nicely into this case as a defendant, but he cannot possibly fit as a named plaintiff***.

> At his deposition, Schobinger offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it.  ***It seems likely that Schobinger's explanation is untrue.***  But even if he is telling the truth, that's beside the point for purposes of this motion.  Because ***even if he is telling the truth, his conduct makes him the worst possible candidate to serve as a litigation representative for the other Twitter employees who didn't get a bonus***.

*Id.* at 2 (emphasis added).

The Court's assessment of the merits, while not binding, nevertheless is highly probative given that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' …. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citations omitted).

The Court's Order also concluded that Texas law "obviously applies" to Plaintiff's claims. *See id.*  As Defendant explained in its Opposition to Plaintiff's motion for class certification (ECF 84 at 3), Plaintiff's claims clearly fail under Texas law, where continued service by an "at will" employee is simply not valid consideration to support a breach of contract claim as a matter of law. *See*, *e.g.*, *Shanklin v. Colum. Mgmt. Adv., L.L.C.*, 2008 WL 4899631 at *12 (S.D. Tex. Nov. 12, 2008) ("[W]hen an employment contract does not guarantee a bonus in a fixed, nondiscretionary amount, and the bonus offered is an incentive to encourage the employee to perform in accordance with the previously existing contract of employment, the promise to pay a bonus is unenforceable for want of sufficient consideration, since the employee is only giving the same service it has already contracted with the employer to render."); *Castranova v. Teknekron Info., Inc.*, 2003 WL 22143793 at *2 (N.D. Tex. Aug. 18, 2003) ("[A] promise to pay a bonus is unenforceable for want

1   of sufficient consideration since the employee is only giving the same service he has already

2   contracted with the employer to render.").

3         As also explained in X's Opposition, Plaintiff's promissory estoppel claim is also not

4   cognizable under Texas law, and even if it were, the Court's comments and Order make clear that

5   there is *no* plausible way he could prove his own foreseeable and actual substantial detrimental

6   reliance on any of the purported bonus "promises" allegedly made.  ECF 84 at 14 & 14 n. 20; *Lotito*

7   *v. Knife River Corp.-S.,* 391 S.W.3d 226, 227 (Tex. App. 2012) ("promissory estoppel is not an

8   independent cause of action in Texas in an employment context.") (citing additional cases); *id.* at

9   228 (concurring opinion noting that general promissory estoppel elements include "foreseeability

10   of reliance on the promise by the promisor" and "substantial detrimental reliance by the promisee");

11   *Anzaldua v. TitanLiner, Inc.,* 2020 WL 1236466 at *5 (N.D. Tex. Mar. 13, 2020) (noting

12   "significant disagreement among Texas courts as to whether promissory estoppel is available to

13   plaintiffs in the employment context.") (citing *Zenor v. El Paso Health. Sys., Ltd.,* 176 F.3d 847,

14   864 (5th Cir. 1999)); ECF 101 at 1-3.

15         The Court's Order also denied Plaintiff's counsel's request to substitute a different plaintiff

16   as a class representative for "a variety of reasons," principally including the following: "Most

17   importantly, the fact that Schobinger's lawyer thought it was a good idea to file a motion for class

18   certification in the face of this evidence (as opposed to dropping the case or seeking to substitute

19   another plaintiff immediately upon discovering it) shows that she is totally unqualified to serve as

20   class counsel."  ECF 101, at 2.

21         **D.      Plaintiff Has Insisted on Further Harassing Discovery and Litigating His**

22         **Meritless Individual Claims Through Summary Judgement and Trial.**

23         During the parties' October 25, 2024 case management conference, Defendant previewed

24   that it planned to file this motion for sanctions because of Plaintiff's frivolous lawsuit and bad faith

25   conduct.  *See* October 25, 2024 Case Management Conference Transcript (hereinafter "CMC Tr."),

26   ECF No. 107, at 2-5.  In response, the Court confirmed its assumption that Defendant would be

27   seeking monetary sanctions against both Plaintiff's counsel and Plaintiff himself, as well as

28   dismissal of the action as a sanction.  *See id.* at 4:17-25 (The Court: "[S]o, the sanction would be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself.  Would you also be seeking dismissal of the action as a sanction?" Mr. Meckley: "It would be dismissal with prejudice as the – the action, yeah." The Court: "Yeah.  Okay.  Yeah.  That's – that sounds fine.").[7]  Despite the Court's comments at this case management conference, the class certification hearing, and in its Order denying Plaintiff's motion for class certification, and despite the evidence and law refuting Plaintiff's individual claims, Plaintiff and his counsel *still* insisted on prosecuting this case and, following the Court's Order, served harassing and unnecessary eleventh-hour discovery, including a Rule 30(b)(6) deposition, a fact witness deposition, and additional ESI discovery.

On December 9, 2024, the parties filed a joint discovery letter upon Plaintiff's request to address these last-minute discovery requests.  On January 9, 2025, Chief Magistrate Judge Donna M. Ryu ruled on the joint discovery letter, noting that while the Court had not yet ruled on the merits of this case, the Court's assessment on the class certification motion "bears on the proportionality of the disputed discovery."  ECF No. 114.  Notably, Judge Ryu denied Plaintiff's request that Defendant conduct further ESI searches, which would have included searches of "emails, Slack messages, and other communications by and among Twitter management personnel", finding that such discovery was "not proportional" and that "Schobinger's individual claims are weak while the scope of [the Request] is broad."  *Id.*  Judge Ryu further concluded that the request "ha[d] the feel of a last-ditch fishing expedition, the burden of which outweighs the likely benefit."  *Id.*[8]  Importantly, neither this sanctions motion nor the frivolousness of Plaintiff's continued prosecution of this case was before the Magistrate Judge.

/ / /

---

[7] The Court further stated that, in response to Defendant's motion for sanctions, Plaintiff would have the opportunity to submit any evidence "in support of the argument that the lawsuit was not objectively baseless from the start and that it wasn't […] frivolous to continue the lawsuit upon the discovery of these documents."  *Id.* at 4:1-13.

[8] The parties have been meeting and conferring regarding a stipulation and deposition dates for the fact witness deposition and Rule 30(b)(6) deposition, which would resolve the remaining discovery disputes that Plaintiff has raised.  *See id.*  Defendant's good faith cooperation in discovery while this case remains pending has been subject to its position – as reflected in this Motion and previewed at the October 25, 2024 case management conference – that Plaintiff's claims are entirely frivolous and ultimately should not be subject to discovery or otherwise proceed in any respect.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                    DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1  **III.    ARGUMENT**

2      **A.    The Court Should Grant Defendant's Motion for Sanctions Pursuant to**

3          **Federal Rule of Civil Procedure 11.**

4      Federal Rule of Civil Procedure 11 provides that when an attorney presents "a pleading,

5  written motion, or other paper" to a court, the attorney "certifies that to the best of [his or her]

6  knowledge, information, and belief, formed after an inquiry reasonable under the circumstances

7  […] the claims, defenses, and other legal contentions are warranted by existing law or by a

8  nonfrivolous argument for extending, modifying, or reversing existing law" and "the factual

9  contentions have evidentiary support." Fed. R. Civ. P. 11(b)(2), (b)(3). "Rule 11 authorizes a court

10 to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose

11 or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638–

12 39 (9th Cir. 2010); Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to

13 respond, the court determines that Rule 11(b) has been violated, the court may impose an

14 appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

15 the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a

16 violation committed by its partner, associate, or employee."). Representations that are "legally

17 frivolous" or "factually misleading" are sanctionable. *See Truesdell v. Southern California*

18 *Permanente Medical Group*, 293 F.3d 1146, 1153 (9th Cir. 2002). In the Ninth Circuit, a frivolous

19 filing is one "that is both baseless and made without a reasonable and competent inquiry."

20 *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

21      "Rule 11 requires attorneys to conduct a reasonable inquiry into the law and facts before

22 signing pleadings." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 339 F. Supp. 2d 1081, 1089 (E.D. Cal.

23 2004), *aff'd*, 457 F.3d 963 (9th Cir. 2006) (citing *Business Guides v. Chromatic Enters., Inc.*, 498

24 U.S. 533, 542 (1991)); *see* Fed. R. Civ. P. 11(b). "Such inquiry is that amount of examination into

25 the facts and legal research which is reasonable under the circumstances of the case." *Zaldivar v.*

26 *City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *abrogated on other grounds by Cooter &*

27 *Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990).

28 / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

An attorney's insufficient due diligence and blind reliance on a client's statements does not constitute a reasonable inquiry and can support the imposition of sanctions. *See, e.g.*, *Townsend*, 929 F.2d at 1362 ("reasonable and competent inquiry" required); *Hendrix v. Wayne Napthal & First Family Homes*, 971 F.2d 398, 399-400 (9th Cir. 1992) (finding that "blind reliance on a lay client's ability to decide the legal question of domicile does not constitute a reasonable inquiry under Rule 11," and that the party's admissions at his deposition indicated that a "basic interview [by his counsel] … should have elicited the facts" contradicting his material assertions); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (finding that, if the plaintiff's attorneys conducted no investigation of the factual and legal merits of plaintiff's claims other than to rely on plaintiff's lay opinion, "it would be difficult to avoid the conclusion that sanctions are appropriate"); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 CIV.2561(KMW)(GWG, 2003 WL 22227956, at \*12 (S.D.N.Y. Sept. 26, 2003) (collecting cases); *El-Dada v. Oil Mart Corp.*, No. 94 C 3829, 1995 WL 562125, at \*1 (N.D. Ill. Sept. 20, 1995) ("***Counsel cannot blindly accept statements that are implausible without attempting some corroboration***.") (emphasis added).

Likewise, an attorney's insistence on asserting claims that are not "justifiable in law or in fact" supports the imposition of Rule 11 sanctions. *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 627 (8th Cir. 2003) ("[E]ven those attorneys with the highest credentials can violate Rule 11 by pursuing claims and defenses that do not have merit, and counsel should not put forth frivolous claims before the court."); *see Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985) ("Rule 11 requires that [lawyers] have in hand sufficient credible information (as opposed to opinions or conclusions) […] to enable *them* to form a reasonable belief that the allegations to which they put their signature are well-grounded in fact.") (emphasis in original).  Importantly, a filing that might have been appropriate if made earlier in a case can be frivolous and sanctionable if made *after* subsequent information has been learned: "[O]nce an attorney is on notice that the allegations may not have evidentiary support, it must make some effort at a further investigation and cannot persist in asserting allegations that do not have factual support in later pleadings." *Insta Ent., Inc. v. Bizzy Ent., Inc.*, No. CV 10-632 SVW (EX), 2010 WL 11597511, at \*3 (C.D. Cal. July

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

20, 2010) (citing Committee Notes to Amendments to Federal Rules of Civil Procedure (1993), 146 F.R.D. 401, 146 F.R.D. 401, 585-86) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.")); *see also Kendrick*, 609 F. Supp. at 1172 (finding that simply alleging that the facts set forth in the complaint were formed by the recollection of someone "without more, do[es] not satisfy the duty of inquiry, particularly where at the time counsel has in hand documents refuting those allegations").

Here, sanctions are appropriate against both Plaintiff and his counsel for filing a frivolous Rule 23 motion for class certification and his reply briefing. At a minimum, they both knew full well by those dates (and indeed, by July 12, 2024) that there was absolutely *no* good faith way Plaintiff could seek to represent the putative class here, irrespective of whether he supposedly believed that he had been "promised" a bonus – assertions under oath that the Court found potentially perjurious. *See supra* at 11-12. They also knew or should have known that Plaintiff's breach of contract and promissory estoppel claims were substantively baseless given the plethora of communications by Plaintiff documenting his repeated and vehement opposition to paying bonuses – communications that his counsel readily should have learned of even prior to their production had she sufficiently inquired. *See Hendrix*, 971 F.2d at 399–400 ("in light of the fact that the client freely admitted facts inconsistent with a Florida domicile in his deposition, the court reasoned that '[a] basic interview with [the client] ... should have elicited the facts' that his principal residence had been in California and that he was in the process of selling his Florida residence."). And, as his counsel also knew or should have known, those claims are directly contrary to applicable Texas law (as explained*, inter alia*, in Defendant's Opposition and earlier motion to dismiss, ECF Nos. 16, 84), and there is no plausible good faith way Plaintiff or his counsel could have believed that enforceable promises were made to him, much less that he foreseeably, actually, and substantially relied on them to his detriment. *See supra* at 8-14.

/ / /

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

14

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

By filing a motion for class certification and reply in support thereof, Plaintiff's counsel certified that the factual contentions in those filings had "evidentiary support" and that the legal contentions are warranted by existing law or a good faith non-frivolous extension thereof. However, both filings hid the ball from the Court and advanced factually misleading arguments that are blatantly contradicted by the evidentiary record in this case. Plaintiff's class certification moving papers completely disregarded the very key documents that Defendant produced in discovery on July 12, 2024. These documents contain Plaintiff's own contemporaneous admissions and make clear that Plaintiff, in his capacity as Defendant's former *Senior Director of Compensation*, had recommended and advised that Twitter not pay its employees the very bonus he claims he was promised, and stated that Defendant was not obligated to pay that bonus. Plaintiff's motion for class certification failed to acknowledge Plaintiff's key role in advising that the Company not pay the challenged 2022 bonus to its employees based on its financial condition, blithely arguing instead that Twitter had simply "refused to pay any bonus to employees" despite its purported promises to do so. *See* ECF No. 75.

After Defendant explicitly pointed out Plaintiff's problematic admissions in its opposition papers, Plaintiff attempted to downplay these statements, arguing that his own "opinions"—even as Twitter's then-Senior Director of Compensation—about the payment of the bonus were somehow "not relevant" *even to his own personal claims* and that, "*regardless of what he said*, the company had promised to pay the bonus, and as an employee he expected it to be paid." ECF No. 87 (emphasis added). These arguments are completely frivolous, and it is difficult to escape the conclusion that Plaintiff and his counsel consciously chose not to be forthcoming to the Court, instead glossing over critical evidence so they could continue to litigate Plaintiff's meritless class claims. It is simply inconceivable that Plaintiff could have genuinely expected to have received payment for this bonus when he not only had direct "*insight* into decisionmaking" of the Company (*see* ECF No. 87), but also direct *influence* on Twitter's ultimate decision not to pay the bonus.

Plaintiff's counsel's conduct here is a textbook example of an attorney barreling ahead with groundless litigation even after learning information that guts their claims and renders them frivolous, as this Court's statements reflect. *See* Hr'g Tr. 18:13-23 ("99 percent of Plaintiffs'

lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff" and that "the fact that that wasn't done here speaks volumes.").  Ninth Circuit case law makes clear that such conduct fails to satisfy the "reasonable inquiry" standard that counsel is required to meet when preparing and certifying the filing of motions.  *See supra* at 8-9; *Insta Ent.*, 2010 WL 11597511, at *3 ("[O]nce an attorney is on notice that the allegations may not have evidentiary support, it must make some effort at a further investigation and cannot persist in asserting allegations that do not have factual support in later pleadings.").

Defendant respectfully submits that the Court's comments during the hearing on class certification and in its Order denying class certification further confirm these conclusions, particularly its recognition that:  "the fact that [Plaintiff's] lawyer thought it was a good idea to file a motion for class certification in the face of this evidence (as opposed to dropping the case or seeking to substitute another plaintiff immediately upon discovering it) shows that she is totally unqualified to serve as class counsel."  ECF 101, at 2; s*ee also*, *e.g.*, Hr'g Tr. at 2:23-3:4, 3:10-22, 4:3-11, 6:8-14, 6:23-7:2, 21-22, 9:13-14, 11:19-21, 12:21-25.   In its Order denying class certification, the Court likewise found that Plaintiff had "offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it" – an explanation that the Court deemed was very likely "untrue," potentially constituting "perjury in his deposition," and placing him in "legal jeopardy."  ECF 101, at 2; Hr'g Tr. at 11:19-21, 12:21-25.

Finally, Plaintiff's motion for class certification and reply advanced legal contentions that are clearly unwarranted by existing law or any good faith extension thereof.  Because Plaintiff was, at all relevant times, a Texas resident and employee, the Court's Order denying class certification found that Plaintiff had "invoke[d] California law even though Texas law *obviously* applies to his claims."  ECF No. 101, at 3 (emphasis added).  And as the Court's Order and comments at oral argument make plain, Plaintiff could not assert good faith non-frivolous breach of contract or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

promissory estoppel claims, irrespective of the applicable law, given his high-level position and integral role in causing the bonuses at issue *not* to be paid.[9]

Defendant therefore requests that the Court impose Rule 11 sanctions and award Defendant its attorneys' fees and costs that resulted from Defendant having to defend against Plaintiff's frivolous motion to certify a class. *See*, *e.g.*, *Gallego v. Hunts & Henriques, CLP*, No. 19-CV-07596-VC, 2020 WL 5576134, at *1–2 (N.D. Cal. Sept. 17, 2020) (granting Rule 11 motion for sanctions against counsel where counsel "made no effort [to] support his allegations as the lawsuit progressed" and ordering Rule 11 sanctions in the form of payment to opposing counsel of their attorneys' fees and costs); *Kendrick*, 609 F. Supp. at 1173 (ordering plaintiff and his attorneys "to pay all of the reasonable expenses, including reasonable attorneys' fees, incurred by defendants" as a result of the sanctionable conduct, and finding that "[s]uch an order is not only within the scope of the Court's discretion under Rule 11, but is also supported by other authority"); Fed. R. Civ. P. 11(c)(4) ("The sanction may include … if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."[10]

**B.      The Court Should Grant Defendant's Motion for Sanctions Pursuant to 28 U.S.C. § 1927.**

When an attorney unreasonably or vexatiously multiplies the proceedings, courts may require the attorney to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *EscapeX IP LLC v. Google LLC*, No. 22-CV-08711-VC, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) (citing 28 U.S.C. § 1927); *see also Sneller*, 606 F.3d at 640 (noting that § 1927 authorizes sanctions upon counsel). A court may impose sanctions under

_____

[9] Should Defendant need to file a dispositive motion to dispose of this action when the Court has already provided that (1) Texas law applies (ECF No. 101; *see also supra* at 7, n. 2) and (2) that the facts "strongly indicate[] that [Plaintiff] has no breach of contract claim; that he is going to lose" (*see* Hr'g Tr. 4:14-16), any filed opposition by Plaintiff would provide a separate basis for sanctions for reasons noted. Defendant reserves the right to file that motion for sanctions pursuant to Rule 11 to recover all attorneys' fees and costs associated with briefing a dispositive motion in this case, if necessary.

[10] Defendant also requests dismissal of this case with prejudice on various grounds, as discussed *infra*.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                                              DEFENDANT'S MOTION FOR SANCTIONS
                                                CASE NO. 3:23-cv-03007-VC

§ 1927 where it finds that the attorney's conduct was reckless *or* in bad faith. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (finding that recklessness suffices for § 1927 sanctions); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (same). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument[.]" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citing *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir.1986)).

Sanctions pursuant to § 1927 are warranted given Plaintiff's reckless *and* bad faith conduct in this litigation, *either* of which suffices to warrant sanctions. *See Diaz v. Messer*, 742 F. App'x 250, 251 (9th Cir. 2018) (affirming the district court's imposition of sanctions pursuant to § 1927 sanctions against counsel that advanced arguments in support of Fed. R. Civ. P. 12(c) motion in a "slipshod and misleading manner" finding that the "quality of these arguments was 'a gross deviation from the standard of' legal arguments one would expect under these circumstances"). Here, both Plaintiff's personal claims and his unsuccessful efforts to represent a purported class – should have ended *at the latest* shortly after July 12, 2024, when his counsel received documents from X demonstrating that there was no case to be prosecuted. And as detailed *supra*, the documents X produced should not have been news to Plaintiff, because he would have been aware of his own repeated prior representations that Twitter had complete discretion not to fund the bonus plan and that Twitter should not pay the bonus. Moreover, Plaintiff would have communicated those critical facts to his counsel had Ms. Liss-Riordan performed any bare minimum reasonable investigation. *See Hendrix*, 971 F.2d at 399–400. Instead, as detailed above, Plaintiff's counsel forged ahead, and boldly chose to ignore a veritable mountain of "inconvenient" facts and law that nullified Plaintiff's class certification arguments, as well as his substantive personal claims. In doing so, Plaintiff's counsel caused the Court to "seriously wonder if, perhaps, you have put him in legal jeopardy" regarding his deposition testimony regarding the substance of his claims, and to deem counsel "totally unqualified to serve as class counsel." Hr'g Tr. 12:24-25; ECF 101, at 2.

Plaintiff's counsel then compounded these wrongs, and continued to act recklessly and in bad faith, by insisting on additional burdensome last-minute discovery, despite the Court's warning that that Plaintiff likely has no breach of contract claim and likely would lose on the merits. *See*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

Hr'g Tr. 4:14-16; ECF No. 101; *supra* at n. 2. Even Judge Ryu opined that Plaintiff's recent discovery demands "ha[d] the feel of a last-ditch fishing expedition, the burden of which outweighs the likely benefit," and denied Plaintiff's request for additional ESI searches because they were not proportional given "Schobinger's individual claims are weak while the scope of [the Request] is broad." ECF No. 114.

Courts have awarded sanctions under § 1927 in similar circumstances where a party "deliberately kept her meritless case alive for no purpose other than to force [defendant] to settle or to defend it." *See*, *e.g.*, *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998); *see also Kendrick*, 609 F. Supp. at 1173 (finding that "the maintenance of this action *in the face of the facts known or available to [plaintiff] both before and after the filing of defendants' motions* multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927") (emphasis added). Plaintiff's counsel thus should be sanctioned for vexatiously and unreasonably multiplying these proceedings long after they should have ended. Defendant should at a minimum be awarded all of its attorneys' fees and costs incurred since July 12, 2024, including without limitation all attorneys' fees and costs incurred in connection with the following: (1) taking Plaintiff's and former CFO Ned Segal's depositions; (2) responding to and arguing Plaintiff's reckless and frivolous Rule 23 motion; (3) negotiating, addressing and responding to Plaintiff's counsel's bad faith, last-ditch fishing expedition discovery requests; (4) preparing and litigating this Motion; and (5) any and all other time spent to bring this case to final conclusion, even if after a successful resolution of this Motion. *See Kendrick*, 609 F. Supp. at 1173 ("[T]he maintenance of this action in the face of the facts known or available to Kendrick both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927.").

C.     **The Court Should Grant Defendant's Motion for Sanctions Pursuant to the Court's Own Inherent Power.**

Courts also have inherent power to impose monetary or other sanctions against a party and/or its counsel to control the conduct of the proceedings, protect the "orderly administration of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19                                    DEFENDANT'S MOTION FOR SANCTIONS
                                      CASE NO. 3:23-cv-03007-VC

justice," and to maintain "the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980) (citations omitted).   A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  "While a court should ordinarily rely on 28 U.S.C. § 1927 and the Federal Rules of Civil Procedure to impose sanctions, if neither is 'up to the task, the court may safely rely on its inherent power.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (citing *Chambers*, 501 U.S. at 50); *see also Fink*, F.3d at 994 (holding that it well settled that "the district court may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927.").  Indeed, where misconduct could potentially be sanctioned under the Federal Rules of Civil Procedure but is "intertwined within conduct that only the inherent power [can] address," sanctions under the court's inherent powers are appropriate.  *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d at 926 (citing *Chambers*, 501 U.S. at 51).

Monetary sanctions under the court's inherent powers are available "if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink*, 239 F.3d at 994.  "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.*  For example, an "attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.*

Here, as detailed above, Plaintiff's and his counsel's filings and continued prosecution of this action after July 12, 2024, and in particular after the October 3, 2024, oral argument and October 16, 2024, Order on Plaintiff's class certification motion, check all of these sanctions boxes – reckless misstatements of law and fact, frivolousness, harassment, and an improper purpose.  *See supra* at 8-14.  Both Plaintiff and his counsel have prevented "the orderly and expeditious disposition" of this case through their reckless and bad faith conduct, including by disregarding dispositive facts and law to prolong this meritless action.  As a result, the Court should award Defendant its attorneys' fees and costs that have resulted from its need to defend against Plaintiff's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    frivolous claims from and after July 12, 2024.  *See Kendrick*, 609 F. Supp. at 1173 (ordering

2    plaintiff and his attorneys "to pay *all of the reasonable expenses, including reasonable attorneys'*

3    *fees, incurred by defendants in the defense of this action*" and finding that "[t]he Court has inherent

4    power to award attorneys' fees to the prevailing party in an action, such as the one before the Court,

5    brought in bad faith, vexatiously, wantonly and for oppressive reasons") (emphasis added);

6    *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–51 (1991) ("Much of the bad-faith conduct by

7    Chambers, however, was beyond the reach of the Rules [*e.g.*, Rule 11]; his entire course of conduct

8    throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and

9    the conduct sanctionable under the Rules was intertwined within conduct that only the inherent

10    power could address.").

11    ### D.    The Court Should Order Dismissal of the Action With Prejudice.

12    The dismissal sanction is a remedy available under either Rule 11 or the court's inherent

13    powers.  *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (discussing a party's

14    "falsifying a deposition," and stating that "Fed.R.Civ.P. 11, as well as the court's inherent powers,

15    can be called upon to redress such mendacity").  "It is well settled that dismissal is warranted where,

16    as here, a party has engaged deliberately in deceptive practices that undermine the integrity of

17    judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully

18    deceived the court and engaged in conduct utterly inconsistent with the orderly administration of

19    justice.'"  *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995);

20    *see also Combs*, 927 F.2d at 488–89 (finding dismissal an appropriate sanction either Rule 11 or

21    the court's inherent powers where party knowingly submitted false and misleading deposition

22    testimony).  Courts consider the following five factors when determining whether dismissal of an

23    action is an appropriate sanction: "(1) the public's interest in expeditious resolution of litigation;

24    (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions;

25    (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less

26    drastic sanctions."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser-*

27    *Busch, Inc.*, 69 F.3d at 348) (hereinafter the "*Anheuser-Busch* factors").

28    / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

Here, as a threshold matter, the above factual record abundantly establishes that both Plaintiff and his counsel have acted in bad faith and engaged in deceptive practices that have undermined the integrity of this judicial proceeding. *See, e.g., supra.* As but one example, the Court has raised very serious accusations of potential "perjury" against Plaintiff based on his deposition testimony, and "seriously wonder[ed] if" Plaintiff's counsel put his own client in such "legal jeopardy." Hr'g Tr. at 11:19-21, 12:21-25. In *Combs*, the Ninth Circuit expressly held that "[d]ismissal is an appropriate sanction for falsifying a deposition" under either Rule 11 or the court's inherent powers, and affirmed the district court's use of the dismissal sanction after finding that the plaintiff, "whether or not in collusion with counsel," had "attempted to deceive the district court on material matters before it." *Combs*, 927 F.2d at 488 (also stating that "[f]alsifying evidence is grounds for the imposition of the sanction of dismissal").

Further, balancing the five *Anheuser-Busch* factors weighs in favor of this Court utilizing the dismissal sanction pursuant to its inherent power:

First, the public's interest in expeditious resolution of litigation is satisfied through the Court's dismissal with prejudice of this baseless action. Dismissal is more efficient than allowing the case to proceed to the dispositive motion stage – particularly in light of the Court's findings that Plaintiff is most likely "going to lose" his breach of contract claim and that Texas law applies to his claims. *See* Hr'g Tr. 4:14-16; ECF No. 101 at 3.

Second, the Court's need to manage its dockets is likewise satisfied through the Court's dismissal with prejudice for similar reasons: a dismissal now is much more efficient than prolonging this litigation and allowing it to remain on the Court's docket for many months longer, when the most likely result is dismissal with prejudice. Further, dismissal with prejudice appropriately admonishes Plaintiff and his counsel, and incentivizes them going forward.

Third, because Plaintiff and his counsel have acted in bad faith (*see, e.g., supra*), a showing of prejudice is unnecessary here. *See, e.g., Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564–65 (N.D. Cal. 2008) (explaining that "a district court need not consider prejudice to the party moving for sanctions" when acting pursuant to its inherent power). In any event, the risk of prejudice to Defendant is high absent dismissal with prejudice in the near-term. If this action

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1    is not dismissed with prejudice, Defendant will be forced to expend more time, money, and

2    resources on this baseless case, including on fruitless "fishing expedition" discovery and in

3    preparing a dispositive motion.

4        Fourth, although public policy favors the disposition of cases on their merits, the Court has

5    already concluded that Plaintiff's breach of contract claim is very likely baseless, and his

6    promissory estoppel claim is frivolous for substantially similar factual and legal reasons.  *See supra*

7    at 11, 13-14.  Even if this factor did weigh against dismissal (which it does not here), courts have

8    held that this factor standing alone "is not sufficient to outweigh the other four factors."  *Leon*, 464

9    F.3d at 960–61; *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987) ("We have not

10   discussed the fifth dismissal factor: the public policy favoring disposition of cases on their merits.

11   Although this factor weighs against dismissal, it is not sufficient to outweigh the other four factors,

12   which in this case support dismissal.").  All such factors favor dismissal.

13       Fifth, and finally there are no less drastic sanctions that will adequately address Plaintiff's

14   and his counsel's bad faith conduct other than the dismissal of this action with prejudice.  When

15   considering the availability of less drastic sanctions, courts analyze: (1) the feasibility of less drastic

16   sanctions and why such alternate sanctions would be inappropriate; (2) whether the court

17   implemented alternative sanctions before ordering dismissal; and (3) whether the court warned the

18   party of the possibility of dismissal before ordering dismissal.  *Leon*, 464 F.3d at 960.  Here, while

19   an award of Defendant's attorneys' fees and costs is warranted and necessary for reasons stated,

20   dismissal with prejudice also is necessary to avoid future prejudice and send an appropriate message

21   to Plaintiff and his counsel.  Less drastic sanctions are simply not appropriate or sufficient, as only

22   dismissal with prejudice will put an end to Plaintiff's and his counsel's gamesmanship and

23   unwillingness to cease litigating what they already must recognize is a meritless lawsuit.  In sum,

24   the *Anheuser-Busch* factors support this Court's dismissal with prejudice.

25   **E.    Plaintiff Cannot Avoid Monetary or Other Sanctions By Attempting to Dismiss**

26       **this Case Voluntarily.**

27       Both the imposition of monetary sanctions *and* the dismissal sanction are necessary and

28   warranted here, particularly given the late stage of this action.  *See, e.g.*, *Leon*, 464 F.3d at 963

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                                DEFENDANT'S MOTION FOR SANCTIONS
                                 CASE NO. 3:23-cv-03007-VC

1  (affirming district court's decision to impose both a terminating sanction dismissing action with

2  prejudice and monetary sanctions); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1417 (9th Cir.

3  1990) (finding that both district court's entry of default and ordering of monetary sanctions were

4  proper).  Any effort by Plaintiff and his counsel at this juncture to dismiss this action would be "too

5  little, too late" and should not allow them to avoid monetary sanctions.  Doing so would fail to fully

6  remedy the sanctionable conduct here, including to compensate Defendant for the incredibly

7  expensive attorneys' fees and costs that it has been forced to incur due to Plaintiff's and his

8  counsel's misconduct, and to deter future misconduct.  Notably, Plaintiff does not have the ability

9  at this point to unilaterally dismiss this case, and the Court can impose a fee and cost award sanction

10  as a condition of any dismissal sought.  *See* Fed. R. Civ. P. 41(a)(1)(A) ("Subject to Rules 23(e),

11  23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without

12  a court order by filing:  (i) a notice of dismissal *before* the opposing party serves either an answer

13  or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have

14  appeared.") (emphasis added); Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an

15  action may be dismissed at the plaintiff's request only by court order, *on terms that the court*

16  *considers proper*.") (emphasis added); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98

17  (1990) (concluding that "petitioner's voluntary dismissal did not divest the District Court of

18  jurisdiction to consider respondents' Rule 11 motion", emphasizing that "a voluntary dismissal

19  does not eliminate the Rule 11 violation […] [because] [e]ven if the careless litigant quickly

20  dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a

21  litigant who violates Rule 11 merits sanctions even after a dismissal.")

22  **IV.    CONCLUSION**

23          For these reasons, the Court should grant Defendant's Motion for Sanctions in its entirety,

24  including:  (1) pursuant to Rule 11, award Defendant all attorneys' fees and costs that it has incurred

25  in connection with Plaintiff's frivolous Rule 23 motion for class certification and reply brief filings,

26  currently estimated at approximately $241,731 through the filing of this Motion; (2) pursuant to

27  Section 1927, award Defendant all attorneys' fees and costs that it has incurred in this action since

28  July 12, 2024, currently estimated at approximately $652,819.50 through the filing of this Motion

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

1   (which includes the $286,159.50 incurred due to its legally required payments to Sidley Austin LLP

2   in connection with that firm's representation of former Twitter CFO Ned Segal in connection with

3   this case); (3) award Defendant the same attorneys' fees and costs as requested in the foregoing

4   Item 2 pursuant to this Court's Inherent Power;[11] (4) award Defendant any and all further attorneys'

5   fees and costs that it incurs after the date of this Motion and through the final termination of this

6   case, including, without limitation, should Defendant have to file a dispositive motion; and

7   (5) dismiss this action in its entirety with prejudice.

8   Dated: _____, 2025     MORGAN, LEWIS & BOCKIUS LLP

9

10                          By  */s/ Eric Meckley*
                                   Eric Meckley
                                   Brian D. Berry

11                                 Ashlee N. Cherry
                                 Kassia Stephenson

12

13                                 Attorneys for Defendant
                                 X CORP. as Successor in Interest TWITTER, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[11] As noted, these amounts are explained in the Declaration of Eric Meckley submitted
contemporaneously herewith.  Defendant does not seek duplicative amounts (*e.g.*, recovery of the
same fees twice under both Section 1927 and the Court's Inherent Power), but separately states
the sanctions sought under each distinct ground for purposes of completeness.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT'S MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

EXHIBIT 2

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626-7653
Tel:    +1.714.830.0435
Fax:    +1.714.830.0700

Attorneys for Defendant
X CORP. as Successor in Interest to
TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARK SCHOBINGER, on behalf of
himself and all others similarly situated,

Plaintiffs,

v.

TWITTER, INC. and X CORP.,

Defendants

Case No. 3:23-cv-01788-JD

**DECLARATION OF ERIC MECKLEY IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT**

Date:    _____, 2025
Time:    10 a.m.
Judge:    Hon. Vince Chhabria

1

## **DECLARATION OF ERIC MECKLEY**

2      I, Eric Meckley, declare as follows:

3      1.      I am a partner at Morgan, Lewis & Bockius LLP, attorneys of record for

4 Defendant X Corp. ("Defendant" or "X"), on its own behalf and as successor in interest to

5 Twitter, Inc.  I submit this declaration in support of Defendant's Motion for Sanctions Pursuant to

6 Federal Rule of Civil Procedure 11, 28 U.S.C. Section 1927, and Inherent Power of the Court.  I

7 have personal knowledge of the facts set forth in this declaration, and if called as a witness I

8 could and would competently testify thereto.

9      2.      Defendant has incurred significant attorneys' fees and costs as a result of

10 Plaintiff's and his counsel's sanctionable conduct, including fees and costs related to

11 (1) Defendant's preparation for (including without limitation ESI discovery collection, review

12 and production) and taking the depositions of Plaintiff Mark Schobinger and former Twitter Chief

13 Financial Officer Ned Segal; (2) Defendant's researching, analyzing, opposing and arguing

14 Plaintiff's reckless, bad faith and frivolous Rule 23 motion; (3) Defendant's reviewing, analyzing,

15 and responding to Plaintiff's counsel's reckless, bad faith, last-ditch fishing expedition discovery

16 requests, including, without limitation, its preparation of a discovery-related joint-letter to the

17 Court concerning Plaintiff's discovery requests; (4) Defendant's researching and opposing

18 Plaintiff's reckless, bad faith and frivolous discovery motion to compel; (5) Defendant counsel's

19 necessary communications with Plaintiff's counsel, Mr. Segal's counsel and Defendant regarding

20 the litigation post-July 12, 2024; and (6) Defendant's researching, drafting and litigating this

21 Motion.  A further approximate breakdown of the fees incurred from work by my firm, and

22 required fee payments by X to another law firm, Sidley Austin, counsel for Mr. Segal in

23 connection with this case, is as follows:

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

DECL. OF ERIC MECKELY ISO
MOTION FOR SANCTIONS
CASE NO. 3:23-CV-03007-VC

| Category of Work Resulting from Sanctionable Conduct | Attorneys[1] | Attorneys' Fees Amount |
|---|---|---|
| Work related to the deposition of Plaintiff Mark Schobinger, including without limitation a voluminous ESI review, document productions in connection with such deposition, deposition preparation, and attending and taking Plaintiff's deposition. | Eric Meckley<br>Ashlee Cherry<br>Leonard Impagliazzo | $28,413.00 |
| Fees paid by X pursuant to California Labor Code section 2802 and a fee advancement/indemnity agreement and policy to Sidley Austin LLP for work that X understands to involve their representation and defense of former X Chief Financial Officer Ned Segal in connection with his deposition in this case. | Various Sidley Austin attorneys | $286,159.50 |
| Work related to the deposition of former X Chief Financial Officer Ned Segal, including without limitation a voluminous ESI | Eric Meckley<br>Ashlee Cherry<br>Leonard Impagliazzo<br>Kassia Stephenson | $45,738.00 |

---

[1] Defendant has taken a conservative approach and excluded fees for certain individuals that, while necessary and appropriate to the litigation, were more minimal in amount and work scope in the context of the overall case.

| Category of Work Resulting from Sanctionable Conduct | Attorneys[1] | Attorneys' Fees Amount |
|---|---|---|
| review, document productions in connection with such deposition, deposition preparation, and attending and taking Segal's deposition. | | |
| Work related to defending against Plaintiff's Motion for Class Certification (ECF No. 84), including without limitation review and analysis of Plaintiff's moving papers, research of relevant case law (including without limitation on a multitude of choice of law and state law issues), external correspondence with client, internal correspondence with colleagues, drafting of opposition and supporting papers, collection and preparation of supporting exhibits, responding to Plaintiffs filing of sealed documents, filing an administrative motion to seal documents in support of Opposition, analysis of Plaintiff's | Eric Meckley Brian Berry Jonathan Lotsoff Ashlee Cherry Kassia Stephenson Carolyn Corcoran Hannah Fisher | $241,731.00 |

| Category of Work Resulting from Sanctionable Conduct | Attorneys[1] | Attorneys' Fees Amount |
|---|---|---|
| reply brief, drafting of administrative motion to file sur-reply in response to reply brief and research in support of the same, preparation for hearing on motion for class certification and attendance of hearing on motion, and review of Court's order denying motion. | | |
| Work related to Plaintiff's Discovery Requests After the Court's Order Denying Class Certification, including without limitation preparation and arguing of a joint discovery letter to the Magistrate Judge concerning Plaintiff's eleventh-hour discovery requests (ECF No. 111), external correspondence with opposing counsel and client, internal correspondence with colleagues, review of discovery responses and documents produced to date. | Eric Meckley<br>Jonathan Lotsoff<br>Ashlee Cherry<br>Leonard Impagliazzo<br>Kassia Stephenson<br>Hannah Fisher | $12,159.00 |
| Work related to Defendant's Motion for Sanctions, including | Eric Meckley<br>Jonathan Lotsoff | $25,011.00 |

| Category of Work Resulting from Sanctionable Conduct | Attorneys[1] | Attorneys' Fees Amount |
|---|---|---|
| without limitation research of relevant case law, analysis of pleadings and hearing transcripts, drafting of motion for sanctions, external correspondence with client, and internal correspondence with colleagues. | Ashlee Cherry<br>Kassia Stephenson | |
| Work related to general defense strategy and litigation tasks, including without limitation external correspondence with client and opposing counsel, and internal correspondence with colleagues; drafting of case management statements, stipulations and status updates to Court; and attending Court conferences. | Eric Meckley<br>Jonathan Lotsoff<br>Kassia Stephenson<br>Carolyn Corcoran<br>Hannah Fisher | $13,608.00 |

**Total: $652,819.50**

3.　　Of the foregoing total amount, Defendant incurred approximately $241,731 in attorneys' fees and $289.35 in costs attributable to litigating and arguing Plaintiff's Rule 23 motion to certify a class and related proceedings. Substantial work by several litigation team members was required for these tasks arising from Plaintiff's filings. For example, Plaintiff sought to apply California law to a putative nationwide class including putative class members who worked in approximately thirty-six (36) different states. Defendant's Opposition needed to

1  address and explain why Plaintiff could not meet the Rule 23 requirements in relevant part

2  because numerous material issues associated with his breach of contract and promissory estoppel

3  claims were governed by myriad different laws of the states in which putative class members

4  worked.[2]  *See* ECF 84 § V.A.  These complexities required significant legal research and analysis

5  by a litigation team across several of the various states at issue, as well as substantial preparation

6  for the oral argument.  Moreover, Defendant had to research, analyze and brief these issues under

7  two distinct choice of law tests – California Civil Code Section 1646 as to contract interpretation

8  issues, and the three-part Governmental Interest Test as to all other issues.  The Court's Order

9  denying Plaintiff's class certification motion acknowledged these complex issues.  ECF 101, at 3

10  ("And Schobinger seeks to certify a nationwide class under California law, without regard to the

11  obvious choice-of-law concerns that are implicated.").  Furthermore, Defendant filed an

12  administrative motion for leave to file a sur-reply in response to Plaintiff's improper reply brief to

13  the Court, arguing that Plaintiff's reply (1) improperly attempted to amend the class definition;

14  (2) made material misstatements that directly contradicted Defendant's Opposition briefing; and

15  (3) contained new legal arguments.  ECF 92.  The foregoing amounts also include fees incurred

16  on Defendant's motion to seal certain exhibits filed during the course of briefing.

17          4.       I have reviewed the applicable invoices and time records from which the above

18  figures were generated.  I believe that the attorneys' fees and costs reflected in Paragraphs 2 and 3

19  are reasonable given the needs of the case, the issues presented, the billing rates charged, and the

20  quality and quantity of the work performed.  As discussed, the work related to the above

21  generally included (1) time spent preparing for and taking the depositions of Plaintiff and one of

22  Plaintiff's key fact witnesses, former CFO Ned Segal (repeatedly referenced by name in

23  Plaintiff's complaint); (2) time spent analyzing Plaintiff's motion for class certification,

24

---

25  [2] These varying state-specific issues included, for example, the admissibility and use of extrinsic evidence and differing standards for contractual ambiguity in contract interpretation matters;
26  whether continued at-will employment constitutes legal consideration to support a contract; standards for contract modification or novation; applicability of the statute of frauds to Plaintiff's
27  claims premised upon oral promises; the viability of promissory estoppel claims, particularly in the employment context; requirements for the clarity of a promise necessary to support a
28  promissory estoppel claim; and the availability of a jury trial for promissory estoppel claims.  *See* ECF 84, at 12-15.

DECL. OF ERIC MECKLEY ISO
MOTION FOR SANCTIONS
CASE NO. 3:23-CV-03007-VC

conducting legal research, drafting the responsive briefing and supporting declarations, compiling the supporting exhibits and documents in support of Defendant's Opposition to Plaintiff's motion for class certification, and finalizing the papers for filing; (3) time spent preparing for and attending the hearing on Plaintiff's motion for class certification; (4) time spent reviewing and responding to Plaintiff's recent discovery requests, and drafting Defendant's portion of the joint discovery letter in response to Plaintiff's motion to compel discovery; and (5) time spent communicating with Plaintiff's counsel, Mr. Segal's counsel, and my clients regarding all of the above, among other related tasks incident to litigation.

5.      My current normal hourly rate is $1,450.  My colleague Jonathan Lotsoff's current normal hourly rate is $1,350. My colleague Brian Berry's current normal hourly rate is $1,350. My colleague Ashlee Cherry's current normal hourly rate is $1,085.  My colleague Leonard Impagliazzo's current normal hourly rate is $875.  My colleague Kassia Stephenson's current normal hourly rate is $830.  My colleague Carolyn Corcoran's current normal hourly rate is $790. My colleague Hannah Fisher's current normal hourly rate is $740.  Our team's respective standard hourly rates were slightly lower during 2024.  The fees set forth above were all calculated, however, based upon an assumed, lesser blended hourly value of $630 for each hour billed by all timekeepers (hours worked can be derived from the above by dividing the totals in Paragraph 2 by $630).  The hourly rates charged (both the normal and as valued for this litigation) are comparable to the hourly rates charged by other law firms of like experience providing similar services.

6.      As noted above, the fees that Defendant paid to Sidley Austin were made pursuant to a fee advancement/indemnity agreement and policy and California Labor Code section 2802 for its representation of Twitter's former CFO Negal Segal in connection with his deposition in this matter.  Based upon the information in their invoices, Defendant understands that numerous Sidley Austin attorneys worked on these issues (including preparing Segal for and defending him during his deposition and reviewing documents and information related to the case), with hourly rates charges ranging from $590 to $2,100 per hour.

/ / /

7. Defendant also incurred necessary and reasonable costs associated with taking the Plaintiff's and Ned Segal's depositions. Defendant incurred approximately $11,649.65 in costs for the deposition transcript fees, videographer fees, and cancellation fees incurred from Plaintiff's depositions. Defendant incurred approximately $10,452 in costs for the deposition transcript fees and videographer fees for Ned Segal's deposition. I verify that this represents actual costs as reflected by my firm's records and invoices to date.

8. The fees amount in Paragraphs 2 and 3 and costs in Paragraph 7 do not include the full amount of attorneys' fees and costs incurred for this motion for sanctions. A supplemental declaration can be provided to reflect the fees and costs incurred once the briefing, argument and ruling on this motion is completed.

9. The reasonable attorneys' fees and costs incurred by Defendant to date as a result of Plaintiff's and his counsel's sanctionable conduct for the work performed by my firm as reflected in Paragraphs 2, 3 and 7 is estimated to be at least approximately $366,660, with an additional $286,159.50 related to work performed by Sidley Austin as noted above, for a total of $652,819.50. Further documentation supporting Defendant's reasonable fees and costs incurred by my firm as a result of Plaintiff's and his counsel's sanctionable conduct can be provided *in camera* at the Court's request if further substantiation is needed.

10. Attached hereto as **Exhibit 1** is a true and correct copy of the October 3, 2024, transcript from the hearing on Plaintiff's Motion for Class Certification.

11. Attached hereto as **Exhibit 2** is a true and correct copy of the October 25, 2024, transcript from the parties' further case management conference.

Executed on _____, 2025, in San Francisco, California.


_____
Eric Meckley

DECL. OF ERIC MECKLEY ISO
MOTION FOR SANCTIONS
CASE NO. 3:23-CV-03007-VC