EXHIBIT 2

Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

MARK SCHOBINGER, on behalf of    )
himself and all others           )
similarly situated,              )
                                 )
            Plaintiffs,           )
                                 )
  VS.                            )       NO. C 23-03007 VC
                                 )
TWITTER, INC.,                   )
                                 )
            Defendant.            )
_____)

San Francisco, California
Thursday, October 3, 2024

__TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS__

__APPEARANCES__:  (via videoconference)

For Plaintiffs:
                    LICHTEN & LISS-RIORDAN PC
                    729 Boylston Street - Suite 2000
                    Boston, Massachusetts  02116
              BY:  **SHANNON LISS-RIORDAN, ATTORNEY AT LAW**


For Defendant:
                    MORGAN, LEWIS & BOCKIUS LLP
                    One Market - Spear Street Tower
                    San Francisco, California  94105
              BY:  **ERIC MECKLEY, ATTORNEY AT LAW**

                    MORGAN, LEWIS & BOCKIUS LLP
                    110 North Wacker Drive
                    Chicago, Illinois  60606
              BY:  **JONATHAN D. LOTSOFF, ATTORNEY AT LAW**


Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

| | |
|---|---|
| 1 | **Thursday - October 3, 2024**                              **10:02 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Calling civil case 23-3007, Schobinger |
| 5 | versus Twitter, Inc., et al. |
| 6 | Will Counsel please state your appearances for the record |
| 7 | starting with the Plaintiff. |
| 8 | **MS. LISS-RIORDAN:**  Good morning, Your Honor, Shannon |
| 9 | Liss-Riordan for Plaintiff. |
| 10 | **THE COURT:**  Good morning. |
| 11 | **MR. LOTSOFF:**  Good morning, Your Honor, Jonathan |
| 12 | Lotsoff with Morgan Lewis on behalf of Defendant. |
| 13 | **THE COURT:**  Good morning. |
| 14 | **MR. MECKLEY:**  Good morning, Your Honor, Eric Meckley |
| 15 | appearing on behalf of Defendant. |
| 16 | **THE COURT:**  Hi.  Okay.  So, Ms. Liss-Riordan, you got |
| 17 | my order that I issued a couple days ago; but let me just make |
| 18 | sure I have it straight. |
| 19 | So your client, Mr. -- what's his name again? |
| 20 | **MS. LISS-RIORDAN:**  Schobinger. |
| 21 | **THE COURT:**  Showdinger? |
| 22 | **MS. LISS-RIORDAN:**  Schobinger. |
| 23 | **THE COURT:**  Schobinger.  So, Mr. Schobinger was Senior |
| 24 | Director of Compensation, and he filed a lawsuit alleging that |
| 25 | in August -- around August -- May, August of '22 Twitter |

1  promised to pay its employees the bonus.  And so, it was a

2  breach of contract for Twitter not to pay Mr. Schobinger his

3  bonus.

4          **MS. LISS-RIORDAN:**  Yes.

5          **THE COURT:**  Right.  And the company promised to pay

6  the bonus.  It was breach of contract.  It was promissory

7  estoppel not to pay the bonus in, what, like, March of 2023 or

8  something like that?

9          **MS. LISS-RIORDAN:**  Yes.

10         **THE COURT:**  And then but in November of '22

11 Mr. Schobinger -- so after the alleged promise, right, in

12 November of '22 Mr. Schobinger sends a message to the head of

13 People Experience at Twitter saying that he is recommending

14 that the company not pay the bonus and that the company has the

15 discretion not to pay the bonus.

16     He tells Musk directly in a meeting in January of 2023

17 that the bonus should not be paid.  He puts out a white paper

18 in February of '23 recommending that the company not pay the

19 bonus.

20     But yet, when your client did not get the bonus in March

21 of '23, he claims that that was a breach of contract and he

22 sues Twitter for breach of contract to recover the bonus.

23     And not only that, he proposes to represent a class of all

24 Twitter employees who were allegedly entitled to the bonus; and

25 asserts that he would be an adequate representative of this

1    class of Twitter employees.

2        What am I missing, Ms. Liss-Riordan?

3        **MS. LISS-RIORDAN:**  So, Your Honor, first of all, these

4    merits arguments have been presented to you in a way that

5    really picks and --

6        **THE COURT:**  This is not a merits argument.  This is an

7    argument that relates to whether your client is a typical

8    member of the class.

9        **MS. LISS-RIORDAN:**  Yes.

10       **THE COURT:**  Whether he is an adequate representative

11   of the class.

12       **MS. LISS-RIORDAN:**  Yes, yes, yes, okay.  So let me

13   explain.

14       **THE COURT:**  It certainly also -- it certainly also

15   strongly indicates that your client has no breach of contract

16   claim; that he is going to lose.

17       But putting that aside for the moment, the question now is

18   whether your client is an adequate representative of a class of

19   Twitter employees who might believe that they are entitled to

20   this bonus; that they were promised this bonus.

21       I mean, your client was the one that recommended that the

22   company not pay the bonus.

23       **MS. LISS-RIORDAN:**  This is really out of context.  So,

24   let me just explain to you in context.  What Mr. Schobinger

25   will testify to is that after Mr. Musk acquired the company,

1    he, as head of compensation, was asked to put together

2    essentially what arguments there would be for paying the bonus

3    and not paying the bonus.

4         So, as you noted in the order on the motion to dismiss, in

5    the PBP itself, it is discretionary whether or not the company

6    pays the bonus.

7         So, Mr. Schobinger understood that he was supposed to give

8    Mr. Musk guidance about what the financial world, what

9    investors would think about the bonus being paid.

10        **THE COURT:**  Ms. Liss-Riordan, is that anywhere in the

11   documents that show that your client was recommending that the

12   company not pay the bonus?

13        I mean, what -- let me just -- I think that you are --

14   let's try and separate the forest from the trees here.

15        **MS. LISS-RIORDAN:**  Yes.

16        **THE COURT:**  Your client alleges that he was promised

17   the bonus.

18        **MS. LISS-RIORDAN:**  Yes.

19        **THE COURT:**  In around the May-August '22 timeframe --

20        **MS. LISS-RIORDAN:**  Yes.

21        **THE COURT:**  -- okay, there is documentation showing

22   that your client is recommending that the bonus not be paid in

23   November, January, and February of '22 and '23.

24        **MS. LISS-RIORDAN:**  All right.  Okay, if I can --

25        **THE COURT:**  Whatever explanation your client has for

1    that -- oh, I was just -- I was just talking about how the

2    financial markets would react -- first of all, that's not true

3    because the documents show that he recommended that the bonus

4    not be paid; not talking about how the financial markets would

5    react to it.  He recommended that the bonus not be paid.

6         But even if you were right, that his motivation for doing

7    that was about how the financial markets would react or

8    whatever, let's take a step back here and just reflect on the

9    fact that your client has filed a lawsuit claiming that it was

10   a breach of contract not to pay him a bonus that he recommended

11   that the company not pay.

12        He recommended that the company not pay the bonus.  The

13   company did not pay the bonus, and now your client is suing for

14   breach of contract on the ground that he didn't get his bonus.

15        **MS. LISS-RIORDAN:**  Yeah, yeah, okay.  If I can just

16   explain for a moment, the decision about whether or not to pay

17   the bonus was made by Elon Musk.  Mark Schobinger did not make

18   a decision --

19        **THE COURT:**  That is not relevant to what I'm saying.

20   Let me just repeat what I said, okay, and see if you can answer

21   the question directly, okay?

22        **MS. LISS-RIORDAN:**  Okay.

23        **THE COURT:**  Your client claims that he was promised a

24   bonus in May-August of '22.  Your client recommended several

25   times after that that the company should not pay the bonus, and

1   now your client is suing claiming that the company breached the

2   May-August contract not to give him the bonus.

3       Putting aside for the moment whether your client could

4   possibly win the claim, how do you think that it would be

5   appropriate for that individual to be the named Plaintiff in a

6   class action on behalf of Twitter employees claiming that there

7   was a breach of contract by not giving them the bonus?

8       **MS. LISS-RIORDAN:**  Okay.  So, Mr. Schobinger, given

9   his situation as the head of compensation, having been central

10  to all of these discussions about whether or not the bonus

11  would be paid is well poised to be able to say that the company

12  promised employees that this bonus would be paid.

13      **THE COURT:**  Where did he say that in any of these

14  documents?  I mean, he didn't say that in any of these

15  documents.  He didn't say:  "You know what, you promised to pay

16  the bonus; but I recommend that you go back on the promise

17  now."

18      **MS. LISS-RIORDAN:**  No.  In his deposition -- in his

19  deposition he repeatedly said that he was promised the bonus,

20  and Mr. Musk then asked the team when he came in "Do I really

21  have to pay this bonus under the PBP policy;" and they were

22  asked to put together recommendations whether under the PBP it

23  had to be paid given that there were investors and the

24  financial markets were looking closely at what Twitter was

25  doing.

1          Mr. Schobinger understood that he was supposed to make a

2     financial recommendation, but the ultimate decision was with

3     Mr. Musk whether to comply with the promise that had been made

4     to employees or not comply with it.

5          So, we didn't lay out the full merits facts of the case in

6     our -- in our --

7               THE COURT:  But what you just said doesn't change

8     anything; right.  I mean, imagine --

9               MS. LISS-RIORDAN:  It wasn't his decision --

10              THE COURT:  Imagine a wage-and-hour case, right, and

11    imagine that, you know, you have a company that is failing to

12    pay minimum wage to its employees, all right.  And the

13    plaintiff files a class action on behalf of a hundred thousand

14    workers in California alleging that the employer has been

15    violating the minimum wage laws and seeks recovery on behalf of

16    those hundred thousand people.

17         And then imagine we find out that this named plaintiff is

18    a member of the executive team who has advised the company to

19    violate the minimum wage laws.

20         You are asking me should you violate the minimum wage laws

21    or not violate the minimum wage laws.  I'm telling you,

22    company, you should violate the minimum wage laws and not pay

23    minimum wage to your employees.  And then we find out that the

24    named plaintiff in that case did that.

25         Do you think for a second that any judge in the world

1    would find that that plaintiff is an adequate representative of

2    the class members?

3          MS. LISS-RIORDAN:  Well, I mean, frankly, I just think

4    there is a legal question about whether minimum wage laws were

5    violated or not.  Whether or not that person is adequate for

6    having said that, I -- I think is a question.

7          Here, I think --

8          THE COURT:  Yeah, but -- but --

9          MS. LISS-RIORDAN:  The --

10          THE COURT:  Let's say -- let's just say for a

11   second -- let's entertain for the moment the possibility that

12   some Twitter employee could win on a claim of breach of

13   contract.  Let's just say; right.  I mean, the actual evidence

14   is very different from what you alleged in the complaint; but

15   let's say, for the sake of argument, that some Twitter employee

16   can be capable of winning a breach of contract claim.

17          Do you think that your client is capable of winning a

18   breach of contract claim?  It seems -- it seems impossible that

19   your client could win a breach of contract claim.

20          And even if I'm wrong about that -- even if his claim is

21   merely significantly weaker because he was -- he recommended

22   that the contract be breached; right -- even if his claim is

23   significantly weaker, that means he is not an adequate

24   representative of the class because he -- at trial he would be

25   up there testifying and he would be cross-examined about the

1    fact that he recommended that the bonus not be paid.

2        And the jury is so much more likely to rule against him

3    based on his conduct, right, but even if some Twitter employee

4    could recover on a breach of contract claim, having your client

5    as their representative dramatically jeopardizes their ability

6    to recover.  And that is the definition of an inadequate class

7    representative.

8        **MS. LISS-RIORDAN:**  Okay.  Can I just make two points

9    in response to that?

10        **THE COURT:**  Yes.

11        **MS. LISS-RIORDAN:**  First off, Mr. Schobinger as the

12    director of compensation would be well positioned to be able to

13    tell the jury what was going on behind closed doors in the

14    discussion --

15        **THE COURT:**  Right, what was going on behind closed

16    doors is that he was recommending that the bonus not be paid.

17        **MS. LISS-RIORDAN:**  Well, no.  He was asked, put

18    together different scenarios so that Mr. Musk can make the

19    decision of what to do; and he responded to the directive he

20    was given to do that.

21        The decision not to pay the bonus was not made because of

22    what Mr. Schobinger said.  It was made by Mr. Musk and from --

23        **THE COURT:**  But why does that matter?

24        **MS. LISS-RIORDAN:**  I mean, again, if a company doesn't

25    pay minimum wage the decision of whether or not to pay minimum

1   wage is made by whoever the actual decision maker is.

2       Even if a plaintiff in a case said:  "Well, it might look

3   bad for Wall Street if you pay minimum wage to these employees,

4   sir," and then the company doesn't pay minimum wage, that

5   doesn't mean the minimum wage shouldn't have been paid.

6           **THE COURT:**  That's not what your client said.

7           **MS. LISS-RIORDAN:**  That person is entitled to it --

8           **THE COURT:**  That's not what your client said.  Your

9   client recommended that the bonus not be paid multiple times in

10  writing.

11          **MS. LISS-RIORDAN:**  Well, it's -- that's out of

12  context, and you didn't see the full deposition where he

13  explained --

14          **THE COURT:**  Well, let me quote it for you.

15          **MS. LISS-RIORDAN:**  -- about -- to be paid.

16          **THE COURT:**  Can I quote it for you then?

17          **MS. LISS-RIORDAN:**  Well, I can quote you other parts

18  of the deposition back if you would like to see that.

19          **THE COURT:**  Yeah, his deposition -- and there is a

20  question of whether he committed perjury in his deposition,

21  frankly -- but -- given what's in these documents; right.

22      But the documents -- the contemporaneous documents, the

23  stuff that he wrote at the time in November and again later on

24  in February -- the November message that he wrote was (as

25  read:) "A logical outcome suggests we would not pay out the

1  FY22 bonuses due to the current environment and the severe

2  under performance to plan. So, you know, that is what I

3  recommended previously."

4      So he has previously recommended not paying; right.

5      "The plan permitted the compensation committee to exercise

6  that discretion."

7      And then in February of '23, he sends out a white paper

8  saying -- making a recommendation (as read:) "Exercise

9  discretion not to fund the bonus pool."

10     "This is why I believe exercising discretion and not

11 paying a bonus would be prudent despite the Safe Harbor nature

12 of the plan.  The optics of paying are not good," but he is

13 nonetheless recommending not paying the bonus.

14     So --

15         **MS. LISS-RIORDAN:**  Right.

16         **THE COURT:**  -- it seems to me -- I think there is --

17         **MS. LISS-RIORDAN:**  At the direction of Elon Musk, he

18 provided the justification for not paying the bonus.

19         **THE COURT:**  Okay.

20         **MS. LISS-RIORDAN:**  That's what --

21         **THE COURT:**  I think your client -- I think your client

22 might need to read his deposition transcript carefully and

23 wonder if he is in legal jeopardy for what he said in that

24 deposition.  You know, I seriously wonder if, perhaps, you have

25 put him in legal jeopardy.

1    But can I ask you when did you discover these documents,

2 Ms. Liss-Riordan?  Certainly you didn't know about them before

3 you filed the lawsuit, did you?

4    **MS. LISS-RIORDAN:**  Your Honor, I'm sorry.  I can't

5 tell you exactly when I saw what, but I believe that I have

6 explained that he understood he was being told by Mr. Musk to

7 put down -- or Mr. Musk advisor's to put down a recommendation

8 regarding spelling out what the options were.  That was --

9    **THE COURT:**  So, his testimony is -- what he is going

10 to get on the stand at trial and testify to is:  "Look, I knew

11 all along that we were contractually bound -- that Twitter was

12 contractually bound to pay this -- to pay this bonus, but

13 Mr. Musk told me to recommend that we not pay the bonus; and,

14 therefore, I recommended in writing that we not pay the bonus

15 even though I knew full well that we were obligated to pay the

16 bonus."  Is that what he is going to testify to at trial?

17    **MS. LISS-RIORDAN:**  Well, I mean, for one thing he is

18 not a lawyer; but he understood that a representation had been

19 made to the company -- to the employees throughout the company

20 the bonus would be paid.  As the head of Compensation, he was

21 asked to write up a memo regarding how it would look for the

22 company to pay this bonus and he did that.

23    So, again, I think his words --

24    **THE COURT:**  Well, he didn't write a memo about how it

25 would look to the company to pay the bonus or not pay the

1    bonus.

2        He wrote a memo -- he wrote multiple messages recommending

3    that the bonus not be paid.

4            **MS. LISS-RIORDAN:**  Right, as he understood --

5            **THE COURT:**  Because it was discretionary.  Because it

6    was discretionary.

7            **MS. LISS-RIORDAN:**  Right, under the PBP it was

8    discretionary; but he says that it was told to employees -- and

9    we have evidence that it was told to employees that it would be

10   paid; and it is a legal question about whether that's an

11   enforceable contract.

12       So, Your Honor, let me just say, I understand where you

13   are going with this.  It is obviously very clear, but let me

14   just raise another consideration then.

15       If you think that the concern in this case is that

16   Mr. Schobinger is not an adequate Plaintiff, there are a lot of

17   people -- there are a lot of Twitter employees -- many of whom

18   have reached out to us because they are very interested in this

19   case.  They want to know what's happening.  They want to be

20   sure that they are in line to be able to seek this recovery of

21   a bonus.

22       There are different considerations here.  One is the

23   possibility of adding a different class representative in

24   because that's what courts typically do rather than deny the

25   entire class any possibility of relief.

1    **THE COURT:**  But why would it be --

2    **MS. LISS-RIORDAN:**  Another consideration -- another

3    consideration is the following:  And that is that this case,

4    among other Twitter cases, have received a lot of attention.

5    So, there are class members out there who think that this case

6    is going forward.

7    If the Court decides to deny the motion to certify the

8    class based on the concern about the representative, the Court

9    should allow notice to class members that this case is not

10    moving forward as a class action, so the class members will

11    know that they need to take some action if they want to protect

12    their rights.

13    We can brief that out for you separately.  There is case

14    law supporting that notion; that when a case has received a lot

15    of public attention, if a class certification motion is going

16    to be denied, the class should be notified that they need to

17    take steps to protect their rights.

18    **THE COURT:**  Okay.  So, a couple points on that.

19    You made reference to denying the class of any possibility

20    of relief; right.  So, if you -- you should let us look for

21    another Plaintiff rather than -- and sub in another Plaintiff

22    rather than deny class certification because denying class

23    certification would deny the class any possibility of relief.

24    I mean, I think what you just said after that shows that

25    that's not true.  Denying class certification would not deny

1  the class of any possibility of relief because if I deny class

2  certification, I mean, the statute of limitations for the class

3  members is tolled while the class action is pending, right,

4  while the proposed class action is pending.

5       And if somebody else, you know, believes that there was a

6  contractual promise to pay the bonus, they can file a lawsuit

7  on their own or they can file a proposed class action.  And,

8  perhaps, they will name Mr. Schobinger as a Defendant in the

9  case since he obviously played such a significant role in the

10  decision not to pay the bonus.

11          MS. LISS-RIORDAN:  Okay.  I disagree with that.  It

12  was not his decision to make.  But anyway, the point is how

13  would class members know?  And I can cite authority for you

14  that when a class action has received widespread attention --

15  and this case was reported on in the New York Times and CNN and

16  we have had a number of employees reach out to us because they

17  are very interested in this case -- how will other people know

18  that the class has been denied?

19          THE COURT:  Yeah, I mean, I have seen case law that

20  says that when an individual -- you know, when a named

21  plaintiff files a class action and then the parties reach a

22  settlement and the named plaintiff requests dismissal of the

23  case, right -- it's not a class settlement.  It is just an

24  individual settlement, and the named plaintiff requests

25  dismissal of the case -- then the named plaintiff has to -- you

1    know, you can't just dismiss it.  You have to ask the court and

2    you have to show that, you know -- one of the things you have

3    to show is that notice shouldn't be sent out to the class

4    members.  I have never seen that in the context of denial of

5    class certification.

6          **MS. LISS-RIORDAN:**  Well, I can tell you a case off the

7    top of my head.  And I'm sure if we research it, we can find

8    more.

9          **THE COURT:**  Okay.

10         **MS. LISS-RIORDAN:**  Early on in the *O'Connor versus*

11   *Uber* case that was litigated before Judge Chen -- it was a case

12   that received widespread public attention -- the Court denied

13   certification for a -- for a subset of Uber drivers -- granted

14   certification for the larger class but then denied

15   certification for a certain subset; but then Judge Chen agreed

16   that because of the widespread publicity of the case, the

17   people who had been not included in the class wouldn't have any

18   reason to know that.  So, he ordered notice to go out to those

19   class members.

20        We can find other examples for you, but it's not just in

21   the context of dismissing a case on an individual basis that

22   had been filed on a classwide basis.

23         **THE COURT:**  Okay.  All right.  Sounds good.  Do the

24   Defendants have anything that they want to say in response?

25   Particularly I'm interested in your response to the suggestion

```
 1   that notice go out to -- notice be disseminated to the proposed
 2   class members.
 3        MR. LOTSOFF:  Quite a few things to say, Your Honor.
 4      And I guess -- if the Court would like me to address the
 5   adequacy issue, I'm happy to respond, but it sounds like you
 6   are good there.
 7      Just a couple of points, you know, this is not a case
 8   where substitution of any Plaintiff is warranted; and this is
 9   not a case where -- and just to be clear because the --
10        THE COURT:  Let me interrupt you on the issue of
11   substituting the Plaintiff.
12        MR. LOTSOFF:  Yeah.
13        THE COURT:  Right.  I mean, I would think that, you
14   know, 99 percent of Plaintiffs' lawyers, you know, once they
15   saw these documents --
16        MR. LOTSOFF:  Yeah.
17        THE COURT:  -- would have immediately either dropped
18   the case or scrambled to find a different Plaintiff; right.
19      So, I -- and the fact that that wasn't done here speaks
20   volumes, and I think -- and I can't imagine that I would allow
21   substitution of a Plaintiff at this late -- at this late stage
22   when it so obviously should have been done so long ago so, but
23   go ahead.
24        MR. LOTSOFF:  No.  I appreciate that, Your Honor.  And
25   I was going to say that, you know, this is not a case where
```

1  this -- these class issues can be cured in any event.

2      We have briefed this -- I'm happy to go into it but --

3      **THE COURT:**  No.  I mean, obviously you have got the

4  arbitration thing.

5      **MR. LOTSOFF:**  Yes.

6      **THE COURT:**  You have got the Texas law -- I mean, as

7  it relates to this Plaintiff, you have got the Texas law thing.

8  You know, it -- it seems highly unlikely that this could ever

9  be a nationwide class asserting California law.

10     I understand that there are a variety of other problems

11 beyond the ones that we have discussed.

12     **MR. LOTSOFF:**  Yeah.

13     **THE COURT:**  But I don't know if that is entirely

14 responsive to Ms. Liss-Riordan's point, which is that, you

15 know, if this case is dismissed might there be -- might there

16 be a bunch of people out there who believe they are entitled to

17 the bonus who have been kind of sitting back in reliance on

18 the -- you know, the existence of this case -- the existence of

19 this proposed class action.

20     And if so, you know, is there -- is there a way to sort of

21 notify them that the case is being -- I mean, like I said, in

22 the past what I have seen is sometimes members of a proposed

23 class will receive notification that the case is being

24 dismissed, right; that their rights have not been extinguished

25 but the named Plaintiff has dropped the lawsuit.  I have seen

1  those kinds of notifications.

2      Here, I guess what Ms. Liss-Riordan is proposing is that

3  they, you know -- the prospective class members receive a

4  notice that says something along the lines of:  "Hey, just want

5  to let you know class certification has been denied here, so,

6  you know, this case -- you know, your interests are not being

7  represented in this case anymore."

8      **MR. LOTSOFF:**  Well, this is the first that we are

9  hearing of this proposal.  And so, I will give you my thoughts.

10  To me, it sounds like a complete end run.

11      They place their bets here on a nationwide class across

12  states with this class representative.  They put forth a motion

13  that really -- the class is uncertifiable.  And now --

14      **THE COURT:**  So, you might be right about that.  I

15  mean, I don't know --

16      **MR. LOTSOFF:**  Yeah.

17      **THE COURT:**  -- whether, you know, it would -- maybe it

18  would be appropriate, you know, in a different case to certify

19  a class of California Twitter employees.  Maybe there is not

20  enough of them who didn't sign an arbitration agreement.  I

21  don't know.

22      **MR. LOTSOFF:**  There aren't, Your Honor.

23      **THE COURT:**  Maybe it would be appropriate to certify a

24  class of, you know, Twitter California employees.  Perhaps, you

25  could entertain, you know, a multistate class if there are some

1    other state laws that are similar to California.  Is there

2    something like that?  I don't know for sure, but I think -- I'm

3    not sure this is so much about whether this case could ever

4    proceed as class action.

5        I think it is more about whether employees should be -- or

6    former employees should be notified that their -- that they no

7    longer have a prospect of recovery in this case, and it's

8    not -- it's not to suggest that there could be some other class

9    action.

10        It is just that even on an individual basis if they wish

11   to, you know, pursue a remedy for this, like, they have to do

12   it themselves.  They can't -- they are no longer able to sit

13   back and wait for Mr. Schobinger to represent their interests

14   in this case.

15            **MR. LOTSOFF:**  Understood, Your Honor.  At this point

16   there has been no showing.  I'm hearing about articles -- there

17   have been lots of articles about lots of things.  I can't say

18   as I sit here today that any were particularly related to

19   Mr. Schobinger.  Maybe they did.  Maybe they didn't.  There has

20   been, you know, a number of things covered in the press.  There

21   has been no showing that a single person has been, you know,

22   relying on --

23            **THE COURT:**  I'm sure Ms. Liss-Riordan can show you a

24   large stack of press clippings.

25            **MR. LOTSOFF:**  Sure, about all sorts of things.

1       **THE COURT:**  She probably has it on her desk where she

2   is quoted making statements on behalf of Mr. Schobinger.

3       **MR. LOTSOFF:**  Well, and there is no showing that there

4   is a shortage of people who are vigorously prosecuting their

5   rights.

6       So, Ms. Liss-Riordan has pointed out a number of times

7   that she has, you know, two thousand -- over 2,000 individual

8   claimants.  She has got multiple class actions with various

9   class representatives pending, many of whom have been referred

10  to arbitration.

11      So, the only facts --

12      **THE COURT:**  Sorry, multiple class actions pending

13  against Twitter relating to the bonus?

14      **MR. LOTSOFF:**  No, no, various different things; but

15  Ms. Liss-Riordan's firm and she are representing these people.

16  She hasn't had difficulty identifying claimants and plaintiffs;

17  getting them to come forward.  We are not talking about two,

18  twelve --

19      **THE COURT:**  And she says that -- she says that people

20  have been reaching out to her.  And so, obviously she could

21  communicate with those people.

22      **MR. LOTSOFF:**  Yeah, notice is not necessary here.  It

23  hasn't shown to be necessary.  And my point about the paucity

24  of the showing is that there is a great irony if a motion is

25  filed and it's so deficient legally that they get notice

1    anyway.

2            **THE COURT:**  Yeah.  Well, the other thing is, you

3    know -- you know, one possibility is just to deny class

4    certification; and then Ms. Liss-Riordan can fire up her PR

5    machine and get -- get press on this, and that will serve to --

6    anybody who read the previous articles will probably read these

7    articles.

8            **MR. LOTSOFF:**  That's a good point.  I would also like

9    to address your point about just the size of these, you know,

10   alleged pools and other subclasses in other states.

11           There are only 59 people in the putative class here who

12   did not sign DRAs.  Of those 59 --

13           **THE COURT:**  Sorry.  In California or nationwide?

14           **MR. LOTSOFF:**  Nationwide.  Six signed releases.  That

15   leaves 53 people.  One of them is Mr. Schobinger.  So, you have

16   got 52 people who didn't sign DRAs.  Of those, about 30 are in

17   California and then the rest are scattered across a handful of

18   other states.

19           So, there is no subclass here in California or elsewhere;

20   but, you know, again, there has been no showing that anybody

21   needs help asserting claims against the Defendant.

22           And, in fact, you know, by Ms. Liss-Riordan's own filings

23   and statements, she has had great success in doing so.  So, you

24   know, for all these reasons, you know, we think the issuance of

25   notice is not needed and inappropriate under these

```
 1   circumstances.  It is a second or third bite at the apple.  It
 2   may not be sort of the perfect world that the Plaintiffs had
 3   hoped for, but it is second best.
 4        And, you know, the cases in district courts throughout the
 5   Ninth Circuit note -- and I know it is a different issue -- but
 6   you can't use reconsideration -- okay, well, how about this --
 7   in order to get a second or third bite when you had your
 8   opportunity the first time around.  And I can give you cases
 9   right now.  I can --
10        THE COURT:  That's okay.  All right.  I will give the
11   notice issue a little more thought and issue a ruling.
12        MS. LISS-RIORDAN:  Okay.  Can I -- if you are not
13   going to take further briefing on it, can I just respond
14   briefly to some of what was said about the notice issue?
15        THE COURT:  Sure.
16        MS. LISS-RIORDAN:  So, there have been many employees
17   who have stepped forward to make claims against Twitter that
18   our firm is representing.  The vast majority of those employees
19   were employees that were laid off in the layoffs that occurred
20   after Mr. Musk took over the company.
21        This claim is different because it refers to employees who
22   were not laid off, who were seeking -- who we allege were
23   promised this bonus.
24        So just the --
25        THE COURT:  Is Mr. Schobinger still working for
```

1    Twitter?

2              **MS. LISS-RIORDAN:**  No.  He resigned later in 2023.

3              **THE COURT:**  What is he doing nowadays?

4              **MS. LISS-RIORDAN:**  He has another job.

5              **THE COURT:**  Yeah, what is it?

6              **MS. LISS-RIORDAN:**  I don't really know if I want to

7    put on the public record Mr. Schobinger's history, but he is

8    working for another prominent employer.

9         So, the idea that we can just fire up our PR machine and

10   let all those people out there who read the New York Times

11   article or CNN story, that there was a claim for the people who

12   were not laid off but have a claim to a bonus, will somehow now

13   see it, I don't think the case law supports the idea that,

14   well, if Plaintiffs' Counsel had been successful in getting

15   publicity for a case before, obviously they will get publicity

16   when the case gets denied certification.

17        So, I just don't think that makes sense.  Yes, we have had

18   success in having a lot of people come forward to challenge

19   they are not receiving what they believe they should have

20   received after they were laid off.  This is a different kind of

21   a case.

22        And the fact that some have come to us shows that there is

23   interest out there, but one can't expect that employees who may

24   be affected by a claim in a case are going to just somehow know

25   out of thin air where to look, where to go; that the claim that

1  was asserted on their behalf, that they found out about, that

2  they thought they could rely on is no longer happening.

3        **THE COURT:**  I will let you -- why don't I let you go

4  ahead and file a supplemental letter brief on that by tomorrow

5  at noon Pacific; and you can -- and strictly limit it to the

6  issue of whether, you know, prospective class members should be

7  notified of denial of class certification.  So, that letter

8  brief is due at noon Pacific tomorrow, Friday.  And then I will

9  let the Twitter know if I need a response to that.

10        **MS. LISS-RIORDAN:**  Okay.  Thank you.

11        **MR. LOTSOFF:**  Thank you, Your Honor.  Just one more

12  point if I may, there may -- there probably will be a Law360

13  article about this tomorrow, about this hearing, that also goes

14  to these issues in terms of publicity.

15      I think we would appreciate the opportunity to respond to

16  anything that Ms. Liss-Riordan files, but again --

17        **THE COURT:**  I will let you know if I need anything.

18        **MR. LOTSOFF:**  Okay.  Thank you, Your Honor.

19        **THE COURT:**  Thank you.

20        **MS. LISS-RIORDAN:**  Thank you.

21            (Proceedings adjourned at 10:37 a.m.)

22                    ---oOo---

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  DATE:    October 3, 2024

8

9

10

11        _____

12           Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
           United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25