MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626-7653
Tel:    +1.714.830.0435
Fax:    +1.714.830.0700

Attorneys for Defendant
X CORP. as Successor in Interest to
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 41(A)(2)**<br><br>Date:        March 6, 2025<br>Time:       10 a.m.<br>Judge:      Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ......................................................... 4

    A.  Plaintiff Sued Defendant for Defendant's Failure to Pay a Bonus that Plaintiff Repeatedly Advised Defendant Not Pay and Said It Did Not Have to Pay ................................................................................................................ 4

    B.  Discovery Revealed the Baseless Nature of Plaintiff's Claims. ........................... 5

    C.  Despite the Evidence Invalidating His Case, Plaintiff Filed a Motion for Class Certification, Which the Court Denied and Reprimanded Plaintiff and His Counsel for Filing. ...................................................................................... 6

    D.  Plaintiff Insisted on Further Harassing Discovery and Litigating His Meritless Individual Claims After the Class Certification Ruling. ...................... 11

    E.  After Defendant Provided Plaintiff with Formal Notice of Its Motion for Sanctions, Plaintiff Moved to Dismiss the Action with Prejudice Pursuant to Rule 41(a)(2). .................................................................................................... 12

III. ARGUMENT .................................................................................................... 15

    A.  The Court Can and Should Grant Defendant's Motion for Sanctions Pursuant to Rule 11, 28 U.S.C. Section 1927, and/or Its Inherent Power, In Addition to Granting Dismissal With Prejudice. .............................................. 15

    B.  Even if the Court Believed it Could Not Entertain Defendant's Sanctions Motion – Which It Can – It Should Still Award the Monetary Sanctions Sought Pursuant to Rule 41(a)(2) as a Term in Its Dismissal Order .................... 20

        1.  Condition of Attorneys' Fees and Costs Payable by Plaintiff .................. 21

        2.  Condition of Attorneys' Fees and Costs Payable by Plaintiff's Counsel ......................................................................................................... 23

IV. CONCLUSION .................................................................................................. 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Anzaldua v. TitanLiner, Inc.*,
   2020 WL 1236466 (N.D. Tex. Mar. 13, 2020) ........................................................................ 10

*Castranova v. Teknekron Info., Inc.*,
   2003 WL 22143793 (N.D. Tex. Aug. 18, 2003) ...................................................................... 10

*Chavez v. Northland Grp.*,
   2011 WL 317482 (D. Ariz. Feb. 1, 2011) ............................................................................... 21

*Chavez v. Wal-Mart Stores Inc.*,
   2014 WL 12591672 (C.D. Cal. Nov. 14, 2014) .............................................................. *passim*

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ......................................................................................................... *passim*

*Heckethorn v. Sunan Corp.*,
   992 F.2d 240 (9th Cir. 1993) ................................................................................... 20, 21, 23

*Herman v. Zamora*,
   178 F.3d 1299 (9th Cir. 1999) ................................................................................................ 21

*Ke v. J R Sushi 2 Inc.*,
   2022 WL 1496576 (S.D.N.Y. Feb. 7, 2022) .......................................................................... 18

*In re Kunstler*,
   914 F.2d 505 (4th Cir. 1990) .................................................................................................. 18

*Leon v. IDX Systems Corp.*,
   464 F.3d 951 (9th Cir. 2006) ............................................................................................ 16, 18

*Lotito v. Knife River Corp.-S.*,
   391 S.W.3d 226 (Tex. App. 2012) .......................................................................................... 10

*Mireskandari v. Associated Newspapers, Ltd.*,
   665 F. App'x 570 (9th Cir. 2016) .......................................................................................... 16

*Orian v. Fed'n Int'l des Droits de L'Homme*,
   No. CV116904PSGFFMX, 2011 WL 13220921 (C.D. Cal. Dec. 13, 2011) ......................... 15

*Rodriguez v. Serv. Emps. Int'l*,
   No. C-10-01377 JCS, 2011 WL 4831201 (N.D. Cal. Oct. 12, 2011) .............................. 21, 22

*Shanklin v. Colum. Mgmt. Adv., L.L.C.*,
   2008 WL 4899631 (S.D. Tex. Nov. 12, 2008) ....................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

*Smith v. Lenches*,
  263 F.3d 972 (9th Cir. 2001)............................................................................................... 19, 20

*Song v. Drenberg*,
  No. 18CV06283LHKVKD, 2021 WL 4846779 (N.D. Cal. Oct. 18, 2021) ........................... 16

*Stevedoring Servs. of Am. v. Armilla Int'l B.V.*,
  889 F.2d 919 (9th Cir. 1989)................................................................................................. 21

*Strike 3 Holdings, LLC v. Doe*,
  No. 118CV01075MCECKD, 2019 WL 935389 (E.D. Cal. Feb. 26, 2019) .................... 16, 18

*Thomas v. Early Cty.*,
  GA, 360 F. App'x 71 (11th Cir. 2010).................................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................................... 10

*Westlands Water Dist. v. United States*,
  100 F.3d 94 (9th Cir. 1996).................................................................................................... 23

*Zenor v. El Paso Health. Sys., Ltd.*,
  176 F.3d 847 (5th Cir. 1999).................................................................................................. 10

**Statutes**

28 U.S.C. Section 1927 ................................................................................................ *passim*

Fed. R. Civ. P. 11 .................................................................................................... 12, 17

Fed. R. Civ. P. 41 ........................................................................................................ *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

## I.    INTRODUCTION

Defendant X Corp., successor in interest to Twitter, Inc., (the "Company" or "X") opposes Plaintiff and his counsel's transparent attempt to evade monetary sanctions for their pattern of bad faith vexatious conduct, which strung out this litigation at great cost and burden to the Company long after the facts showed that Plaintiff's claims had no merit.  The law, the facts, and the equities all should prevent Plaintiff and his counsel from avoiding imposition of sanctions via their requested dismissal.  Quite simply, a request for dismissal is not a "get-out-of-jail-free card" that can be used to evade the consequences of a party's litigation misconduct.  The damage is already done, and Plaintiff and his counsel must face the consequences of their sanctionable actions.  *See*, *e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990) ("[A] voluntary dismissal does not eliminate the Rule 11 violation[.] […] Even if the careless litigant quickly dismisses the action, *the harm triggering Rule 11's concerns has already occurred*.") (emphasis added).  As detailed below, this Court has the authority, and the clear grounds, to impose sanctions on Plaintiff and his counsel, *and* to dismiss this action with prejudice.

As explained in Defendant's concurrently filed Motion for Sanctions (the "Sanctions Motion") (ECF No. 119), Plaintiff's request for dismissal is "too little, too late."  More than six months ago, Plaintiff's counsel received documents in discovery showing that (1) Plaintiff's individual claims were completely meritless, and (2) Plaintiff was an entirely inadequate class representative – specifically, that he, as the Company's then-Senior Director of Compensation, repeatedly advised the Company *not* to pay the 2022 discretionary bonuses he subsequently sued over, and represented that the Company had *no obligation* to pay such bonuses.  As this Court aptly observed at the October 25, 2024 hearing on Plaintiff's motion for class certification: "99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff" and "the fact that that wasn't done here speaks volumes."  Hr'g Tr. 18:13-23 (emphasis added).

Unlike "99 percent of plaintiff's lawyers," however, Plaintiff's counsel here "doubled down" on pursuing entirely meritless claims on behalf of her client *and* on behalf of a putative class, needlessly driving up Defendant's attorneys' fees and costs by filing a meritless Federal Rule

of Civil Procedure ("Rule") 23 motion for class certification, which the Court denied on October 16, 2024.  In its order denying class certification, the Court found Plaintiff's explanations and supposed justifications for his breach of contract claim to be "convoluted" and likely "untrue" given the admissions and contemporaneous evidence produced during discovery.  ECF No. 101.  And during the hearing on Plaintiff's motion for class certification, the Court further highlighted that "the actual evidence" produced in discovery was "very different from what [Plaintiff] alleged in the complaint," and concluded that these facts "strongly indicate[d] that [Plaintiff] has no breach of contract claim; *that he is going to lose*."  Hr'g Tr. at 4:14-16, 9:13-14 (emphasis added).

Plaintiff's Motion to Dismiss with Prejudice (the "Dismissal Request") (ECF No. 115) acknowledges that "the Court made clear its belief that Plaintiff should not pursue [his] claim" on October 3, 2024 during the hearing on Plaintiff's motion for class certification, and once again on October 25, 2024 during the parties' status conference following the Court's order denying Plaintiff's motion for class certification.  Mot. at 1:13-15.  But Plaintiff's Dismissal Request fails to explain why, despite the Court's warnings and reprimands, Plaintiff and his counsel continued to pursue his claims for more than three months *after* these October hearings.  Specifically, after the Court denied class certification and made clear its belief that Plaintiff's individual claims lacked merit, Plaintiff's counsel served additional burdensome discovery on Defendant, including several deposition notices, and then filed a discovery motion seeking to compel discovery from Defendant – all completely unjustified actions that further multiplied the needless cost and burdens upon Defendant.  Most importantly, it was *only after* Defendant prepared its Sanctions Motion and served a copy of that motion on Plaintiff and his counsel (in compliance with the Rule 11 "safe harbor" provisions) that they filed the current Dismissal Request.

As Plaintiff and his counsel are aware, Defendant's Sanctions Motion seeks not only a Court order dismissing this action with prejudice, but also an award of monetary sanctions against them both.  Specifically, Defendant seeks an award of sanctions equal to the unnecessary attorneys' fees and costs that Defendant has incurred in defending against (a) Plaintiff's and his counsel's frivolous motion for class certification (which was filed recklessly and in bad faith in light of the documents that were produced during discovery in July 2024), and (b) their continued prosecution of Plaintiff's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

meritless case for months after the denial of class certification, even after the Court strongly advised that Plaintiff not pursue his individual claims.  For these reasons, while Defendant agrees that this action should be dismissed with prejudice, dismissal alone is not enough.

An award of attorneys' fees and costs as outlined in Defendant's Sanctions Motion and the supporting Declaration of Eric Meckley is necessary to fully remedy the sanctionable conduct that has already occurred and caused harm to Defendant.  Plaintiff's and his counsel's Dismissal Request cannot erase this history or their culpability.  Such an award also is critical to ensuring that Plaintiff and his counsel refrain from such improper conduct going forward.  Plaintiff's counsel has already asserted claims to recover the 2022 discretionary PBP bonus on behalf of many other employees in arbitration, and Plaintiff – a key architect of the bonus decision he purports to challenge – likely would be a witness or otherwise seek to assist Plaintiff's counsel in such matters. Courts recognize that sanctions are an important means of disincentivizing improper conduct and deterring abuses of the kind committed by Plaintiff and his counsel in this action.

In sum, Defendant requests that the Court grant Defendant's concurrently filed Sanctions Motion *and* dismiss this action with prejudice.  As detailed below, this Court can and should do so under the authority discussed in Defendant's Sanctions Motion, irrespective and independent of Plaintiff's Dismissal Request, without creating any conflict under Rule 41(a)(2).  In addition, or in the alternative, the Court may award such sanctions as a term in and condition of its dismissal order pursuant to Rule 41(a)(2), which enables a court to dismiss an action "on terms that the court considers proper."  Defendant's Sanctions Motion and supporting declaration demonstrate why such a term is proper and necessary here.[1]

/ / /

/ / /

/ / /

---

[1] The hearing on Plaintiff's Dismissal Request is currently set for March 6, 2025.  The hearing on Defendant's Sanctions Motion is currently set for March 27, 2025.  *See* ECF No. 119.  Due to the overlapping nature of these motions and for efficiency purposes, Defendant requests that the Court re-set the hearing on Defendant's Dismissal Request to March 27 so that the hearings coincide and can be held simultaneously.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1    **II.    RELEVANT FACTUAL BACKGROUND[2]**

2        **A.    Plaintiff Sued Defendant for Defendant's Failure to Pay a Bonus that Plaintiff**

3            **Repeatedly Advised Defendant Not Pay and Said It Did Not Have to Pay.**

4        On June 20, 2023, Plaintiff Mark Schobinger ("Plaintiff") filed a Class Action Complaint

5    and Jury Demand against Defendant, which he amended on January 12, 2024 to clarify that

6    Plaintiff's promissory estoppel claim (Count II) is being pled in the alternative to, and not in

7    addition to, the breach of contract claim (Count I). ECF Nos. 1, 37, 43.  At bottom, Plaintiff claims

8    that Defendant made promises to pay, and then failed to pay, discretionary 2022 annual

9    performance bonuses to Twitter employees, including Plaintiff.  *See* ECF No. 43.  According to

10   Plaintiff, he remained employed at Twitter through the first quarter of 2023 because he had relied

11   on Defendant's purported promise to pay this bonus.  *See id.*

12       Prior to filing this Action, Plaintiff served as Twitter's Senior Director of Compensation –

13   a high-level position that provided him with material input and insight into the decision-making

14   processes behind the payment of this bonus he alleges he was owed.  *See, e.g.*, ECF No. 87 at 10

15   (Plaintiff described himself as "a higher level employee with insight into decisionmaking being

16   made by the company").  What the Complaint fails to disclose, however, is that in his capacity as

17   Senior Director of Compensation Plaintiff expressly advised that Twitter *not* pay the 2022 bonus

18   and told decisionmakers that Twitter was *not* obligated to pay it.  *See, e.g.*, ECF Nos. 84-11, 84-17,

19   84-18 (Pl. Dep. Exs. 13, 22, 23).[3]  In fact, Plaintiff *repeatedly* urged that the 2022 bonus need not

20   and should not be paid according to the terms of the bonus plan, which he had helped draft.  *See id.*

21   Notwithstanding his own recommendation that Twitter not pay this bonus, Plaintiff chose to sue

22   Defendant for following his advice and not paying the bonus.  ECF Nos. 1, 43.

23   / / /

24

---

25   [2] Defendant notes for the Court that Sections II.A to II.D of this brief are largely similar to
     Section II of Defendant's Sanctions Motion.  These facts bear repeating here, both for the Court's
26   convenience and because Plaintiff's sanctionable conduct is directly relevant to the Court's
     decision on Plaintiff's pending Dismissal Request.  Section II.E below details Plaintiff's and his
27   counsel's effort to evade sanctions through the tactic of filing their late Dismissal Request.
     [3] These documents were marked as exhibits during Plaintiff's deposition and were submitted as
28   exhibits to the Declaration of Brian D. Berry (ECF No. 84-2) in support of Defendant's
     Opposition to Plaintiff's Motion for Class Certification.  *See* ECF No. 84.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                    DEFENDANT'S RESPONSE TO MOTION
                                     TO DISMISS WITH PREJUDICE
                                     CASE NO. 3:23-cv-03007-VC

**B.**   **Discovery Revealed the Baseless Nature of Plaintiff's Claims.**

Prior to taking Plaintiff's deposition, on July 12, 2024, Defendant produced documents that contained Plaintiff's own admissions and painted a dramatically different picture than what was alleged in his Complaint.  For example, Defendant produced October 19, 2022 correspondence between Plaintiff and another Twitter executive, in which Plaintiff stated that "[t]he [bonus] plan does not specifically contemplate a change of control" and as a result, it was "really unclear to [Plaintiff] if the bonus plan would permit paying out."  *See* ECF No. 84-10 (Pl. Dep. Ex. 12) (X-SCHOBINGER_00000082).  In addition, Defendant produced correspondence dated November 30, 2022, between Plaintiff and Twitter's then Head of People Experience, Katie Marcotte, in which Plaintiff told Marcotte that whether to pay the bonus was a matter of Elon Musk's discretion, and that Plaintiff recommended that the Company *not* pay the bonus.  *See* ECF No. 84-11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) (Schobinger stated: "The logical outcome suggests we would not pay out FY22 bonuses due to the current environment and the severe underperformance to plan. So you know, that is what I recommended previously (when we were still public) – the plan permitted the cmte to exercise that discretion […] Elon is the sole director at this point and it really comes down to him and only him to make the final decision […].").

Defendant also produced email correspondence between Plaintiff and another Twitter executive dated February 13, 2023, in which Plaintiff stated his belief that "*exercising discretion and not paying a bonus would be prudent*" and that the "*optics of paying are not good*" given the Company's precarious financial position.  ECF No. 84-17 (Pl. Dep. Ex. 22) (X-SCHOBINGER_00000133) (emphasis added).  As an attachment to that email, Plaintiff circulated a "white paper" that he had prepared to Twitter executives explaining that the bonus plan allowed Twitter the absolute discretion not to pay the bonus.  *See* ECF No. 84-18 (Pl. Dep. Ex. 23) (X-SCHOBINGER_00000125-131).  Former Twitter Human Resources manager Katie Marcotte's August 23, 2024, deposition testimony corroborated Plaintiff's admissions in the above-referenced documents.  She testified that Plaintiff himself had told Elon Musk directly in a January 2023 meeting that Twitter should not pay the bonus.  *See* ECF No. 84-6 (Marcotte Dep. at 90:20-91:12)

(Marcotte: "I recall Mark Schobinger saying out loud to the group that we should not pay out – that Elon had no obligation to pay out performance bonus plans.").

Notwithstanding this evidence, Plaintiff and his counsel pushed forward with the litigation of this case. The Company deposed Plaintiff on July 15, 2024, and August 2, 2024, and, on September 5, 2024, deposed Twitter's former Chief Financial Officer, Ned Segal, who Plaintiff alleged in the Complaint had made the promises about paying out the annual performance bonus. Neither Plaintiff's nor Segal's deposition testimony contradicted the clear documentary evidence and admissions referenced above. Rather, both Plaintiff and Segal admitted that no one, including Segal, promised that bonuses would be paid separate and apart from, or independent of, the full terms and conditions of the applicable discretionary bonus plan, thus completely undercutting the merits of Plaintiff's claims. *See* ECF No. 84-7 (Pl. Dep. at 99:25-100:23, 103:12-22); ECF No. 84-3 (Segal Dep. at 128:3-18).

**C.      Despite the Evidence Invalidating His Case, Plaintiff Filed a Motion for Class Certification, Which the Court Denied and Reprimanded Plaintiff and His Counsel for Filing.**

Turning a blind eye to this evidence, on August 23, 2024, Plaintiff filed his motion to certify a nationwide class, brazenly challenging "Twitter's refusal to pay employees their 2022 bonus" and neglecting to mention Plaintiff's own endorsement of and material role in Twitter's decision not to pay this bonus. ECF No. 75. Defendant filed its Opposition to Plaintiff's Motion for Class Certification on September 19, 2024, highlighting Plaintiff's admissions and repeated recommendations that Twitter should not pay the bonus, among the many other glaring deficiencies with Plaintiff's Rule 23 motion. ECF No. 84. Plaintiff filed his reply brief on September 23, 2024, arguing that Plaintiff's own representations and recommendations (*i.e.*, as the then-Senior Director of Compensation) about the bonus plan were somehow "not relevant" and that, "regardless of what he said, the company had promised to pay the bonus, and as an employee he expected it to be paid." ECF No. 87.

On October 3, 2024, the Court heard Plaintiff's Motion for Class Certification. ECF No. 98. During this hearing, the Court questioned Plaintiff's counsel regarding the timeline of

6

Plaintiff's complaint allegations as well as Plaintiff's contradictory admissions revealed during discovery. *See*, *e.g.*, Hr'g Tr. Under questioning by the Court, Plaintiff confirmed his position that Twitter's alleged promises to pay Plaintiff and other employees a 2022 bonus occurred around May and August 2022. Hr'g Tr. 2:23-3:4. He further confirmed to the Court that, *after* Twitter had purportedly made these promises, Plaintiff sent numerous messages and communications recommending that the bonus *not* be paid. Hr'g Tr. 3:10-19. The Court specifically observed that Plaintiff's own admissions conflicted with his Complaint allegations, underscoring that "the *actual* evidence is very different from what [Plaintiff] alleged in the complaint[.]" Hr'g Tr. 9:13-14 (emphasis added); Hr'g Tr. 3:10-22.

At the hearing, the Court also found that these facts directly undermined Plaintiff's typicality and adequacy to represent the class he sought to certify, emphasizing that Plaintiff "was the one that recommended that the company not pay the bonus." Hr'g Tr. 4:3-11, 21-22; *see also*, *e.g.*, *id.* at 9:10-10:7. The Court also stated that the factual record "strongly indicate[d] that *[Plaintiff] has no breach of contract claim; that he is going to lose*." Hr'g Tr. 4:14-16 (emphasis added).

After discussion with Plaintiff's counsel about the meaning and context behind these statements Plaintiff made, the Court asked Plaintiff's counsel to "take a step back here and just reflect on the fact that [her] client has filed a lawsuit claiming that it was a breach of contract not to pay him a bonus *that he recommended that the company not pay*." Hr'g Tr. 6:8-10 (emphasis added). Per the Court: "[Plaintiff] recommended that the company not pay the bonus. The company did not pay the bonus, and now your client is suing for breach of contract on the ground that he didn't get his bonus." Hr'g Tr. 6:11-14. The Court continued to highlight the audacity of this lawsuit, stating: "Your client claims that he was promised a bonus in May-August of '22. Your client recommended *several times after that* that the company should not pay the bonus, and now your client is suing claiming that the company breached the May-August contract not to give him the bonus." Hr'g Tr. 6:23-7:2 (emphasis added).

In response, Plaintiff's counsel contended that there was additional context behind the documentary evidence that the Court was missing here, which Plaintiff's counsel claimed Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

had explained during his deposition. She asserted, for example, that Plaintiff supposedly made these repeated incriminating statements simply because "[h]e was asked, [to] put together different scenarios so that Mr. Musk can make the decision of what to do; and he responded to the directive he was given to do that." Hr'g Tr. 10:17-20. However, the Court expressed its profound skepticism (at best), stating that, "there is a question of whether [Plaintiff] committed perjury in his deposition, frankly…." Hr'g Tr. 11:19-21. The Court further advised Plaintiff's counsel that "I think your client might need to read his deposition transcript carefully and *wonder if he is in legal jeopardy for what he said in that deposition*. You know, *I seriously wonder if, perhaps, you have put him in legal jeopardy*." Hr'g Tr. 12:21-25 (emphasis added). This skepticism was entirely justified. As the foregoing evidence demonstrates, Plaintiff's own communications made clear that he independently and purposely recommended *not* paying 2022 bonuses even before the acquisition and well before any purported "directive" (if any) to "put together different scenarios" for Musk. *See* ECF No. 84-11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) (Plaintiff's statement in Nov. 30, 2022 communication to then Head of People Experience Marcotte stating: "The logical outcome suggests *we would not pay out FY22 bonuses* due to the current environment and the severe underperformance to plan. So you know, *that is what I recommended previously (when we were still public)*…") (emphasis added).

The Court also asked Plaintiff's counsel point-blank when exactly she had discovered these documents, and specifically, if she knew about them before she filed the lawsuit.[4] In response, Plaintiff's counsel evasively said she could not recall "exactly when [she] saw what[.]" Hr'g Tr. 13:1-5. The Court expressed its view that "*99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff*" and that "*the fact that that wasn't done here speaks volumes*." Hr'g Tr. 18:13-23 (emphasis added).

/ / /

---

[4] And of course, since Plaintiff wrote these emails and Slack messages and "white paper" himself, he clearly was (or, at a minimum, should have been) well-aware of these documents and his own repeated prior representations that Twitter had the discretion not to pay the bonus and that the bonus should not be paid out.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

On October 16, 2024, the Court issued an Order Denying Motion for Class Certification, which was entirely consistent with the Court's expressed statements at the oral argument. ECF No. 101. The Court's Order noted that "interesting facts ha[d] been revealed in discovery," highlighting several of the communications by Schobinger discussed above.[5] In denying certification, the Court concluded in relevant part that these facts conclusively showed why Plaintiff could not prove adequacy or typicality. *Id.* at 2. Moreover, while not formally ruling on the merits, the Court pointedly noted its dim view of the viability of Plaintiff's claims, including his baseless assertion that he was just doing what he was told and did not mean anything he said:

> To describe these facts is to show why Schobinger is not an adequate class representative, and why his claims are not typical of the claims of the members of the proposed class. *It would be impossible for him to get on the witness stand and adequately represent the interests of Twitter employees who claim that the company wrongfully withheld the bonus. He might fit nicely into this case as a defendant, but he cannot possibly fit as a named plaintiff.*
>
> At his deposition, Schobinger offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it. *It seems likely that Schobinger's explanation is untrue.* But even if he is telling the truth, that's beside the point for purposes of this motion. Because *even if he is telling the truth, his conduct makes him the worst possible candidate to serve as a litigation representative for the other Twitter employees who didn't get a bonus.*

*Id.* at 2 (emphasis added).

The Court's assessment of the merits, while not binding, nevertheless is highly probative given that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' …. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."

---

[5] The Court specifically called out the following documents in particular:

In November 2022—several months after Twitter allegedly made the promises that Schobinger allegedly relied on— Schobinger sent a message to Twitter's "Head of People Experience." In the message, Schobinger asserted that whether to pay the bonus was a matter of Elon Musk's discretion. Schobinger mentioned in this message that he had recommended that the company not pay the bonus. And in February 2023, Schobinger sent other Twitter executives a "white paper" discussing the issue of whether to pay the bonus. In this document, Schobinger said: "…I believe exercising discretion and not paying a bonus would be prudent …" There is also evidence that Schobinger told Musk directly, in a January 2023 meeting, that Twitter shouldn't pay the bonus. ECF 101, at 1-2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citations omitted). Put another way,

2  Plaintiff and his counsel *once again* knew at that point that his claims had no merit.

3        The Court's Order also concluded that Texas law "obviously applies" to Plaintiff's claims.

4  *See id.* As Defendant explained in its Opposition to Plaintiff's motion for class certification (ECF

5  84 at 3), Plaintiff's claims clearly fail under Texas law, where continued service by an "at will"

6  employee is simply not valid consideration to support a breach of contract claim as a matter of law.

7  *See, e.g., Shanklin v. Colum. Mgmt. Adv., L.L.C.*, 2008 WL 4899631 at *12 (S.D. Tex. Nov. 12,

8  2008) ("[W]hen an employment contract does not guarantee a bonus in a fixed, nondiscretionary

9  amount, and the bonus offered is an incentive to encourage the employee to perform in accordance

10 with the previously existing contract of employment, the promise to pay a bonus is unenforceable

11 for want of sufficient consideration, since the employee is only giving the same service it has

12 already contracted with the employer to render."); *Castranova v. Teknekron Info., Inc.*, 2003 WL

13 22143793 at *2 (N.D. Tex. Aug. 18, 2003) ("[A] promise to pay a bonus is unenforceable for want

14 of sufficient consideration since the employee is only giving the same service he has already

15 contracted with the employer to render.").

16        As also explained in X's Opposition, Plaintiff's promissory estoppel claim is also not

17 cognizable under Texas law, and even if it were, the Court's comments and Order make clear that

18 there is *no* plausible way he could prove his own foreseeable and actual substantial detrimental

19 reliance on any of the purported bonus "promises" allegedly made. ECF 84 at 14 & 14 n. 20; *Lotito*

20 *v. Knife River Corp.-S.,* 391 S.W.3d 226, 227 (Tex. App. 2012) ("promissory estoppel is not an

21 independent cause of action in Texas in an employment context.") (citing additional cases); *id.* at

22 228 (concurring opinion noting that general promissory estoppel elements include "foreseeability

23 of reliance on the promise by the promisor" and "substantial detrimental reliance by the promisee");

24 *Anzaldua v. TitanLiner, Inc.,* 2020 WL 1236466 at *5 (N.D. Tex. Mar. 13, 2020) (noting

25 "significant disagreement among Texas courts as to whether promissory estoppel is available to

26 plaintiffs in the employment context.") (citing *Zenor v. El Paso Health. Sys., Ltd.,* 176 F.3d 847,

27 864 (5th Cir. 1999)); ECF 101 at 1-3.

28 / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

The Court's Order also denied Plaintiff's counsel's request to substitute a different plaintiff as a class representative for "a variety of reasons," principally including the following: "Most importantly, the fact that Schobinger's lawyer thought it was a good idea to file a motion for class certification in the face of this evidence (as opposed to dropping the case or seeking to substitute another plaintiff immediately upon discovering it) shows that she is totally unqualified to serve as class counsel."  ECF 101, at 2.

**D.      Plaintiff Insisted on Further Harassing Discovery and Litigating His Meritless Individual Claims After the Class Certification Ruling.**

During the parties' October 25, 2024 case management conference, Defendant previewed that it planned to file its Sanctions Motion because of Plaintiff's and his counsel's frivolous lawsuit and bad faith conduct.  *See* October 25, 2024 Case Management Conference Transcript (hereinafter "CMC Tr."), ECF No. 107, at 2-5.  In response, the Court confirmed its assumption that Defendant would be seeking monetary sanctions against both Plaintiff's counsel and Plaintiff himself, *as well as* dismissal of the action as a sanction.  *See id.* at 4:17-25 (The Court: "[S]o, the sanction would be asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself.  Would you also be seeking dismissal of the action as a sanction?"  Mr. Meckley: "It would be dismissal with prejudice as the – the action, yeah."  The Court: "Yeah.  Okay.  Yeah.  That's – that sounds fine.").[6]  Despite the Court's comments at this case management conference, the class certification hearing, and in its Order denying Plaintiff's motion for class certification, and despite the evidence and law refuting Plaintiff's individual claims, Plaintiff and his counsel *still* insisted on prosecuting this case and, following the Court's Order, served harassing and unnecessary eleventh-hour discovery, including a Rule 30(b)(6) deposition, a fact witness deposition, and additional ESI discovery.

On December 9, 2024, the parties filed a joint discovery letter upon Plaintiff's request to address these last-minute discovery requests.  On January 9, 2025, Chief Magistrate Judge Donna

---

[6] The Court further stated that, in response to Defendant's motion for sanctions, Plaintiff would have the opportunity to submit any evidence "in support of the argument that the lawsuit was not objectively baseless from the start and that it wasn't […] frivolous to continue the lawsuit upon the discovery of these documents."  *Id.* at 4:1-13.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

M. Ryu ruled on the joint discovery letter, noting that while the Court had not yet ruled on the merits of this case, the Court's assessment on the class certification motion "bears on the proportionality of the disputed discovery." ECF No. 114.  Notably, Judge Ryu denied Plaintiff's request that Defendant conduct further ESI searches, which would have included searches of "emails, Slack messages, and other communications by and among Twitter management personnel", finding that such discovery was "not proportional" and that "Schobinger's individual claims are weak while the scope of [the Request] is broad." *Id.*  Judge Ryu further concluded that the request "ha[d] the feel of a last-ditch fishing expedition, the burden of which outweighs the likely benefit." *Id.*[7]  Importantly, neither Defendant's Sanctions Motion nor the frivolousness of Plaintiff's continued prosecution of this case was before the Magistrate Judge.

### E.    After Defendant Provided Plaintiff with Formal Notice of Its Motion for Sanctions, Plaintiff Moved to Dismiss the Action with Prejudice Pursuant to Rule 41(a)(2).

On January 23, 2025, Defendant sent Plaintiff, via his counsel, a letter that provided formal notice of its intention to file its Sanctions Motion pursuant to Rule 11, as well as pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Power.  ECF No. 119-2.  Pursuant to Rule 11(c)(2) and the 21-day "safe harbor" period required under that provision, Defendant served a copy of the Sanctions Motion with that letter.  *Id.*  And although not required under the Rule, Defendant also served with that same letter a copy of the Meckley declaration in support of the Sanctions Motion that provided an itemization of the estimated attorneys' fees and costs incurred up to that point that Defendant was seeking as monetary sanctions.  *Id.*  Defendant explained that it intended to file these documents with the Court after the expiration of the 21-day "safe-harbor" period, and to update the requested sanctions amounts to the then-current date.  *Id.*  Defendant further emphasized that while Rule 11(c)(2)'s "safe harbor" period provision applied to sanctions being sought pursuant

---

[7] Up until Plaintiff's belated Dismissal Request, the parties had been meeting and conferring regarding a stipulation and deposition dates for the fact witness deposition and Rule 30(b)(6) deposition.  *See id.*  Defendant's good faith cooperation in discovery while this case remained pending was subject to its position – as reflected in its Sanctions Motion and previewed at the October 25, 2024 case management conference – that Plaintiff's claims are entirely frivolous and should not be subject to discovery or otherwise proceed in any respect.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

to Rule 11, that same provision did not apply to Defendant's separate and independent requests for sanctions pursuant to 28 U.S.C. Section 1927 and the Court's Inherent Power. *Id.*

A mere five days after Defendant served this letter, Plaintiff and his counsel filed their Dismissal Request with the Court. ECF No. 115. Notably, their Dismissal Request acknowledged that "the Court made clear its belief that Plaintiff should not pursue [his] claim" on October 3, 2024 (during the hearing on Plaintiff's motion for class certification) and again on October 25, 2024 (during the parties' status conference following the Court's order denying Plaintiff's motion for class certification). Mot. at 1:13-15. However, their Dismissal Request failed to explain why they continued to pursue Plaintiff's claims for more than three months *after* these October hearings, despite the Court's warnings and reprimands. Further, their Dismissal Request downplayed the advanced stage of these proceedings and the significant burdens and costs imposed on Defendant, stating that only "some discovery has occurred" and that "the litigation has not reached such an advanced stage as to make voluntary dismissal unreasonable." *See* Mot. at 3:15-17.

To the contrary, the parties exchanged written discovery, meet and confer letters, submitted discovery letters to the Court, and Defendant conducted an ESI review and produced relevant documents from that review. Defendant also took Plaintiff's deposition and another key fact witness' deposition. And, for several months, the parties briefed a complicated Rule 23 motion for class certification, which the Court ultimately denied in October 2024. Just prior to the filing of Plaintiff's Dismissal Request, this action was on the cusp of dispositive motion practice and, if any claims remained thereafter, a jury trial.

Equally troubling, Plaintiff's counsel also seeks to mislead the Court and dodge sanctions by selectively revealing *confidential settlement communications* that she herself expressly agreed with Defendant's counsel were privileged pursuant to Federal Rule of Evidence ("FRE") 408. *See* Mot. at 1:16-20; Declaration of Eric Meckley ("Meckley Decl.") at ¶¶ 2-3. Specifically, she suggests that *Defendant* somehow acted unreasonably here, stating that "Plaintiff attempted to dismiss this case with prejudice" following the October 25, 2024 status conference with the Court, but that "Twitter would not agree to a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii)." Mot. at 1:16-17. Their Dismissal Request further states that Plaintiff again attempted to dismiss

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

this case with prejudice following Defendant's serving a "Rule 11 'safe harbor' notice in Plaintiff" but that Twitter again did not agree to a stipulation of dismissal. *Id.* at 1:18-20. Because Plaintiff's counsel has now opened the door, Defendant is providing the full context regarding these discussions to correct the record, including the settlement communications that Plaintiff conveniently omitted, which further underscore Plaintiff's and his counsel's pattern of gamesmanship.

Plaintiff's counsel initially offered to dismiss this action *without* prejudice prior to the October 25, 2024 status conference, after specifically informing Defendant's counsel that those discussions were confidential – no doubt to prevent Defendant from raising those conversations during the October 25, 2024 status conference with the Court. Meckley Decl. at ¶ 2. In response, Defendant reasonably proposed dismissal with prejudice and that Plaintiff pay Defendant's taxable costs – which Plaintiff rejected. *Id.* Plaintiff then proceeded to request additional, burdensome discovery, including noticing depositions and filing a motion to compel with the Court. *Id.* As a result, Defendant was forced to spend additional time and money responding to this discovery and preparing its Sanctions Motion. *Id.* Plaintiff's counsel had full and fair notice at the October 25, 2024 status conference of Defendant's contemplated sanctions motion, yet waited until *after* further discovery and a discovery motion, and *after* receiving Defendant's formal notice of intent to file a Sanctions Motion and supporting documentation, to belatedly offer to dismiss this case with prejudice. And even then, she failed to offer to pay any of the substantial attorneys' fees that Defendant has incurred as a direct result of Plaintiff's and his counsel's improper conduct.

Notably, prior to serving the Rule 11 "safe harbor" letter providing Plaintiff with formal notice of the Sanctions Motion, Defendant's counsel asked Plaintiff's counsel to confirm that the parties' discussions regarding dismissal had been privileged pursuant to FRE 408, which Plaintiff's counsel confirmed. Meckley Decl. at ¶ 3. However, as soon as that mutual commitment no longer suited Plaintiff's counsel, she violated it, unilaterally deeming these confidential communications to no longer be privileged. And, as in Plaintiff's Complaint and motion for class certification, she selectively omitted key facts that did not fit her chosen narrative. At bottom, Plaintiff's reference to these discussions in his Dismissal Request was a clear violation of the parties' express agreement

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

and another example of how Plaintiff's counsel's behavior has been reckless and in bad faith throughout this action.

## III.    ARGUMENT

### A.    The Court Can and Should Grant Defendant's Motion for Sanctions Pursuant to Rule 11, 28 U.S.C. Section 1927, and/or Its Inherent Power, In Addition to Granting Dismissal With Prejudice.

In addition to dismissing this case with prejudice, this Court can and should award Defendant the monetary sanctions sought in its Sanctions Motion for the reasons and pursuant to the statutory and other authority discussed in that Motion. *See* ECF No. 119. A district court retains jurisdiction to adjudicate a motion for, and to award, sanctions even after a plaintiff voluntarily dismisses their case. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 398 (1990) (concluding that "petitioner's voluntary dismissal did not divest the District Court of jurisdiction to consider respondents' Rule 11 motion," emphasizing that "a voluntary dismissal does not expunge the Rule 11 violation" because the "violation of Rule 11 is complete when the paper is filed"). The Supreme Court explained how dismissals under Rule 41 and sanctions under Rule 11 are independent of one another, yet operate in tandem:

> Both Rule 41(a)(1) and Rule 11 are aimed at curbing abuses of the judicial system, and thus their policies, like their language, *are completely compatible*. Rule 41(a)(1) limits a litigant's power to dismiss actions, but allows one dismissal without prejudice. Rule 41(a)(1) does not codify any policy that the plaintiff's right to one free dismissal also secures the right to file baseless papers. *The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction.*

*Cooter*, 496 U.S. at 397-98 (emphasis added); *id.* at 395-96 (stating that "It is well established that a federal court may consider collateral issues after an action is no longer pending," and that "the imposition of a Rule 11 sanction … requires the determination of a collateral issue:  whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *see also Orian v. Fed'n Int'l des Droits de L'Homme*, No. CV116904PSGFFMX, 2011 WL 13220921, at *3 (C.D. Cal. Dec. 13, 2011) ("[A] court may retain jurisdiction to consider collateral issues such as statutory sanctions and attorney fees.") (citing *Cooter*).

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

Decisions within and outside the Ninth Circuit and this District are in accord and affirm courts' authority to award post-dismissal sanctions not only under Rule 11, but also under 28 U.S.C. Section 1927 and the Court's Inherent Power. *See Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570, 572 (9th Cir. 2016) ("We see no justification for holding that a voluntary dismissal precludes issuance of a sanctions order. […] The district court had authority to sanction [plaintiff] for his actions prior to the voluntary dismissal."); *Leon v. IDX Systems Corp*., 464 F.3d 951, 958-61 (9th Cir. 2006) (affirming sanctions pursuant to the court's "inherent authority" of both dismissal with prejudice and monetary award); *Thomas v. Early Cty.*, GA, 360 F. App'x 71, 75 (11th Cir. 2010) ("For the same reasons [enumerated in *Cooter*], motions seeking attorney's fees and costs pursuant to statute or the court's inherent powers may be considered by the district court after dismissal"); *Song v. Drenberg*, No. 18CV06283LHKVKD, 2021 WL 4846779, at *2 (N.D. Cal. Oct. 18, 2021) ("[Plaintiff] suggests that this Court lacks jurisdiction to decide a motion for sanctions because plaintiffs voluntarily dismissed the underlying claims before the motion was filed. […] He is not correct. […] 'In our view, nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal.'") (citing and quoting *Cooter*); *Strike 3 Holdings, LLC v. Doe*, No. 118CV01075MCECKD, 2019 WL 935389, at *3 (E.D. Cal. Feb. 26, 2019) ("'[A] voluntary dismissal does not expunge the ... [underlying] violation' or bad faith conduct. […] Nor does a voluntary dismissal remove the court's inherent authority to impose sanctions."); *see also Cooter*, 496 U.S. at 412 (Stevens, J., concurring in part and dissenting in part) (stating that because "the dismissal of an action pursuant to Rule 41(a)(1) does not deprive the district court of jurisdiction to resolve collateral issues," a court "may impose sanctions for contempt on a party who has voluntarily dismissed his complaint or impose sanctions under 28 U.S.C. § 1927 against lawyers who have multiplied court proceedings vexatiously").

Consistent with these principles, the Supreme Court further made clear that a voluntary dismissal is *not* a mechanism to evade a Rule 11 sanctions motion, and that a party may still be subject to sanctions after a voluntary dismissal based on their litigation misconduct that occurred during the action:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

As noted above, a voluntary dismissal does not eliminate the Rule 11 violation. Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and investigate more carefully before serving and filing papers." Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules) (Mar. 9, 1982).

*Id.* at 398; *id.* at 395 ("As the violation of Rule 11 is complete when the paper is filed, a voluntary dismissal does not expunge the Rule 11 violation.") (internal quotation marks and citation omitted).

While the facts of *Cooter* happened to involve a voluntary dismissal *without* prejudice pursuant to Rule 41(a)(1), neither the language of *Cooter* nor the important policies it discusses warrant a different result where a party seeks to evade sanctions – whether under Rule 11, 28 U.S.C. Section 1927, or the Court's Inherent Power – via a voluntary dismissal *with* prejudice under Rule 41(a)(2). To the contrary, the Supreme Court broadly stated that "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal." *Cooter*, 496 U.S. at 395. In each case, "a voluntary dismissal does not eliminate the Rule 11 violation". *Id.* at 398. And if a litigant cannot escape sanctions for harm already inflicted "[e]ven if the careless litigant quickly dismisses the action," it certainly cannot do so where it drags a case out and continues its sanctionable conduct to the point where the only remaining voluntary dismissal option is under Rule 41(a)(2). *See id.* The Supreme Court also emphasized that a court's authority to award Rule 11 sanctions is distinct from and independent of Rule 41 even when the sanction is a refiling bar that also could have been ordered (*e.g.*, via a dismissal with prejudice) under Rule 41(a)(2):

Indeed, even if the Rule 11 sanction imposed by the court were a prohibition against refiling the complaint (assuming that would be an appropriate sanction" for Rule 11 purposes), the preclusion of refiling would be neither a consequence of the dismissal (which was without prejudice) nor a "term or condition" placed upon the dismissal (which was unconditional), see Rule 41(a)(2).

*Cooter*, 496 U.S. at 396-97.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

This Court implicitly acknowledged these principles at the October 25, 2024, case management conference in its colloquy about Defendant's contemplated Sanctions Motion:

> The Court: "[S]o, the sanction would be asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself.  Would you also be seeking dismissal of the action as a sanction?"
>
> Mr. Meckley: "It would be dismissal with prejudice as the – the action, yeah."
>
> The Court: "Yeah.  Okay.  Yeah.  That's – that sounds fine."

CMC Tr., ECF No. 107, at 4:17-25.  Other courts also recognize that a voluntary dismissal *with* prejudice does not impact a court's ability to award sanctions on the various grounds available for doing so, including but not limited to Rule 11.  *See, e.g.*, *In re Kunstler*, 914 F.2d 505, 512 (4th Cir. 1990) ("No court has adopted a rule prohibiting a motion for Rule 11 sanctions after a dismissal with prejudice under Rule 41(a)(2)."); *Ke v. J R Sushi 2 Inc.*, 2022 WL 1496576, at *14 (S.D.N.Y. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) ("[A]fter a voluntary dismissal pursuant to Rule 41(a)(1)(A) – with or without prejudice – the Court retains discretion whether to impose sanctions under its inherent power or § 1927."); *cf. Chavez v. Wal-Mart Stores Inc.*, 2014 WL 12591672 at *3 (C.D. Cal. Nov. 14, 2014) (stating, "We think dismissal with prejudice is at least a factor to be considered in deciding whether to condition dismissal on the payment of fees and costs," but *not* ruling that fees and costs are *per se* unavailable upon such a dismissal); *Leon*, 464 F.3d at 958-61 (affirming sanctions pursuant to the court's "inherent authority" of both dismissal with prejudice and monetary award).

Here, as in *Cooter*, Plaintiff's Dismissal Request "does not eliminate the Rule 11 violation" (*Cooter*, 496 U.S. at 398), nor does it remedy the conduct that violated Section 1927 or the conduct that is sanctionable under the Court's inherent powers.  *See Strike 3 Holdings, LLC*, 2019 WL 935389, at *3.  As Section II of this brief and Defendant's Sanctions Motion make clear, monetary sanctions are necessary and appropriate to compensate Defendant for the needless and costly attorneys' fees and costs that have resulted from Plaintiff's and his counsel's reckless and bad faith conduct in this action, and to deter further similar conduct.  For example, in addition to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

numerous other court actions that Plaintiff's counsel has filed against Defendant, she has filed arbitration demands on behalf of several former employees asserting claims for the 2022 discretionary PBP bonus (among other claims) – actions in which Plaintiff himself could be called as a witness or otherwise asked to assist Plaintiff's counsel.   Meckley Decl. ¶ 4.   Plaintiff's Dismissal Request is not a shield against the Court's ruling on Defendant's Sanctions Motion.

Notably, only one of the cases cited in Plaintiff's Dismissal Request involved the filing of a motion for sanctions (*Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001)), making all the other cases cited in Plaintiff's Dismissal Request distinguishable and irrelevant here.   *See*, *e.g.*, Mot. Further, that one case, *Smith*, is distinguishable from the present facts and actually supports a district court's jurisdiction to adjudicate a sanctions motion even after a voluntary dismissal with prejudice.   *See*, *e.g.*, *Smith*, 263 F.3d at 975.   In what the Ninth Circuit described as "a rare case," the defendant objected to the plaintiff's voluntary dismissal of federal claims with prejudice under Rule 41(a)(2), as well as to the court's dismissal without prejudice of defendant's "counterclaim seeking a declaration that their alleged conduct did not violate *state law*—an issue that was pending in *state court*."   *Id.* at 974-75 (emphasis added).   The defendant also sought sanctions under Rule 11 and other grounds, which the district court separately denied because it found sanctions unwarranted on the facts.   *Id.* at 974-75, 979.

The Ninth Circuit first affirmed the district court's Rule 41(a)(2) dismissal and its dismissal of defendant's counterclaim.   *Id.* at 976-78.   It then affirmed the district court's denial of defendant's sanctions motion.   Importantly, in doing so, the court *never* questioned the district court's authority to consider or award sanctions notwithstanding the plaintiff's voluntary dismissal with prejudice pursuant to Rule 41(a)(2).   *See id.* at 975, 978.   To the contrary, the Ninth Circuit emphasized even in that context that "the district court has 'broad fact-finding powers' to grant or decline sanctions and that its findings warrant 'great deference[.]'" *Id.* at 978.   Rather, the Ninth Circuit deferred to the district court's discretionary finding that the parties' counsel in that case had "taken actions that were appropriate in light of their responsibility zealously to represent their clients' interests" and that all of the conduct by counsel showed "good lawyering on both sides and

1  not bad faith on either side" (*id.* at 979) – in stark contrast to the reckless and bad faith conduct by

2  both Plaintiff and his attorneys in this case.

3         For these reasons, and for the reasons explained in Defendant's Sanctions Motion and

4  supporting papers (*see* ECF No. 119), Defendant respectfully submits that the Court should grant

5  its Sanctions Motion pursuant to the legal authority discussed therein and independent of Rule

6  41(a)(2), in addition to dismissing Plaintiff's claims with prejudice.

7     **B.    Even if the Court Believed it Could Not Entertain Defendant's Sanctions**

8            **Motion – Which It Can – It Should Still Award the Monetary Sanctions Sought**

9            **Pursuant to Rule 41(a)(2) as a Term in Its Dismissal Order.**

10        For the foregoing reasons, this Court has full authority to grant Defendant's Sanctions

11  Motion in full, including an award of its attorneys' fees and costs against Plaintiff and his counsel,

12  in addition to and irrespective of the dismissal with prejudice under Rule 41(a)(2).  But even if the

13  Court believed it no longer had that independent authority (which it does), it still could and should

14  award the monetary sanctions sought in Defendant's Sanctions Motion as a condition of any

15  dismissal with prejudice.  Pursuant to Rule 41(a)(2), "an action may be dismissed at the plaintiff's

16  request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).

17  "Rule 41(a)(2) permits [a district court] to impose fees and costs on the plaintiff as a condition of

18  dismissal as a matter of course or pursuant to a fee-shifting statute, but fees and costs may be

19  imposed on counsel only if there is an independent statutory basis for imposing sanctions."  *Chavez*,

20  2014 WL 12591672 at *2 (citing, *inter alia*, *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th

21  Cir. 1993)).

22        The Ninth Circuit has not addressed whether attorneys' fees and costs may be awarded *as*

23  a condition of dismissal with prejudice under Rule 41(a)(2).[8]  *Chavez*, 2014 WL 12591672 at *3.

24  However, district courts in the Ninth Circuit have recognized that fee and costs awards can be

25  appropriate as a condition of a dismissal *with* prejudice.  *See id.* ("We think dismissal with prejudice

26

---

27  [8] Again, as detailed above, it remains clear under *Cooter* and other case law that the Court has full
    authority, independent of Rule 41(a), to grant the monetary and other sanctions requested in
28  Defendant's Sanctions Motion irrespective of whether the dismissal is with or without prejudice.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1   is at least a factor to be considered in deciding whether to condition dismissal on the payment of

2   fees and costs."); *Rodriguez v. Serv. Emps. Int'l*, No. C-10-01377 JCS, 2011 WL 4831201, at *3

3   (N.D. Cal. Oct. 12, 2011) ("these courts have held that, in the case of a voluntary dismissal with

4   prejudice, costs and fees may be imposed under 'exceptional circumstances'[9] or pursuant to

5   Fed.R.Civ.P. 11") (quoting *Chavez v. Northland Grp.*, 2011 WL 317482, at *4 (D. Ariz. Feb. 1,

6   2011)).   An award of the attorneys' fees and costs sought in Defendant's Sanctions Motion is

7   warranted against both Plaintiff and his counsel as a term and condition of their requested dismissal

8   with prejudice under Rule 41(a)(2).

9   **1.   <u>Condition of Attorneys' Fees and Costs Payable by Plaintiff</u>**

10      As the court in *Chavez v. Wal-Mart Stores* observed in discussing whether to condition a

11   Rule 41(a)(2) voluntary dismissal with prejudice on payment of fees and costs by the *plaintiff*:

12   > Whether to impose costs and attorney's fees as a condition of dismissal is within our
13   > discretion. *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir.
   > 1989). Factors that have been recognized by the Ninth Circuit as relevant to this
14   > decision include, but are not limited to, the conduct of the opposing party and the
   > closeness of the legal issues that the case presented. *See Herman v. Zamora*, 178 F.3d
15   > 1299 (9th Cir. 1999) (finding no abuse of discretion where court refused to award costs
   > and fees because defendant had been uncooperative during litigation); *Stevedoring*
16   > *Servs. of Am.*, 889 F.2d at 922 (no abuse of discretion in refusing to award costs and
   > fees because plaintiff sought dismissal only after losing on a legal issue that "presented
17   > a close question"). Factors that have been recognized by other circuit courts of appeals
   > include "(1) the opposing party's effort and expense in preparing for trial; (2) excessive
18   > delay or lack of diligence on the part of the movant; (3) insufficient explanation of the

19   [9] The court in *Chavez v. Wal-Mart Stores* correctly observed that, to the extent any "exceptional
   circumstances" requirement applies at all, it would apply – as an alternative ground to an award
20   "pursuant to Fed.R.Civ.P. 11" – only to such an award against *a party*, and does not limit the
   court's ability to award sanctions against *counsel* under Rule 11 and other applicable grounds:

21   > The *Rodriguez* court makes a passing reference to imposing fees and costs as a
22   > condition under "exceptional circumstances," but it does so (1) while discussing the
   > views of other courts outside the Ninth Circuit and (2) while discussing the separate
23   > issue (discussed above) of whether attorney's fees and costs should ever be imposed
   > on a plaintiff, as opposed to plaintiff's counsel, when the plaintiff moves to
24   > voluntarily dismiss with prejudice. Id. at *3. *Rodriguez* does not suggest that there is
   > any authority contrary to *Heckethorn* that would allow us to impose attorney
25   > sanctions as a condition on a Rule 41(a)(2) dismissal in the absence of some
   > independent basis for the sanctions.  […]

26   > Nowhere in *Heckethorn* does the Ninth Circuit suggest that there is an additional
27   > "exceptional circumstances" requirement for the imposition of attorney's fees [on
   > legal counsel], and we are aware of no other Ninth Circuit [decision] so holding.

28   2014 WL 12591672 at *7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1    need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion

2    for summary judgment is pending."

3    2014 WL 12591672 at *2.

4        Requiring Plaintiff to pay Defendant's requested fees and costs as a condition of a dismissal

5    with prejudice is fully warranted under these circumstances.  As detailed above and in Defendant's

6    Sanctions Motion, Plaintiff's conduct at his deposition and in seeking to represent a class – knowing

7    that he was a material cause of the very non-payment he was challenging – rises to the level of

8    sanctionable conduct. *See, e.g.*, Hr'g Tr. 11:19-21 (Court: "there is a question of whether [Plaintiff]

9    committed perjury in his deposition, frankly…."); Hr'g Tr. 12:21-25 (Court:  "I think your client

10   might need to read his deposition transcript carefully and *wonder if he is in legal jeopardy for what*

11   *he said in that deposition*.  You know, *I seriously wonder if, perhaps, you have put him in legal*

12   *jeopardy*.")  (emphasis added).  Nor was there any "closeness of the legal issues that the case

13   presented" in this litigation. *See Chavez*, 2014 WL 12591672 at *2; Hr'g Tr. 4:14-16 (Court stating

14   that the factual record "strongly indicate[d] that *[Plaintiff] has no breach of contract claim; that he*

15   *is going to lose*.")  (emphasis added); ECF 101, at 2 (Court's denial of class certification, stating in

16   part: "He [Plaintiff] might fit nicely into this case as a defendant, but he cannot possibly fit as a

17   named plaintiff.").

18       This sanctionable conduct alone warrants a fee and cost award here against Plaintiff as a

19   condition of a Rule 41(a)(2) dismissal with prejudice. *See Rodriguez*, 2011 WL 4831201, at *3

20   ("in the case of a voluntary dismissal with prejudice, costs and fees may be imposed under

21   'exceptional circumstances' or pursuant to Fed.R.Civ.P. 11").  It also constitutes "exceptional

22   circumstances," an independent ground. *Id.*  This action is miles from a garden-variety case where

23   a party acts with diligence and seeks to dismiss due to new information learned, or some personal

24   circumstance. *Compare Chavez*, 2014 WL 12591672 at *1 ("Chavez states in the Motion [to

25   dismiss with prejudice under Rule 41(a)(2)] that 'in light of certain new facts which were revealed

26   for the first time in her deposition on August 27, 2014, and after discussions with her counsel, [she]

27   no longer wishes to pursue her claims against' Walmart."); *Rodriguez*, 2011 WL 4831201, at *1

28   ("Plaintiffs [sought voluntary dismissal because they] could no longer afford to prosecute the action

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

and were not willing to risk the possibility that they might be held liable for Defendants' attorneys' fees and/or costs if they did not prevail at trial."). Other factors exacerbate these issues, including the fact that Plaintiff dragged this litigation out for more than six months after production of documents (which he already knew about) that sank his claims, costing Defendant well over half a million dollars in fees and costs. *Compare, e.g.*, *Chavez*, 2014 WL 12591672 at *3 (finding a fee and cost award against plaintiff not warranted upon voluntary dismissal with prejudice where – in marked contrast to this case – "[t]his litigation was still in its early stages. No class certification had been filed and the end of discovery is many months away. Walmart has not indicated that it spent any time preparing for trial yet.").

Nor can Plaintiff argue here that dismissal with prejudice obviates the need for a fee and cost award to align future proper incentives. *Compare, e.g.*, *Chavez*, 2014 WL 12591672 at *3 ("By seeking voluntary dismissal with prejudice, Chavez is forever surrendering her claim, which means there is no need for us to impose conditions as a way of protecting Walmart from incurring duplicative expenses in future litigation."); *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996) (noting that "defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees"). As noted, Plaintiff's counsel has already asserted claims to recover the 2022 discretionary PBP bonus on behalf of many other employees in arbitration, and it is almost certain that Plaintiff – a key player in this narrative – could be a witness or otherwise seek to assist Plaintiff's counsel with these claims. Given his potentially perjurious testimony in his own deposition, an award of fees and costs is critically necessary to ensure that he avoids further vexatious bad faith conduct against Defendant.

### 2.    Condition of Attorneys' Fees and Costs Payable by Plaintiff's Counsel

An award of attorneys' fees and costs also is warranted against Plaintiff's counsel as a condition of the requested voluntary dismissal with prejudice under Rule 41(a)(2). As noted, such an award against legal counsel is appropriate "if there is an independent statutory basis for imposing sanctions." *Chavez*, 2014 WL 12591672 at *2; *Heckethorn*, 992 F.2d at 242. As the foregoing facts and Defendant's Sanctions Motion abundantly demonstrate, Plaintiff's counsel's pattern of bad faith and vexatious conduct warrants robust sanctions, including an award of Defendant's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT'S RESPONSE TO MOTION
TO DISMISS WITH PREJUDICE
CASE NO. 3:23-cv-03007-VC

1   requested attorneys' fees and costs, under Rule 11, 28 U.S.C. Section 1927, and the Court's

2   Inherent Power. As a result, such fees and costs also can and should be imposed against Plaintiff's

3   counsel as a condition of any dismissal with prejudice under Rule 41(a)(2).  And as with Plaintiff,

4   such an award is vitally necessary to ensure that Plaintiff's counsel exercises far greater prudence

5   and responsibility in litigating other claims for 2022 discretionary bonuses than she demonstrated

6   in this case.

7        The law is clear that the Court has independent authority to impose the requested fees and

8   costs on Plaintiff and his counsel under Rule 11, 28 U.S.C. Section 1927, and the Court's Inherent

9   Power, irrespective of Rule 41(a)(2).  *See supra*.

10  **IV.    CONCLUSION**

11       For the foregoing reasons and those set forth in Defendant's concurrently filed Sanctions

12  Motion, in addition to dismissing Plaintiff's Complaint with prejudice, the Court should order

13  Plaintiff and his legal counsel to pay Defendant its legal fees and costs as detailed in its Sanctions

14  Motion and documentation filed therewith.

15  Dated: February 14, 2025           MORGAN, LEWIS & BOCKIUS LLP

16

17                                By   */s/ Eric Meckley*
                                   Eric Meckley
18                                 Kassia Stephenson
                                   Attorneys for Defendant
19                                 X CORP. as Successor in Interest TWITTER, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO