Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiff Mark Schobinger*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARK SCHOBINGER, | Case No. 3:23-cv-03007-VC |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT** |
| v. | |
| TWITTER, INC. and X CORP., | |
| Defendants. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................................1

II.    FACTUAL BACKGROUND ........................................................................................3

III.   ARGUMENT ................................................................................................................8

    A.   Twitter's Request for Sanctions Pursuant to Rule 11 Is Untimely and Noncompliant
        with Rule 11's Safe Harbor Provision............................................................................8

    B.   Because Plaintiff's Counsel Have Not Litigated in Bad Faith, Sanctions Pursuant to
        28 U.S.C. § 1927 or the Court's Inherent Power Are Unwarranted............................11

IV.    CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Am. Unites for Kids v. Rousseau*,
 985 F.3d 1075 (9th Cir. 2021) .............................................................................15

*Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*,
 2017 WL 1352710 (N.D. Ind. Apr. 13, 2017) ......................................................12

*Barber v. Miller*,
 146 F.3d 707 (9th Cir. 1998) ................................................................................9

*Bellistri v. U.S., Drug Enf't Agency*,
 1998 WL 337884 (S.D.N.Y. June 25, 1998) ........................................................12

*Best Odds Corp. v. iBus Media Ltd.*,
 657 F. App'x 641 (9th Cir. 2016) ........................................................................15

*Cal. Sportfishing Prot. All. v. Callaway*,
 2013 WL 4482849 (E.D. Cal. Aug. 20, 2013) ......................................................11

*Chang v. Pomeroy*,
 2011 WL 618192 (E.D. Cal. Feb. 10, 2011) .........................................................6

*Christian v. Mattel, Inc.*,
 286 F.3d 1118 (9th Cir. 2002) ..............................................................................1

*Cooter & Gell v. Hartmarx Corp.*,
 496 U.S. 384 (1990)..............................................................................................10

*Edwards v. Gen. Motors Corp.*,
 153 F.3d 242 (5th Cir. 1998) ................................................................................14

*Farris v. County of Camden*,
 61 F. Supp. 2d 307 (D.N.J. 1999) ........................................................................12

*Gomes v. Am. Century Cos.*,
 2010 WL 1980201 (E.D. Cal. May 17, 2010).......................................................11

*Holgate v. Baldwin*,
 425 F.3d 671 (9th Cir. 2005).................................................................................9

*In re Keegan Mgmt. Co., Sec. Litig.*,
 78 F.3d 431 (9th Cir. 1996)...................................................................................11

ii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT
Case No. 3:23-cv-03007-VC

*In re Nolle*,
    265 S.W.3d 487 (Tex. App. 2008)........................................................................14

*Islamic Shura Council of S. Cal. v. F.B.I.*,
    757 F.3d 870 (9th Cir. 2014) ........................................................................8–10

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
    962 S.W.2d 507 (Tex. 1998) ........................................................................14

*Kendrick v. Zanides*,
    609 F. Supp. 1162 (N.D. Cal. 1985).........................................................14–15

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ........................................................................12

*Malbrough v. Kilpatrick & Stocktown, LLC*,
    1999 WL 643663 (E.D. La. Aug. 23, 1999).....................................................12

*Park v. Escalera Ranch Owners' Ass'n, Inc.*,
    457 S.W.3d 571 (Tex. App. 2015) ........................................................................14

*Pham v. Talkdesk, Inc.*,
    2023 WL 6892582 (C.D. Cal. Sept. 29, 2023) ...............................................12

*Ponder v. Wersant*,
    2017 WL 3923544 (S.D. Tex. Sept. 5, 2017) ..................................................12

*Radcliffe v. Rainbow Const. Co.*,
    254 F.3d 772 (9th Cir. 2001) .............................................................................8

*Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*,
    339 F.3d 1146 (9th Cir. 2003) ..........................................................................9

*Ridder v. City of Springfield*,
    109 F.3d 288 (6th Cir. 1997) ..........................................................................10

*Sneller v. City of Bainbridge Island*,
    606 F.3d 636 (9th Cir. 2010) ..........................................................................10

*Snyder v. HSBC Bank, USA, N.A.*,
    913 F. Supp. 2d 755 (D. Ariz. 2012) .................................................................1

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) ...............................................................................1

iii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT
Case No. 3:23-cv-03007-VC

*Tallman v. Freedman Anselmo Lindberg LLC*,
    2012 WL 1080289 (C.D. Ill. Mar. 30, 2012) ...........................................................................12

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    293 F.3d 1146 (9th Cir. 2002) .................................................................................................11

*United States v. Blodgett*,
    709 F.2d 608 (9th Cir. 1983) ...................................................................................................12

*Vanegas v. American Energy Services*,
    302 S.W.3d 299 (Tex. 2009) ...................................................................................................14

*Westerkamp v. Mueller*,
    2023 WL 3792739 (D. Ariz. June 2, 2023)............................................................................11

**Statutes**

28 U.S.C. § 1927.............................................................................................................. passim

Fed. R. Civ. P. 11............................................................................................................. passim

Fed. R. Civ. P. 41.................................................................................................................3, 6–7

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1337.2 (3d ed.) ...................................................................8

## I.    INTRODUCTION

On January 23, 2025, counsel for Defendants Twitter, Inc. and X Corp. ("Twitter")

served Plaintiff's counsel with notice that it intended to file a motion seeking sanctions. In its

proposed motion, Twitter argued that Plaintiff's counsel should be sanctioned via Rule 11 for

filing a purportedly "frivolous Rule 23 motion for class certification," even though the Court had

already ruled on this motion three months prior, providing Plaintiff no meaningful opportunity to

withdraw or correct the motion in accordance with Rule 11's 21-day "safe harbor" provision.

Notwithstanding the untimeliness of this notice, Plaintiff attempted to comply with Rule 11 (as

best as he could at that point) in good faith by moving to voluntarily dismiss his claims entirely

with prejudice five days after receiving notice. Even though Plaintiff plainly complied with Rule

11's safe harbor provision (despite Twitter not giving him an actual opportunity to comply) by

offering to dismiss his claims, Twitter proceeded to file its motion seeking prohibited sanctions

pursuant to Rule 11, as well as sanctions pursuant to 28 U.S.C. § 1927 and the Court's Inherent

Power.[1] These requests for sanctions must be denied, for the following reasons:

*First*, Twitter's motion clearly violates Rule 11's safe harbor provision. To promote

judicial economy, a party seeking Rule 11 sanctions must provide opposing counsel the

opportunity to withdraw or correct the purportedly offending material. Accordingly, as the Ninth

---

[1]    At the outset, Plaintiff notes that, again, Twitter has filed an overlong brief (25 pages), this time in support of its motion for sanctions, contravening the Court's order that briefs in support of or in opposition to all substantive motions may not exceed 15 pages unless a motion to increase page limits is granted. Plaintiff flagged this rule (and Twitter's violation) in its reply in support of its motion to dismiss, ECF No. 125, Reply at 1 n.2, but Twitter has elected not to withdraw its motion and refile a compliant version. As noted in Plaintiff's reply, the Court has wide latitude to enforce its rule on page limits. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (affirming district court's decision to strike an oversized brief); *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 766–67 (D. Ariz. 2012) (noting that district courts may strike entire oversized briefs, strike the portions of the brief that exceed the page limit, or impose monetary sanctions).

Circuit has held, the window to serve Rule 11 notice closes when the Court decides the underlying issue, since at that point there is no opportunity to meaningfully withdraw or correct materials. Here, Twitter issued notice, claiming that Plaintiff's class certification motion was sanctionable, three months after the Court had already decided the motion. Under binding Ninth Circuit precedent, Twitter's Rule 11 notice was untimely. And remarkably, while Plaintiff nevertheless moved to dismiss his claims within the safe harbor period, Twitter is *still* pursuing its Rule 11 arguments. Plaintiff's compliance with Rule 11's safe harbor provision is an additional, independently sufficient ground for denying Twitter's Rule 11 requests.

*Second*, the record lacks evidence of the subjective bad faith required to issue sanctions pursuant to § 1927 or the Court's Inherent Power. Although Mr. Schobinger offered his personal opinion that paying Twitter's 2022 bonus could negatively impact the company with respect to the views of its investment community, he also repeatedly testified that a promise of bonuses had already been made to employees, that he had discussed that this promise had already been made with his coworkers at Twitter, that he had been asked to write up a "contrarian memo" recommending not paying the bonus, and that he needed Elon Musk to give the final order as to whether to pay or not pay the bonus, as Musk (and not Plaintiff) was the decision-maker on this issue. ECF No. 100; ECF No. 100-1, Schobinger Dep. at 170–72, 285–87, 291–93. While Plaintiff recognizes and accepts the Court's ruling that he is not well positioned to represent the class (given that, when asked to offer his opinion about paying the bonus, he noted that it would not go over well with Twitter's investors), neither he nor his counsel pursued class certification in bad faith (as it appeared his inside, behind-the-scenes knowledge of what was happening with the bonus discussions could be helpful to the class, who would not otherwise have such access to those discussions). Nor was Plaintiff's individual claim frivolous (even under Texas law).

Further, Plaintiff and his counsel did not engage in bad faith conduct in the three months following the Court's order denying class certification. Notably, Plaintiff offered to dismiss his claims soon after the hearing on the motion for class certification, but Twitter would not agree to the dismissal.[2] During the three-month period after he offered to dismiss his claims, the parties did not engage in any merits-based litigation.

At bottom, Twitter's arguments to impose sanctions pursuant to § 1927 or the Court's Inherent Power are an effort to sidestep Rule 11 and render its safe harbor provision meaningless. If Twitter genuinely believed that Plaintiff's motion for class certification was sanctionable based on discovery produced on July 12, 2024, the proper course would have been to issue Rule 11 notice to Plaintiff's counsel at that time and provide Plaintiff an opportunity to withdraw or correct his claim (or class certification motion). Instead, Twitter apparently sat by and let the Court expend its resources adjudicating a motion that Twitter claims is frivolous. Twitter's blatant disregard for Rule 11 should not be rewarded, and its eleventh-hour request for sanctions should be denied.

## II.    FACTUAL BACKGROUND

On June 20, 2023, Plaintiff Mark Schobinger filed a Class Action Complaint against Twitter on behalf of himself and "other current and former Twitter employees who were employed by the Company as of January 1, 2023, and who have not been paid their annual bonus for 2022." ECF No. 1, Compl. at 2. Plaintiff Schobinger, a former Senior Director of Compensation at Twitter, alleged that prior to and following Elon Musk's acquisition of Twitter

---

[2]    Twitter claims that Plaintiff's counsel breached confidentiality by disclosing "confidential settlement communications." As addressed in Plaintiffs' reply in support of his motion to dismiss, Plaintiff simply noted that Twitter would not stipulate to dismissal pursuant to Rule 41(a)(1)(A)(ii), and such communications are not confidential under Federal Rule of Evidence 408 in this context in any event. *See* ECF No. 125, Reply at 1 n.1.

in October 2022, the company's executives repeatedly promised employees that 2022 bonuses would be paid out to employees (who survived the layoffs) at 50% of target. *Id.* In reliance on this promise, Plaintiff and other Twitter employees chose to remain employed at Twitter following Mr. Musk's acquisition and decided to forgo other employment opportunities. *Id.* Because Twitter reneged on its promise and refused to pay employees the promised 2022 bonus, Mr. Schobinger brought breach of contract and promissory estoppel claims. *Id.*

Twitter moved to dismiss the complaint, arguing that Twitter executives' promises of a bonus could not create an enforceable contract because the company's Performance Bonus Plan ("PBP") was discretionary. ECF No. 16, Mot. at 7–11. The Court disagreed. As the Court noted in its order denying in part Twitter's motion to dismiss, Twitter's oral promises of bonuses, as alleged, could create an enforceable contract under California law. ECF No. 37, Order at 1–2. The Court also "reluctantly" dismissed Plaintiff's promissory estoppel claim with leave to amend, since Plaintiff's promissory estoppel claim needed to be pleaded in the alternative to his breach of contract claim. ECF No. 37, Order at 2–3.

After filing an amended complaint to address the Court's concern, Plaintiff moved for class certification on August 23, 2024. ECF No. 75. In its opposition, Twitter argued that Plaintiff would not be an adequate class representative, since he had purportedly offered a recommendation to not fund the employee bonus. ECF No. 84, Opp'n at 7, 19.

Still, Plaintiff's counsel in good faith believed that Mr. Schobinger could adequately represent the class. As the Court has recognized, Mr. Schobinger's suit seeks to enforce Twitter's promise to pay out bonuses; it does not seek to enforce the PBP discretionary bonus plan itself. And Mr. Schobinger stated repeatedly—both in documents and in his testimony—that the decision to fund the PBP had already been made and communicated to employees, but that he

needed Mr. Musk to make the final decision and give him the direction to actually pay it out (i.e. comply with the promise already made to employees). *See* ECF No. 84-12 at X-SCHOBINGER 000000084 ("We need clarity from Elon regarding the disposition of the FY22 plan - if he intends to fund it or not so that we can properly prepare for administering the plan. As the sole director only he can authorize, hence the question."); ECF No. 84-15 at X-SCHOBINGER 000000120 ("Elon owns answering the . . . question" [of] "[d]o we fund a bonus pool").

As Mr. Schobinger explained, his opinion on whether the PBP pool should be funded was informed by the potential impact on the investment community, which he recognized may not have responded favorably to Twitter paying bonuses while the company was underperforming. ECF No. 87-3, Schobinger Dep. at 291–93. Plus, the "white paper" that Twitter references was not a recommendation to not fund the bonus pool, but rather a comprehensive document that he was directed to put together, which outlined each option available to Mr. Musk—including the option to approve funding the pool as promised to employees. ECF No. 84-18.

Regardless of Mr. Schobinger's own opinion regarding the optics of funding the bonus pool (which he agreed were not good), he testified repeatedly that the promise to fund the bonus pool had already been made to employees. *See* ECF No. 84-7, Schobinger Dep. at 169 ("[M]y opinion is not the one that matters. I'm not the decision-maker. *That decision to pay it was already made.*"); ECF No. 87-3, Schobinger Dep. at 293 ("[T]hat was the promise and the commitment that was made.").

At the hearing on Plaintiff's motion for class certification, the Court made clear its view that, not only was Plaintiff not a proper class representative, but that Plaintiff was unlikely to succeed on the merits of his own claims. ECF No. 119-3, Tr. at 9. The Court denied Plaintiff's

motion for class certification on October 16, 2024, determining that Mr. Schobinger would be an inadequate class representative due to his unique factual circumstances. ECF No. 101.

Shortly after the Court's order, and prior to the status conference on October 25, 2024, Plaintiff's counsel reached out to Twitter's counsel to seek a stipulated voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 120-1, Meckley Decl. ¶ 2. Twitter's counsel refused Plaintiff's offer to dismiss the action *with* prejudice. Twitter indicated that Plaintiff would have to pay costs in order to dismiss his action. As explained in Plaintiff's reply brief in support of his motion to dismiss, the recovery of costs in conjunction with a plaintiff's voluntary dismissal *with* prejudice is exceptionally rare; several circuit courts have *per se* rules prohibiting a defendant from recovering costs and fees as a condition of dismissal pursuant to Rule 41(a)(2), and "district courts in the Ninth Circuit have determined that the payment of fees and costs ordinarily should not be imposed as a condition for voluntary dismissal *with* prejudice." *Chang v. Pomeroy*, 2011 WL 618192, at *1 (E.D. Cal. Feb. 10, 2011) (collecting cases); *see* ECF No. 125, Reply at 3–4.

Because Twitter would not stipulate to voluntary dismissal, Plaintiff continued with discovery, which the parties agreed would extend until March 14, 2025. *See* ECF No. 113, Order at 2. On December 9, 2024, the parties raised to the Magistrate Judge several disputes concerning the production of communications related to paying the bonus to employees, the production of documents relating to the accrual of funds for the bonus, and the deposition of Mason Eaves. ECF No. 111. Given the Court's ruling on the motion for class certification, Chief Magistrate Judge Ryu sided with Twitter on the production of communications related to paying employees bonuses, determined that the parties should reach a stipulation on the key facts regarding the

accrual of funds toward payment of a 2022 bonus, and sided with Plaintiff in holding that a deposition of Mr. Eaves would be proper. ECF No. 114.

On January 23, 2025, Twitter's counsel sent Plaintiff's counsel a letter providing notice of Twitter's intent to file a motion seeking sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's Inherent Power. In the proposed motion attached to its letter, Twitter's counsel claimed that Plaintiff's counsel could be sanctioned for "filing and continuing to litigate" their Rule 23 motion, ECF No. 119-02, Mot. at 2, even though Twitter's letter was served five months after the purportedly offending motion was filed, and more than three months after the Court had already fully adjudicated the motion.

Although Plaintiff clearly could not withdraw a motion that the Court had already ruled on, Plaintiff still attempted to comply with Rule 11's 21-day "safe harbor" provision by offering to Twitter to dismiss his claims with prejudice. When Twitter refused to stipulate to dismissal, Plaintiff moved to voluntarily dismiss his claims with prejudice pursuant to Rule 41(a)(2). ECF No. 115. Though Plaintiff in good faith attempted to comply with Rule 11's safe harbor provision (notwithstanding the fact that Twitter's notice of its intent to seek Rule 11 sanctions was plainly untimely), Twitter was still not satisfied. It proceeded to file a motion for sanctions anyway, *still* seeking sanctions pursuant to Rule 11. ECF No. 119. Twitter also seeks sanctions pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power, claiming that continuing to litigate Plaintiff's claim following the production of documents revealing Mr. Schobinger's recommendations regarding paying out the 2022 PBP pool constituted bad faith. Twitter concurrently filed a response to Plaintiff's motion to dismiss, characterizing Plaintiff's effort to comply with Rule 11's safe harbor provision as a "transparent attempt to evade monetary sanctions." ECF No. 120, Resp. at 1.

Plaintiff's Opposition to Defendants' Motion for Sanctions
Pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and Inherent Power of the Court
Case No. 3:23-cv-03007-VC

## III.  ARGUMENT

### A.  Twitter's Request for Sanctions Pursuant to Rule 11 Is Untimely and Noncompliant with Rule 11's Safe Harbor Provision

In the argument section of its motion for sanctions, Twitter expends most of its effort requesting that the Court issue sanctions pursuant to Rule 11, based on Plaintiff's class certification motion. But these efforts are wasted, since Rule 11 sanctions unequivocally cannot be issued here as a matter of law, for two independent reasons.

*First*, Twitter's request for sanctions pursuant to Rule 11 is plainly untimely. The "safe harbor" provision of Rule 11, Fed. R. Civ. P. 11(c)(2), requires a defendant moving for sanctions pursuant to Rule 11 to first serve its motion on the plaintiff along "with a demand for retraction of the allegedly offending" pleading, motion, or other paper. *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788–89 (9th Cir. 2001). The party that is served then has a 21-day safe harbor period to withdraw or correct the "challenged paper, claim, defense, contention, or denial"; if such a withdrawal or correction occurs, a motion for sanctions pursuant to Rule 11 "must not be filed or be presented to the court." Fed. R. Civ. P. 11(c)(2).

As the Ninth Circuit has acknowledged, the "safe harbor" rule is intended to promote judicial economy; it "encourag[es] the withdrawal of papers that violate the rule without involving the district court, thereby avoiding sanction proceedings whenever possible and streamlining the litigation process." *Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.2 (3d ed.)). Since the entire purpose of the safe harbor provision is to give parties the opportunity to withdraw or correct purportedly offending materials, this provision is rendered meaningless if a party is served Rule 11 notice based on an underlying issue that has already been resolved by the court. Accordingly, the Ninth Circuit has held that Rule 11 motions

"cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing," because "once the court has decided the underlying dispute, the motion for fees cannot serve Rule 11's purpose of judicial economy." *Id.*; *see Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998) ("[A] party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)); *see also Holgate v. Baldwin*, 425 F.3d 671, 679 (9th Cir. 2005) (Rule 11 notice untimely where opposing counsel "had no power to correct the offending paper or to counsel [plaintiffs] to withdraw it"); *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1151 (9th Cir. 2003) (Rule 11 motion filed "after the time in which [plaintiff] could correct or withdraw its complaint" was untimely).

Here, Twitter is attempting to do precisely what the Ninth Circuit has repeatedly forbidden: seek Rule 11 sanctions based on a purportedly offending motion that the Court has already adjudicated. As noted above, Twitter served notice of its intent to file a Rule 11 motion based on Plaintiff's class certification motion *more than three months* after the Court denied the motion. The purpose of Rule 11's safe harbor provision was frustrated, since Plaintiff never had the opportunity to meaningfully withdraw or correct his motion before the Court addressed it. Had Twitter genuinely believed from the get-go that Plaintiff's motion for class certification was sanctionable, the proper course of action would have been to serve a Rule 11 notice *before* the Court's involvement to conserve judicial resources. Instead, Twitter waited until well after the

Court's order denying class certification to contend that Plaintiff's motion is sanctionable.[3] This

course of action is not permitted under Ninth Circuit law.

    *Second*, *even if* Twitter's service of Rule 11 notice was timely, Twitter would still be

precluded as a matter of law from pursuing Rule 11 sanctions, since Plaintiff sought to dismiss

his claims with prejudice within the 21-day safe harbor period. As the Ninth Circuit has held,

Rule 11 sanctions are categorically prohibited where the party served with Rule 11 notice

withdraws the "offending pleading" within the 21-day safe harbor period.[4] *Sneller v. City of*

*Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010). The Ninth Circuit mandates "strict

compliance with Rule 11's safe harbor provision." *Islamic Shura Council*, 757 F.3d at 872.

    To be clear, Plaintiff was not required to move to voluntarily dismiss his claims with

prejudice. As the Ninth Circuit explained in *Sneller*, Rule 11's safe harbor provision requires

"that the offending pleading be withdrawn," not "that a party drop its claims with prejudice." 606

F.3d at 639. But because it was impossible for Plaintiff to withdraw a motion that had already

been adjudicated, he nevertheless moved to dismiss his claims with prejudice as a sign of good

faith compliance with the safe harbor provision. It is well established in this Circuit that

---

[3]    Indeed, it seems highly likely that Twitter did not view Plaintiff's motion for class certification as sanctionable until the motion hearing, when the Court made clear *its* view that Plaintiff Schobinger was not an adequate class representative and would not succeed on the merits of his individual claim. Again, if Twitter genuinely believed, prior to the Court weighing in, that Plaintiff's counsel had engaged in sanctionable conduct, it should have spoken up earlier and provided Plaintiff the opportunity to redress any issues without involving the Court.

[4]    Twitter cites *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), to support an argument that the Court may issue Rule 11 sanctions notwithstanding Plaintiff's attempt to dismiss this case with prejudice. This argument is incorrect. The "safe harbor" provision of Rule 11 was enacted three years **after** *Cooter & Gell* was decided, and, under the modern version of Rule 11, "[a] party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention." *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997).

voluntary dismissal within the 21-day safe harbor period unequivocally precludes the filing of a Rule 11 motion. *See, e.g.*, *Gomes v. Am. Century Cos.*, 2010 WL 1980201, at *3 (E.D. Cal. May 17, 2010) ("[I]f a plaintiff voluntarily dismisses the action during the safe harbor period they will not be subject to monetary sanctions."); *Cal. Sportfishing Prot. All. v. Callaway*, 2013 WL 4482849, at *5 (E.D. Cal. Aug. 20, 2013) ("[D]ismissal of claims . . . within the safe harbor period, acts as a withdrawal of challenged claims and therefore obviates a Rule 11 motion."); *Westerkamp v. Mueller*, 2023 WL 3792739, at *4 (D. Ariz. June 2, 2023) ("[O]nce Plaintiff moved for voluntary dismissal, Defendant was precluded from filing the Rule 11 motion.").

By moving for sanctions pursuant to Rule 11 under these circumstances, Twitter has, itself, made arguments that are "legally frivolous." *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). The Ninth Circuit rigorously enforces Rule 11's safe harbor provision, which Twitter has unambiguously violated by making Rule 11 arguments—both due to the untimeliness of the allegations, as well as due to Plaintiff's filing of a motion to dismiss with prejudice. Accordingly, Rule 11 sanctions are unwarranted as a matter of law.

## B. Because Plaintiff's Counsel Have Not Litigated in Bad Faith, Sanctions Pursuant to 28 U.S.C. § 1927 or the Court's Inherent Power Are Unwarranted

Because Rule 11 sanctions are off the table, Twitter alternatively relies on 28 U.S.C. § 1927 and the Court's Inherent Power as sources of authority for sanctions. Section 1927 grants the Court authority to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." For § 1927 sanctions to be warranted the Ninth Circuit requires "a finding of subjective bad faith." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (internal quotation omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (internal quotation omitted). A court's authority to issue sanctions via § 1927

"must be exercised with restraint and discretion." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010). Sanctions issued via § 1927 must be tailored to compensation for "excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct." *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir. 1983).

Section 1927 does not have a safe harbor provision. Nevertheless, a party's compliance with Rule 11's safe harbor provision is undoubtedly relevant in deciding whether counsel acted in bad faith. "[W]here the non-moving party fully complies with the safe harbor provision, the Court generally declines to impose sanctions under § 1927 or its inherent authority absent some unique or extraordinary circumstances." *Pham v. Talkdesk, Inc.*, 2023 WL 6892582, at *3 (C.D. Cal. Sept. 29, 2023).[5] Indeed, courts have cautioned against parties seeking sanctions via § 1927 as a means of evading Rule 11's safe harbor provision. *See, e.g.*, *Bellistri v. U.S., Drug Enf't Agency*, 1998 WL 337884, at *1 (S.D.N.Y. June 25, 1998) ("[T]o award sanctions in the context of this case would undermine the safe harbor provision of Rule 11 by essentially reading it out of the Rule."); *Malbrough v. Kilpatrick & Stocktown, LLC*, 1999 WL 643663, at *1 (E.D. La. Aug. 23, 1999) (cautioning that "a party can circumvent the safe harbor requirements of Rule 11 by simply filing under § 1927"); *Ponder v. Wersant*, 2017 WL 3923544, at *4 (S.D. Tex. Sept. 5, 2017) (same); *Farris v. County of Camden*, 61 F. Supp. 2d 307, 334 (D.N.J. 1999) ("To [issue sanctions under § 1927] would allow [counsel] to circumvent the 'safe harbor' requirement.").

---

[5]      *See also Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2017 WL 1352710, at *3 (N.D. Ind. Apr. 13, 2017) ("[S]anctions under § 1927 are not warranted because . . . counsel withdrew the [complaint] within the safe harbor period . . . ."); *Tallman v. Freedman Anselmo Lindberg LLC*, 2012 WL 1080289, at *4 (C.D. Ill. Mar. 30, 2012) ("[A]lthough § 1927 does not contain the safe harbor requirement . . . this Court finds it relevant that Plaintiff's counsel voluntarily withdrew the allegations before [defendant] sought sanctions.").

Given these authorities, the Court should be skeptical of Twitter's efforts to seek sanctions against Rule-11 complying counsel—particularly regarding the conduct addressed in its Rule 11 arguments (i.e., bringing a motion for class certification). Twitter should have raised its complaints of an alleged sanctionable motion for class certification while Plaintiff still had an opportunity to withdraw or correct the motion; issuing sanctions under § 1927 based on the class certification motion would effectively read the safe harbor requirement out of Rule 11.

But regardless, there can be no finding of subjective bad faith here because Plaintiff's counsel have not raised a frivolous argument. As discussed above, Mr. Schobinger repeatedly stated that Mr. Musk (and not himself) wielded decision-making authority in authorizing the actual payout of the 2022 bonus, and that, regardless of his own opinion and recommendation (which he was directed to write up) about the optics of paying the bonus, he had explained to his supervisor and coworkers that the bonus had already been promised to employees. *See* ECF No. 84-7, Schobinger Dep. at 169; ECF No. 87-3, Schobinger Dep. at 293. While Plaintiff recognizes and accepts the Court's holding that he was not well suited to serve as class representative, his counsel did not seek class certification in bad faith. He made the argument that, having been part of "behind-the-scenes" discussions regarding the payment of the bonus, he was well positioned to represent a class on that claim, as he had access to those conversations. The Court did not agree and found him not to be a suitable representative. He accepts that ruling, but that does not make his pursuit of his claim (or even his request for certification) frivolous. Moreover, as the Court acknowledged, putative class members still have a viable claim for the bonus (in California and states with similar laws). ECF No. 119-3, Tr. at 20–21.

Nor did Plaintiff raise a frivolous argument following the Court's order denying class certification. Contrary to Twitter's assertions, Mr. Schobinger did not have a frivolous individual

claim—even if Texas law applies. In *Vanegas v. American Energy Services*, 302 S.W.3d 299, 303 (Tex. 2009), the Texas Supreme Court held that an employer's promise to at-will employees may constitute an enforceable unilateral contract when the employees complete performance by staying with the employer for the requested period of time. Accordingly, Mr. Schobinger, along with any other Twitter employees in Texas who "remained with the company in the first quarter of 2023," ECF No. 37, Order at 1–2, had a viable breach of contract claim under Texas law.[6]

Plus, because § 1927 sanctions must be tailored to costs actually incurred due to the complained-of conduct, it is worth reiterating that Plaintiff's counsel only proceeded with Plaintiff's individual claim for three months following the Court's order denying class certification. All that occurred during this period was Plaintiff's seeking discovery, which was clearly not frivolous, as the Court allowed Plaintiff that time to complete discovery, ECF No. 113, and given that Chief Magistrate Judge Ryu agreed that a deposition he sought was proper. ECF No. 114, Order at 4–5. Plaintiff's discovery requests—which did not result in any discovery being produced or any depositions taken due to Plaintiff's voluntary request for dismissal—are a far cry from the sanctionable conduct highlighted by Twitter in its motion. *See Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (attorney sanctioned who required defendant to defend against a suit that she had explicitly admitted lacked merit); *Kendrick v. Zanides*, 609 F.

---

[6]     Furthermore, while Twitter has made fleeting references to raising "estoppel and unclean hands" affirmative defenses, ECF No. 84, Opp'n at 19, the success of such defenses is far from certain. For instance, Texas courts have held that the unclean hands defense applies where the plaintiff is seeking an *equitable* remedy, such as an injunction. *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 597 (Tex. App. 2015); *In re Nolle*, 265 S.W.3d 487, 494 (Tex. App. 2008). Plus, Twitter could only succeed on such a defense by establishing that it was injured by Plaintiff's conduct, which it has not alleged. *Park*, 457 S.W.3d at 597; *In re Nolle*, 265 S.W.3d at 494. It is also difficult to see how Twitter could succeed on an estoppel defense, which requires establishing a knowingly false representation that resulted in detrimental reliance. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

Supp. 1162, 1173 (N.D. Cal. 1985) (sanctioning attorneys who renewed charges they knew to be "unprovable").[7] Here, where Plaintiff moved to dismiss before the parties incurred significant costs engaging in merits-based litigation, § 1927 sanctions are not warranted.

Nor are sanctions warranted pursuant to the Court's Inherent Power. Sanctions pursuant to the Court's Inherent Power "must be exercised with restraint and discretion," and are only appropriate upon a finding of: "(1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088, 1090 (9th Cir. 2021) (internal quotation omitted). While Plaintiff accepts the Court's conclusions, Plaintiff's counsel did not litigate in bad faith. Accordingly, sanctions pursuant to the Court's Inherent Power are improper. *See Best Odds Corp. v. iBus Media Ltd.*, 657 F. App'x 641, 643 (9th Cir. 2016) (finding that the absence of bad faith made sanctions under § 1927 and the Court's Inherent Power unwarranted).

## IV.    CONCLUSION

By moving to voluntarily dismiss his claims, Plaintiff has agreed to free Twitter of the risk of relitigation. Still not satisfied, Twitter attempts to impose sanctions primarily based on a motion that was decided by the Court months ago. Rule 11 prohibits such eleventh-hour sanctions requests, and Twitter should not be permitted to scratch out Rule 11's safe harbor provision by being awarded sanctions under alternative provisions—especially where, as here, there has been no showing of bad faith. For these reasons, Twitter's motion should be denied.

---

[7]     While Twitter may claim that its counsel unnecessarily had to engage in discussions with Plaintiff's counsel regarding discovery in this case, and participated in submitting a discovery dispute letter to the Magistrate Judge, these efforts were not without any usefulness. Plaintiff's counsel are pursuing claims based on this same bonus promise on behalf of a number of employees in arbitration. The parties have agreed that discovery that Plaintiff's counsel obtain in one case are usable across all employee cases that Plaintiff's counsel are pursuing (both in court and arbitration). Thus, those discussions regarding discovery are still useful for these claims being pursued in arbitration and would need to have occurred regardless of whether Mr. Schobinger himself ever brought this claim.

Respectfully submitted,

MARK SCHOBINGER,

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

Dated: February 28, 2025

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT
Case No. 3:23-cv-03007-VC

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on February 28, 2025.


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan