MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:    +1.650.843.4000
Fax:   +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626-7653
Tel:    +1.714.830.0435
Fax:   +1.714.830.0700

Attorneys for Defendant
X CORP. as Successor in Interest to
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. 3:23-cv-03007-VC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, 28 U.S.C. § 1927, AND INHERENT POWER OF THE COURT**<br><br>Date:     March 27, 2025<br>Time:    10:00 a.m.<br>Judge:   Hon. Vince Chhabria |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

## I. INTRODUCTION

Plaintiff and his counsel knowingly proffered testimony and arguments that this Court found potentially perjurious and clearly meritless – including the fiction that he was just following orders when submitting a supposed "contrarian memo" that vehemently opposed paying the very bonuses he sought in this case. Plaintiff's Opposition to Defendant's Motion for Sanctions ("Opposition" or "Opp.") (ECF 126) at 2. His counsel admittedly *continues* to use the same potentially perjurious and clearly meritless testimony and arguments in other arbitrations against Defendant X Corp. ("X" or the "Company") and potentially could do so in civil court for any bonus claimant not bound by a Dispute Resolution Agreement ("DRA"). Opp. at 15 n.7 ("Plaintiff's counsel are pursuing claims based on this same bonus promise on behalf of a number of employees in arbitration."). Yet he nonetheless argues that he and his counsel should be allowed to belatedly cut and run from this Court scot-free after numerous months of groundless motion practice and harassing unnecessary discovery, so that they can continue to pursue their baseless allegations elsewhere. His assertions should be rejected. Plaintiff and his counsel should be sanctioned both for their past conduct and as a deterrent against their clearly anticipated future conduct.

## II. ARGUMENT

### A. Plaintiff Has Failed to Justify His or His Counsel's Clearly Sanctionable Conduct.

Plaintiff's convoluted attempt at rationalizing the evidence serves to confirm, rather than excuse, his sanctionable conduct. For example, he claims to have sent a "contrarian memo" / "white paper" advising against paying bonuses only because "he had been asked to." Opp. at 2, 5. But the memo was sent on February 13, 2023, months *after* Plaintiff already had sent many other written recommendations not to pay the bonuses, including on November 30, 2022, stating: "The logical outcome suggests *we would not pay out FY22 bonuses …. So you know, that is what I recommended previously* …." ECF No. 84-11 (Pl. Dep. Ex. 13) (X-SCHOBINGER_00000083) (emphasis added); ECF No. 84-17, 84-18 (Pl. Dep. Exs. 22-23) (X-SCHOBINGER_00000125-131, 133); *see* Def's. Opp. to Class Cert. (ECF 84) at 5. He also fails to explain how his "white

paper," which purportedly "outlined each option available," made no mention of any supposedly binding "promise" to pay 2022 bonuses. Opp. at 5. He cannot explain such an omission because, in fact, Plaintiff's recommendation was unqualified – "This is why I believe exercising discretion and not paying a bonus would be prudent despite the safe harbor nature of the plan." *See* ECF No. 84-17 (Pl. Dep. Ex. 22).[1] It is irrelevant that Plaintiff did not make the final payment decision, as leadership indisputably was relying on him as Twitter's Senior Director of Compensation. Opp. at 4-5. Furthermore, he argues that "[d]uring the three-month period after he offered to dismiss his claims, the parties did not engage in any merits-based litigation," but that statement is clearly false because Plaintiff served written discovery and deposition notices, and filed a discovery motion seeking to compel such discovery, during this period.

It therefore is no surprise that this Court deemed Plaintiff's testimony potentially perjurious and stated, "He might fit nicely into this case as a defendant, but he cannot possibly fit as a named plaintiff." ECF 101 at 2; *see* Sanctions Mot. (ECF 119) (discussing standards for sanctions). Sanctions are clearly warranted here, as discussed further below. *See Kendrick v. Zanides*, 609 F.Supp. 1162, 1172 (N.D. Cal. 1985) (finding claims sanctionable under Rule 11 and Section 1927 "particularly where at the time counsel has in hand documents refuting those allegations"); *Truesdell v. So. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1154 (9th Cir. 2002) (finding Rule 11 sanctions not *per se* abuse of discretion: "It was, at best, disingenuous to claim that statistical records in support of Plaintiff's theory must exist, when all along counsel had personal knowledge of another case that disproved his statistical argument."); Rule 11 comments on 1993 Amendments (Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable"); *see*, *e.g.*, *infra*.

**B.    Plaintiff and His Counsel Cannot Escape Rule 11 Sanctions Via Dismissal.**

With no substantive/merits-based excuse for their conduct, Plaintiff and his counsel hide behind procedure, claiming that X's Rule 11 sanctions request was untimely because the Court

---

[1] Plaintiff admitted that he was not necessarily asked to give a "contrarian opinion": "I don't know if she used those specific words, but we spoke about the pros and cons of doing it either way." ECF 84-7 at 91 (Pl. Dep. at 175:5-10). Apparently, violating an alleged binding "promise" to pay bonuses to the workforce was not a "con" worthy of note in his "white paper."

already denied his certification motion, and that his dismissal request immunizes their conduct. Not so. X's Sanctions Motion reasonably laid out the bases for imposing sanctions available to the Court, which extend beyond Rule 11.[2] In any event, Rule 11 sanctions are warranted.

Contrary to Plaintiff's argument, imposing sanctions here would fully further Rule 11's *deterrent* purposes even upon a dismissal with prejudice. Plaintiff and his counsel act as if this case is an isolated aberration, the dismissal of which would fully cure their conduct to date with no risk of repetition. Not so. It is undisputed that Plaintiff's counsel has used his tainted testimony in bonus claim arbitrations by other employees and intends to continue doing so, *and* could bring such a claim in federal court, particularly given her prior request to substitute a plaintiff and given that not all employees signed DRAs. *See* ECF 101 at 2; ECF 84 at 2; Opp. at 15 n.7. Mere dismissal of his claims would not prevent or dissuade him and his counsel from continuing to proffer the same potentially perjurious and meritless testimony in those cases. Rule 11's plain terms foster deterrence not only in the pending case at issue, but potentially in future cases and even among other litigants: "A sanction imposed under this rule must be limited to what suffices to deter **repetition of the conduct <u>or</u> comparable conduct by others similarly situated**." Rule 11(c)(4) (emphasis added). The "safe harbor" contemplates that mere withdrawal of a paper or claim might not suffice in every case, and that the issue in question might otherwise need to be "appropriately corrected". Rule 11(c)(2). During the "safe-harbor" period here, Plaintiff and his counsel offered no "appropriate[] correct[ion]" to address these concerns – to the contrary, his counsel *continues* using his deficient testimony in other cases – thus warranting imposition of sanctions to deter them from acting in other cases as they have done here.[3] Rule

---

[2] *See* October 25, 2024 CMC, ECF No. 107, at 4:17-25 (The Court: "[S]o, the sanction would be asking for, I assume you'd be seeking sanctions both against counsel and – monetary sanctions both against counsel and the – the Plaintiff himself. Would you also be seeking dismissal of the action as a sanction?" Mr. Meckley: "It would be dismissal with prejudice as the – the action, yeah." The Court: "Yeah. Okay. Yeah. That's – that sounds fine.").

[3] In addition to offering a misleading account of the parties' confidential settlement discussions, Plaintiff's counsel *did* in fact violate the letter and spirit of Fed. R. Evid. 408, as well as the Parties' agreement to confidentiality. *See* Opp. at 3 n.2. Plaintiff and his counsel expressly seek to evade Defendant's Sanctions Motion by disclosing the content of communications that Plaintiff's counsel herself agreed were confidential – plainly an improper effort to "disprove the validity or amount of a disputed claim" – here, for sanctions. Fed. R. Civ. P. 408(a). In any event, this gamesmanship does not excuse Plaintiff's or his counsel's conduct.

11(c)(4) expressly permits, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Such a deterrent award is warranted here and justifies sanctions under Rule 11 after the Court's ruling on class certification.

Plaintiff overstates Rule 11's protections in contending that it "categorically prohibit[s]" sanctions where a party seeks voluntary dismissal during the safe-harbor period, and that sanctions cannot be sought after a court decides the offending motion (Opp. at 9-10), despite his cites to Ninth Circuit precedent as to how it *generally* operates. Indeed, cases decided *after* Plaintiff's cited cases have held that, "in the case of a voluntary dismissal with prejudice [under Rule 41(a)(2)], costs and fees may be imposed under 'exceptional circumstances' **or pursuant to Fed.R.Civ.P. 11**" – holdings that would be nonsensical if Rule 11 sanctions could *never* be awarded post-dismissal or post-adjudication. *Chavez v. Northland Group*, 2011 WL 317482 at *4 (D. Ariz. Feb. 1, 2011) (emphasis added); *see also Rodriguez v. Service Employees Intern.*, 2011 WL 4831201 at *4 (N.D. Cal. Oct. 12, 2011) (same: "The Court finds that the approach described in *Chavez* is sound"); *cf. Chavez v. Wal-Mart Stores Inc.*, 2014 WL 12591672 at *3 (C.D. Cal. Nov. 14, 2014) (stating in Rule 41(a)(2) (not Rule 11) context, "We think dismissal with prejudice is at least a factor to be considered in deciding whether to condition dismissal on the payment of fees and costs," but not ruling that fees and costs are per se unavailable upon such a dismissal). The egregious conduct described herein, in Defendant's Sanctions Motion, and in this Court's comments at the class certification argument and its ruling thereon constitute such "exceptional circumstances" and are sanctionable under Rule 11. *See, e.g.*, ECF 119-3 at 19 (Oct. 3, 2025 Hr'g Tr. 18:13-23) ("***99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff***") (emphasis added); ECF 101.

Other post-1993-amendment case law similarly rebuts Plaintiff's "categorical" position. *See, e.g., Cal. Sportfishing Protection Alliance v. Callaway*, 2013 WL 4482849 at *5 (E.D. Cal. Aug. 20, 2013) (denying Rule 11 sanctions, but noting limited "cases decided after the addition of the safe harbor provision pursuant to the 1993 amendments which supports Rule 11 sanctions

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

despite a voluntary dismissal," which the court deemed "not binding precedent"). Plaintiff also implicitly concedes, in a footnote, that *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) is on-point, but argues it was superseded by the 1993 Rule 11 amendments adding the safe-harbor. *Id.* at 398 ("As noted above, a voluntary dismissal does not eliminate the Rule 11 violation....[A] litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct."); Opp. at 10 n.4. While some courts have so held, the Supreme Court and Ninth Circuit have not. *See, e.g.*, *Gomes v. American Century Companies, Inc.*, 2010 WL 1980201 at *2 n.4 (E.D. Cal. May 17, 2010) (noting that "the Supreme Court has not directly overturned [*Cooter's*] holding"); *cf. Mireskandari v. Assoc. Newspapers, Ltd.*, 665 F. App'x 570, 572 (9th Cir. 2016) (stating in non-Rule 11 context of sanctions for "violation of the court's scheduling and other pretrial orders" that "We see no justification for holding that a voluntary dismissal precludes issuance of a sanctions order," *citing Cooter*, 496 U.S. at 395–96).

And while Rule 11 and related Ninth Circuit cases *generally* provide a safe harbor "if the challenged paper … is withdrawn or appropriately corrected within 21 days after service", Rule 11's terms do not "categorically prohibit" sanctions sought *post*-adjudication or *after* voluntary dismissal. Indeed, the commentary to the 1993 Rule 11 amendments refutes Plaintiff's absolutist reading, noting that the safe-harbor "*generally* provid[es] protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention," and that "*[o]rdinarily* the motion should be served promptly after the inappropriate paper is filed" (emphasis added). Again, Plaintiff and his counsel could have affirmed within the 21-day notice period provided by Defendant that they would "appropriately correct" and not continue to rely on Plaintiff's tainted testimony, but instead doubled down. This warrants Rule 11 sanctions as an important deterrent given the "exceptional circumstances" raised by their conduct here and in other cases, again including other bonus claim cases that his counsel still could file in federal court. *Cf. Chavez*, 2011 WL 317482 at *4; *Rodriguez*, 2011 WL 4831201 at *4.

**C.   Sanctions Are Merited Under Section 1927 and the Court's Inherent Authority.**

Even if the Court declines to impose sanctions under Rule 11, Plaintiff and his counsel's

vexatious and bad faith conduct clearly warrant sanctions under Section 1927 (against his counsel) and the Court's inherent authority (against both).  Plaintiff's own case cites (mainly out-of-circuit) refute his effort to dodge these additional sanctions based on his purported "compliance with Rule 11's safe harbor provision," and belie his argument that awarding sanctions under Section 1927 or the Court's inherent authority would "sidestep Rule 11 and render its safe harbor provision meaningless." Opp. at 3, 12.  As Plaintiff concedes (Opp. at 12), the court in *Pham v. Talkdesk, Inc.* recognized that "unique" and/or "extraordinary circumstances" can justify sanctions under Section 1927 and the court's inherent authority despite compliance with the Rule 11 "safe harbor," explaining that:  "Of course, [plaintiff's] compliance with Rule 11 does not displace the Court's ability to impose sanctions for bad faith conduct under its inherent authority or § 1927." 2023 WL 6892582, at *3 (C.D. Cal. Sept. 29, 2023).  Indeed, the court in *Pham* emphasized that "Rule 11's safe harbor *is not a get-out-of-jail-free card*" and that, "*the fact that [plaintiffs] needed to rely on the safe harbor provision in the first place is a sign that their conduct was at the very least highly questionable*." *Id.* at *3-4 (emphasis added).[4]

Other cases are in accord. *See Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2017 WL 1352710, at *3 (N.D. Ind. Apr. 13, 2017) ("sanctions under § 1927 may be awarded even when a paper is withdrawn under Rule 11"); *Cal. Sportfishing*, 2013 WL 4482849 at *5 n.10 ("There are of course cases which impose sanctions under 28 U.S.C. § 1927, despite a voluntary dismissal, where a party unduly multiplies the proceedings, but Callaway has moved under Rule 11 only, and in any event there is no indication that CalSpa has prolonged these proceedings."); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 640 (9th Cir. 2010) (separately analyzing Section 1927

---

[4] For additional examples of Plaintiff's selective quotations from out-of-circuit authority (Opp. at 12), *see also*, *e.g.*, *Tallman v. Freedman Anselmo Lindberg LLC*, 2012 WL 1080289, at *4 (C.D. Ill. Mar. 30, 2012) (finding Section 1927 sanctions unwarranted in part because "Plaintiff removed the allegations that were not viable *before any motion practice* and *never pressed the validity of those allegations before this Court*" – unlike Plaintiff here) (emphasis added); *Bellistri v. U.S., Drug Enf't Agency*, 1998 WL 337884, at *1 (S.D.N.Y. June 25, 1998) (recognizing that "*there may be situations in which the unavailability of sanctions under Rule 11 (because of a failure to comply with the safe harbor provision) does not preclude the imposition of § 1927 sanctions*," but finding sanctions unwarranted because "plaintiffs' counsel has not been criticized for taking any action other than filing a complaint and opposing a motion to dismiss. Thus, both of the challenged actions are directly subject to scrutiny under Rule 11.  Moreover, there is no basis to conclude that either action approaches the higher level of bad faith conduct required for the imposition of § 1927 sanctions.") (emphasis added).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

sanctions despite Rule 11 "safe harbor" compliance, but finding sanctions unavailable against a party and due to lack of requisite findings: "Because the sanction cannot be upheld under Rule 11, we must next examine whether it can be affirmed on the alternative basis on which the district court expressly relied, 28 U.S.C. § 1927, to support the imposition of the sanction.");[5] *cf. Mireskandari*, 665 F. App'x at 572 (stating in context of Rule 16 sanctions: "We see no justification for holding that a voluntary dismissal precludes issuance of a sanctions order. […] The district court had authority to sanction [plaintiff] for his actions prior to the voluntary dismissal.") (citing *Cooter*).

Here, this case presents "unique" facts and "extraordinary circumstances" that justify the imposition of sanctions against Plaintiff's counsel under Section 1927, and/or sanctions against both Plaintiff and his counsel pursuant to the Court's inherent power. *See Pham*, 2023 WL 6892582, at *3. They continued to litigate in bad faith beyond July 12, 2024, when Defendant produced documents that they knew or should have known directly negated Plaintiff's claims and any bid for class certification. Their misguided revisionist "spin" – that "his inside, behind-the-scenes knowledge of what was happening with the bonus discussions could be helpful to the class, who would not otherwise have such access to those discussions" (Opp. at 2) – again ignores the undisputed evidence and itself displays a bad faith lack of candor. As this Court observed: "**99 percent of Plaintiffs' lawyers […] once they saw these documents […] would have immediately either dropped the case or scrambled to find a different Plaintiff**" and that "the fact that that wasn't done here speaks volumes." ECF 119-3 at 19 (Oct. 3, 2025 Hr'g Tr. 18:13-23) (emphasis added); ECF 119-3 at 12-13 (Hr'g Tr. 11:19-21, 12:21-25) (Court stating: "*[T]here is a question of whether [Plaintiff] committed perjury in his deposition, frankly*"; "I think your client might need to read his deposition transcript carefully and *wonder if he is in legal jeopardy for what he said in that*

---

[5] *See also Song v. Drenberg*, 2021 WL 4846779, at *2 (N.D. Cal. Oct. 18, 2021) ("[Plaintiff] suggests that this Court lacks jurisdiction to decide a motion for sanctions [under § 1927] because plaintiffs voluntarily dismissed the underlying claims before the motion was filed. […] He is not correct. […] 'In our view, nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal.'") (quoting *Cooter*, 496 U.S. at 396); *Strike 3 Holdings, LLC v. Doe*, 2019 WL 935389, at *3 (E.D. Cal. Feb. 26, 2019) (stating, in discussing court's inherent authority, "'[A] voluntary dismissal does not expunge the ... [underlying] violation' or bad faith conduct. […] Nor does a voluntary dismissal remove the court's inherent authority to impose sanctions.") (citing *Cooter*).

*deposition. You know, I seriously wonder if, perhaps, you [Plaintiff's counsel] have put him in legal jeopardy*.") (emphasis added).[6]

As such, sanctions are warranted under Section 1927 and this Court's inherent authority, even if not awarded under Rule 11. *See, e.g.*, *Kendrick*, 609 F.Supp. at 1173 (finding that "the maintenance of this action in the face of the facts known or available to [plaintiff] both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously, entitling defendants to recover the resulting costs, expenses and attorneys' fees under 28 U.S.C. § 1927," and that "[t]he Court has inherent power to award attorneys' fees to the prevailing party in an action, such as the one before the Court, brought in bad faith, vexatiously, wantonly and for oppressive reasons"). As this very Court previously recognized, "[w]hile a court should ordinarily rely on 28 U.S.C. § 1927 and the Federal Rules of Civil Procedure to impose sanctions, if neither is 'up to the task, *the court may safely rely on its inherent power*.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (emphasis added) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). If the Court finds that neither Rule 11 nor Section 1927 are "up to the task" here, it can safely rely on its inherent power to award sanctions against Plaintiff and his counsel.

Plaintiff also attempts to avoid sanctions by asserting that, "All that occurred during this period [after denial of his class certification motion] was Plaintiff's seeking discovery, which was clearly not frivolous, as the Court allowed Plaintiff that time to complete discovery," and that "Plaintiff moved to dismiss before the parties incurred significant costs engaging in merits-based

---

[6] *See also, e.g.,* ECF 119-3 at 10 (Hr'g Tr. 9:13-14) (noting that "the actual evidence is very different from what [Plaintiff] alleged in the complaint[.]"); ECF 119-3 at 5 (Hr'g Tr. 4:3-16, 21-22) (stating that Plaintiff "was the one that recommended that the company not pay the bonus," and that the factual record "strongly indicate[d] that [Plaintiff] has no breach of contract claim; that he is going to lose."); ECF 101 at 2 ("He might fit nicely into this case as a defendant, but he cannot possibly fit as a named plaintiff. At his deposition, Schobinger offered a convoluted explanation for how he could possibly have believed he was entitled to the bonus while simultaneously advocating that the company not pay it. It seems likely that Schobinger's explanation is untrue. But even if he is telling the truth, that's beside the point for purposes of this motion. Because even if he is telling the truth, his conduct makes him the worst possible candidate to serve as a litigation representative for the other Twitter employees who didn't get a bonus."); ECF 101 at 2 ("Most importantly, the fact that Schobinger's lawyer thought it was a good idea to file a motion for class certification in the face of this evidence (as opposed to dropping the case or seeking to substitute another plaintiff immediately upon discovering it) shows that she is totally unqualified to serve as class counsel.").

1  litigation." Opp. at 14-15. These statements are patently disingenuous, as Defendant's declaration
2  in support of its Sanctions Motion demonstrates that Defendant incurred more than $652,000 in
3  attorneys' fees and costs from July 12, 2024 to present. *See* ECF No. 119-2 at 38-41 (Decl. of E.
4  Meckley at 2-5). Defendant's fees and costs incurred on discovery post-denial of certification alone
5  exceeded $12,000. *Id.* at 40 (Meckley Decl. at 4). The fact that Chief Magistrate Judge Ryu granted
6  Plaintiff limited discovery cannot shield him or his counsel from sanctions. It is undisputed that
7  Defendant's Sanctions Motion, and Plaintiff's and his counsel's frivolous continued prosecution of
8  this case, were *not* before Judge Ryu to consider. Moreover, Judge Ryu observed that
9  "Schobinger's individual claims are weak while the scope of [the denied Request] is broad," and
10 that it "ha[d] the feel of a last-ditch fishing expedition, the burden of which outweighs the likely
11 benefit." ECF 114.

12      Plaintiff and his counsel also make sweeping assertions that "discussions regarding
13 discovery are still useful for these claims being pursued in arbitration and would need to have
14 occurred regardless of whether Mr. Schobinger himself ever brought this claim," and that "the
15 parties have agreed to use discovery across employee cases that Plaintiff's counsel are pursuing
16 (both in court and arbitration)." Opp. at 15 n.7. These statements are false, irrelevant, or both. The
17 hundreds of thousands of dollars in fees and costs that X incurred due to his groundless class
18 certification motion will not be "useful" in individual arbitrations. He falsely asserts that his "last-
19 ditch" discovery efforts "did not result in any discovery being produced or any depositions taken
20 *due to Plaintiff's voluntary request for dismissal*." Opp. at 14. In truth, Plaintiff aggressively
21 pursued and would have taken discovery had Defendant not served its Rule 11 "safe harbor" letter.
22 He offers no support for the conclusory assertion that such "discussions" are somehow still "useful"
23 – a particularly specious argument given that all other individual bonus claims are "being pursued
24 in arbitration," where discovery typically is more limited than in federal court. *Id.* at 15 n.7.
25 Furthermore, the Parties' private agreement to share discovery *properly obtained* in *other* pending
26 cases does not give him or his counsel license to vexatiously multiply *these proceedings* by
27 pursuing and taking discovery that never should have been sought.
28      Plaintiff argues that "[s]anctions issued via § 1927 must be tailored to compensation for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS
CASE NO. 3:23-cv-03007-VC

'excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct.' *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir. 1983)." Such argument fails to rebut Defendant's Sanctions Motion, given the overwhelming evidence that *all proceedings* after July 12, 2024 were unwarranted and that Defendant incurred more than $650,000 in fees and costs after that date, which clearly constitute "excess costs arising from an attorney's unreasonable and vexatious conduct." This Court has substantial discretion to fashion an appropriate sanctions award under Section 1927 and its inherent authority, which does not require mathematical precision. *See, e.g.*, *Lahiri v. Univ. Music and Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (affirming sanctions award under Section 1927 and court's inherent power of over $250,000, noting that "[t]he award is explicitly limited to excess costs and fees incurred in defending against Lahiri's copyright infringement claim, and excludes litigation expenses for his dismissed … claims," and that "[a]n apportioned percentage is not an abuse of discretion because it would be impossible to determine with mathematical precision the fees and costs generated only by Kornarens"); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d at 935 (this Court stating that "[t]he essential goal in shifting fees is to do rough justice, not to achieve auditing perfection," and courts need not "become green-eyeshade accountants" in doing so).

### III.   CONCLUSION

Defendant respectfully requests that the Court grant Defendant's Motion for Sanctions in its entirety, including pursuant to (a) Rule 11, (b) Section 1927, and/or (c) this Court's Inherent Power, and award Defendant all attorneys' fees and costs it has incurred and that it continues to incur from July 12, 2024 through the final termination of this case, and dismiss this action in its entirety with prejudice.

Dated: March 7, 2025                         MORGAN, LEWIS & BOCKIUS LLP

                                             By   /s/ Eric Meckley
                                                  Eric Meckley
                                                  Kassia Stephenson

                                             Attorneys for Defendant X CORP. as
                                             Successor in Interest to TWITTER, INC.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                    DEFENDANT'S REPLY IN SUPPORT OF
                      MOTION FOR SANCTIONS
                      CASE NO. 3:23-cv-03007-VC